

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: 212-837-6000
Fax: 212-422-4726
hugheshubbard.com

Ned H. Bassen
Direct Dial: 212-837-6090
ned.bassen@hugheshubbard.com

August 7, 2017

VIA ECF

Honorable Gregory H. Woods
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 2260
New York, New York 10007

   Re:  *Knox v. John Varvatos Enterprises, Inc.*, No. 1:17-cv-00772 (GHW)

Dear Judge Woods:

  Defendant John Varvatos Enterprises, Inc. ("Varvatos") anticipates filing a motion to compel Plaintiff Tessa Knox to produce certain documents and to otherwise respond to discovery requests. Pursuant to Rule 2(C)(ii) of Your Honor's Individual Rules of Practice in Civil Cases, counsel for the parties in the above-referenced action jointly submit this letter regarding. Counsel for the parties have met and conferred twice and have been unable to resolve the dispute to the extent set forth herein.

**Varvatos's Statement**

  On June 21, 2017, Varvatos served its First Set of Requests to Plaintiff Tessa Knox for Production of Documents and Tangible Things (the "RFPs"). The RFPs requested production within 30 days of service of the RFPs. On July 20, Knox served responses and objections to the RFPs (the "Responses, a copy of which is attached hereto as Exhibit A). As relevant to this dispute, the Responses asserted several general and specific objections based on attorney-client privilege and work product doctrine. The Responses did not specify a time for completion of production, meaning that production was required to be completed by July 21, 2017 under Rule 34(b)(2)(B).

  During the course of the parties' initial meet-and-confer, on July 24, Knox's counsel from Dunnegan & Scileppi LLC ("D&S") represented that they were withholding documents concerning communications between D&S and Knox notwithstanding that a third party, Chris

New York   Washington, D.C.   Los Angeles   Miami   Jersey City   Kansas City   Paris   Tokyo

79408553_2

Clemence, was involved in those communications, and that they would not respond to discovery regarding such communications.  Counsel further represented that Mr. Clemence, a non-attorney who is Knox's live-in boyfriend and the father of her child, has been routinely involved in communications between D&S and Knox solely to make things "easier."  Counsel described Mr. Clemence as Knox's "agent" or "representative."  To date, Knox has not produced a privilege log, notwithstanding that such a log is overdue and has been specifically requested by counsel for Varvatos.

The party invoking the protection of a privilege bears the burden of proving each element and a lack of waiver through competent evidence, i.e., more than just bare assertions.  *Guiffre v. Maxwell*, No. 15 Civ. 7433 (RWS), 2016 WL 1756918, at *6 (S.D.N.Y. May 2, 2016).  "The presence of a third party during communication or disclosure of otherwise confidential attorney-client communications to a third party waives the privilege absent an exception."  *Id.* at *5.  The limited exception for agents requires proof, *inter alia*, that the third party's involvement was "necessary for the client to obtain informed legal advice."  *Nat'l Educ. Training Grp. v. SkillSoft Corp.*, No. M8-85 (WHP), 1999 WL 378337, at *4 (S.D.N.Y. June 10, 1999).  "The 'necessity' element means more than just useful and convenient, but rather requires that the involvement of the third party be nearly indispensable or serve some specialized purpose in facilitating attorney-client communications."  *Id.*  Based on Knox's counsel's representations, Mr. Clemence merely makes communications convenient and is not in any way necessary.

Communications between D&S and Knox are thus not privileged to the extent that they involved or copied Mr. Clemence or were shared with him in form or substance.  With respect to work product doctrine, Knox has not shown that any documents at issue were prepared by D&S for litigation or that the protection was not itself waived.  Moreover, communications from Knox (or Clemence) to D&S will not contain the kind of "discussion of legal strategy or attorney opinions" that are required for work product protection to apply.  *See Egiazarian v. Zalmayev*, 290 F.R.D. 421, 436 (S.D.N.Y. 2013).  Varvatos may also overcome the work product doctrine by showing a "substantial need" for such documents and an inability to otherwise obtain such material.  *Id.* at 437.

Varvatos will seek to compel Knox to produce in unredacted form all written communications with D&S that involve or copy Mr. Clemence or that were shared with him in form or substance.  In addition, since Varvatos intends to take the depositions of Knox and Mr. Clemence, Varvatos will seek an order that Knox's counsel refrain from asserting any privilege objection or instruction at any deposition with respect to such communications (both written and verbal).  Varvatos thus requests a pre-motion conference.

**Knox's Statement**

On January 6, 2017, Chris Clemence, Knox's domestic partner and now-father of her child, called D&S on Knox's behalf concerning a potential discrimination case against JV.  Over the next few days, D&S discussed the case with Knox and Clemence.  D&S sent Knox a retainer agreement on January 10, 2017, which Knox signed and returned to D&S on January 11, 2017.  Given the close relationship between Knox and Clemence, and Clemence's desire and ability to help Knox, Knox, Clemence and D&S agreed that Clemence would act as Knox's representative

in the case. Clemence agreed to keep all communications concerning the case confidential. Based on that understanding, throughout the course of the litigation, Clemence was copied on communications between D&S and Knox, and was often in the room or on the phone when D&S spoke to Knox. Clemence assisted D&S and Knox in the case with developing theories of the case, and helping Knox marshal facts and collect documents. These communications with Knox and Clemence were always intended to be confidential attorney-client and/or work product communications.

A.  Communications Between D&S and Clemence
    Are Protected By The Attorney-Client Privilege.

Because Knox is asserting federal claims, federal common law should provide the rule of decision concerning the scope of the attorney-client privilege. von Bulow by Auersperg v. von Bulow, 811 F.2d 136, 141 (2d Cir. 1987).

"While Proposed Rule 503 was not adopted by Congress, courts and commentators have treated it as a source of general guidance regarding federal common law principles." In re Grand Jury Investigation, 399 F.3d 527, 532 (2d Cir. 2005). Proposed Rule 503(b) provides, in relevant part:

> "**(b) General rule of privilege.** A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between himself or his representative and his lawyer or his lawyer's representative..."

"Consistent with Supreme Court Standard 503, courts have held that the attorney-client privilege protects communications between lawyers and agents of a client where such communications are for the purpose of rendering legal advice." In re Copper Mkt. Antitrust Litig., 200 F.R.D. 213, 217 (S.D.N.Y. 2001).

Because Clemence is Knox's "representative" for purposes of this litigation, the communications that JV wants to discover are within the scope of the privilege.

B.  Communications Between D&S and Clemence
    Are Protected By The Work-Product Doctrine.

Federal Rule of Civil Procedure 26(b)(3)(A) protects from discovery documents "prepared in anticipation of litigation or for trial by...another party or...the other party's attorney, consultant...or agent..." This work-product doctrine serves a broader purpose than the attorney-client privilege. In re Grand Jury Proceedings, 219 F.3d 175, 190 (2d Cir. 2000)("Further, the [Supreme] Court has recognized both in [Hickman v. Taylor], 329 U.S. [495,] 508 [(1945)], and again in [U.S. v. Nobles, 422 U.S. 225, 238 n. 11 (1975)], that 'the work-product doctrine is distinct from and broader than the attorney-client privilege.'").

Significantly, the work-product doctrine is not waived because the information was disclosed to third parties. Morales v. United States, 94 Civ. 4865 (JSR), 1997 WL 223080, at *1 (S.D.N.Y. May 5, 1997)("He does not attempt to show that some other goal overrides the work-

product protection but rather argues that defendants have waived this protection to the extent that, by her conversations, Ms. Nakano revealed her legal theories and strategies to these non-party witnesses with whom she had no privity. But since the purpose of the work-product doctrine 'is not to protect [such information] from disclosure to the outside world but rather to protect it only from knowledge of opposing counsel and his client,' it follows that mere 'disclosure of [such information] to third persons does not waive the work-product immunity' as to opposing counsel and parties.")(quoting Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2024, at 367–69 (2d ed.1994)).

The communications between D&S, Knox, and Clemence, would necessarily involve the preparation of the case for trial, by the lawyers, the client and the "consultant" or "agent" of the client. (Otherwise, those communications would not be relevant, or responsive.) By seeking to discover those documents, JV is seeking information at the core of the work product doctrine.

Nat'l Educ. Training Grp., Inc. v. Skillsoft Corp., No. M8-85 (WHP), 1999 WL 378337, at *6 (S.D.N.Y. June 10, 1999), a case upon which JV relies, extended the work product doctrine to the notes of an investment banker attending a board meeting at which the board discusses a legal action. Judge Pauley held "The notes that NETG seeks from Ms. Chen were all taken at board meetings following this first salvo in the parties' legal dispute. In contrast to the narrow agency exception for the attorney-client privilege, Rule 26(b)(3) allows for a broader interpretation of who may serve as a party's 'representative' and thereby fall within the penumbra of the work product doctrine." Id. This is much easier to decide than the present case, because in the present case Clemence communicated directly with D&S.

The communications between Clemence and D&S necessarily involve legal advice and strategy because the parties did not pursue any objective other than the litigation. Contrast this with Magistrate Gorenstein's holding in Egiazaryan v. Zalmayev, 290 F.R.D. 421, 436 (S.D.N.Y. 2013), that certain documents were not within the scope of the work product doctrine because they "on their face relate[d] solely to public relations strategy and contain[ed] no discussion of legal strategy or attorney opinions or impressions."

If the communications that JV seeks are work product, JV has no legitimate claim to discover them. JV has not attempted to prove that "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).

C.      JV's Requests Are Not Proportional.

The communications between and/or among D&S, Knox, or Clemence have virtually no relevance to the issue of whether the Clothing Allowance is facially unlawful. Knox is not claiming that JV targeted her with an individual act of discrimination. Knox's actions or thoughts therefore have only the barest relevance, if any. The burden that JV seeks to impose on Knox and the Court – to determine whether Clemence's presence was "necessary" for each individual communication – is needless because it will not help the Court or the jury determine whether the Clothing Allowance is unlawful.

      JV's attempt to discover tangentially irrelevant, but potentially embarrassing, personal communications is part of a pattern.  JV has requested all of Knox's social media postings, even those that do not mention or refer to JV (DR 6), and every communication between Knox and anyone that refers to JV, regardless of its relevance to any claim or defense in this litigation. (DR 3 and 4)   JV has also demanded that Knox catalogue every item of clothing she purchased to wear while working at JV, and its cost. (DR 1, 2, and 7)   Now JV seeks to review every written communication between Knox to which Clemence was privy, and complains that the privilege log is overdue. To illustrate the make-work nature of the exercise, JV has not, despite the requirements of Rule 26(b)(5)(A)(ii), produced a privilege log to Knox.

D.      <u>JV Is Not Entitled To A Blanket Order For The Depositions</u>.

      Questions of privilege are generally fact-specific, and need to be decided on a case by case basis. <u>Safeco Ins. Co. of Am. v. M.E.S., Inc.</u>, 289 F.R.D. 41, 45 (E.D.N.Y. 2011)("It is worth noting as an initial matter that many of the attorney-client privilege and work-product issues require a fact-specific inquiry that are not capable of a categorical presumption."); <u>Lugosch v. Congel</u>, CIV. 1:00-CV-0784, 2006 WL 931687, at *4 (N.D.N.Y. Mar. 7, 2006), <u>report and recommendation adopted in part, rejected in part</u>, No. 1:00-CV-0784, 2006 WL 6651777 (N.D.N.Y. May 5, 2006)("The Second Circuit's demand of a 'fact-specific inquiry' in our view requires just that-a document by document review."). JV's request for a blanket order prohibiting D&S "from asserting any privilege objection or instruction at any deposition with respect to such communications" is therefore unwarranted.

E.      <u>Knox Requests A Full Briefing.</u>

      An order compelling a litigant to produce information claimed to be privileged may leave the litigant no remedy but mandamus. <u>In re von Bulow</u>, 828 F.2d 94, 98–99 (2d Cir. 1987) ("Further, an order that information be produced that brushes aside a litigant's claim of a privilege not to disclose, leaves only an appeal after judgment as a remedy. Such a remedy is inadequate at best. Compliance with the order destroys the right sought to be protected. Often, to deny review is to deny the privilege. Although petitioner may ultimately succeed on appeal, his confidential communications will already have been exposed during the trial. Because in those circumstances taking an appeal afterwards is often an exercise in futility, courts have often entertained petitions for a writ of mandamus challenging discovery orders on the grounds of attorney-client privilege.")(internal citations omitted).  Unless the Court denies JV's request to make a motion, Knox respectfully requests the opportunity to fully brief the motion.


      Respectfully submitted,


      /s/Ned H. Bassen                                                  /s/William Dunnegan


      Ned H. Bassen                                                      William Dunnegan
      *Counsel for Defendant*                                   *Counsel for Plaintiff*