UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TESSA KNOX,                                          :

                             Plaintiff,          :

               -against-                           :          17 Civ. 772 (GHW)(GWG)

JOHN VARVATOS ENTERPRISES, INC.,          :          ECF Case

                    Defendant.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MEMORANDUM OF PLAINTIFF IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL

DUNNEGAN & SCILEPPI LLC
Attorneys for Plaintiff
  Tessa Knox
350 Fifth Avenue
New York, New York 10118
(212) 332-8300

## Table of Contents

Table of Authorities ........................................................................................... iii

Preliminary Statement ......................................................................................... 1

Statement of Facts .............................................................................................. 2

      A.    JV's Discriminatory Policy ..................................................... 2

      B.    The Genesis Of This Action The Role Of Clemence ................ 2

      C.    JV's Document Demands ......................................................... 4

      D.    Knox's Response To JV's Document Demands ........................ 4

      E.    JV's Present Motion ............................................................... 5

Argument ........................................................................................................... 6

I.      COMMUNICATIONS INVOLVING D&S AND CLEMENCE
         ARE PROTECTED BY THE WORK PRODUCT DOCTRINE .......... 6

      A.    The Elements Of The Work Product Doctrine Apply
          To The Documents .................................................................. 8

         1.   This Motion Seeks Only To Compel Production Of Documents ......... 8

         2.   D&S, Knox or Clemence Prepared The Documents ............................ 8

         3.   The Documents Were Prepared In Anticipation Of Litigation Or
            For Trial .................................................................................. 8

         4.   Disclosure To Clemence Did Not Waive The Work Product
            Immunity ................................................................................ 9

      B.    Work Product Covers The Specific Documents JV Identified ........ 10

         1.   The Initial E-Mail Of Clemence To D&S ........................................ 10

         2.   Documents Concerning The Retainer Agreement Between Knox
            And D&S .................................................................................. 10

          3.   Documents Concerning Knox's Response To The "Corrective
            Action" Letter ......................................................................... 11

4.  Documents Providing Facts To Counsel.................................................12

C.    JV Has Made No Showing That It Has Any Need For These
Documents ...................................................................................................13

II.    COMMUNICATIONS BETWEEN D&S AND CLEMENCE
ARE PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE ....................13

A.    Standard 1:  Status Of The Third-Party As A "Representative"................15

B.    Standard 2: Reasonably Necessary To Further The Purpose Of The
Attorney-Client Communications ...............................................................15

C.    Standard 3: Necessary To Allow Verbal Communication To Occur ........17

Conclusion .............................................................................................................................19

<u>Table of Authorities</u>

**Cases**

<u>Allied Irish Banks v. Bank of Am., N.A.,</u>
240 F.R.D. 96 (S.D.N.Y. 2007) ........................................................................... 7, 18

<u>AU New Haven, LLC v. YKK Corp.,</u>
15 Civ. 3411(GHW)(SN), 2016 WL 6820383 (S.D.N.Y. Nov. 18, 2016) .................................... 7

<u>Bank of Am., N.A. v. Terra Nova Ins. Co.,</u>
212 F.R.D. 166 (S.D.N.Y. 2002) ........................................................................... 9, 10

<u>Benedict, on Behalf of Duke & Benedict, Inc. v. Amaducci,</u>
92 Civ. 5239 (KMW), 1995 WL 23555 (S.D.N.Y. Jan. 20, 1995)............................................. 16

<u>Blanchard v. Bergeron,</u>
489 U.S. 87 (1989)........................................................................................... 11

<u>Carte Blanche (Singapore) PTE., Ltd. v. Diners Club Int'l, Inc.,</u>
130 F.R.D. 28 (S.D.N.Y.1990) ............................................................................... 16

<u>Egiazaryan v. Zalmayev,</u>
290 F.R.D. 421 (S.D.N.Y. 2013) ........................................................................... 9, 18

<u>Hickman v. Taylor,</u>
329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947)......................................................... 5, 6, 12

<u>In re Application Pursuant to 28 U.S.C. Section 1782 for an Order Permitting Christen Sveaas to</u>
<u>Take Discovery from Dominique Levy, L & M Galleries & other non-participants for use in</u>
<u>Actions Pending in the Norway,</u>
249 F.R.D. 96 (S.D.N.Y. 2008) .............................................................................. 18

<u>In re Copper Mkt. Antitrust Litig.,</u>
200 F.R.D. 213 (S.D.N.Y. 2001) ..................................................................... 14, 15, 18

<u>In re Grand Jury Investigation,</u>
399 F.3d 527 (2d Cir. 2005) ................................................................................. 14

<u>In re Grand Jury Proceedings,</u>
219 F.3d 175 (2d Cir. 2000) ................................................................................. 6

<u>In re Grand Jury Proceedings Under Seal v. U.S.,</u>
947 F.2d 1188 (4th Cir.1991) ............................................................................... 15

<u>In re Grand Jury Subpoena Dated July 6, 2005,</u>
510 F.3d 180 (2d Cir. 2007)................................................................................. 12

In re Grand Jury Subpoenas Dated Mar. 24, 2003 Directed to (A) Grand Jury Witness Firm &
    (B) Grand Jury Witness,
265 F. Supp. 2d 321 (S.D.N.Y. 2003)................................................................. 14, 15, 18

In re Visa Check/MasterMoney Antitrust Litig.,
190 F.R.D. 309 (E.D.N.Y.2000) ............................................................................... 6

La Suisse, Societe d'Assurances Sur La Vie v. Kraus,
62 F. Supp.3d 358 (S.D.N.Y. 2014)..................................................................... 1, 15

Lugosch v. Congel,
00 Civ. 0784, 2006 WL 931687 (N.D.N.Y. Mar. 7, 2006),
report and recommendation adopted in part, rejected in part,
00 Civ. 0784, 2006 WL 6651777 (N.D.N.Y. May 5, 2006) ........................................ 5

Morales v. United States,
94 Civ. 4865 (JSR), 1997 WL 223080 (S.D.N.Y. May 5, 1997)................................... 9

Nat'l Educ. Training Grp., Inc. v. Skillsoft Corp.,
M8-85 (WHP), 1999 WL 378337 (S.D.N.Y. June 10, 1999) ............................. 7, 8, 18

Neighborhood Development Collaborative v. Murphy,
233 F.R.D. 436 (D. Md. 2005).............................................................................. 16

Quaratino v. Tiffany & Co.,
166 F.3d 422 (2d Cir. 1999)................................................................................ 11

Safeco Ins. Co. of Am. v. M.E.S., Inc.,
289 F.R.D. 41 (E.D.N.Y. 2011) .............................................................................. 5

SEC v. Wyly,
2011 WL 3366491 (S.D.N.Y. July 27, 2011) ......................................................... 16

SEC. v. Yorkville Advisors, LLC,
300 F.R.D. 152 (S.D.N.Y. 2014) ............................................................................ 7

United States v. Ackert,
169 F.3d 136 (2d Cir. 1999)................................................................................ 17

United States v. Am. Tel. & Tel. Co.,
642 F.2d 1285 (D.C. Cir. 1980) ............................................................................. 6

United States v. Kovel,
296 F.2d 918 (2d Cir. 1961)..................................................................... 14, 15, 16

Upjohn Co. v. United States,
449 U.S. 383 (1981) ................................................................................................. 16

U.S. v. Adlman,
134 F.3d 1194 (2d Cir. 1998) ..................................................................................... 9

U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3,
00 Civ. 4763(RMB)(JCF), 2002 WL 31296430 (S.D.N.Y. Oct. 11, 2002) .................... 5

U.S. v. Nobles,
422 U.S. 225 (1975) ................................................................................................... 7

von Bulow by Auersperg v. von Bulow,
811 F.2d 136 (2d Cir. 1987) ..................................................................................... 13

Windsor Sec., LLC v. Arent Fox LLP,
16 Civ. 1533 (GBD)(GWG), 2017 WL 3446992 (S.D.N.Y. Aug. 11, 2017) ............... 11

Wultz v. Bank of China Ltd.,
304 F.R.D. 384 (S.D.N.Y. 2015) ................................................................................. 7

## Rules

F.R.C.P. 26(b) ................................................................................................ passim

Proposed Federal Rule of Evidence 503 ......................................................... 13, 14, 15

## Other

Restatement (Third) of the Law Governing Lawyers § 70 cmt. f (2000) ..................... 16

Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2024 (2d ed.1994) ......... 10

Plaintiff Tessa Knox ("Knox") submits this memorandum in opposition to the motion of defendant John Varvatos Enterprises, Inc. ("JV") to compel the production of documents that, Knox contends, are covered by the work product doctrine and the attorney-client privilege.

<u>Preliminary Statement</u>

Under the work product doctrine, Knox has withheld documents that Knox, her representative, or her counsel prepared in anticipation of this litigation or for trial.  JV seeks to overcome this work product immunity only by imposing requirements that Rule 26(b) does not impose.  For example, JV improperly seeks to impose the requirement that the materials be "prepared by or at the behest of counsel…" (Dkt. 61 at 8/10)   If the Court applies the correct standard, it should be clear, if not obvious, that the work product immunity attaches to each document Knox has withheld.

For the attorney-client privilege, JV relies upon cases applying the New York state standard that a third-party's involvement in the communication destroys an individual's attorney-client privilege unless the third-party is "necessary" for the verbal communication to occur. (Dkt. 61 at 7/10)   JV ignores the federal standard, that a third-party's involvement in the communication does not destroy an individual's attorney-client privilege if the third-party furthers the purpose of the attorney-client communication.  <u>La Suisse, Societe d'Assurances Sur La Vie v. Kraus</u>, 62 F. Supp.3d 358, 364–65 (S.D.N.Y. 2014)(collecting cases where an individual client's representative furthered the attorney-client communications and did not destroy the privilege).  If the Court applies the correct standard, and considers the facts Knox presents on this motion, the Court should find that the involvement of Chris Clemence ("Clemence") furthered the purpose of the attorney-client communications, and that the privilege attaches to each of the subject documents.

Statement of Facts

A. <u>JV's Discriminatory Policy.</u>

 This is an employment discrimination case.  JV purports to provide equal employment opportunities and benefits to men and women.  JV's employee handbook states:

> <u>The Company provides equal employment opportunities to all employees</u> and applicants for employment <u>without regard to</u> race, color, religion, <u>sex</u>, national origin, age, disability, genetic information or military or veteran status in accordance with applicable federal laws. In addition, the Company complies with applicable state and local laws governing non-discrimination in employment in every location in which the Company has facilities. <u>This policy applies to all terms and conditions of employment</u>, including but not limited to hiring, placement, promotion, termination, transfer, leaves of absence, compensation, and training. (Knox Dec. ¶ 4) (Emphasis added.)

 JV's actual policy concerning its clothing allowance, however, belies these statements in its employee handbook.  JV admits that it provides a $12,000 clothing allowance to male sales associates, and does not provide any clothing allowance to female sales associates. (Knox Dec. ¶ 3)  The trial in this action will involve whether JV's facially discriminatory clothing allowance is unlawful.  The trial should not involve any evidence that is unique to Knox or her personal employment.  Indeed, we do not know whether Knox would need to testify on any material issue at trial.  In any event, JV's discrimination between men and women in providing the clothing allowance seemed unfair to Knox.  (Knox Dec. ¶ 4)

B. <u>The Genesis Of This Action And The Role Of Clemence.</u>

 On January 6, 2017, Clemence, Knox's domestic partner and now-father of her child, called Dunnegan & Scileppi LLC ("D&S") on Knox's behalf concerning a potential discrimination case against JV.  (Clemence Dec. ¶ 7)  Clemence called on behalf of Knox because Knox had little if any experience dealing with legal issues, while Clemence had some experience in that area. (Clemence Dec. ¶ 6)

2

Over the next few days, D&S discussed the potential case with Knox and Clemence. (Dunnegan Dec. ¶ 3; Knox Dec. ¶ 7; Clemence Dec. ¶ 8)   D&S sent Knox a retainer agreement on January 10, 2017 (Knox Dec. ¶ 8), which Knox signed and returned to D&S on January 11, 2017. (Knox Dec. ¶ 8)

Given the close relationship between Knox and Clemence, Knox's pregnancy, and Clemence's desire and ability to help Knox, Knox, Clemence and D&S expressly agreed in a telephone conversation shortly after the retainer agreement that Clemence would act as Knox's representative in the case and would keep all communications concerning the case confidential. (Dunnegan Dec. ¶ 5; Knox Dec. ¶ 9; Clemence Dec. ¶ 9)   This expressly confirmed what D&S, Knox and Clemence had understood from the outset of the matter. (Dunnegan Dec. ¶ 5; Knox Dec. ¶ 9; Clemence Dec. ¶ 9)

Based on that understanding, throughout the course of the litigation, D&S and Knox both copied Clemence on confidential attorney-client communications, and Clemence was often in the room or on the phone when D&S and Knox spoke.  Knox's pregnancy impacted her memory. (Knox Dec. ¶ 10)  Because Clemence had lived with Knox while she worked at, and talked about JV (Clemence Dec. ¶ 3), Clemence had the potential to remember facts that Knox did not remember.  Clemence also assisted in developing arguments in the case. (Dunnegan Dec. ¶ 6)

These communications with Knox and Clemence were always intended to be confidential attorney-client and/or work product communications.  Neither Knox nor Clemence had retained, or consulted, D&S in connection with any matter other than Knox's claim against JV with respect to the clothing allowance. (Dunnegan Dec. ¶ 12; Knox Dec. ¶ 15; Clemence Dec. ¶ 13)  All the documents prepared since Clemence first contacted D&S on January 6, 2017,

were created in anticipation of litigation against JV or the trial in that litigation. (Dunnegan Dec.

¶ 11; Knox Dec. ¶¶ 13-14; Clemence Dec. ¶ 12)  Knox sued on February 1, 2017. (Dkt. 1)

C.      JV's Document Demands.

        Because this case involves a facially discriminatory policy, the proof at trial will not

depend on the circumstances of any individual employee.  JV therefore has little need to take

substantial discovery from Knox.  JV nevertheless embarked upon a fishing expedition, serving

overly broad discovery requests on Knox.  For example, JV demand that Knox produce:

> "Request 3. All documents concerning any communication with anyone, including Chris Clemence, concerning Varvatos, any Varvatos employees, or any Varvatos policies.
>
> Request 4.  All documents concerning any communication with anyone, including Chris Clemence, concerning your employment with Varvatos.
>
> Request 5.  All documents concerning any communication with anyone, including Chris Clemence, concerning this lawsuit or the claims, defenses, or issues involved in this Action."  (Dkt. 61 at 3/10)

D.      Knox's Response To JV's Document Demands.

        Knox responded on July 20, 2017, to JV's document requests 3 and 4 by objecting on the

ground that they were "overly broad and unduly burdensome." (Dkt. 62-2 at 3-4/7)  While these

requests could conceivably call for the production of some documents that were "relevant to the

party's claim or defense" under Rule 26, both requests called for the production of documents

that were not discoverable under the Federal Rules because they were not relevant to the claims

or defenses in the action.

        Knox responded to JV's document request 5 by stating that she would produce relevant

documents that resulted from a reasonable search. (Dkt. 62-2 at 4/7)  Knox, acting in good faith,

agreed to produce non-privileged documents concerning the claims or defenses in this action,

with the understanding that communications with counsel were privileged.  Knox produced at

least 75 pages of documents responsive to document request 5.  (Weiss Dec. ¶ 17)   These

documents stretch the outer limits of relevance, if they are relevant at all.  Knox produced a

privilege log on August 11, 2017, identifying 41 communications sent between January 6, 2017,

and the filing of this action on February 1, 2017, that Knox withheld on the grounds of attorney-

client privilege and work product doctrine. (Dkt. 62-3)

E.    JV's Present Motion.

In its notice of motion, JV seeks to compel Knox "to produce documents withheld based

upon an erroneous assertion of privilege." (Dkt. 60 at 1/2)   JV does not seek to compel

documents withheld on an additional, or different, ground, such as relevance or proportionality,

and does not seek to compel oral communications.[1]  The only argument that JV makes is that the

presence of Clemence on certain communications prevents Knox from withholding the

documents based upon either the attorney-client privilege or the work product doctrine.

---

[1] Although JV's memorandum, but not its notice of motion, loosely alludes to precluding assertions of privilege at depositions, the Court should not enter a blanket order preventing the assertion of a privilege.  Questions of privilege are generally fact-specific, and need to be decided on a case-by-case basis. Safeco Ins. Co. of Am. v. M.E.S., Inc., 289 F.R.D. 41, 45 (E.D.N.Y. 2011)("It is worth noting as an initial matter that many of the attorney-client privilege and work-product issues require a fact-specific inquiry that are not capable of a categorical presumption.");  See Lugosch v. Congel, 00 Civ. 0784, 2006 WL 931687, at *4 (N.D.N.Y. Mar. 7, 2006), report and recommendation adopted in part, rejected in part, 00 Civ. 0784, 2006 WL 6651777 (N.D.N.Y. May 5, 2006)("The Second Circuit's demand of a 'fact-specific inquiry' in our view requires just that-a document by document review."). Work product applies to oral statements as well as documents.  U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3, 00 Civ. 4763(RMB)(JCF), 2002 WL 31296430, at *5–6 (S.D.N.Y. Oct. 11, 2002)("The defendants are correct, of course, that Rule 26(b)(3) provides immunity only for 'documents and tangible things' otherwise qualifying as work product. But there is more to the work product doctrine than is encompassed by the Rule. [Citations omitted.] To the extent that the doctrine, as originally articulated in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), is broader than the Rule, it nevertheless remains good law.").

<u>Argument</u>

I.

## COMMUNICATIONS INVOLVING D&S AND CLEMENCE ARE PROTECTED BY THE WORK PRODUCT DOCTRINE

Federal Rule of Civil Procedure 26(b)(3) protects from discovery documents "prepared in anticipation of litigation or for trial by...another party or...the other party's attorney, consultant...or agent..."  It states:

A) <u>Documents and Tangible Things</u>. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

(i)    they are otherwise discoverable under Rule 26(b)(1); and

(ii)    the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

The purpose of the work product doctrine is to prevent a party's adversary from obtaining material that reflects the party's preparation or thought process.  <u>United States v. Am. Tel. & Tel. Co.</u>, 642 F.2d 1285, 1299-1300 (D.C. Cir. 1980)("It is intended to 'protect information against opposing parties, rather than against all others outside a particular confidential relationship, in order to encourage effective trial preparation.'");  <u>In re Visa Check/MasterMoney Antitrust Litig.</u>, 190 F.R.D. 309, 314 (E.D.N.Y. 2000) (The purpose of work product doctrine is "to keep counsel's work from his opponent in the litigation so that it will not be used against him.").

The work-product doctrine therefore serves a broader purpose than the attorney-client privilege.  <u>In re Grand Jury Proceedings</u>, 219 F.3d 175, 190 (2d Cir. 2000)("Further, the [Supreme] Court has recognized both in [<u>Hickman v. Taylor</u>], 329 U.S. [495,] 508 [(1947)], and again in [<u>U.S. v. Nobles</u>, 422 U.S. 225, 238 n. 11 (1975)], that 'the work-product doctrine is distinct from and broader than the attorney-client privilege.'").

In <u>AU New Haven, LLC v. YKK Corp.</u>, 15 Civ. 3411(GHW)(SN), 2016 WL 6820383, at

*1 (S.D.N.Y. Nov. 18, 2016), the Court enumerated the elements of the work product doctrine:

> Courts have summarized Rule 26(b)(3) as setting forth three requirements for work product protection to apply: "The material must (1) be a document or tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." <u>SEC. v. Yorkville Advisors, LLC</u>, 300 F.R.D. 152, 159 (S.D.N.Y. 2014) (internal quotation marks and citations omitted).

Neither the text of the Rule nor its purpose require any showing beyond these three elements.

JV nevertheless argues that the work product doctrine requires that the material be

prepared at the "behest of counsel." (Dkt. 61 at 8/10)  JV's argument is wrong. <u>Wultz v. Bank of</u>

<u>China Ltd.</u>, 304 F.R.D. 384, 394 (S.D.N.Y. 2015)("[I]t is not in fact necessary that the material

be prepared by or at the direction of an attorney. The text of Fed.R.Civ.P. 26(b)(3)(A) accords

the protection to material prepared 'by or for [a] party or its representative'—not merely material

prepared by or for an attorney.").

JV further argues that the work product doctrine requires a rigorous level of analysis.

(Dkt. 61 at 8/10)  JV's argument is, again, wrong. <u>Allied Irish Banks v. Bank of Am., N.A.</u>, 240

F.R.D. 96, 105 (S.D.N.Y. 2007)("[T]he work product doctrine protects both factual and opinion

work product…).

<u>Nat'l Educ. Training Grp., Inc. v. Skillsoft Corp.</u>, M8-85 (WHP), 1999 WL 378337, at *6

(S.D.N.Y. June 10, 1999), a case upon which JV relies, demonstrates that the work product

doctrine may apply even if the attorney-client privilege does not.  There, Judge Pauley applied

the work product doctrine to the notes of an investment banker attending a board meeting at

which the board discusses a legal action, stating "The notes that NETG seeks from Ms. Chen

were all taken at board meetings following this first salvo in the parties' legal dispute. In contrast

to the narrow agency exception for the attorney-client privilege, Rule 26(b)(3) allows for a

broader interpretation of who may serve as a party's 'representative' and thereby fall within the penumbra of the work product doctrine." Id. The present case is much easier to decide, because in the present case Clemence communicated directly with D&S.

A.      The Elements Of The Work Product Doctrine Apply To The Documents.

Applying this standard, the written communications between D&S, Knox, and Clemence, fall within the scope of the work product doctrine.

1.      This Motion Seeks To Compel Production Of Documents.

JV seeks to compel the production of documents.  This establishes the first element.

2.      D&S, Knox, Or Clemence Prepared The Documents.

Either (i) D&S, (ii) Knox, or (iii) Clemence prepared each of the documents that JV seeks to compel. William Dunnegan authored documents numbered 2, 3, 5, 7, 9, 11, 13, 15, 18, 21, 22, 23, 25, 31, 33, 38, and 40 (Dunnegan Dec. ¶ 15); Richard Weiss, an associate at D&S, authored documents numbered 26 and 28. (Weiss Dec. ¶ 3)  Knox authored documents numbered 4, 6, 8, 10, 12, 14, 16, 24, 27, 29, 30, 34, 35, 36, 39, and 41. (Knox Dec. ¶ 12)  Clemence authored documents numbered 1, 17, 19, 20, 32, and 37. (Clemence Dec. ¶ 14)  In preparing these documents, Clemence acted to help Knox with this litigation (Knox Dec. ¶ 18; Clemence Dec. ¶ 14), as Knox's representative. (Dunnegan Dec. ¶ 5)   This establishes the second element.

3.      The Documents Were Prepared In Anticipation Of Litigation Or For Trial.

The communications between Clemence and D&S necessarily involve legal advice and strategy related to the present litigation because Knox, Clemence, and D&S have no relationship outside of Knox's litigation.  JV is therefore seeking information at the core of the work product doctrine.

Contrast the present case with <u>Egiazaryan v. Zalmayev</u>, 290 F.R.D. 421, 436 (S.D.N.Y. 2013), where certain documents were not within the scope of the work product doctrine because they "on their face relate[d] solely to public relations strategy and contain[ed] no discussion of legal strategy or attorney opinions or impressions."

The 41 numbered documents are available for *in camera* review if the Court desires. The declaration of Richard Weiss sets forth brief descriptions of the 41 documents, that are not intended to waive the immunity, divided into 9 topics. (Weiss Dec. ¶¶ 8-16)  The brief descriptions are intended to expand upon the privilege log concerning the nature of the communications, without revealing the substance of any communication.

4.    <u>Disclosure To Clemence Did Not Waive The Work Product Immunity.</u>

"Unlike the rule for the attorney-client privilege, the protection afforded work product is not waived merely because the material is disclosed to a third party. The reason for this is that there may be legitimate reasons to disclose attorney work product to persons outside the attorney-client relationship." <u>Bank of Am., N.A. v. Terra Nova Ins. Co.</u>, 212 F.R.D. 166, 169 (S.D.N.Y. 2002)(citing <u>U.S. v. Adlman</u>, 134 F.3d 1194, 1200, n. 4 (2d Cir. 1998)).

Specifically, the purpose of the work product doctrine is to protect information from the opposing party, and not the outside world. <u>Morales v. United States</u>, 94 Civ. 4865 (JSR), 1997 WL 223080, at *1 (S.D.N.Y. May 5, 1997)("He does not attempt to show that some other goal overrides the work-product protection but rather argues that defendants have waived this protection to the extent that, by her conversations, Ms. Nakano revealed her legal theories and strategies to these non-party witnesses with whom she had no privity. But since the purpose of the work-product doctrine 'is not to protect [such information] from disclosure to the outside world but rather to protect it only from knowledge of opposing counsel and his client,' it follows

9

that mere 'disclosure of [such information] to third persons does not waive the work-product immunity' as to opposing counsel and parties.")(quoting Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2024, at 367–69 (2d ed.1994)).

"Rather, a waiver of work product protection occurs when the covered materials are used in a manner that is inconsistent with the protection...For this reason, even a disclosure to a non-adversary that 'substantially' or 'materially' increases the likelihood that an adversary will obtain the information results in a waiver of the work product protection." Bank of Am., N.A. v. Terra Nova Ins. Co., 212 F.R.D. 166, 170 (S.D.N.Y. 2002).

Disclosure to Clemence did not substantially or materially increase the likelihood that an adversary would obtain the information, because Clemence was acting as Knox's representative in the litigation (Dunnegan Dec. Ex. ¶¶ 5-6; Knox Dec. ¶ 9; Clemence Dec. ¶ 15), and Clemence always understood and agreed that he needed to maintain the confidentiality of the communications. (Dunnegan Dec. Ex. ¶¶ 5-6, 16; Knox Dec. ¶ 19; Clemence Dec. ¶ 17)

B.    Work Product Covers The Specific Documents JV Identified.

JV argues that the work-product doctrine does not apply to documents falling within four categories. (Dkt. 61 at 9-10/10)

1.    The Initial E-mail Of Clemence To D&S.  In sending this e-mail (Doc. #1), Clemence was acting as the representative of Knox to attempt to retain D&S to represent Knox in a potential lawsuit against JV.  Clemence would not have prepared this document but for this anticipated litigation.  (Clemence Dec. ¶ 12)

2.    Documents Concerning The Retainer Agreement Between Knox And D&S.  D&S and Knox prepared these documents (Docs. #3-9) as part of Knox's effort to retain D&S to assert Knox's claims against JV.  (Weiss Dec. ¶ 9; Dunnegan Dec. ¶ 15; Knox Dec. ¶ 13)  Additionally,

documents 3 through 9 are not only the retainer agreement (including drafts), but communications between D&S and Knox which bear on the case. (Weiss Dec. ¶ 9)

In addition to being within the work-product doctrine, this retainer agreement is almost certainly not relevant to the claims and defenses in this action, even if Knox (and D&S) will seek attorneys' fees in this action. First, the issue of attorneys' fees is only relevant, if at all, once Knox prevails and becomes entitled to attorneys' fees. Second, if Knox prevails and moves for attorneys' fees the retainer agreement would not be relevant because the fee will be calculated using the lodestar method. Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999)("The starting point for the determination of a reasonable fee is the calculation of the lodestar amount."). The lodestar amount is calculated "by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." Blanchard v. Bergeron, 489 U.S. 87 (1989). Knox's retainer agreement does not bear on whether D&S will have expended a reasonable number of hours at a reasonable rate. Certainly, D&S's communications with Knox about the retainer agreement would have no relevance. Windsor Sec., LLC v. Arent Fox LLP, 16 Civ. 1533 (GBD)(GWG), 2017 WL 3446992, at *9 (S.D.N.Y. Aug. 11, 2017)("Putting aside the issue of whether there has been an 'at issue' waiver, the actual communications between client and counsel have no relevance to whether attorney's fees are reasonable. Whether any attorney's fees claimed were reasonably incurred will be decided by a factfinder based on the tasks performed and the amount of time devoted to those tasks. What was said between client and counsel is obviously irrelevant to this issue.").

3.      Documents Concerning Knox's Response To The "Corrective Action" Letter.

After Knox retained D&S to bring her discrimination claim, JV gave Knox a "corrective action" letter in which JV set out various criticisms of Knox.   JV then gave Knox the opportunity to

respond and address these criticisms. (Weiss Dec. ¶ 10   Knox involved D&S in Knox's response to the "corrective action" letter because of a reasonable belief that JV intended to use the corrective action to improperly secure admissions from Knox that JV could use in any lawsuit Knox commenced.  Documents 10 through 16 concern Knox's request for counsel in responding to the corrective action letter given the anticipated litigation, the response of William Dunnegan, and a back and forth concerning potential legal claims and discovery requests that Knox may or may not pursue. (Weiss Dec. ¶ 10)   Knox intended to resign from JV within a short time after responding to the "corrective action" letter.  (Knox Dec. ¶ 14)   Accordingly, JV's assertion – that the response to corrective action was in the ordinary course of her employment, rather than in anticipation of litigation – is implausible.

Moreover, whether Knox performed her job adequately is not relevant to the claims or defenses in this action, which concern whether JV's facially discriminatory policy is legal or not.

4.      Documents Providing Facts To Counsel.  In documents 17 through 21 and 29 through 38, Knox and Clemence prepared documents for D&S that contained ideas, facts, and evidence to help D&S in prosecuting Knox's claim, and D&S responded. (Weiss Dec. ¶¶ 11, 15) These documents represent work-product.  Contrary to JV's assertion, the work-product doctrine protects the assembling of facts. In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d 180, 183 (2d Cir. 2007)("There are two types of work product, ordinary or fact (herein 'fact') and opinion. As we have stated previously, fact work product may encompass factual material, including the result of a factual investigation."); Hickman v. Taylor, 329 U.S. 495, 511 (1947)("Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.").

C.   JV Has Made No Showing That It Has Any Need For These Documents.

If the documents are subject to the work-product doctrine, the Court should deny JV's motion.  JV has not attempted to prove that "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)(ii).  Nor could it, as Knox and Clemence (if either of them have any personal knowledge of any material facts) are available to testify at trial.  Moreover, it is implausible that JV has substantial need for any of these documents, as each of them was created after Knox had decided to pursue litigation against JV (Knox Dec. ¶ 6), and documents 12 through 41 were created after Knox returned the signed retainer agreement. (Dkt. 62-3; Knox Dec. ¶ 8)   These documents have no relevance other than to give JV a window into the mind of D&S. The Court should reject JV's suggestion that it can make a second motion to compel production of the same documents.

II.

COMMUNICATIONS BETWEEN D&S AND CLEMENCE
ARE PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE

Because Knox is asserting federal claims, federal common law provides the rule of decision concerning the scope of the attorney-client privilege. von Bulow by Auersperg v. von Bulow, 811 F.2d 136, 141 (2d Cir. 1987).  JV concedes this.  (Dkt. 61 at 6-7/10, fn. 3)

To determine the scope of the attorney-client privilege under federal law, the Court should begin with proposed Federal Rule of Evidence 503.  In re Grand Jury Investigation, 399 F.3d 527, 532 (2d Cir. 2005)("While Proposed Rule 503 was not adopted by Congress, courts and commentators have treated it as a source of general guidance regarding federal common law principles.").  Proposed Rule 503(b) provides, in relevant part:

> (b) General rule of privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between **himself or his representative** and his lawyer or his lawyer's representative...  (Emphasis added.)

Proposed Rule 503(a) defines "client" as "a person...who consults a lawyer with a view to obtaining professional legal services from him."  The proposed Rule therefore allows both a client, whether corporate or individual, to involve a "representative" in the communications without destroying the privilege.

Under federal law, courts have held that confidential communications that involve a representative of a corporate client can retain their confidential character. United States v. Kovel, 296 F.2d 918, 922 (2d Cir. 1961)("What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer); In re Grand Jury Subpoenas Dated Mar. 24, 2003 Directed to (A) Grand Jury Witness Firm & (B) Grand Jury Witness, 265 F. Supp. 2d 321, 330–31 (S.D.N.Y. 2003)("this Court holds that (1) confidential communications (2) between lawyers and public relations consultants (3) hired by the lawyers to assist them in dealing with the media in cases such as this (4) that are made for the purpose of giving or receiving advice (5) directed at handling the client's legal problems are protected by the attorney-client privilege.");  In re Copper Mkt. Antitrust Litig., 200 F.R.D. 213, 217 (S.D.N.Y. 2001)("Consistent with Supreme Court Standard 503, courts have held that the attorney-client privilege protects communications between lawyers and agents of a client where such communications are for the purpose of rendering legal advice.").

The more difficult question is articulating the standard for determining when the presence of the representative of an individual client destroys the privilege.  There are three potential standards.

14

A.      Standard 1:  Status Of The Third-Party As A "Representative."

First, the Court could apply the plain language of proposed Rule 503 and hold that the standard is that, if the person is a representative of the client as a result of their relationship, then the privilege would apply.  Proposed Rule 503, read literally, imposes no greater requirement.

Under this standard, there is no genuine dispute that Clemence is the representative of Knox for the purposes of this case.  Knox, Clemence and D&S agreed during the initial phases of the engagement that Clemence would act on behalf of Knox for purposes of this action, and would maintain the confidentiality of all the communications concerning the action.  (Knox Dec. ¶ 19; Clemence Dec. ¶ 17; Dunnegan Dec. ¶¶ 5-6)   Because Clemence is Knox's representative for the purposes of this litigation, the communications that JV wants to discover are within the scope of the privilege.  Under proposed Rule 503, no further analysis would be required.

B.      Standard 2:  Reasonably Necessary To Further
        The Purpose Of The Attorney-Client Communications.

Second, the Court could adopt the standard that the privilege extends to representatives of individuals who are reasonably necessary to further the purpose of the attorney-client communications.  This is effectively the test that the Second Circuit applied in Kovel, and this Court applied in Grand Jury Subpoenas Dated Mar. 24, 2003 and Copper Mkt. for representatives of corporations.

Courts have extended this standard to representatives of individual clients.  In La Suisse, Societe d'Assurances Sur La Vie v. Kraus, 62 F. Supp.3d 358, 364–65 (S.D.N.Y. 2014), this Court stated:

> Nonetheless, courts in some instances have protected communications made by (or to) agents of individuals for the purposes of giving or seeking legal advice. Thus, In re Grand Jury Proceedings Under Seal v. U.S., 947 F.2d 1188 (4th Cir.1991), held that communications between an individual and his accountant that occurred as part of the client's efforts to obtain legal advice were privileged. See id. at 1191. Neighborhood

15

Development Collaborative v. Murphy, 233 F.R.D. 436 (D. Md. 2005), held that communications involving a "financial consultant and adviser" who acted "as conduit of information" between a client and his attorney were privileged where they were made for the purpose of obtaining legal advice. Id. at 437, 440–41; accord Benedict v. Amaducci, 1995 WL 23555, at *1–2 (S.D.N.Y. Jan. 20, 1995) (communications involving an individual functioning as "the equivalent of 'an independent contractor,' advising plaintiffs on financial matters and preparing them for the prospect of litigation" would be protected as long as they were made at a time "he was acting as plaintiffs' representative with respect to litigation"); Carte Blanche (Singapore) PTE., Ltd. v. Diners Club Int'l, Inc., 130 F.R.D. 28, 34 (S.D.N.Y.1990) (individual hired by a client to assist in a transaction for which legal advice was obtained was agent of client for purposes of attorney-client communications); cf. SEC v. Wyly, 2011 WL 3366491, at *2 (S.D.N.Y. July 27, 2011) (presence of a client's agent does not destroy attorney-client privilege if that agent's "presence was needed to facilitate effective communication of legal advice between the attorney and the client"); see also Restatement (Third) of the Law Governing Lawyers § 70 cmt. f (2000) ("A person is a confidential agent [of a client] for communication if the person's participation is reasonably necessary to facilitate the client's communication with a lawyer or another privileged person and if the client reasonably believes that the person will hold the communication in confidence."). In all of these cases, the third party was found or assumed to be the "agent" of the client in the attorney-client relationship. (Footnote omitted.)

In Benedict, on Behalf of Duke & Benedict, Inc. v. Amaducci, 92 Civ. 5239 (KMW), 1995 WL 23555, at *1 (S.D.N.Y. Jan. 20, 1995), Judge Wood reversed the finding of a Magistrate Judge and held that communications involving a lawyer and the representative of an individual client were privileged:

> I find that communications between plaintiffs and Mr. McDonald, involving financial or other information, if made for the purpose of assisting Mr. McDonald either in retaining suitable attorneys for plaintiffs or in consulting with such attorneys with respect to this litigation, were made for the purpose of obtaining legal advice from a lawyer. It follows from Kovel that if such communications were made in confidence, they are protected by the attorney-client privilege. **I find further that consultations between Mr. McDonald and plaintiffs' attorneys with respect to this litigation are protected by the attorney-client privilege, because Mr. McDonald was acting as plaintiffs' representative during those consultations.** (Emphasis added.)

This standard would be consistent with guidance from the Supreme Court.  In Upjohn Co. v. United States, 449 U.S. 383, 389 (1981), the Supreme Court held that the purpose of the privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."

Where the representative of the individual client furthers that purpose, it is difficult to see why the attorney-client privilege should not attach to the communication.

The involvement of Clemence advanced the communications between Knox and D&S. Knox was 22 when this case began. (Knox Dec. ¶ 6)   Before this case, she had never communicated with an attorney in a professional capacity. (Knox Dec. ¶ 7)   In January 2017, she was pregnant, and gave birth in June 2017. (Knox Dec. ¶ 5)   Knox experienced some loss of memory, that she called "pregnancy brain." (Knox Dec. ¶ 9)   Clemence stood in different shoes. He is older.  Clemence had experience dealing with lawyers with respect to contract matters for his music business. (Clemence Dec. ¶ 6)   He had learned facts as a result of discussions with Knox, and could be expected to remember facts that Knox may have forgotten until reminded. (Dunnegan Dec. ¶ 6; Clemence Dec. ¶ 9)   The presence of Clemence therefore allowed Knox to communicate more effectively and efficiently with D&S.

Applying the second standard, the communications involving Clemence should be privileged because they further the attorney-client communications between Knox and D&S.

C.      Standard 3: Necessary To Allow Verbal Communication To Occur.

Third, JV argues that the Court could adopt the standard that a third-party destroys an individual's attorney-client privilege unless the third-party is "necessary" to allow the verbal communication to occur.  (Dkt. 61 at 8/10)

While JV concedes that federal law governs the issue of privilege in this case (Dkt. 61 at 7-8/10, fn. 3), JV offers no federal authority for the standard it advocates.  JV's standard, moreover, is inconsistent with the federal cases identified in the preceding section, and JV makes no attempt to harmonize its proposed standard with these federal cases.

17

Instead, JV cites four cases that bear on the issue of whether the presence of a client's representative destroys the privilege. (Dkt. 61 at 7-8/10)   The first case, United States v. Ackert, 169 F.3d 136, (2d Cir. 1999), is inapposite because it involved an investment banker to the client, not a representative of the client, who may have had a different interest in the transaction than the client.  The second case, In re Application Pursuant to 28 U.S.C. Section 1782 for an Order Permitting Christen Sveaas to Take Discovery from Dominique Levy, L & M Galleries & other non-participants for use in Actions Pending in the Norway, 249 F.R.D. 96, 100 (S.D.N.Y. 2008), involved a foreign dispute and did not specify which law it applied.  The third and fourth cases that JV cites expressly apply New York law.  Nat'l Educ. Training Grp., Inc. v. Skillsoft Corp., M8-85 (WHP), 1999 WL 378337, at *2 (S.D.N.Y. June 10, 1999)("Because the basis for federal subject matter jurisdiction is diversity of citizenship, this Court applies New York privilege law, the law of the forum from which NETg's subpoena issued.");  Allied Irish Banks v. Bank of Am., N.A., 240 F.R.D. 96, 102 (S.D.N.Y. 2007)("Because this Court's subject matter jurisdiction is based upon diversity, see Compl. ¶ 10, state law provides the rule of decision concerning the claim of attorney-client privilege.").

JV fails to acknowledge that New York and Federal law differ on the question of when a representative's involvement in the communications destroys the attorney-client privilege.  In Egiazaryan v. Zalmayev, 290 F.R.D. 421, 431 (S.D.N.Y. 2013), this Court addressed the issue of whether the presence of public relations professionals involved in confidential attorney-client communications destroyed the privilege, and noted that distinction.  This Court stated:

> "Egiazaryan cites to In re Grand Jury Subpoenas Dated March 24, 2003, 265 F.Supp.2d 321, 331 (S.D.N.Y.2003) and In re Copper Market Antitrust Litigation, 200 F.R.D. 213, 219 (S.D.N.Y.2001) for the proposition that "privileged agents may include public relations professionals."  Opp. at 9. But these cases are distinguishable on several grounds. First, because they were not diversity cases, each applied the principles of federal common law rather than New York State

18

privilege law. See In re Grand Jury Subpoenas Dated Mar. 24, 2003, 265
F.Supp.2d at 324; In re Copper Mkt. Antitrust Litig., 200 F.R.D. at 217."
(Emphasis added.)

This Court has therefore recognized that New York law and Federal law have different standards

for determining when the attorney-client privilege applies to the communications involving a

representative of a client.  The Court should therefore not apply the New York state law standard

to the federal question this motion presents.

Applying either the first or second standard, because Clemence was a representative of

Knox for the purposes of this case, or because the involvement of Clemence was necessary to

further the attorney-client communications, the Court should find that the involvement of

Clemence in the confidential communications did not destroy the attorney-client privilege.

<u>Conclusion</u>

For the reasons set forth above, and in the declarations submitted in opposition to the

motion of JV, Knox respectfully requests that the Court deny the motion of JV.

Dated:  New York, New York
          August 25, 2017

DUNNEGAN & SCILEPPI LLC

By _William Dunnegan_
    William Dunnegan (WD0415)
    wd@dunnegan.com
    Richard Weiss (RW4039)
    rw@dunnegan.com
  Attorneys for Plaintiff
    Tessa Knox
  350 Fifth Avenue
  New York, New York 10118
  (212) 332-8300

19