UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TESSA KNOX,                                          :

                Plaintiff,                     :          17 Civ. 772 (GHW) (GWG)

   -v.-                                             :          OPINION AND ORDER

JOHN VARVATOS ENTERPRISES INC.,          :

                Defendant.                 :

------------------------------------------------------------X

GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE

       Tessa Knox has sued her former employer, John Varvatos Enterprises, Inc. ("JV") on the

ground that JV gave an annual $12,000 clothing allowance to male sales associates but not to

female sales associates in violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d).[1]   Knox

now moves to have this case conditionally approved as a collective action with notice being sent

to all women who are currently employed, or were employed at any time after February 1, 2014,

as sales associates at a JV-operated store in the United States.[2]  For the following reasons,

Knox's motion is granted in part and denied in part.

---

    [1]  Although at the time her motion was filed Knox alleged that the clothing allowance
was $6,000 annually, see Amended Complaint, filed Mar. 20, 2017 (Docket # 18), ¶ 1, Knox
now alleges that the clothing allowance was $12,000 annually, see Second Amended Complaint,
filed Aug. 29, 2017 (Docket # 69) ("Second Am. Compl.") ¶ 1.

    [2]  See Notice of Motion, filed May 26, 2017 (Docket # 39) ("Notice of Motion");
Memorandum of Plaintiff in Support of Her Motion for Conditional Certification, filed May 26,
2017 (Docket # 40) ("Pl. Mem."); Defendant John Varvatos Enterprises, Inc.'s Opposition to
Plaintiff's Motion for Conditional Certification, filed June 20, 2017 (Docket # 43) ("Def.
Mem."); Reply Memorandum of Plaintiff in Support of Her Motion for Conditional
Certification, filed June 27, 2017 (Docket # 45) ("Pl. Reply").

I. <u>BACKGROUND</u>

JV designs clothing and sells that clothing at JV-operated retail locations.  <u>See</u> Second

Am. Compl. ¶ 8.  JV operates 22 such stores in the United States: four in New York City, three

in Las Vegas, Nevada; and one each in East Hampton, New York; Central Valley, New York;

Boston, Massachusetts; Clarksburg, Maryland; Houston, Texas; Cabazon, California; San

Francisco, California; San Diego, California; Malibu, California; West Hollywood, California;

Costa Mesa, California; Detroit, Michigan; Miami Beach, Florida; Sunrise, Florida; and Bal

Harbor, Florida.  <u>See</u> Pl. Mem. at 7; <u>see also</u> John Varvatos Store Locator (annexed as Ex. A to

Declaration of Richard Weiss in Support of Plaintiff's Motion for Conditional Certification, filed

May 26, 2017 (Docket # 42) ("Weiss Decl.")) ("JV Store Locator") .

From approximately August 2016 to February 2017, JV employed Knox as a sales

associate in its East Hampton, New York store.  <u>See</u> Declaration of Plaintiff Tessa Knox in

Support of Her Motion for Conditional Certification, filed May 26, 2017 (Docket # 41) ("Knox

Decl.") ¶ 2.  Knox's responsibilities as a sales associate included "greeting customers when they

entered the store, answering customer's [sic] questions regarding merchandise, promoting

merchandise to customers in the store, retrieving apparel from the storage room for customers,

advising customers as to whether clothes fit well, ringing up purchases, processing returns,

folding clothes, and maintaining the cleanliness and tidiness of the store."  Pl. Mem. at 7; Second

Am. Compl. ¶ 11.

Knox has submitted a declaration stating that before she began working as a sales

associate for JV, she visited JV's East Hampton store on at least three or four occasions,

including while her application for employment with JV was being reviewed.  Knox Decl. ¶¶ 3-

4.  On those occasions, she observed female sales associates — including her predecessor,

2

Francesca Salvati — performing the duties that Knox herself would later perform as a female sales associate. Id. ¶¶ 3-5. Knox states that Salvati described her own duties to Knox before JV hired Knox, and that these duties were the same as those Knox later performed. Id. ¶ 6. Knox further reports observing female sales associates working at two other JV stores in New York, as well as one JV store in West Hollywood, California, performing the same duties that Knox performed as a sales associate. Id. ¶¶ 9-10.

Knox's complaint alleges that at least as early as 2014, JV offered the clothing allowance to its male sales associates throughout the United States, but has not offered this allowance to its female associates. See Second Am. Compl. ¶¶ 1-25. Knox alleges that under this policy, male sales employees, and only male sales employees, working at JV-operated stores are provided with a $12,000 annual allowance to purchase JV-branded clothing to wear to work. Id. ¶¶ 1, 14. To demonstrate this policy, Knox has supplied a written employee dress code which addresses itself to "[a]ll employees working in our retail locations" and states that "all male retail employees receive a clothing allowance." See John Varvatos Appearance and Dress Standards – Retail Locations (annexed as Ex. A to Declaration of Benjamin Harris, filed Apr. 10, 2017 (Docket # 20) ("Harris Decl.")) ("JV Dress Policy"). Knox has also offered an email exchange she had with an employee in JV's human resources department, in which the employee informed Knox that JV does not "provide a clothing allowance for female employees." Email from Richard Weiss to Jennifer Rafuse, Jan. 31, 2017 (annexed as Ex. A to Second Am. Compl.) ("Weiss Email"). Finally, when Knox asked JV's East Hampton store manager, Peter Ngo, about the clothing allowance policy, Ngo mentioned that a former female sales associate had complained that female sales associates did not receive this allowance. See Knox Decl. ¶¶ 2, 8. Benjamin Harris, the Vice President of Retail at JV, stated in his declaration that the clothing

allowance policy was in place when he began working at JV in June 2014 and has existed ever since.  See Harris Decl. ¶¶ 1, 5, 7.

For its part, JV does not dispute this policy's existence.  JV has stated in prior filings in this case that it provides male sales associates with a "credit" to purchase JV-branded clothing, which the male sales associates are required to wear while working.  See Memorandum of Law in Support of Defendant John Varvatos Enterprises, Inc.'s Motion to Dismiss or, Alternatively, for Summary Judgment, filed Apr. 10, 2017 (Docket # 22) ("Def. Mot. to Dismiss"), at 1; Jointly Submitted Letter to the Court, filed May 12, 2017 (Docket # 33) ("Joint Letter"), at 2.  In its memorandum in opposition to this motion,  JV describes this policy as "giving a credit to male sales professionals who, unlike female sales professionals, are required to wear expensive [JV] menswear when working."  Def. Mem. at 1.  JV disagrees with Knox's characterization of this policy as an "allowance" insofar as that term implies that JV gives an additional sum of money to its male employees.  Id. at 1 n.1.  However, in light of the fact that JV's own corporate statements use the term "allowance," see JV Dress Policy, the Court will also use the term "allowance" in this Opinion.

Knox seeks an order allowing this case to proceed as a collective action, with the proposed persons to be notified consisting of all current and former female sales associates employed by JV at JV-operated stores in the United States at any time since February 1, 2014. See Plaintiff's Proposed Order Conditionally Certifying the Equal Pay Act Claims in this Action as a Collective Action Pursuant to 29 U.S.C. § 216(b) (annexed to Notice of Motion); Def. Mem. at 9-10; Pl. Reply at 8-9.  JV opposes this motion.  See Def. Mem.

## II. APPLICABLE LEGAL PRINCIPLES

The Equal Pay Act of 1963 ("EPA") amended the Fair Labor Standards Act ("FLSA") to address the negative effects of "wage differentials based on sex." See Equal Pay Act of 1963, Pub. L. No. 88–38, 77 Stat. 56 (1963) (codified at 29 U.S.C. § 206(d)). The EPA prohibits employers from "paying wages to [subject] employees" in a given establishment "at a rate less than the rate at which [the employer] pays wages to employees of the opposite sex in such establishment for equal work . . . ." 29 U.S.C. § 206(d)(1). "As part of the FLSA, the EPA utilizes the FLSA's enforcement mechanisms and employs its definitional provisions." Kassman v. KPMG LLP, 2014 WL 3298884, at *4 (S.D.N.Y. July 8, 2014) (internal quotation marks and citation omitted).

Section 216(b) of the FLSA provides, in pertinent part:

> An action to recover . . . liability . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). While the statute does not prescribe any procedures for approval of collective actions, section 216(b) has long been construed to grant authority to a district court to permit notices be sent to potential plaintiffs informing them of the option to join the suit. See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989) ("[D]istrict courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs.") (citations omitted); Braunstein v. E. Photographic Labs., Inc., 600 F.2d 335, 336 (2d Cir. 1978), cert. denied, 441 U.S. 944 (1979) ("Although one might read the [FLSA], by deliberate omission, as not providing for notice, . . . it makes more sense, in light of

the 'opt-in' provision of s. 16(b) of the Act, 29 U.S.C. s. 216(b), to read the statute as permitting, rather than prohibiting, notice in an appropriate case.") (citations omitted). "Orders authorizing notice are often referred to as orders 'certifying' a collective action, even though [the] FLSA does not contain a certification requirement." Damassia v. Duane Reade, Inc., 2006 WL 2853971, at *2 (S.D.N.Y. Oct. 5, 2006). The act of "certifying" a collective action, however, means only that this Court has "exercise[d] . . . [its] discretionary power . . . to facilitate the sending of notice to potential class members." Myers v. The Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010),(internal quotation marks and citation omitted), cert. denied, 565 U.S. 930 (2011). The approval of a collective action thus amounts to a "'case management' tool for district courts to employ in 'appropriate cases.'" Id. (quoting Hoffmann-La Roche Inc., 493 U.S. at 169, 174). Because the EPA uses the same enforcement mechanism as the FLSA, an application to send notices to similarly situated individuals is governed by the same body of law. See generally Kassman 2014 WL 3298884, at *4-5 (applying section 216(b) to conditionally approve a collective action in case brought under the EPA); Moore v. Publicis Groupe SA, 2012 WL 2574742, at *8-9 (S.D.N.Y. June 29, 2012) (same).

The requirements of Fed. R. Civ. P. 23 do not apply to the approval of a collective action. Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005). Accordingly, "no showing of numerosity, typicality, commonality, and representativeness need be made." Lewis v. Nat'l Fin. Sys., Inc., 2007 WL 2455130, at *2 (E.D.N.Y. Aug. 23, 2007) (citation omitted). Furthermore, "[i]n contrast to the procedures for a class action under Fed. R. Civ. P. 23," in a collective action, "only plaintiffs who affirmatively opt in can benefit from the judgment . . . ." Indergit v. Rite Aid Corp., 2010 WL 2465488, at *3 (S.D.N.Y. June 16, 2010) (internal quotation marks and citations omitted).

6

The Second Circuit has endorsed a "two-step process" for approval of a collective action:

> At step one, the district court permits a notice to be sent to potential opt-in plaintiffs if the named plaintiffs make a modest factual showing that they and others together were victims of a common policy or plan that violated the law. [Myers,] 624 F.[3]d at 555. At step two, with the benefit of additional factual development, the district court determines whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs. Id.

Glatt v. Fox Searchlight Pictures, Inc., 811 F.3d 528, 540 (2d Cir. 2015). Thus, "[t]he threshold issue in deciding whether to authorize class notice in an FLSA [or EPA] action is whether plaintiffs have demonstrated that potential class members are 'similarly situated.'" Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (quoting 29 U.S.C. § 216(b)). "Neither the FLSA nor its implementing regulations define the term 'similarly situated.' However, courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Id. (citing cases); accord Hamadou v. Hess Corp., 915 F. Supp. 2d 651, 661 (S.D.N.Y. 2013); Guillen v. Marshalls of MA, Inc., 841 F. Supp. 2d 797, 800 (S.D.N.Y. 2012).

In other words, at this preliminary stage, the focus of the inquiry "is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." Young, 229 F.R.D. at 54 (citation omitted); accord Guillen, 841 F. Supp. 2d at 800. As such, this Court "should not weigh the merits of the underlying claims" at the conditional approval stage, and "must take care to avoid even the appearance of judicial endorsement of the merits of the action." Hamadou, 915 F. Supp. 2d at 662 (internal quotation marks and citations omitted).

Once plaintiffs have opted in and after discovery is complete, "courts conduct a more stringent 'second tier' analysis upon a full record to decide whether the additional plaintiffs are similarly situated to the original plaintiffs." <u>Indergit</u>, 2010 WL 2465488, at *4; <u>accord</u> <u>Pefanis v. Westway Diner, Inc.</u>, 2010 WL 3564426, at *4 (S.D.N.Y. Sept. 7, 2010). If the court determines at that stage that the opt-in plaintiffs are not similarly situated to the named plaintiff, then "[t]he action may be 'de-certified' . . . and the opt-in plaintiffs' claims may be dismissed without prejudice." <u>Myers</u>, 624 F.3d at 555 (citations omitted).

III.  <u>DISCUSSION</u>

   A.  <u>Approval as a Collective Action</u>

Knox argues that she is similarly situated to all female sales associates employed by JV nationwide because JV subjected them to the same clothing allowance policy in violation of the EPA. Pl. Mem. at 5-9. JV responds that Knox has not satisfied her burden for conditional approval because no plaintiff has yet joined this action, no EPA violation has been shown with respect to the potential opt-in plaintiffs, and Knox's proposed collective is too broad and vaguely defined. Def. Mem. at 2-6.

To demonstrate that a proposed group of employees is "similarly situated" to a plaintiff requires only a "modest factual showing." <u>Guillen</u>, 750 F. Supp. 2d at 480 (internal quotation marks and citation omitted). As we have recognized, however, the burden on a plaintiff "is not non-existent and the factual showing, even if modest, must still be based on some substance." <u>Id.</u> Nonetheless, "if defendants admit that the actions challenged by plaintiffs reflect a company-wide policy, it may be appropriate to find plaintiffs similarly situated based solely on plaintiffs' substantial allegations, without the need for additional evidence." <u>Hamadou</u>, 915 F. Supp. 2d at 661 (citing <u>Damassia</u>, 2006 WL 2853971, at *3).

8

Here, Knox has easily made the requisite "modest factual showing" in light of her own observations and JV's numerous statements that the male-only clothing allowance policy exists. The JV Dress Policy states unequivocally that all "male" employees receive a clothing allowance.  See JV Dress Policy.  This policy's specification that it applies to "[a]ll employees working in [JV's] retail locations" indicates that the clothing allowance policy is applicable to all JV sales associates employed at any one of JV's 22 U.S. based stores.  See id.  Knox has further corroborated the existence of this policy by submitting an email from Nicole Chang, an employee in JV's human resources department, who informed Knox that a clothing allowance is not available for female sales associates.  See Weiss Email.  JV has also admitted to the clothing allowance policy's existence throughout the course of this litigation.  See Def. Mem. at 1; Def. Mot. to Dismiss at 1; Joint Letter at 2.  Taken together, this evidence is more than sufficient to satisfy the requisite "modest factual showing" Knox must make at this stage to establish that female sales associates in all of JV's 22 U.S. stores are similarly situated with respect to the claim that they have been subject to the clothing allowance policy.  See, e.g., Pippins v. KPMG LLP, 2012 WL 19379, at *10 (S.D.N.Y. Jan. 3, 2012) (approving multi-state collective action where employer admitted that the policy being challenged applied to all locations).

JV contends that conditional approval is inappropriate because Knox did not file a "written consent to become a party plaintiff" as is seemingly required by the text of 29 U.S.C. § 256.  See Def. Mem. at 2.  Although this consent may be relevant for statute of limitations purposes, see 29 U.S.C. § 256, JV has not challenged Knox's claim for lack of timeliness and cites no authority requiring consent before a Court may conditionally approve a collective action.  See Def. Mem. at 2.  In any event, this argument is now moot because Knox filed a written consent to join this action after JV filed its opposition.  See Consent to Join, filed June

27, 2017 (Docket # 46); 29 U.S.C. § 256(b) (if plaintiff in collective action failed to file written

consent with complaint, action will be deemed commenced "on the subsequent date on which

such written consent is filed in the court in which the action was commenced.").

JV argues that Knox has failed to make any factual showing with respect to the

"establishment" requirement of the EPA because she has not demonstrated that any potential

opt-in plaintiff worked in the same "establishment" as a male comparator.  See Def. Mem. at 3-

4.  Although JV contends that this issue is properly considered at the first step of conditional

approval, JV cites no case law supporting that proposition.  See id.  By contrast, numerous courts

in this district have noted that the "establishment" requirement of the EPA is an issue that goes

to the merits and must not be decided at this stage.  See Barrett v. Forest Labs., Inc., 2015 WL

5155692, at *8 (S.D.N.Y. Sept. 2, 2015) ("The general approach of the cases has been to decline

to determine at the conditional-certification stage whether the plaintiffs will be able to satisfy the

'establishment' requirement."); accord Kassman, 2014 WL 3298884, at *8; Moore, 2012 WL

2574742, at *11 ("While the EPA requires that the employees work in the same 'establishment'

to whom they compare themselves concerning compensation, see 29 U.S.C. § 206(d)(1), there is

limited authority that district courts must engage in the establishment analysis when considering

the certification of a collective action under the EPA.").  We agree with this approach because

the definition of an "establishment" in an EPA case may vary depending on how the Court

resolves a number of fact-sensitive inquiries.  See generally 29 C.F.R. § 1620.9(a)-(b) (noting

that although "a distinct physical place of business" generally constitutes a single establishment,

a court may also find "two or more distinct physical portions of a business enterprise" to be a

single establishment after considering a number of factors).  As such, consideration of the

"establishment" requirement at this stage might constitute an impermissible "judicial

endorsement of the merits of the action."  See Hamadou, 915 F. Supp. 2d at 662 (internal

quotation marks omitted) (quoting Hoffmann-La Roche, 493 U.S. at 174).

JV argues that conditional approval is inappropriate because Knox has not demonstrated

that the potential opt-in plaintiffs performed "equal work" to either Knox herself or to their male

comparators.  See Def. Mem. at 4.  With respect to Knox, JV's argument apparently concerns the

requirement that Knox demonstrate she is "similarly situated" to prospective opt-in plaintiffs.  29

U.S.C. § 216(b).  JV criticizes Knox's statements in her declaration that she observed other

female sales associates at various JV-operated stores performing the same duties as her, Knox

Decl. ¶¶ 3, 5, 6, 9, 10,  as "the kind of nonspecific personal observations and conversations that

have led courts to reject conditional certification."  Def. Mem. at 4 (internal quotation marks and

citations omitted).  However, the key question for the "similarly situated" inquiry is not whether

plaintiff's job duties are identical to other potential opt-in plaintiffs, but rather, whether the

proposed plaintiffs "are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their

allegations that the law has been violated."  Young, 229 F.R.D. at 54 (citation omitted); accord

Kassman, 2014 WL 3298884, at *7 (citation omitted).  As already explained, Knox has made the

requisite "modest factual showing" that she and the potential opt-in plaintiffs are similarly

situated with respect to Knox's allegation that JV's policy to provide the clothing allowance to

male sales associates and not to female sales associates violated their rights under the EPA.  As

noted in Benavides v. Serenity Spa NY, Inc., 166 F. Supp. 3d 474, 483 (S.D.N.Y. 2016), "[t]he

fact that the employees held different positions does not prevent conditional collective action

certification because courts in this Circuit routinely find employees similarly situated despite not

occupying the same positions or performing the same job functions and in the same locations,

provided that they are subject to a common unlawful policy or practice."  (internal quotation

marks and citation omitted).  Thus, at this stage, Knox need not demonstrate that her duties as a JV sales associate were identical to the duties of all such female employees.

JV also claims that Knox has failed to demonstrate that the potential opt-in plaintiffs performed "equal work" to their male comparators.  See Def. Mem. at 4.  JV cites no authority holding that at the conditional approval stage, a plaintiff must show that all potential opt-in plaintiffs performed equal work to their opposite sex comparators.  See id.  Once again, we conclude that this is matter that goes to the merits of the EPA claim.  See, e.g., E.E.O.C. v. Port Auth. of N.Y. and N.J., 768 F.3d 247, 254-55 (2d Cir. 2014) ("[T]o prove a violation of the EPA, a plaintiff must demonstrate that . . . the employees perform equal work on jobs requiring equal skill, effort, and responsibility . . . .").  In fact, the crux of JV's argument on the merits is that male sales associates at JV-operated stores perform additional duties not conducted by female sales associates.  See Def. Mot. to Dismiss at 7-12.  As such, requiring Knox to demonstrate that the potential opt-in plaintiffs performed "equal work" to their male comparators at this stage would be an improper consideration of the merits.

Finally, JV disputes Knox's proposed collective as "[o]verbroad and [t]oo [v]aguely [d]efined."  Def. Mem. at 5.  Although JV argues that this provides a basis to deny the motion for collective certification, we conclude that this issue concerns the manner in which notice will be sent.  Accordingly we address this issue in Section III.D below.

In sum, this Court approves this case to proceed as a collective action with notices to be sent to female employees of JV at all 22 stores nationwide as further detailed below.

B.  Equitable Tolling

Knox's motion in this case centers on the notice that Knox seeks to have sent to JV's current and former female sales associates.  But Knox also requests that the Court rule that the statute of limitations be tolled for opt-in plaintiffs "as of at least the date of the filing of this motion."  Pl. Mem. at 11.  Insofar as JV's willfulness is at issue in this suit, Second Am. Compl. ¶¶ 26, 57, the appropriate statute of limitations is three years.  See 29 U.S.C. § 255(a); see also Alvarez v. IBM Rests., Inc., 839 F. Supp. 2d 580, 587-88 (E.D.N.Y 2012) (finding the three year statute of limitations appropriate where "[p]laintiffs have alleged willfulness in their Complaint").  If the limitations period is not so tolled, opt-in plaintiffs would not be able to make claims for any period prior to three years from the date they actually file a consent to join the action.  See 29 U.S.C. § 256(b) (limitations period is measured from date plaintiff joins an FLSA lawsuit); Yahraes v. Rest. Assocs. Events Corp., 2011 WL 844963, at *1 (E.D.N.Y. Mar. 8, 2011) ("the limitations periods in a FLSA action continues to run until an individual affirmatively opts into the action.").

1.  Law Governing Equitable Tolling

The doctrine of equitable tolling allows a court to extend a statute of limitations "on a case-by-case basis to prevent inequity."  Warren v. Garvin, 219 F.3d 111, 113 (2d Cir.), cert. denied, 531 U.S. 968 (2000).  "Equitable tolling applies as a matter of fairness where a party has been prevented in some extraordinary way from exercising his rights."  Iavorski v. I.N.S., 232 F.3d 124, 129 (2d. Cir. 2000) (internal quotation marks and alterations omitted).

The Supreme Court has made clear, however, that the conditions for applying the doctrine are strict.  "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some

13

extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); accord Lawrence v. Florida, 549 U.S. 327, 336 (2007) (noting that the extraordinary circumstance must have "prevented timely filing"); Bolarinwa v. Williams, 593 F.3d 226, 231 (2d Cir. 2010); Zerilli-Edelglass v. N.Y.C. Transit Auth., 333 F.3d 74, 80-81 (2d Cir. 2003); Estate of Mandarino v. Mandarino, 699 F. Supp. 2d 646, 652 (S.D.N.Y. 2010), aff'd, 408 F. App'x 428 (2d Cir. 2011). The second prong of the equitable tolling test "is met only where the circumstances that caused a litigant's delay are both extraordinary and beyond its control." Menominee Indian Tribe of Wis. v. United States, 136 S. Ct. 750, 756 (2016) (emphasis omitted).

The Second Circuit has repeatedly cautioned that "equitable tolling is considered a drastic remedy applicable only in rare and exceptional circumstances." A.Q.C. ex rel. Castillo v. United States, 656 F.3d 135, 144 (2d Cir. 2011) (internal quotation marks and alterations omitted); accord Phillips v. Generations Family Health Ctr., 723 F.3d 144, 150 (2d Cir. 2013) (quoting A.Q.C. ex rel. Castillo, 656 F.3d at 144); Bertin v. United States, 478 F.3d 489, 494 n.3 (2d Cir. 2007) (quoting Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam)). Thus, "[w]hen a movant does not provide any grounds showing equitable tolling may be appropriate, it will not be applied." Mark v. Gawker Media LLC, 2014 WL 5557489, at *2 (S.D.N.Y. Nov. 3, 2004) (citing Ouedraogo v. A-1 Int'l Courier Serv., Inc., 2013 WL 3466810, at *4 (S.D.N.Y. July 8, 2013)).

     2. Whether Potential Opt-In Plaintiffs Have Shown Entitlement to Equitable Tolling

Here, Knox has failed to establish the first prong of the equitable tolling doctrine. The only grounds Knox advances in support of her request for equitable tolling are that (I) courts in

the Second Circuit frequently apply equitable tolling after a plaintiff files a motion for conditional approval; and (ii) there may be some delay before this motion is decided.[3]  See Pl. Mem. at 10-11.  But Knox provides no facts or even arguments regarding existing or potential opt-in plaintiffs that reflect that these employees of JV have been "pursuing [their] rights diligently."  Lawrence, 549 U.S. at 336.  As noted by another court in this district in denying equitable tolling in an FLSA suit, the equitable tolling inquiry is "a highly factual issue that depends on what and when a plaintiff knew or should have known — an inquiry that is simply impossible to conduct when opt-in plaintiffs and the facts specific to them have not yet been revealed."  Alvarado Balderramo v. Taxi Tours Inc., 2017 WL 2533508, at *5 (S.D.N.Y. June 9, 2017); see also Hintergerger v. Catholic Health Sys., 2009 WL 3464134, at *15 (W.D.N.Y. Oct. 21, 2009) (denying equitable tolling in an FLSA case because "[p]laintiffs here have offered no allegations or proof from which this Court can conclude that a reasonably prudent potential plaintiff would not have known of his or her right to receive overtime pay after 40 hours").  The plaintiffs on whose behalf equitable tolling is being sought have not been identified.  No information has been provided about their circumstances.  Thus, this Court cannot assess whether any potential opt-in plaintiff has diligently pursued her rights and Knox's request thus must be denied.  See, e.g., Ramos v. PJJK Rest. Corp., 2016 WL 1106373, at *5 (S.D.N.Y. Mar. 10, 2016) (denying equitable tolling where "[p]laintiffs [] made no evidentiary showing as to why equitable tolling [was] warranted" but instead "merely contend[ed] that courts 'routinely grant' requests for equitable tolling in FLSA actions, and should be afforded to opt-in plaintiff's

---

[3]  We note that JV's motion to dismiss is no longer pending.  See Order, filed Aug. 30, 2017 (Docket # 70).  After filing this motion, Knox filed a Second Amended Complaint, see Second Am. Compl., which JV answered, see Answer, filed Sept. 15, 2017 (Docket # 79) ("Answer").

who have not brought claims for 'reasons beyond their control[]'") (citation omitted).

We are aware that some courts in this district have assessed the actual (or "named") plaintiff's diligence when granting equitable tolling in this context.  See Flood v. Carlson Rests. Inc., 2015 WL 260436, at *6 (S.D.N.Y. Jan. 20, 2015) (granting equitable tolling for opt-in plaintiffs "in light of Plaintiffs' diligence in pursuing the FLSA claims on behalf of putative opt-ins"); McGlone v. Contract Callers, Inc., 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) (granting equitable tolling for opt-in plaintiffs because "those whose putative class representatives and their counsel are diligently and timely pursuing the claims should [] not be penalized due to the courts' heavy dockets and understandable delays in rulings").  However, the test for equitable tolling is not concerned with the diligence of a plaintiff who has already timely filed a claim, but rather with the diligence of a plaintiff who is seeking the application of the doctrine.  As the Second Circuit has formulated the rule, "when determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply."  Zerilli-Edelglass, 333 F.3d at 80–81 (emphasis added) (internal quotation marks and citations omitted).

In her briefs, Knox cites to Yahraes, 2011 WL 844963, at *2, and McGlone, 867 F. Supp. 2d at 445, which both held that the time period spent by a court deciding a motion for conditional approval may by itself allow for the application of the equitable tolling doctrine.  See Pl. Mem. at 10; Pl. Reply at 7.  These cases ruled that "the delay caused by the time required for a court to rule on a motion" for conditional approval of a collective action "may be deemed an extraordinary circumstance justifying" equitably tolling the statute of limitations.  McGlone, 867

16

F. Supp. 2d at 445 (internal quotation marks omitted); Yahraes, 2011 WL 844963, at *2 (internal quotations marks omitted).  Indeed, other cases have similarly ruled.  See, e.g., Viriri v. White Plains Hosp. Med. Ctr., – F.R.D. –, 2017 WL 2473252, at *1, *8-9 (S.D.N.Y. June 8, 2017); Varghese v. JP Morgan Chase & Co., 2016 WL 4718413, at *10-11 (S.D.N.Y. Sept. 9, 2016); Tubiak v. Nielsen Co. (U.S.), LLC, 2016 WL 796861, at *4 (S.D.N.Y. Feb. 25, 2016); Reyes v. N.Y. F&B Serv. LLC, 2016 WL 796859, at *5 (S.D.N.Y. Feb. 22, 2016).[4]

These cases, however, do not conform to the equitable tolling doctrine as described by the Supreme Court and the Second Circuit.  Some of the cases provide no reasoned argument as to why the equitable tolling doctrine applies but simply cite to other cases that allowed for delays in adjudicating a motion to support equitable tolling.  See Reyes, 2016 WL 796859, at *5; Colon v. Major Perry Street Corp., 2013 WL 3328223, at *8 (S.D.N.Y. July 2, 2013).  Others characterize the period of time taken to decide the motion for conditional approval as "extraordinary" and use that delay alone as a basis for finding equitable tolling.  See Viriri, 2017 WL 2473252, at *8-9; Varghese, 2016 WL 4718413, at *10-11.  We do not find these cases persuasive because by focusing exclusively on the time it took the court to decide the conditional approval motion, none make a finding that the potential opt-in plaintiffs for whom tolling is sought acted diligently in pursuing their rights.  Thus, putting aside the question of whether a court's delay could qualify as "extraordinary" under the second prong of the equitable tolling test, we do not see how these decisions square with Pace, 544 U.S. at 418, Lawrence, 549 U.S. at

---

[4]  Other courts have found a delay in resolving a particular motion too brief to be considered "extraordinary" and have refused to equitably toll the statute of limitations on that basis.  See Vasto v. Credico (USA) LLC, 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016) (less than five months); Guzman v. Three Amigos SJL, Inc., 117 F. Supp. 3d 516, 527-28 (S.D.N.Y. 2015) (three and a half months); Mark, 2014 WL 5557489, at *2-3 (11 months).

336, and numerous other Supreme Court cases that require a showing of diligence by a litigant seeking to toll a statute of limitations.

In sum, we have no basis for making a ruling at this time that any current or future opt-in female sales associates' claims must be equitably tolled given that there has been no showing that they have met the "diligence" prong of the equitable tolling doctrine. Thus, we need not reach the second prong of the equitable tolling doctrine. See, e.g., Hintergerger, 2009 WL 3464134, at *15 (denying equitable tolling because no showing had been made on the "dilligence" of the potential opt-in plaintiffs); accord Contrera v. Langer, 2017 WL 4444829, at *18 (S.D.N.Y. Oct. 5, 2017); see also Pace, 544 U.S. at 418 (denying equitable tolling because "petitioner's lack of diligence precludes equity's operation.").

We recognize that this approach means that some former female sales associates employed by JV will not be entitled to pursue potentially meritorious wage claims under the EPA. But the enforcement of any statute of limitations results in meritorious claims going uncompensated. More to the point, even courts of equity "must be governed by rules and precedents no less than the courts of law." Lonchar v. Thomas, 517 U.S. 314, 323 (1996) (internal quotation marks omitted). Because governing precedent does not permit equitable tolling here, Knox's application for a categorical ruling tolling the statute of limitations for all opt-in plaintiffs is denied. This ruling is without prejudice to any application by a plaintiff for equitable tolling that conforms to the requirements of the equitable tolling doctrine.

Of course, some plaintiffs who receive notice will have claims that pre-date the three-year period depending on how long they worked for JV. After any such plaintiffs have opted in, these plaintiffs will be free to make equitable tolling arguments. We are aware that one court has criticized a procedure under which a court allows applications for tolling on an

18

individualized basis rather than making a categorical equitable tolling ruling.  See Jackson v. Bloomberg, L.P., 298 F.R.D. 152 (S.D.N.Y. 2014).  Jackson characterized such a process as a "piecemeal approach to equitable tolling, which would waste judicial resources, further delay resolution of this action, and contravene the purposes of FLSA" and granted equitable tolling categorically based on the delay in deciding the motion for conditional approval.  Id. at 171.  We respectfully disagree with Jackson.  While adjudicating equitable tolling for plaintiffs after they join an FLSA or EPA action certainly consumes judicial resources and may create delay, it is a necessary result of the law governing equitable tolling, which has strict rules that limit its application.  For good or ill, the application of the equitable tolling standard is "'highly case-specific,' and the 'burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff."  Wilder v. U.S. Dep't of Veterans Affairs, 175 F. Supp. 3d 82, 90 (S.D.N.Y. 2016).  Thus, many courts have declined to grant blanket equitable tolling, instead requiring future opt-in plaintiffs to making individualized showings.  See, e.g., Yap v. Mooncake Foods, Inc., 146 F. Supp. 3d 552, 566 (S.D.N.Y. 2015) ("Plaintiffs' request for equitable tolling is . . . denied, but individual plaintiffs may seek such tolling upon opting-in and demonstrating its applicability to his or her case."); Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011).

As to Jackson's view that such a process "contravene[s] the purposes of FLSA," we note that, while Congress could have instituted a statutory scheme under which opt-in FLSA plaintiffs benefit from the filing date of the original plaintiff (similar to the regime that governs class actions under Fed. R. Civ. P. 23), Congress did not do so.  Instead, the FLSA explicitly measures the statute of limitations from the date an opt-in plaintiff joins the lawsuit, and limits an employer's exposure to three years worth of claims.  See 29 U.S.C. §§ 255(a), 256.  Thus, "one

of the purposes of the FLSA is to protect employers from suits that accrue more than three years before that date." Contrera, 2017 WL 4444829, at *17. Finally, we note that the expenditure of judicial resources to adjudicate such claims may be limited to the extent that opt-in plaintiffs share common circumstances that may allow for an equitable tolling ruling that governs all plaintiffs sharing those circumstances.

> 3. Whether Notice Should be Sent to Former Employees Who Ended Their Employment With Defendants More Than 3 Years Prior to the Date the Notice Is Mailed

That the Court cannot grant equitable tolling at this stage of the case, however, does not end our inquiry. This is because Knox is seeking to have the notice period calculated based on the date the complaint was filed, see Plaintiff's Proposed Notice of Pendency of Lawsuit, (annexed as Ex. A to Notice of Motion) ("Pl. Proposed Notice"), and presumably would be prepared to have the entitlement of any future opt-in plaintiffs to equitable tolling be decided at a later stage of the case. In other words, Knox would seek to have the notice sent to former female sales associates whose employment with JV ended more than three years ago on the theory that one or more of these sales associates might qualify for equitable tolling were they to make the requisite showing once they joined the lawsuit. Under this scenario, notice would be sent to all current and former female sales associates who worked for JV during the three years prior to the filing of the lawsuit or the filing of this motion and the Court would determine later whether equitable tolling would be permitted for any of the employees who later join the lawsuit. Courts authorizing notice under this logic note that while they will not toll the statute of limitations before providing notice to potential opt-in plaintiffs, they will send out notice to the wider group of employees and permit "challenges to the timeliness of individual plaintiffs' actions . . . at a later date." See Martin v. Sprint/United Mgmt. Co., 2016 L 30334, at *16 (S.D.N.Y. Jan. 4,

2016) (quoting Trinidad v. Pret A Manger (USA) Ltd., 962 F. Supp. 2d 545, 564 n.14 (S.D.N.Y. 2013)); accord Lopez v. JVA Indus., Inc., 2015 WL 5052575, at *6 (S.D.N.Y. Aug. 27, 2015); Guzman, 117 F. Supp. 3d at 528; She Jian Guo v. Tommy's Sushi Inc., 2014 WL 5314822, at *6 (S.D.N.Y. Oct. 16, 2014).

The question then becomes under what conditions should notice be sent to employees whose employment ended before the start of the three-year limitations period. Some courts have permitted notice to a wider group of employees simply on the theory that "equitable tolling issues often arise for prospective plaintiffs" in FLSA suits. Winfield v. Citibank, N.A., 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012); accord Gomez v. Terri Vegetarian LLC, 2017 WL 2628880, at *2 (S.D.N.Y. June 16, 2017); Alves v. Affiliated Home Care of Putnam, Inc., 2017 WL 511836, at *5 (S.D.N.Y. Feb. 8, 2017); Bittencourt v. Ferrara Bakery & Café, Inc., 310 F.R.D. 106, 116-17 (S.D.N.Y. 2015); Fonseca v. Dircksen & Talleyrand Inc., 2014 WL 1487279, at *4 (S.D.N.Y. Apr. 11, 2014); Hamadou, 915 F. Supp. 2d at 668. In other words, these courts do not require any presentation of facts that would show the potential for equitable tolling. Rather, the fact that "equitable tolling issues often arise" in other FLSA actions is sufficient to send notice to the larger group.

We disagree with these cases, however, to the extent they do not conduct an analysis of the potential for equitable tolling in the particular case at hand. As the Second Circuit has noted, equitable tolling is expected to occur in only "rare" circumstances, Phillips, 723 F.3d at 150, and must be considered on a "case-by-case basis," Warren, 219 F.3d at 113. Thus we cannot follow a rule that simply assumes that equitable tolling will be routinely available in all FLSA cases. See generally Wallace v. Kato, 549 U.S. 384, 396 (2007) ("Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs"). A

court's "discretionary power to facilitate the sending of notice to potential class members is premised on its use as a tool for efficient case management." Trinidad, 962 F. Supp. 2d at 556 (citing Hoffman-LaRoche, 493 U.S. at 169, 174; Myers, 624 F.3d at 555 n.10).  But sending notice to potential opt-in plaintiffs with obviously time-barred claims and no explanation as to why they may be able to demonstrate equitable tolling in the future fails to serve this purpose.[5]

    We agree, rather, with those courts that have conducted some inquiry into whether there are particular circumstances suggesting that potential plaintiffs might actually succeed in demonstrating entitlement to equitable tolling.  See, e.g., Gaspar v. Pers. Touch Moving, Inc., 2014 WL 4593944, at *7 (S.D.N.Y. Sept. 15, 2014) (allowing notice to be sent to potential opt-in plaintiffs whose claims accrued within three years prior to the date the complaint was filed because "[d]efendants did not post the workplace notices that the FLSA requires"); but see Ramos v. Platt, 2014 WL 3639194, at *4 (S.D.N.Y. July 23, 2014) (failure to post notice does not justify a grant of equitable tolling).  Where there is at least a "realistic possibility" that individuals whose employment fell outside the limitations period may be able to show equitable tolling, notice to such individuals is appropriate.  Contrera, 2017 WL 4444829, at *18.  Where, however, plaintiffs have made no showing of the potential for equitable tolling, expanding the notice period is unjustified.  See Cordova v. SCCF, Inc., 2014 WL 3512820, at *6 (S.D.N.Y. July 16, 2014) (because plaintiffs failed to make "a sufficient showing of rare and exceptional circumstances . . . . the Court declines to toll the statute of limitations, and so notice will be

_____

    [5] We are also concerned that an individual who receives notice that she may join litigation justifiably believes that she has a realistic potential to recover money.  It seems unfair to raise such hopes if the claim the employee is invited to assert is actually time-barred and there is no basis for concluding that the employee will overcome that bar.  It also may unnecessarily subject such individuals to potential burdens of participating in the litigation of a time-barred claim.

limited to individuals who were delivery persons within three years from the date the Court issues an order approving the proposed notice.") (citation omitted); Ouedraogo, 2013 WL 3466810, at *4 ("because Plaintiff has failed to provide any grounds to support his argument that equitable tolling is or may be appropriate in this case, the notice period will be for the three year period prior to the filing of the notice, not the complaint").

In this case, Knox has not shown that there is a realistic possibility that any former female sales associate whose employment fell outside the limitations period will be able to demonstrate equitable tolling.[6]  Instead, Knox asserts that "Courts in the Second Circuit commonly toll the statute of limitations upon the filing of a motion for conditional certification," Pl. Mem. at 10; "proposed collectives usually relate back to the filing of the complaint," Pl. Reply at 6; and that "the purpose of this motion is to notify the potential plaintiffs of their rights so they can diligently pursue their claims, if they so choose," id. at 8.  None of these conclusory allegations indicate that any potential opt-in plaintiff has any realistic possibility of equitably tolling the statute of limitations.

In sum, because Knox has not shown a realistic possibility that former female sales associates whose employment ended outside the limitations period will be able to demonstrate equitable tolling, notice will be sent only to individuals who were last employed by JV within three years prior to the date the notices are mailed.

_____

[6]  One court has noted that equitable tolling issues frequently arise in EPA cases because gender-based pay disparities are often difficult to detect even with diligence.  See Kassman v. KPMG LLP, 2015 WL 5178400, at *5-6 (S.D.N.Y.), reconsideration denied, 2015 WL 5775866 (S.D.N.Y. Oct. 2, 2015).  Those circumstances have not been shown here.  Indeed, Knox has provided a document that was apparently disseminated among sales associates by JV's human resources department and which explicitly acknowledges the existence of the male-only clothing allowance policy.  See JV Dress Policy; Pl. Mem. at 5.

23

C.  <u>Identification of Covered Employees</u>

Knox requests that the Court order JV to produce a list, in computer-readable format, containing "the names, mailing addresses, telephone numbers, email addresses, dates of birth, work locations, and dates of employment" for potential opt-in plaintiffs.  Pl. Mem. at 12.  JV objects that disclosing such employees' and former employees' dates of birth implicates privacy concerns and thus should not be required without good cause.  <u>See</u> Def. Mem. at 12.  JV also argues that disclosing such employees' work locations and dates of employment does nothing to facilitate notice to those employees.  <u>See</u> <u>id.</u>

After granting conditional approval, a court may order an employer to produce information "essential to identifying potential opt-in plaintiffs . . . ."  <u>In re Penthouse Exec. Club Comp. Litig.</u>, 2010 WL 4340255, at *5 (S.D.N.Y. Oct. 27, 2010).  "Courts in this District commonly grant requests for the production of names, mailing addresses, email addresses, telephone numbers, and dates of employment in connection with the conditional certification of a FLSA collective action."  <u>Benavides</u>, 166 F. Supp. 3d at 488 (internal quotation marks omitted) (quoting <u>Martin</u>, 2016 WL 30334, at *19-20).  However, Courts must balance the need to provide plaintiff with relevant information against potential opt-in plaintiffs' privacy concerns.  <u>Cf.</u> <u>Whitehorn</u> 767 F. Supp. 2d at 448-49 ("While courts often decline to allow discovery of social security numbers due to privacy concerns, it is generally accepted that such discovery is permitted where Plaintiff can demonstrate that names and contact information are insufficient to effectuate notice.").  Courts are split on whether it is appropriate to grant requests for the disclosure of potential opt-in plaintiffs' work locations.  <u>Compare</u> <u>Fa Ting Wang v. Empire State Auto. Corp.</u>, 2015 WL 4603117, at *15 (E.D.N.Y. July 29, 2015) (granting plaintiff disclosure of potential opt-in plaintiffs' work locations) <u>and</u> <u>Platt</u>, 2014 WL 3639194, at *5 (same) <u>with</u> <u>In re</u>

Penthouse Exec. Club Comp. Litig., 2010 WL 4340255, at *5 ("to the extent plaintiffs have requested disclosure of present work locations, that information need not be disclosed"). Similarly, courts in this district are split with respect to whether potential opt-in plaintiffs' dates of birth should be disclosed. Compare Platt, 2014 WL 3639194, at *5 (requiring defendant to produce potential opt-in plaintiffs' dates of birth) with Michael v. Bloomberg L.P., 2015 WL 1810157, at *4 (S.D.N.Y. Apr. 17, 2015) (rejecting request for disclosure of potential opt-in plaintiffs' birth dates).

Here, Knox has given no reason why she requires either dates of birth or work locations to notify potential opt-in plaintiffs. Accordingly, the Court rejects Knox's request that JV produce dates of birth and work locations, but otherwise grants Knox's request that JV disclose the potential opt-in plaintiffs' names, mailing addresses, telephone numbers, email addresses, and dates of employment.

D. Form of Notice

District courts maintain discretion to determine the content of notices sent pursuant to section 216(b). See generally Hoffmann-La Roche Inc., 493 U.S. at 170. "The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide 'accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate.'" Whitehorn, 767 F. Supp. 2d at 450 (alteration in original) (quoting Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 317, 323 (S.D.N.Y. 2007)). Thus, proposed notices that are "'unduly argumentative, meant to discourage participation in the lawsuit, or are unnecessary or misleading' should be rejected." Id. (quoting In re Milos Litig., 2010 WL 199688, at *2 (S.D.N.Y. Jan. 11, 2010)).

Knox submitted a Proposed Notice of Pendency of Lawsuit. See Pl. Proposed Notice.

JV has objected to several portions of this proposed notice, see Def. Mem. at 9-10, and has submitted its own Proposed Notice of Pendency of Lawsuit, which includes proposed amendments to Knox's notice.  See Defendant's Notice of Pendency of Lawsuit (annexed as Ex. 1 to Declaration of Jordan E. Pace, filed June 20, 2017 (Docket # 44)) ("Def. Proposed Notice"). The Court next considers JV's proposed amendments, except that we omit discussion of any disputes raised by JV that Knox agreed in its reply brief not to oppose.  See Pl. Reply at 8.

### 1.  Class of Persons to Whom Notice Should Be Sent

JV asserts that Knox should not be allowed to send notice to employees whose claims accrued before Knox's own employment began in 2016 because Knox has not shown that the clothing allowance policy existed before that date.  See Def. Mem. at 5, 9.  It is certainly a fair inference, however, that the policy did not come into existence only when Knox was hired. More obviously, Harris, the Vice President of Retail at JV, has filed a sworn affidavit that the clothing allowance policy existed when he began working at JV in June 2014 and has continuously been in place since then.  Harris Decl. ¶¶ 1, 5, 7.  Thus, there is evidence that the policy has been in effect for at least the three-year limitations period

JV criticizes Knox's proposal that the notice be sent to "all current and former female sales associates employed by JV at any JV Store."  Pl. Mem. at 1; see Def. Mem. at 5.  JV argues that this group is overbroad because it does not address whether every member of this group actually "suffered an alleged an EPA violation."  Def. Mem. at 5.  We do not follow this argument.  Under the law, the notice is not to be sent only to employees who have been proven to have suffered a violation; rather, it should be sent to persons making similar claims so that they may have the opportunity to join the collective action in order to prove those claims.  See generally Young, 229 F.R.D. at 54 (citation omitted); Guillen, 841 F. Supp. 2d at 800.  No proof

26

of the violation need be provided at this stage by the named plaintiff let alone by the proposed members of the collective action.  By limiting the notice's recipients to (I) sales associates; (ii) who were employed by JV; and (iii) who were women at the time they were employed by JV, Knox's proposed collective is limited to those JV employees who Knox alleges were ineligible to receive the clothing allowance based solely on their sex.  See Pl. Mem. at 1.  To the extent that plaintiffs who opt in are not similarly situated to Knox, the second stage of the two-step conditional approval process will allow the Court to dismiss such claims with the benefit of a fuller record.  See generally Myers, 624 F.3d at 555 (at the second stage, "[t]he action may be 'de-certified' if the record reveals that [the opt-in plaintiffs are not similarly situated to the named plaintiff], and the opt-in plaintiffs' claims may be dismissed without prejudice") (citation omitted); see also Hernandez v. Merrill Lynch & Co., Inc., 2012 WL 1193836, at *4 (S.D.N.Y. Apr. 6, 2012) ("The burden imposed at this first 'conditional certification' stage is minimal precisely because the second step allows for a full review of the factual record developed during discovery to determine whether opt-in plaintiffs are actually 'similarly situated' to the named plaintiffs") (emphasis in original) (citation omitted).

2.   Whether the Proposed Notice Should State That it is Authorized by the United States District Court in the Southern District of New York

JV argues that because Knox's proposed notice states that it is authorized by the United States District Court in the Southern District of New York, recipients may read the notice as a judicial endorsement of the merits of this action.  See Def. Mem. at 9.  JV accordingly seeks to have the notice indicate that the Court "is not endorsing the action and that the court is not encouraging anyone to join the action."  Id.   We agree that "when crafting an appropriate notice to be sent, 'trial courts must take care to avoid even the appearance of judicial endorsement of

the merits of the action.'"  Fengler v. Crouse Health Found., Inc., 595 F. Supp. 2d 189, 198

(N.D.N.Y. 2009).  Accordingly, a statement should be included in the introduction providing in

substance that "The United States District Court for the Southern District of New York has not

yet made any decision about whether this lawsuit has merit."

### 3.   Whether the Proposed Notice Should State that JV Denies the Allegations and Believes the Lawsuit to be Meritless

JV asserts that the notice should state that "Varvatos denies the allegations and believes

that this lawsuit is meritless."  Def. Mem. at 10.  Although Knox agrees that JV may include in

its position statement that it denies the allegations, Knox objects to the inclusion of the statement

that JV believes the lawsuit is "meritless."  See Pl. Reply at 9.  We agree with Knox that the term

"meritless" is argumentative and may exert excessive influence over current employees of JV.

See id.  On the other hand, stating that JV denies the allegations does not fully explain their

position since they believe that even if the allegations are true, it would not state a claim under

the EPA. See Answer ¶ 73; see also Def. Mem. at 9 n.4 ("there is no illegality here").  Here,

Knox's proposed notice accurately recites that JV maintains that its clothing allowance policy

does not violate the law.  See Pl. Proposed Notice.  This is sufficient to indicate JV's position.

### 4.   Whether the Notice Should Recite the Factual Elements of an EPA Claim

JV also argues that the notice is improper because it omits "the required factual elements

supporting an EPA claim."  See Def. Mem. at 10.  JV proposes that the notice state that a person

is entitled to receive notice only if she "did not receive a clothing allowance from" JV, and

"worked in the same establishment as a male sales associate who did receive a clothing

allowance."  See Def. Proposed Notice at *4.[7]  Inclusion of the first clause in the notice is

---

[7]  "*_" refers to page numbers supplied by the ECF system.

unnecessary because JV's own policy indicates that female sales associates do not receive such a clothing allowance.  See JV Dress Policy.  Including the second clause is inappropriate because as noted above, the "establishment" issue goes to the merits of this case and thus should not be resolved at the first step in the conditional approval process.  See Section III.A above.

> 5.  Whether the Proposed Notice Should Include Information Regarding Potential Opt-In Plaintiffs' Discovery Obligations

JV proposes adding information to the notice regarding potential opt-in plaintiffs' discovery obligations should they choose to join the suit.  See Def. Mem. at 10; see also Def. Proposed Notice at *5.  Specifically, JV proposes informing employees that they may be required to "appear for a deposition if requested, to produce documents and other tangible items in your possession, and to otherwise truthfully respond to discovery requests."  Def. Proposed Notice at *5.  Knox argues that this language is "unnecessary and may unfairly discourage potential plaintiffs from inquiring about asserting their rights."  Pl. Reply at 9.  However, courts in this district routinely approve requests to include information regarding potential opt-in plaintiffs' discovery obligations in the notice.  See Martin, 2016 WL 30334, at *18 (citing cases); see also Whitehorn, 767 F. Supp. 2d. at 450 ("As to Defendants' request that prospective members be notified of the possibility that they will be required to participate in discovery and testify at trial, such text is routinely accepted, and Plaintiff is ordered to make this amendment") (citations omitted).  We agree that opt-in plaintiffs should be fully informed about their potential responsibilities in joining a lawsuit. Accordingly, the final notice should include JV's proposed amendment, except that the reference to "other tangible items in your possession" should be excised as there is no suggestion that discovery would require production of such items.

6.  <u>Description of Opt-in Plaintiffs' Legal Representation</u>

JV proposes several modifications to the section of the notice titled "YOUR LEGAL

REPRESENTATION IF YOU JOIN."  First, JV argues that the notice should state that

Dunnegan & Scileppi LLC ("D&S") only "alleges that it" is being paid on a contingency fee

basis.  Def. Proposed Notice at *6; <u>see also</u> Def. Mem. at 10.  This change is rejected.  D&S is

participating in these proceedings and has not contested that it will be paid on contingency.

Second, JV seeks to add language clarifying that the Court does not endorse D&S and

that "D&S's participation in this lawsuit and its mention in this notice should not be taken as any

indication or guarantee of D&S's experience or competence with respect to the matters at issue

in this lawsuit."  Def. Proposed Notice at *7; <u>see also</u> Def. Mem. at 10.  However, nothing in the

proposed notice suggests that the Court endorses D&S or holds D&S out as experienced or

competent counsel.  To include language specifically disclaiming such an endorsement when

none has been given implies that the Court believes D&S may not be experienced or competent.

It is sufficient for the notice to point out, as already proposed by Knox, that opt-in plaintiffs are

free to secure their own legal representation.  <u>See</u> Pl. Proposed Notice.  Because the notice is

clear on this point, we also reject JV's proposal to inform opt-in plaintiffs that they are

"responsible" for arranging their own representation and for negotiating fee agreements with

their legal representatives.  Def. Proposed Notice at *6; <u>see also</u> Def. Mem. at 10.

Lastly, JV suggests that the notice should not direct potential opt-in plaintiffs to D&S

should they have questions.  <u>See</u> Def. Mem. at 10; <u>see also</u> Def. Proposed Notice at *7

Alternatively, JV argues that the notice should indicate that D&S is not neutral and will give

advice "as an advocate for one side of this action."  Def. Mem. at 10; <u>see also</u> Def. Proposed

Notice at *7.  Omitting this language is unnecessary and counterintuitive, as the entire point of

sending notice is to enable qualified individuals to opt in to this lawsuit if they so choose,
presumably by contacting plaintiff's counsel.  Moreover, including additional language that
D&S is not neutral is unnecessary, as the notice already makes clear that D&S represents the
plaintiff in this action.  See Pl. Proposed Notice.

E.  Notice by FedEx Express Saver

Knox requests this Court to authorize service of the notice by FedEx Express Saver.  See
Pl. Mem. at 14.  JV responds that first class mail is sufficient, noting that other means of service
may mean a knock at the door.  See Def. Mem. at 10-11.  The cases cited by both Knox and JV
establish that "[f]irst class mail is [] sufficient to provide potential class members with
notice . . . ." Aponte v. Comprehensive Health Mgmt., Inc., 2011 WL 2207586, at *7 (S.D.N.Y.
June 2, 2011).  Many other cases in this circuit have also held that first class mail is sufficient.
See Martin, 2016 WL 30334, at *19 (authorizing notice to be sent by first class mail); Sharma v.
Burberry Ltd., 52 F. Supp. 3d 443, 463 (E.D.N.Y. 2014) (same); Trinidad, 962 F. Supp. 2d at
563, 565 (same).  We see no reason to deviate from this usual procedure.

F.  Notice by E-Mail

Knox requests authorization to send notice to potential opt-in plaintiffs by email.  See Pl.
Mem. at 13-14.  As noted in Sharma, email communications face the risk of being modified or
more broadly disseminated than the parties originally intended.  Sharma, 52 F. Supp. 3d at 463.
Nevertheless, "given the reality of communications today," email notification is more effective
at notifying potential opt-in plaintiffs than mailed notice alone.  See Pippins, 2012 WL 19379, at
*14.  Email thus serves the goal of making "as many potential plaintiffs as possible aware of this
action and their right to opt in without devolving into a fishing expedition or imposing undue
burdens on the defendants."  Morris v. Lettire Const. Corp., 896 F. Supp. 2d 265, 273 (S.D.N.Y.

31

2012) (quoting <u>Guzelgurgenli v. Prime Time Specials Inc.</u>, 883 F. Supp. 2d 340, 356 (E.D.N.Y. 2012)).  Notice of class actions by email have now become commonplace.  Accordingly, the Court grants Knox's request to notify potential opt-in plaintiffs by email.

G.  <u>Reminder Notice</u>

Knox requests permission to send a reminder notice to potential opt-in plaintiffs 21 days before the deadline for opting in.  <u>See</u> Pl. Mem. at 14-16.  JV makes no specific objection to this request.  <u>See</u> Def. Mem. at 10-11.  Moreover, many courts in this district have permitted sending a reminder notice.  <u>See</u>, <u>e.g.</u>, <u>Racey v. Jay-Jay Cabaret, Inc.</u>, 2016 WL 3020933, at *11 (S.D.N.Y. May 23, 2016) (collecting cases).  Accordingly, the Court grants Knox's request to send potential opt-in plaintiffs a reminder notice 21 days before the opt-in deadline.

H.  <u>Posting of Approved Notice at JV Stores</u>

Knox requests that notice of this action be posted in "conspicuous locations" at JV-operated stores in the U.S. so that female sales associates currently working for JV might learn of this lawsuit.  <u>See</u> Pl. Mem. at 16-17.  Courts in this district are split with respect to whether the posting of notice at the workplace should be permitted.  <u>Compare</u> <u>Schear v. Food Scope Am., Inc.</u>, 129 (S.D.N.Y. 2014) ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail.") (internal quotation marks omitted) (quoting <u>Whitehorn</u>, 767 F. Supp. 2d at 449) <u>with</u> <u>Michael</u>, 2015 WL 1810157, at *4 ("absent a showing that a significant number of notices were returned as undeliverable, courts have refused to require posting of a collective action notice in the workplace.").

We recognize the potential disruption that can occur in the employer-employee relationship when an employer is required to post a notice in the workplace announcing that one

32

or more employees have accused it of violating the law.  In light of the fact that there is no suggestion that there will be any problem reaching current employees though mail or email, the Court finds the posting of the notice unnecessary.

IV.  CONCLUSION

For the foregoing reasons, Knox's motion for conditional approval of a collective action (Docket # 39) is granted as set forth above.  Knox shall provide a copy of the proposed mailing to JV prior to its distribution.  If there are any further disputes, the parties should discuss them and present any disagreement to the Court promptly.

SO ORDERED.

Dated: October 17, 2017
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge