UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TESSA KNOX,                                   :

                         Plaintiff,        :

               -against-              :              17 Civ. 772 (GWG)

JOHN VARVATOS ENTERPRISES, INC.,    :              ECF Case

                 Defendant.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF HER MOTION FOR CLASS CERTIFICATION

DUNNEGAN & SCILEPPI LLC
350 Fifth Avenue
New York, New York 10118
(212) 332-8300

Attorneys for Plaintiff

Table of Contents

Table of Authorities ................................................................................................................. ii

Preliminary Statement ............................................................................................................. 1

Argument .................................................................................................................................. 2

I.      THE PUTATIVE CLASS MEETS THE REQUIREMENTS OF
        RULE 23(a) ................................................................................................................... 3

        A.      Knox's Putative Class Is So Numerous That Joinder Is Impracticable ............... 3

        B.      The Putative Class Shares Common Questions Of Law And Fact ....................... 8

        C.      Knox's Claims Are Typical Of The Putative Class ............................................ 10

        D.      Knox And Her Counsel Will Adequately Represent The Putative Class ........... 10

                1.      Knox Is An Adequate Representative Because
                        She Has The Same Interest As The Putative Class .................................. 11

                2.      Class Counsel Are Adequate Representatives .......................................... 12

II.     THE PUTATIVE CLASS MEETS THE REQUIREMENTS OF
        RULE 23(b)(3) .............................................................................................................. 13

        A.      Common Issues Exist And Predominate .............................................................. 13

        B.      A Class Action Is The Superior And Most Efficient Method For
                Adjudicating This Action ..................................................................................... 15

III.    THE PUTATIVE CLASS IS READILY IDENTIFIABLE .............................................. 18

IV.     ALTERNATIVELY, THIS COURT SHOULD CERTIFY THE PUTATIVE CLASS
        PURSUANT TO RULE 23(c)(4) .................................................................................... 20

Conclusion ............................................................................................................................... 21

Table of Authorities

**Cases**

Adames v. Mitsubishi Bank, Ltd.,
133 F.R.D. 82 (E.D.N.Y. 1989) ................................................................................. 7

Amchem Prod., Inc. v. Windsor,
521 U.S. 591 (1997).................................................................... 7-8, 10, 11, 17

American Pipe & Const. Co. v. Utah,
414 U.S. 538 (1974) ................................................................................. 19

Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,
222 F.3d 52 (2d Cir. 2000)................................................................. 10-11,11

Balderramo v. Go New York Tours Inc.,
15 Civ. 2326 (ER), 2017 WL 2819863 (S.D.N.Y. June 28, 2017)............................................. 17

Bolanos v. Norwegian Cruise Lines Ltd.,
212 F.R.D. 144 (S.D.N.Y. 2002) ................................................................. 12

Butler v. Sears, Roebuck & Co.,
727 F.3d 796 (7th Cir. 2013) ................................................................. 14-15

Cent. States Se. & Sw. Areas Health & Welfare Fund v.
   Merck–Medco Managed Care, L.L.C.,
504 F.3d 229 (2d Cir. 2007)................................................................. 3

Chambery v. Tuxedo Junction Inc.,
10 F. Supp.3d 415 (W.D.N.Y. 2014) ......................................................... 4, 6

Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,
502 F.3d 91 (2d Cir. 2007)................................................................. 16

Crown, Cork & Seal Co. v. Parker,
462 U.S. 345 (1983)................................................................. 19

Deen v. New Sch. Univ.,
05 Civ. 7174 (KMW), 2008 WL 331366 (S.D.N.Y. Feb. 4, 2008) ................................. 6

Duarte v. Tri-State Physical Med. & Rehab., P.C.,
11 Civ. 3765 (NRB), 2012 WL 2847741 (S.D.N.Y. July 11, 2012) ........................... 7

East Tex. Motor Freight System, Inc. v. Rodriguez,
431 U.S. 395 (1977)................................................................. 11

Eisen v. Carlisle and Jacquelin,
391 F.2d 555 (2d Cir. 1968)............................................................................................ 12

Gortat v. Capala Bros.,
257 F.R.D. 353 (E.D.N.Y. 2009) ..................................................................................... 7

Harris v. City of New York,
186 F.3d 243 (2d Cir. 1999)............................................................................................ 20

Holowecki v. Fed. Exp. Corp.,
440 F.3d 558 (2d Cir. 2006),
aff'd,
552 U.S. 389 (2008)........................................................................................................ 19

In re Beacon Assocs. Litig.,
09 Civ. 777 (LBS)(AJP), 2012 WL 1569827 (S.D.N.Y. May 3, 2012) ......................... 5

In re Drexel Burnham Lambert Grp., Inc.,
960 F.2d 285 (2d Cir. 1992)...................................................................................... 10, 12

In re Facebook, Inc., IPO Sec. & Derivative Litig.,
312 F.R.D. 332 (S.D.N.Y. 2015) ..................................................................................... 17

In re Flag Telecom Holdings, Ltd. Sec. Litig.,
574 F.3d 29 (2d Cir. 2009)....................................................................................... 2, 10-11

In re Nassau Cty. Strip Search Cases,
461 F.3d 219 (2d Cir. 2006)............................................................................................ 21

In re Petrobras Sec.,
862 F.3d 250 (2d Cir. 2017)............................................................................................ 18

In re Scotts EZ Seed Litig.,
304 F.R.D. 397 (S.D.N.Y. 2015) ..................................................................................... 17

In re U.S. Foodservice Inc. Pricing Litig.,
729 F.3d 108 (2d Cir. 2013)............................................................................. 13, 14, 16-17

In re Visa Check/MasterMoney Antitrust Litig.,
280 F.3d 124 (2d Cir. 2001)...................................................................................... 11, 15

Kulig v. Midland Funding, LLC,
13 Civ. 4175 (PKC), 2014 WL 5017817 (S.D.N.Y. Sept. 26, 2014) ............................ 12

Leyva v. Medline Industries, Inc.,
716 F.3d 510 (9th Cir. 2013) ......................................................................................... 15

Mace v. Van Ru Credit Corp.,
109 F.3d 338 (7th Cir. 1997) ........................................................................................ 8

Marisol A. v. Giuliani,
126 F.3d 372 (2d Cir. 1997)........................................................................................ 10

Maywalt v. Parker & Parsley Petroleum Co.,
67 F.3d 1072 (2d Cir. 1995)........................................................................................ 11

Mazzei v. Money Store,
288 F.R.D. 45 (S.D.N.Y. 2012) .................................................................................. 17

Mohasco Corp. v. Silver,
447 U.S. 807 (1980)..................................................................................................... 20

Myers v. Hertz Corp.,
624 F.3d 537 (2d Cir. 2010).......................................................................................... 2

New Jersey Carpenters Health Fund v. Residential Capital, LLC,
272 F.R.D. 160 (S.D.N.Y. 2011),
aff'd sub nom.
New Jersey Carpenters Health Fund v. Rali Series 2006-QO1 Tr.,
477 F. App'x 809 (2d Cir. 2012). ............................................................................... 11

Novella v. Westchester Cty.,
661 F.3d 128 (2d Cir. 2011)................................................................................... 3, 5-6

Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.,
772 F.3d 111 (2d Cir. 2014)...................................................................................... 3, 4

Perez v. Allstate Ins. Co.,
11 Civ. 1812 (JFB)(AKT), 2014 WL 4635745 (E.D.N.Y. Sept. 16, 2014)................. 15

Pichardo v. Carmine's Broadway Feast Inc,
15 Civ. 3312 (RA)(SN), 2016 WL 4379421 (S.D.N.Y. June 13, 2016),
report and recommendation adopted sub nom.
Pichardo v. Carmine's Broadway Feast Inc.,
15 Civ. 3312 (RA), 2016 WL 5338551 (S.D.N.Y. Sept. 23, 2016)............................... 7

Pikulin v. City Univ. of New York,
176 F.3d 598 (2d Cir.1999)......................................................................................... 20

Robidoux v. Celani,
987 F.2d 931 (2d Cir. 1993)....................................................................................... 3, 5

Rodriguez v. It's Just Lunch, Int'l,
300 F.R.D. 125 (S.D.N.Y. 2014) .......................................................................... 16, 17

Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.,
821 F.3d 992 (8th Cir. 2016) ........................................................................ 18

Sanft v. Winnebago Indus., Inc.,
214 F.R.D. 514 (N.D. Iowa 2003) ............................................................... 6-7

Shahriar v. Smith & Wollensky Rest. Grp., Inc.,
659 F.3d 234 (2d Cir. 2011) ...................................................................... 6, 7

Snell v. Suffolk County,
782 F.2d 1094 (2d Cir.1986) ................................................................... 19-20

Sykes v. Mel S. Harris & Assocs. LLC,
780 F.3d 70 (2d Cir. 2015) ................................................................ 8, 15-16

Trinidad v. Breakaway Courier Sys., Inc.,
05 Civ. 4116 (RWS), 2007 WL 103073 (S.D.N.Y. Jan. 12, 2007) ............... 7

UFCW Local 1776 v. Eli Lilly & Co.,
620 F.3d 121 (2d Cir. 2010) ........................................................................ 13

Van Zant v. KLM Royal Dutch Airlines,
80 F.3d 708 (2d Cir. 1996) .......................................................................... 19

Vega v. T-Mobile USA Inc.,
564 F.3d 1256 (11th Cir. 2009) ................................................................... 16

Wal-Mart Stores, Inc. v. Dukes,
564 U.S. 338 (2011) ......................................................................... 2, 8, 15

Zeller v. PDC Corp.,
13 Civ 5035 (ARR)(JO), 2016 WL 748894 (E.D.N.Y. Jan. 28, 2016)
report and recommendation adopted,
13 Civ. 5035 (ARR)(JO), 2016 WL 775762 (E.D.N.Y. Feb. 25, 2016) ..................................... 3-4

Zupnick v. Thompson Parking Partners, Ltd. P'ship III,
89 Civ. 6607 (JSM), 1990 WL 113197 (S.D.N.Y. Aug. 1, 1990) ................. 6

**Statutes**

29 U.S.C. § 206 ............................................................................................. 1

42 U.S.C. § 1981a ........................................................................................ 10

42 U.S.C. § 2000e-5 ......................................................................................... 1, 9, 20

C.P.L.R. 214 ......................................................................................................... 19

N.Y. Exec. L. § 296 .............................................................................................. 1

N.Y. Exec. L. § 297 .............................................................................................. 9

N.Y. Lab. L. § 194 ............................................................................................... 1

N.Y. Lab. L. § 198 ............................................................................................... 9

**Rules**

Fed. R. Civ. P. 23 .......................................................................................... passim

**Other**

Managing Class Action Litigation: A Pocket Guide for Judges
http://www.fjc.gov/public/pdf.nsf/lookup/ClassGd3.pdf/$file/ClassGd3.pdf ............................ 12

Richard A. Nagareda, *Class Certification In The Age Of Aggregate Proof*,
84 N.Y.U. L. REV. 97 (2009) ....................................................................................... 8

<u>Preliminary Statement</u>

Defendant John Varvatos Enterprises, Inc. ("JV"), a clothing and accessories retailer, employs male and female sales associates at its stores in the United States. Tessa Knox ("Knox") intends to prove that both male and female sales associates perform the same work, and have the same responsibilities. Both male and female sales associates have the same compensation structure and commission rates, except in one respect.

Male sales associates receive an annual Clothing Allowance of $12,000 (in four disbursements of $3,000) that they use to acquire JV clothing to wear to work. Female sales associates do not receive the Clothing Allowance. Instead, they receive a 50% off discount at AllSaints, a sister brand to JV. JV applies the Clothing Allowance identically at each of its 23 stores in the United States.

Male sales associates are obligated to wear JV clothing while selling clothing at the store. Female sales associates, while not obligated to wearing JV-brand clothing, are nevertheless subject to a battery of restrictions on the color, style, branding, and condition of the clothing they wear to work.

Knox intends to prove that the Clothing Allowance violates (i) the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA"), (ii) Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-5 ("Title VII"), (iii) the New York Equal Pay Act, N.Y. Lab. L. § 194 ("NYEPA"), and (iv) the New York Human Rights Law, N.Y. Exec. L. § 296 ("NYHRL"), because the Clothing Allowance is unlawful discrimination in compensation on the basis of sex. If nothing else, the Clothing Allowance compensates male sales associates for 100% of the cost of the clothes they wear to work, while JV compensates female sales associates 0% of the cost of the clothes they wear to work. By order entered October 18, 2017, the Court conditionally certified an EPA collective action. (Dkt. 84)

1

In this motion, Knox seeks to certify a Rule 23(b)(3) class of all female sales associates who worked at any JV store (1) in the State of New York since February 1, 2011 (the "NYEPA members"), (2) in the State of New York since February 1, 2014 (the "NYHRL members"), and/or (3) the United States (including New York) since April 13, 2016 (the "Title VII members") (collectively, the "Putative Class"). The NYEPA members will pursue claims against JV under the NYEPA, the NYHRL members will pursue claims against JV under the NYHRL, and the Title VII members will pursue claims against JV under Title VII. Alternatively, if the Court determines that the Putative Class as a whole cannot meet the requirements of Rule 23(b)(3), Knox requests that the Court certify a Rule 23(c)(4) action on the common liability issues for the Putative Class.

Argument

The party moving for certification must prove that the requirements for class certification have been met. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345 (2011); Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010)("The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met."). Specifically, the moving party must prove the four requirements of Rule 23(a) and one or more of the requirements of Rule 23(b). The Court has discretion in determining whether to certify the class. In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 34 (2d Cir. 2009)("In reviewing class certification under Rule 23, we apply an abuse-of-discretion standard to both the lower court's ultimate determination on certification, as well as to its rulings that the individual Rule 23 requirements have been met.").

# I.

## THE PUTATIVE CLASS MEETS THE REQUIREMENTS OF RULE 23(a).

Rule 23(a) establishes four requirements for class certification: 1) numerosity – the class must be too numerous for joinder to be practicable; 2) commonality – there must be common questions of fact and law among the class members; 3) typicality – the class representative's claims and defenses must be typical of those of the class; and 4) adequacy of representation – the class representatives must fairly and adequately safeguard the class's interests.

### A. Knox's Putative Class Is So Numerous That Joinder Is Impracticable.

A plaintiff satisfies the numerosity requirement if joinder of all members is impracticable. See Fed. R. Civ. P. 23(a)(1). "This 'numerosity' requirement 'does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate.'" Novella v. Westchester Cty., 661 F.3d 128, 143 (2d Cir. 2011)(quoting Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C., 504 F.3d 229, 244-45(2d Cir. 2007)). "Determination of practicability depends on all the circumstances surrounding a case, not on mere numbers... Relevant considerations include [i] judicial economy arising from the avoidance of a multiplicity of actions, [ii] geographic dispersion of class members, [iii] financial resources of class members, [iv] the ability of claimants to institute individual suits, and [v] requests for prospective injunctive relief which would involve future class members." Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993)(internal citation omitted).

"Numerosity is presumed for classes larger than forty members." Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co., 772 F.3d 111, 120 (2d Cir.), as amended (Nov. 12, 2014). However, "courts have not hesitated to certify subclasses with fewer than 40 members

where joinder would be impracticable due to geographic dispersion or other factors." <u>Zeller v.
PDC Corp.</u>, 13 Civ. 5035 (ARR)(JO), 2016 WL 748894, at *3 (E.D.N.Y. Jan. 28, 2016), <u>report
and recommendation adopted,</u> 13 Civ. 5035 (ARR)(JO), 2016 WL 775762 (E.D.N.Y. Feb. 25,
2016)(quoting <u>Chambery v. Tuxedo Junction Inc.</u>, 10 F. Supp.3d 415, 420 (W.D.N.Y. 2014)).

Although Knox does not know the precise membership of the Putative Class because
Knox does not know the identities of all female sales associates who worked at JV since
February 1, 2011 and the dates they worked as sales associates, Knox estimates that the Putative
Class includes 64 sales associates, dispersed across JV's 24[1] stores in the United States. About
52 members of the Putative Class have claims under Title VII. About 31 members of the Putative
Class have claims under the NYEPA. About 25 members of the Putative Class have claims under
the NYHRL. All members of the Putative Class challenge the same JV policy – the Clothing
Allowance – which JV applies in all of its US stores. Because the Putative Class numbers more
than 40 individuals, the Court should presume that the numerosity element is established.
<u>Pennsylvania Pub. Sch. Employees' Ret. Sys.</u>, 772 F.3d at 120.

Knox's estimates concerning the size of the Putative Class are based on two lists of sales
associates JV produced to Knox in the course of this litigation. On or about August 31, 2017, JV
produced a chart listing the names of male and female sales associates who worked at JV's stores
in the United States from February 1, 2011 to June 5, 2017 (the "First List"). The First List,
however, does not specify the time period during which the sales associates worked as sales
associates at JV, as opposed to working in other positions at JV. The First List, moreover, did not
identify sales associates hired after June 5, 2017. (Dunnegan Dec. Ex. A at 20:13-19)  Since June
5, 2017, JV has hired additional sales associates, including at least 10 sales associate for its new

---

[1] The JV Store in Clarksburg, Maryland closed in 2017. (Dunnegan Dec. Ex. A at 18:16-20)

stores in Livermore, California, and Dallas, Texas. (Dunnegan Dec. Ex. A at 22:16-26:1)  On

October 26, 2017, pursuant to the Court's order of October 17, 2017, JV produced to Knox a list

of women who had worked as sales associates from October 31, 2014 until October 31, 2017,

and their last known contact information, according to JV (the "Second List"). The Second List,

however, does not identify the store location of the sales associates, or any information about

sales associates who worked at JV's stores in the State of New York prior to October 31, 2014.

Consequently, the Putative Class could be smaller or larger than Knox estimates. Nonetheless,

the First List and the Second List are the best information Knox currently possesses.

Beyond the presumption of numerosity, an analysis of the <u>Robidoux</u> factors demonstrates

that joinder would be impracticable.

<u>Judicial economy.</u> This factor favors a finding of numerosity. Although some members of

the Putative Class fall outside the statute of limitations for bringing a Title VII claim, and some

members of the Putative Class fall outside the geographic scope of New York's anti-

discrimination laws, each member of the Putative Class will allege that the same JV policy, the

Clothing Allowance, unlawfully discriminates in compensation on the basis of sex. The Court

has already conditionally certified a nationwide collective action, pursuant to the EPA, which

challenges the same JV policy. (Dkt. 84)

<u>Geographic Dispersion.</u> This factor favors a finding of numerosity. Of the approximately

64 members of the Putative Class, 31 of them appear to have worked at JV's six stores in the

State of New York, in New York, Suffolk, and Orange counties. <u>In re Beacon Assocs. Litig.</u>, 09

Civ. 777 (LBS)(AJP), 2012 WL 1569827, at *5 (S.D.N.Y. May 3, 2012)("'Geographic

dispersion across multiple counties in New York generally supports a finding of

numerosity.'")(quoting <u>Novella v. Westchester County</u>, 443 F. Supp.2d 540, 546-47 (S.D.N.Y.

2006)). The remaining members of the Putative Class worked at JV's stores in California, Nevada, Maryland, Florida, Michigan, and Texas, and now reside in those states and others, including New Jersey, South Carolina, and New Mexico. See e.g. Chambery v. Tuxedo Junction Inc., 10 F. Supp. 3d 415, 420 (W.D.N.Y. 2014)("Here, where the potential class members span three states, joinder would be impracticable."); Zupnick v. Thompson Parking Partners, Ltd. P'ship III, 89 Civ. 6607 (JSM), 1990 WL 113197, at *3 (S.D.N.Y. Aug. 1, 1990)("In the present action, the proposed class contains 64 potential members who are geographically dispersed in eleven states. Classes with similar size and geographic dispersion have been consistently accorded class status in this and other districts.").

 Financial Resources of Class Members. This factor favors a finding of numerosity. "Joinder may be deemed impracticable where prospective class members are financially incapable of joining the lead lawsuit." Deen v. New Sch. Univ., 05 Civ. 7174 (KMW), 2008 WL 331366, at *4 (S.D.N.Y. Feb. 4, 2008). The members of the Putative Class are retail store employees. While their compensation varies, a JV sales associate rarely earns more than $100,000 a year, including commissions. (Dunnegan Dec. Ex. B at 130:12-16) In 2016, Knox worked at JV from August to December. In that period, she earned $17,639.80. (Dunnegan Dec. Ex. F)

 Ability of Class Members to Sue Separately. At least 23 members of the Putative Class are still employed by JV, and may be unwilling to bring their own suits against JV's current employment practices, due to their ongoing relationship with JV. Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 244 (2d Cir. 2011)(noting that "where some class members are still employed by the defendant, 'concern regarding employer retaliation or reprisal renders individual joinder less practicable.'")(quoting Sanft v. Winnebago Indus., Inc., 214 F.R.D. 514,

524 (N.D. Iowa 2003)); Pichardo v. Carmine's Broadway Feast Inc, 15 Civ. 3312 (RA)(SN),

2016 WL 4379421, at *5 (S.D.N.Y. June 13, 2016), report and recommendation adopted sub

nom. Pichardo v. Carmine's Broadway Feast Inc., 15 Civ. 3312 (RA), 2016 WL 5338551

(S.D.N.Y. Sept. 23, 2016)("Applying a common sense analysis of the evidence, the Court

considers that many of the putative class members are current employees of Carmine's who may

fear retaliation if they choose to opt-in to the FLSA collective action.")(citing Shariar); Duarte v.

Tri-State Physical Med. & Rehab., P.C., 11 Civ. 3765 (NRB), 2012 WL 2847741, at *9

(S.D.N.Y. July 11, 2012)("It therefore suffices for present purposes that there are at least several

factors suggesting that numerosity could be established, most notably that over half of the

proposed class members are still employed by defendants in relatively low-paying positions.");

Gortat v. Capala Bros., 257 F.R.D. 353, 363 (E.D.N.Y. 2009)("Some of the purported class

members are the present employees of Capala Bros. and thus would presumably be hesitant to

bring their own actions for fear of reprisal by the company."); Trinidad v. Breakaway Courier

Sys., Inc., 05 Civ. 4116 (RWS), 2007 WL 103073, at *4 (S.D.N.Y. Jan. 12, 2007)("The proposed

class includes messengers who currently work at Breakaway, and courts have noted in such

circumstances that 'the concern for possible employer reprisal action exists and renders the

alternative of individual joinder less than practicable.'")(quoting Adames v. Mitsubishi Bank,

Ltd., 133 F.R.D. 82, 89 (E.D.N.Y. 1989)).

Additionally, many members of the Putative Class have little incentive to bring their own

actions, given the relatively small recoveries they can expect to receive. "'The policy at the very

core of the class action mechanism is to overcome the problem that small recoveries do not

provide the incentive for any individual to bring a solo action prosecuting his or her rights. A

class action solves this problem by aggregating the relatively paltry potential recoveries into

something worth someone's (usually an attorney's) labor.'" Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 617 (1997) (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997)). Many members of the Putative Class worked at JV for less than a year, and some only for a few months. For example, in the year 2016, the Clothing Allowance was distributed four times a year, and each disbursement was $3,000. A Putative Class member who only worked at JV for a few months may have only suffered between $3,000 and $6,000 in damages.

Injunctive Relief. Although this action does not seek injunctive relief, the Clothing Allowance is still existing policy at JV. A class action finding that the Clothing Allowance unlawfully discriminates against female sales associates would almost certainly spur JV to change the policy, which would benefit future female sales associates at JV.

B.    The Putative Class Shares Common Questions Of Law And Fact.

Commonality exists where a class action will "generate common *answers* apt to drive the resolution of the litigation." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011)(quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 131–132 (2009)(emphasis in original)). "Interpreting this requirement in the context of sexual discrimination claims in violation of Title VII of the Civil Rights Act, the Court instructed that such claims 'must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve *an issue* that is central to the validity of each one of the claims in one stroke.'" Sykes v. Mel S. Harris & Assocs. LLC, 780 F.3d 70, 80 (2d Cir. 2015)(quoting Dukes, 564 U.S. at 350)(emphasis in original)).

The Putative Class satisfies the commonality requirement of Fed. R. Civ. P. 23(a)(2) because the liability questions are common to each member of the Putative Class, as are issues related to calculating the amount of backpay.  Knox and the members of the Putative Class will all challenge the same JV policy, the Clothing Allowance. The Clothing Allowance is applied in the same manner to every JV store in the United States, and thus to all female sales associates working for JV in the United States. (Dunnegan Dec. Ex. B at 105:6-16; 109:7-21; Ex. C at 181:25-182:10)

A class action will therefore generate common answers to the questions (i) are the jobs performed by males and female sales associates substantially equal? (ii) as a result of not receiving the Clothing Allowance, do female sales associates receive less pay than male sales associates? (iii) can the Clothing Allowance be justified as based on a bona fide factor other than sex; and (iv) did JV intend to compensate male sales associates more than female sales associates?  Resolution of these issues will determine JV's liability and mental state.

Once JV's liability and mental state are established, the Court will be able to mechanically determine the extent of JV's liability to the (i) NYEPA members for the amount of the underpayment, and liquidated damages, N.Y. Lab. Law § 198(1-a), (ii) NYHRL members for the amount of damages, N.Y. Exec. Law § 297(9), and (iii) the Title VII members for backpay, 42 U.S.C. § 2000e-5. The amount of underpayment under the NYEPA, damages under NYHRL, and backpay under Title VII, will be the value of the Clothing Allowance. JV's mental state in denying the Clothing Allowance to female sales associates (i.e. whether JV was malicious or recklessly indifferent as to whether it was violating the rights of its female sales associates) will also determine whether the NYEPA members are entitled to liquidated damages, an additional amount equal to the value of the Clothing Allowance, or an additional amount equal to up to

three times the value of the Clothing Allowance. A determination of JV's mental state will also

determine whether the Title VII members are eligible for punitive damages. 42 U.S.C. § 1981a.

      C.      <u>Knox's Claims Are Typical Of The Putative Class.</u>

"Typicality...requires that the claims of the class representatives be typical of those of the

class, and 'is satisfied when each class member's claim arises from the same course of events,

and each class member makes similar legal arguments to prove the defendant's liability.'"

<u>Marisol A. v. Giuliani</u>, 126 F.3d 372, 376 (2d Cir. 1997)(quoting <u>In re Drexel Burnham Lambert</u>

<u>Grp., Inc.</u>, 960 F.2d 285, 291 (2d Cir. 1992).

Here, each member of the Putative Class will allege that the Clothing Allowance is illegal

under the same theory – that it is unequal pay that is based on sex. Members of the Putative Class

have possible claims under (1) Title VII, (2) the NYEPA, and (3) the NYHRL. While the varying

statutes of limitation for each claim may prevent every member of the Putative Class from

asserting a claim under all three statutes, the standard for establishing liability under each statute

is virtually identical. Because Knox has a claim under each statute, her claims are typical of the

Putative Class.

      D.      <u>Knox And Her Counsel Will Adequately Represent The Putative Class.</u>

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest

between named parties and the class they seek to represent." <u>Amchem Products, Inc. v. Windsor</u>,

521 U.S. 591, 625 (1997).

"Adequacy 'entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the

interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and

able to conduct the litigation.'" <u>In re Flag Telecom Holdings, Ltd. Sec. Litig.</u>, 574 F.3d 29, 35

(2d Cir. 2009)(quoting <u>Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.</u>, 222 F.3d 52, 60 (2d Cir. 2000)).

          1.      **Knox Is An Adequate Representative Because**
                        **<u>She Has The Same Interest As The Putative Class.</u>**

"[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." <u>Amchem</u> at 625–26 (<u>quoting East Tex. Motor Freight System, Inc. v. Rodriguez</u>, 431 U.S. 395, 403 (1977)). "In order to defeat a motion for certification, however, the conflict 'must be fundamental.'" <u>Id.</u> (quoting <u>In re Visa Check/MasterMoney Antitrust Litig.</u>, 280 F.3d 124, 145 (2d Cir. 2001)). Here, Knox suffered the same injury as the other members of the Class: She possesses no interests at odds with those of the other Putative Class members. (Knox Dec. ¶ 7)

Although "class representative status may properly be denied 'where the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys,'" <u>Baffa</u>, 222 F.3d at 61 (quoting <u>Maywalt v. Parker & Parsley Petroleum Co.</u>, 67 F.3d 1072, 1077–78 (2d Cir. 1995)), "[i]n this circuit, general knowledge is sufficient to show adequacy." <u>New Jersey Carpenters Health Fund v. Residential Capital, LLC</u>, 272 F.R.D. 160, 164 (S.D.N.Y. 2011), <u>aff'd sub nom.</u> <u>New Jersey Carpenters Health Fund v. Rali Series 2006-QO1 Tr.</u>, 477 F. App'x 809 (2d Cir. 2012). Knox has a general understanding of the case, and has participated in the discovery process by aiding counsel with discovery requests. (Knox Dec. ¶¶ 2-6)  In addition, Knox submitted to a seven-hour deposition. (Knox Dec. ¶ 5)

2.      <u>Class Counsel Are Adequate Representatives.</u>

"[C]lass counsel must be 'qualified, experienced and generally able' to conduct the

litigation." <u>In re Drexel Burnham Lambert Grp., Inc.</u>, 960 F.2d 285, 291 (2d Cir. 1992)(quoting

<u>Eisen v. Carlisle and Jacquelin</u>, 391 F.2d 555, 563 (2d Cir. 1968)).  "'In appointing class

counsel, the court [ ] must consider: (i) the work counsel has done in identifying or investigating

potential claims in the action; (ii) counsel's experience in handling class actions, other complex

litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the

applicable law; and (iv) the resources that counsel will commit to representing the class...'"

<u>Kulig v. Midland Funding, LLC</u>, 13 Civ. 4175 (PKC), 2014 WL 5017817, at *2 (S.D.N.Y. Sept.

26, 2014)(quoting Fed. R. Civ. P. 23(g)(1)(A)). "In determining the adequacy of counsel, the

court looks beyond reputation built upon past practice and examines counsel's competence

displayed by present performance." <u>Bolanos v. Norwegian Cruise Lines Ltd.</u>, 212 F.R.D. 144,

156 (S.D.N.Y. 2002).

Here, class counsel has extensive litigation experience and a demonstrated commitment

to this litigation. (Dunnegan Dec. ¶¶ 10 - 24)  The Federal Judicial Center states, in *Managing*

*Class Action Litigation: A Pocket Guide for Judges*:

"A. Single-lawyer model

In the typical class action, the lawyer who filed the case will be the only logical choice
for appointment as class counsel. That lawyer may have investigated the case
independently or may have spoken with government regulators, investigative journalists,
or other public information sources. In those cases, the task of selecting counsel consists
of determining that the filing attorney satisfies Rule 23(g) standards, that is, has the
requisite knowledge of the substantive law, class action legal experience, and financial
and staff resources to represent the class adequately. That attorney, of course, must not
have a conflict of interest with the class."
http://www.fjc.gov/public/pdf.nsf/lookup/ClassGd3.pdf/$file/ClassGd3.pdf

Counsel's knowledge of the applicable law is adequate, and nothing in its performance in this case has suggested that it is less than competent. Although JV's counsel are experienced employment litigation attorneys, Knox has not lost a substantive motion in this matter.

Dunnegan & Scileppi LLC and its attorneys have no conflict under Rule 23(a)(4). (Dunnegan Dec. ¶¶ 25-26)

## II.

### THE PUTATIVE CLASS MEETS THE REQUIREMENTS OF RULE 23(b)(3).

"To certify a class pursuant to Rule 23(b)(3), a plaintiff must establish: (1) predominance —'that the questions of law or fact common to class members predominate over any questions affecting only individual members'; and (2) superiority—'that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 117 (2d Cir. 2013)(quoting Fed. R. Civ. P. 23(b)(3)).

### A.   Common Issues Exist And Predominate.

"The predominance requirement is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 118 (2d Cir. 2013)(quoting UFCW Local 1776 v. Eli Lilly & Co., 620 F.3d 121, 131 (2d Cir. 2010)).

Here, common questions of fact and law predominate on issues of liability.  The central issue in this case under Title VII, the EPA, the NYHRL, and the NYEPA is whether JV's Clothing Allowance unlawfully discriminates on the basis of sex. Under all four statutes, all

members of the Putative Class will need to prove that (i) the jobs performed by male and female

sales associates are substantially equal; (ii) only male, but not female, sales associates received

the Clothing Allowance; (iii) as a result of not receiving the Clothing Allowance, female sales

associates received less pay than male sales associates; and (iv) the Clothing Allowance cannot

be justified as based on a bona fide factor other than sex.

The resolution of these issues will turn on common proof. JV gives the Clothing

Allowance to male sales associates at all of its stores in the United States, and to no female sales

associates at any of its stores in the United States. (Dkt. 20-1; Dunnegan Dec. Ex. B at 50:21-24;

105:6-16, 109:7-21)  JV decides the terms of the Clothing Allowance, and promulgates those

terms, from its central headquarters. (Dunnegan Dec. Ex. C at 181:25-182:10; Ex. D at JVE 137)

JV administers the Clothing Allowance from its central headquarters. (Dunnegan Dec. Ex. D at

JVE 137)  The evidence and resolution of these questions will be the same for all members of the

Putative Class.  The liability issues at stake will therefore be resolved "through generalized

proof." In re U.S. Foodservices, 729 F.3d at 118.

While each member of the Putative Class may have suffered a different amount of

damages, the calculation of the amount of individual damages will proceed only after the Court

determines (1) JV's liability and (2) mental state. After the Court determines the value of the

Clothing Allowance, the calculation of damages for each class member would involve (1)

determining the compensatory, economic damages for each female sales associate based upon

the value of the Clothing Allowance, and (2) for those plaintiffs entitled to liquidated damages,

multiplying the value of the Clothing Allowance by the appropriate factor. For example, those

class members with claims under the NYEPA may be entitled to liquidated damages in an

additional amount equal to the value of the Clothing Allowance, or in the case of a willful

14

violation, up to three times the value of the Clothing Allowance. This proof should involve repetitive calculations set forth on summaries under FRE 1006 that will apportion the value of the Clothing Allowance (and liquidated damages, if available) to individual claimants.

Rule 23(b)(3) does not require that each class member sustain the same amount of damages.  See Wal–Mart v. Dukes, 564 U.S. at 362 ("Given that structure, we think it clear that individualized monetary claims belong in Rule 23(b)(3)."). "Furthermore, '[c]ommon issues may predominate when liability can be determined on a class-wide basis, "even when there are some individualized damage issues.'" Sykes v. Mel S. Harris & Assocs. LLC, 780 F.3d 70, 81 (2d Cir. 2015)(quoting In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 139 (2d Cir. 2001)). "To hold otherwise would 'drive a stake through the heart of the class action device' in cases like this one, Butler v. Sears, Roebuck & Co., 727 F.3d [796,] at 801 [(7th Cir. 2013)], as damages determinations are individual in nearly all wage-and-hour class actions. Leyva [v. Medline Industries, Inc.], 716 F.3d [510,] at 513 [(9th Cir. 2013)]." Perez v. Allstate Ins. Co., 11 Civ. 1812 (JFB)(AKT), 2014 WL 4635745, at *21 (E.D.N.Y. Sept. 16, 2014).

"All that is required at class certification is that 'the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability.' Leyva [v. Medline Industries, Inc.], 716 F.3d [510,] at 514 [(9th Cir. 2013)]." Sykes v. Mel S. Harris & Assocs. LLC, 780 F.3d 70, 88 (2d Cir. 2015).  This case satisfies that requirement because JV's Clothing Allowance policy creates JV's liability to every member of the Putative Class.

      B.     A Class Action Is The Superior And Most
                 Efficient Method For Adjudicating This Action.

Rule 23(b)(3) also requires that class certification be "superior to other available methods for the fair and efficient adjudication of the controversy." "In determining superiority, courts must consider the four factors of Rule 23(b)(3)." Sykes v. Mel S. Harris & Assocs. LLC, 780

F.3d 70, 82 (2d Cir. 2015)(quoting Vega v. T-Mobile USA Inc., 564 F.3d 1256, 1278 (11th Cir. 2009)). "Along with the predominance requirement, the superiority requirement 'ensures that [a] class will be certified only when it would achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" Rodriguez v. It's Just Lunch, Int'l, 300 F.R.D. 125, 141 (S.D.N.Y. 2014)(quoting Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 104 (2d Cir. 2007)).

The four factors are "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).  Here, all four factors favor a finding of superiority.

Class Members' Interest In Individually Prosecuting Actions.  Putative Class members have no material interest in individually prosecuting their claims. The Clothing Allowance has been in place, in some form, since at least 2002 (Dunnegan Dec. Ex. E at 7:4-6; 29:9-24), and Tessa Knox is the first to file suit over it. (Dkt. 88 at 3/3)  Additionally, many members of the Putative Class may not reasonably expect to recover enough money in damages to justify the effort and expense of retaining counsel and initiating a lawsuit. Some members of the Putative Class worked at JV for only a few months, or less, and would only have been denied one or two disbursements of the Clothing Allowance. "As the Supreme Court has said, Rule 23(b)(3) class actions can be superior precisely because they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery." In re U.S. Foodservice Inc. Pricing

Litig., 729 F.3d 108, 130 (2d Cir. 2013)(citing Amchem Products Inc., v. Windsor, 521 U.S. 591,

617 (1997)). See also Balderramo v. Go New York Tours Inc., 15 Civ. 2326 (ER), 2017 WL

2819863, at *5 (S.D.N.Y. June 28, 2017)("Therefore, Plaintiffs argue, a class action is superior

to individual actions because the damages to which many of the class members are entitled are

relatively small compared to the expenses involved in bringing an individual suit. The Court

agrees."); Rodriguez v. It's Just Lunch, Int'l, 300 F.R.D. 125, 141 (S.D.N.Y. 2014)("First, given

the relatively modest amount of monetary damages for each individual plaintiff at issue, the

Court finds that the 'class members have little interest in controlling the litigation individually'

because it would be prohibitively expensive relative to the expected recovery.")(quoting Mazzei

v. Money Store, 288 F.R.D. 45, 65 (S.D.N.Y. 2012)). Moreover, "the interests of any class

members in proceeding as separate actions can easily be met through the opt-out process." In re

Facebook, Inc., IPO Sec. & Derivative Litig., 312 F.R.D. 332, 352 (S.D.N.Y. 2015).

     Extent of Litigation Already Begun. This factor favors a class action because there is no

other litigation concerning the Clothing Allowance. (Dkt. 88 at 3/3)  In re Scotts EZ Seed Litig.,

304 F.R.D. 397, 415 (S.D.N.Y. 2015)("All four factors weigh in favor of class certification...

Additionally, there has been no other litigation concerning the controversy already commenced

by or against members of the class, and there is no reason why the litigation should not be

concentrated in this forum.").

     Desirability of Concentrating the Litigation In this Forum. This District is the ideal forum

for the litigation. First, about half of the members of the Putative Class worked at JV's stores in

the State of New York. Of JV's six stores in New York State, five are located within this

District. (Dkt. 42-1) Second, JV has admitted that its principal office is located in this District,

and so are the records relevant to the Clothing Allowance. (Dkt. 79 ¶ 5) Third, all of JV's

employees that Knox has deposed in this action work in this District. (Dunnegan Dec. ¶ 9)

Likely Difficulties in Managing a Class Action. Proceeding as a class action may benefit

JV.  As set forth above, whether JV's distribution of the Clothing Allowance to male but not

female employees is discriminatory can be resolved for all potential plaintiffs in one case,

thereby providing JV with certainty regarding the legality of its policies, without facing multiple

suits, any one of which may result in collateral estoppel on this issue.  Accordingly, proceeding

as a class action is superior to any other available method.

III.

THE PUTATIVE CLASS IS READILY IDENTIFIABLE

"'Most [ ] circuit courts of appeals have recognized that Rule 23 contains an implicit

threshold requirement that the members of a proposed class be readily identifiable,' often

characterized as 'an 'ascertainability' requirement.'" In re Petrobras Sec., 862 F.3d 250, 264 (2d

Cir. 2017)(quoting Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc., 821 F.3d 992, 995 (8th

Cir. 2016)). "The ascertainability doctrine that governs in this Circuit requires only that a class

be defined using objective criteria that establish a membership with definite boundaries." Id.

Here, membership in the Putative Class is readily identifiable.  Because all female sales

associates at JV were denied the Clothing Allowance, we must identify (i) all female sales

associates who worked at JV's stores in the United States during the relevant limitations period

for the Title VII claim and (ii) all female sales associates who worked at JV's stores in New

York during the relevant limitations period for the NYEPA and NYHRL claims. The statutes of

limitations for the three claims were calculated as follows.

18

Knox timely filed her original complaint in this action, alleging, *inter alia*, violations of the NYEPA and NYHRL, on February 1, 2017. (Dkt. 1)  Knox's filing of the case as a class action tolled the statute of limitations for plaintiffs with NYEPA and NYHRL claims. Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 350 (1983)("The filing of a class action tolls the statute of limitations 'as to all asserted members of the class...'")(quoting American Pipe & Const. Co. v. Utah, 414 U.S. 538, 554 (1974)).

The statute of limitations under the NYEPA is six years, N.Y. Lab. Law § 198(3), and therefore any female sales associate who worked at any of JV's stores in New York State since February 1, 2011, is eligible to bring a claim under the NYEPA. The statute of limitations under the NYHRL is three years, Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996)(citing C.P.L.R. 214(2)), and therefore any female sales associate who worked at any of JV's stores in New York State since February 1, 2014, is eligible to bring a claim under the NYHRL.

On or about February 7, 2017, Knox filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in New York, New York, alleging that the Clothing Allowance discriminated against female sales associates (Dkt. 51-1), which was received by the EEOC on or about February 10, 2017. (Dkt. 51-2)  On July 28, 2017, Knox received a Right-to-Sue Letter from the EEOC. (Dkt. 51-3)  On August 29, 2017, Knox amended her complaint to add a Title VII claim on behalf of herself and the Putative Class. (Dkt. 69) "According to the piggybacking rule, 'where one plaintiff has filed a timely EEOC complaint, other non-filing plaintiffs may join in the action if their individual claims aris[e] out of similar discriminatory treatment in the same time frame.'" Holowecki v. Fed. Exp. Corp., 440 F.3d 558, 564 (2d Cir. 2006), aff'd, 552 U.S. 389 (2008)(quoting Snell v. Suffolk County, 782 F.2d 1094,

1100 (2d Cir. 1986)). The statute of limitations for filing a Title VII charge in New York is 300

days. Harris v. City of New York, 186 F.3d 243, 247 n. 2 (2d Cir. 1999)("Because the existence

of its State Division of Human Rights ('DHR') makes New York a so-called deferral state for

Title VII (and hence ADA) purposes (see 42 U.S.C. § 2000e–5(e)(1)), the seminal teaching

of Mohasco Corp. v. Silver, 447 U.S. 807, 816–17, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980) calls

for application of the 300–day rule—and see such decisions in this Circuit as Pikulin v. City

Univ. of New York, 176 F.3d 598, 599 (2d Cir.1999)(per curiam)."). 300 days before February

7, 2017 is April 13, 2016.

IV.

ALTERNATIVELY, THIS COURT SHOULD CERTIFY THE
PUTATIVE CLASS PURSUANT TO RULE 23(c)(4)

If the Court does not certify the Putative Class under Rule 23(b)(3), the Court can

maintain "a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). The following

questions will need to be resolved for all members of the Putative Class:

(1)    Whether the jobs males and female sales associates perform are substantially

equal;

(2)    Whether male, but not female, sales associates received the Clothing Allowance;

(3)    Whether female sales associates received less pay than male sales associates, as a

result of not receiving the Clothing Allowance;

(4)    Whether the Clothing Allowance can be justified as based on a bona fide factor

other than sex; and

(5)    Whether JV intended to compensate male sales associates more than female sales

associates.

Resolving these questions in one case would be superior, even from JV's perspective, than beginning to resolve that issue anew in each case. See e.g. In re Nassau Cty. Strip Search Cases, 461 F.3d 219, 227 (2d Cir. 2006)("For those reasons, we hold that a court may employ subsection (c)(4) to certify a class as to liability regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement.").  Absent class certification, JV faces the possibility of trying cases until it loses, and then being collaterally estopped from contesting its liability.

Conclusion

For the reasons set forth above, the Court should grant Knox's motion for class certification.

DUNNEGAN & SCILEPPI LLC

By _____

    William Dunnegan (WD9316)
    wd@dunnegan.com
    Richard Weiss (RW4039)
    rw@dunnegan.com
Attorneys for Plaintiff
350 Fifth Avenue
New York, New York 10118
(212) 332-8300

21