HUGHES HUBBARD & REED LLP
Ned H. Bassen
Jordan E. Pace
One Battery Park Plaza
New York, New York 10004-1482
Telephone:  212-837-6000
Facsimile:  212-422-4726
ned.bassen@hugheshubbard.com
jordan.pace@hugheshubbard.com

*Attorneys for Defendant John Varvatos Enterprises, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TESSA KNOX<br><br>                    Plaintiff,<br><br>          v.<br><br>JOHN VARVATOS ENTERPRISES, INC.<br>                    Defendant. | Civil Action No. 1:17-cv-00772<br>(GWG) |

**DEFENDANT JOHN VARVATOS ENTERPRISES, INC.'S**
**OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

STATEMENT OF FACTS ....................................................................................... 2

LEGAL STANDARD............................................................................................... 6

ARGUMENT ........................................................................................................... 7

I.    Plaintiff Must Satisfy All of the Requirements of Rule 23 with Respect to Each of Four Subclasses ........................................................................ 7

    A.    Any Title VII Subclass Must Be Limited to a 180-Day Period................ 8

    B.    Significant Changes in the Law Would Require Separate Subclasses for the 1980 NYSEPA and the 2016 NYSEPA ..................... 10

    C.    Plaintiff Must Prove That Each Proposed Subclass Individually Meets the Requirements of Rule 23(a) and Rule 23(b) ........................... 10

II.    Plaintiff Cannot Satisfy the Requirements of Rule 23(a) ..................................... 11

    A.    None of the Subclasses Meet the Numerosity Requirement.................... 11

        i.    Certifying a Class Action Would Not Avoid A Multiplicity of Actions................................................................... 12

        ii.    The Members of Most Subclasses Are Concentrated in New York, and Modern Technology Makes Joinder Practicable Notwithstanding Distance ........................................... 13

        iii.    Luxury Retail Sales Associates, Some of Whom Earn in Excess of $80,000 Per Year, Have Sufficient Financial Resources to Assert Individual Claims ......................................... 15

        iv.    Potential Class Members, Including Current Varvatos Employees, Are Able to File Individual Suits without Fear of Retaliation................................................................... 16

        v.    This Action Does Not Seek Prospective Relief ............................ 17

        vi.    Potential Class Members Have Sufficient Incentive to File Their Own Actions If They Wish to Do So .................................. 18

    B.    Neither Plaintiff nor Her Proposed Class Counsel Will Fairly or Adequately Protect the Interests of Any Class or Subclass ..................... 19

i

|  |  | i. | Plaintiff Has Conflicts with Potential Class Members, a Lack of Credibility, and Other Issues That Preclude Certification ................................................... 19 |

|  |  | ii. | Plaintiff's Counsel Lacks the Experience and Knowledge to Act as Class Counsel.................................................. 21 |

**III.** Plaintiff Cannot Satisfy the Requirements of Rule 23(b)(3) ............................. 25

    **A.** Common Questions Do Not Predominate................................................. 25

    **B.** A Class Action Is Not Superior to Other Available Methods.................. 27

        i. The Vast Majority of Potential Class Members Would Have a Greater Interest Than Plaintiff in Individually Controlling Litigation ................................................. 28

        ii. The Pending Litigation Factor Weighs Against Certification ................................................. 29

        iii. The Forum Factor Is Neutral....................................... 30

        iv. The Difficulties Factor Weighs Against Certification .................. 30

**IV.** Plaintiff's Failure to Meet All of the Requirements of Rule 23(a) and 23(b) Precludes Certification Under Rule 23(c)(4) ...................................... 30

CONCLUSION.................................................................................................. 31

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abu Dhabi Comm. Bank v. Morgan Stanley & Co.*, 269 F.R.D. 252 (S.D.N.Y. 2010), *aff'd sub nom. Pa. Pub. Sch. Emp's Ret. Sys. v. Morgan Stanley*, 772 F.3d 111 (2d Cir. 2014)................................................................................12

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)....................................19, 25, 28

*Ansari v. N.Y. Univ.*, 179 F.R.D. 112 (S.D.N.Y. 1998) ......................................... *passim*

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120 (2d Cir. 2002) ............................................................................................................14

*Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013) .....................28

*Burka v. New York City Transit Auth.*, 110 F.R.D. 595 (S.D.N.Y. 1986) ...................10

*CL-Alexanders Laing & Cruickshank v. Goldfeld*, 127 F.R.D. 454 (S.D.N.Y. 1989) ............................................................................................................18

*Comcast Corp. v. Behrend*, 569 U.S. ___, 133 S. Ct. 1426 (2013) .........................25, 26

*Deen v. New Sch. Univ.*, No. 05 Civ. 7174 (KMW), 2008 WL 331366 (S.D.N.Y. Feb. 4, 2008) ................................................................................................12, 18

*Dewey v. Volkswagen AG*, 681 F.3d 170 (3d Cir. 2012) ............................................19

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ...................................................7

*Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011)...................................22

*Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*, No. 96 CV 8414 (KMW), 2013 WL 4647190 (S.D.N.Y. Aug. 29, 2013)............................................7

*Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. ___, 134 S. Ct. 2398 (2014)...............7, 16

*Hu v. Skadden, Arps, Slate, Meagher & Flom LLP*, 76 F. Supp. 2d 476 (S.D.N.Y.)...............6, 23

*Kalish v. Karp & Kalamotousakis, LLP*, 246 F.R.D. 461 (S.D.N.Y. 2007)................................22

*Kirkland v. Big Lots Stores, Inc.*, 547 Fed. App'x 570 (5th Cir. 2013).........................9

*Knox v. John Varvatos Enters., Inc.*, No. 17 Civ. 772 (GHW) (GWG), 2017 WL 4675781 (S.D.N.Y. Oct. 17, 2017) ............................................................2, 13, 29

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*Kulig v. Midland Funding, LLC*, No. 13-CV-4715 (PKC), 2014 WL 6769741
(S.D.N.Y. Nov. 20, 2014) ............................................................................................20

*Lewis v. Ford Motor Co.*, 263 F.R.D. 252 (W.D. Pa. 2009) ...........................................23

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) .......................................................7

*Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2d Cir. 1995) .................21

*McGarry & McGarry, LLP v. Bankr. Mgmt. Solutions, Inc.*, Case No. 16 CV
8914, 2017 WL 2619143 (N.D. Ill. June 16, 2017) .............................................6, 22

*McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008) .....................................27

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) .................14

*Moore v. Trippe*, 743 F. Supp. 201 (S.D.N.Y. 1990) .....................................................13

*Murphy v. LaJaunie*, No. 13-CV-6503 (RJS), 2015 WL 4528140 (S.D.N.Y. July
24, 2015) ..................................................................................................................7

*Pa. Pub. Sch. Emp's Ret. Sys. v. Morgan Stanley*, 772 F.3d 111 (2d Cir. 2014)...................12, 14

*Pelman v. McDonald's Corp.*, 272 F.R.D. 82 (S.D.N.Y. 2010) .....................................31

*Roach v. T.L. Cannon Corp.*, 778 F.3d 401 (2d Cir. 2015) .....................................26, 27

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993).........................................12, 13, 14, 15

*Roby v. St. Louis Sw. Ry. Co.*, 775 F.2d 959 (8th Cir. 1985) .......................................19

*Sanft v. Winnebago Indus., Inc.*, 214 F.R.D. 514 (N.D. Iowa 2003) ............................17

*Shahriar v. Smith & Wollensky Rest. Grp. Inc.*, 659 F.3d 234 (2d Cir. 2011) .............16

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d
196 (2d Cir. 2008)......................................................................................................7

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. ___, 136 S. Ct. 1036 (2016) ...................26

*Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181 (11th Cir. 2003) ...................20

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ....................................................7

*Warren v. Xerox Corp.*, No. 01-CV-2909 (JG), 2004 WL 1562884 (E.D.N.Y. Jan.
26, 2004) ..................................................................................................................11

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

**Statutes and Legislation**

28 U.S.C. § 1391 ........................................................................................................30

28 U.S.C. § 1404 ........................................................................................................30

29 U.S.C. § 203 ..........................................................................................................24

29 U.S.C. § 206 .......................................................................................................3, 27

42 U.S.C. § 1981a ..................................................................................................27, 28

42 U.S.C. § 2000e ....................................................................................................3, 8

42 U.S.C. § 2000e-5 ..................................................................................................9

N.Y. Exec. L. § 296 ................................................................................................3, 8

N.Y. Exec. L. § 297 ...........................................................................................3, 9, 27

N.Y. Lab. L. § 194 (1980) ...................................................................................3, 8, 26

N.Y. Lab. L. § 194 (2016) ...................................................................................3, 8, 26

N.Y. Lab. L. § 198 (1980) .........................................................................................27

N.Y. Lab. L. § 198 (2016) ....................................................................................27, 28

N.Y. Women's Equality Act, L. 2015, c. 362, § 1-2 (eff. Jan. 19, 2016) ..................3, 10

**Regulations**

29 C.F.R. § 1601.3 ......................................................................................................23

29 C.F.R. § 1601.9 ......................................................................................................23

29 C.F.R. § 1601.13 ....................................................................................................9

29 C.F.R. § 1601.28 ....................................................................................................24

**Rules**

Fed. R. Civ. P. 23 ................................................................................................*passim*

Fed. R. Civ. P. 26 ......................................................................................................5

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

Fed. R. Evid. 201 ................................................................................................5

**Treatises and Periodical Materials**

Bloomberg L.P., John Varvatos Enterprises Inc Company Profile,
    https://www.bloomberg.com/profiles/companies/0206360D:US-john-
    varvatos-enterprises-inc (last visited Dec. 4, 2017)....................................5

James Covert, Lion takes a huge bite of Varvatos grunge-wear, New York Post,
    2012 WLNR 5148495 (Mar. 9, 2012) ........................................................5

Jess Krochtengel, *Patent Attys' USPTO Applications Protected By Fair Use*,
    Law360 (May 22, 2013, 3:09 p.m.),
    https://www.law360.com/articles/442985/patent-attys-uspto-applications-
    protected-by-fair-use........................................................................22

2 William B. Rubenstein, Newberg on Class Actions § 4:50 (5th ed. 2012) ..............26

7A C. Wright & A. Miller, Federal Practice and Procedure (1972) ............................11

80950224_4

Defendant John Varvatos Enterprises, Inc. ("Varvatos") respectfully submits this memorandum of law in opposition to Plaintiff Tessa Knox's motion for class certification (the "Motion," ECF No. 97, filed November 13, 2017).

## INTRODUCTION

Class certification requires Plaintiff to meet the requirements of Rule 23(a) and 23(b). Plaintiff's motion for class certification does not address these requirements with evidence but, instead, relies on conjecture. The actual evidence in this case shows that many of the requirements for class certification—including numerosity, adequacy of representation, predominance, and superiority—are absent here, precluding certification of any class or subclass.

Despite Varvatos having its legal male-only Clothing Allowance for many years, no one before Plaintiff has ever filed any claim, so there is no danger of the multiplicity of actions that a class action seeks to avoid. The evidence shows that, if any proposed subclass members want to bring a claim, they are able to do so, have the financial resources and incentive to do so, and their numbers are small enough that joinder would be both practicable and preferable. The evidence also shows that Plaintiff is not an adequate representative of any potential class members because her interests conflict with theirs, she has significant credibility issues, and she has little relevant knowledge.

Ironically, the strongest proof against the arguments in Plaintiff's motion is often Plaintiff herself. Plaintiff argues that a class action is necessary because, she conjectures, current employees will not file individual actions, even though Plaintiff was employed by Varvatos at the time she filed this action and has testified that she neither feared nor experienced any retaliation. Likewise, Plaintiff conjectures that Varvatos's sales associates lack the incentive to file individual actions, ignoring the fact that she has sufficient incentive despite seeking

1

significantly smaller damages that most potential plaintiffs could secure if successful.  There are many more contradictions between Plaintiff's arguments and her own reality, all of which confirm that Plaintiff cannot satisfy the requirements under Rule 23 for certification of any class or subclass.

Finally, Plaintiff's proposed counsel cannot fairly and adequately represent any potential class members because they have virtually no experience with class action litigation, virtually no experience with employment law or discrimination law, apparently little knowledge of applicable law, and insufficient resources.  The absence of the competent counsel required by Rule 23(g), combined with Plaintiff's failure to prove multiple elements of Rule 23(a) and (b), requires that class certification be denied in total and with prejudice.

## STATEMENT OF FACTS

Since at least early 2013, Varvatos disseminated to all sales associates dress code policy documents.  (*See* Decl. of Jordan E. Pace, executed Dec. 4, 2017 (the "Dec. 4 Pace Decl.," submitted herewith) ¶ 3; *see also* Varvatos, Appearance and Dress Standards—Retail Locations (Dec. 4 Pace Decl. Ex. A).)  These documents "explicitly acknowledge[d] the existence of the male-only [C]lothing [A]llowance policy."  *Knox v. John Varvatos Enters., Inc.*, No. 17 Civ. 772 (GHW) (GWG), 2017 WL 4675781, at *11 n.6 (S.D.N.Y. Oct. 17, 2017).  The Clothing Allowance exists to support Varvatos's dress code for its male sales associates (the "Male Dress Code"), who are required to wear multiple pieces of Varvatos clothing whenever working.  Deposition testimony establishes that female sales professionals benefit from the Male Dress Code, and by extension the Clothing Allowance, because it increases their sales and thus their commissions.  (*See* Tr. of Dep. of Cheryl Somekh Crouchen, Aug. 25, 2017 (Dec. 4. Pace Decl.

Ex. D) at 32:4-10, 50:17-51:10; Tr. of Rule 30(b)(6) Dep. of Benjamin Harris, Oct. 26, 2017 (Dec. 4 Pace Decl. Ex. G) at 32:23-33:10.)

Plaintiff commenced this action on February 1, 2017. The currently operative pleading, the Second Amended Complaint, asserts claims under several different laws: the federal Equal Pay Act, 29 U.S.C. § 206(d) (the "EPA"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the New York State Equal Pay Act, New York Labor Law § 194 (the "NYSEPA"); and the New York State Human Rights Law, New York Executive Law § 296 *et seq.* (the "NYSHRL"). (*See generally* Second Am. Compl. (ECF No. 69).) The NYSEPA was amended in several significant ways effective January 19, 2016, so Plaintiff's claim is under the 2016 NYSEPA, while the claims of potential class members employed by Varvatos prior to the effective date would be under the 1980 NYSEPA. *See* N.Y. Women's Equality Act, L. 2015, c. 362, § 1-2 (eff. Jan. 19, 2016).

On February 10, 2017, the United States Equal Employment Opportunity Commission (the "EEOC") received from Plaintiff a letter concerning Varvatos. (*See generally* Letter from Tessa Knox to the EEOC, dated Feb. 2, 2017 (ECF Nos. 51-1); USPS Tracking Results (ECF No. 51-2).) The letter was neither sworn to/affirmed nor supported by any unsworn declaration under penalty of perjury. (*See* ECF No. 51-1.) At the time Plaintiff submitted her letter to the EEOC, she was statutorily barred from filing any complaint or commencing any proceeding with the New York State Division of Human Rights (the "NYSDHR") because she had already commenced this action. *See* N.Y. Exec. L. § 297(9). On July 17, 2017, the EEOC contacted Plaintiff's counsel to see if Plaintiff was requesting a right-to-sue letter. Only on July 25, 2017, did Plaintiff request such a letter. (*See* E-mails between Richard Weiss, Esq. and Thomas Perez, July 17-25, 2017 (ECF No. 58-1).)

3

Varvatos has employed female sales associates as follows:

- From February 1, 2011, to January 18, 2016, 20 female sales associates in the State of New York;

- From January 19, 2016, to December 1, 2017, 18 female sales associates in the State of New York;

- From February 1, 2014, to December 1, 2017, 24 female sales associates in the State of New York; and

- From August 14, 2016, to December 1, 2017, 48 female sales associates in the United States.

(*See* Decl. of Jon Del Gaizo (the "Del Gaizo Decl.," submitted herewith, ¶¶ 3-5, 7.)  The vast majority of the female sales associates in the first three categories live in the New York metropolitan area.  (Dec. 4 Pace Decl. ¶ 2.)  It is not rare for Varvatos sales associates to earn in excess of $80,000 per year, with some earning in excess of $100,000.  (ECF No. 100-2 at 130:12-19.)

Plaintiff was employed by Varvatos from early August 2016 through early February 2017, only in Varvatos's East Hampton store.  (ECF No. 69 ¶ 10.)  During that time, Plaintiff earned $17.00 per hour, plus 5% commission on sales, and was eligible for overtime at $25.50 per hour or greater.  (*See* Tr. of Dep. of Tessa Knox, Sept. 26, 2017 (Dec. 4 Pace Decl. Ex. F) at 77:14-78:3.)  Plaintiff has been supported financially by her boyfriend-fiancé, who earned between $100,000 and $200,000 in 2016.  (*See id.* at 254:2-6; Tr. of Dep. of Chris Clemence, Sept. 7, 2017 (Dec. 4 Pace Decl. Ex. E) at 24:23-25:7.)  On February 3, 2017, Plaintiff submitted a letter of giving two weeks' notice of her resignation, meaning that she would work through February 17, 2017, but Plaintiff never showed up for work after February 3, 2017.  (*See id.* Ex. F at 255:18-258:17.)

Plaintiff was still employed by Varvatos when she commenced this action.  She testified that she neither feared nor experience any retaliation from Varvatos.  (*See id.* at 265:22-266:5.)

4

Plaintiff's then-boyfriend apparently cajoled her into finding counsel and commencing this action.  (*See* Dec. 4 Pace Decl. Ex. C (text messages between Plaintiff and her then-boyfriend).)  Since commencing this action, Plaintiff has lived in East Hampton, New York, and California, and currently lives in California.  (*See* Dec. 4 Pace Ex. F at 22:11-19.)  She has communicated with her counsel using telephone, e-mail, and text messaging, among other means.  (*See id.* at 10:2-17, 370:11-16.)  As of September 26, 2017, Plaintiff had only met with her counsel in person once.  (*See id.* at 8:16-18.)  As part of her initial disclosures, Plaintiff disclosed that she seeks damages of $24,000.  (*See* Initial Disclosures of Plaintiff Pursuant to FRCP 26(a) (Dec. 4 Pace Decl. Ex. I) ¶ 3.)  Plaintiff testified that she has memory issues (which she calls "pregnancy brain").  (*See, e.g.*, Dec. 4 Pace Decl. Ex. F at 5:5-7:2.)  Despite calling Varvatos a men's store before hiring counsel, Plaintiff refused at her deposition to admit that Varvatos is a men's store.  (*See id.* at 67:12-17, 359:13-23.)  Plaintiff testified that Varvatos does not sell "men's clothing" and is not a men's store because all clothing is unisex.  (*See id.* at 65:8-73:4, 168:10-18.)  Varvatos is, in fact, a men's store and sell men's clothing, which are facts generally known throughout the Southern District of New York and of which the Court may take judicial notice under Federal Rule of Evidence 201(b)(1).  *See, e.g.*, Bloomberg L.P., John Varvatos Enterprises Inc Company Profile, https://www.bloomberg.com/profiles/companies/0206360D:US-john-varvatos-enterprises-inc (last visited Dec. 4, 2017) (describing Varvatos as offering clothing and other items for men); James Covert, Lion takes a huge bite of Varvatos grunge-wear, New York Post, 2012 WLNR 5148495 (Mar. 9, 2012) (describing Varvatos as a "men's clothing label"); *see also* Dec. 4 Pace Decl. Ex. D at 5:18-20.

Plaintiff is represented in this action by attorneys from Dunnegan & Scileppi LLC ("D&S"), a self-described "IP Litigation Boutique."  (*See* D&S, Homepage, About (last visited

Dec. 4, 2017) (Dec. 4 Pace Decl. Ex. H).)  The overwhelming majority of D&S's experience is

in copyright, trademark, and patent infringement cases.  (*See id.*)  Westlaw searches reveal one

unsuccessful attempt by D&S at litigating a class action and one unsuccessful attempt by D&S at

litigating any employment law or discrimination cases.  *See generally McGarry & McGarry,*

*LLP v. Bankr. Mgmt. Solutions, Inc.*, Case No. 16 CV 8914, 2017 WL 2619143 (N.D. Ill. June

16, 2017) (dismissing claims); *Hu v. Skadden, Arps, Slate, Meagher & Flom LLP*, 76 F. Supp. 2d

476 (S.D.N.Y.) (dismissing claims).

 In its initial disclosures and amended initial disclosures, Varvatos disclosed key witnesses

located in East Hampton, Florida, and California, in addition to Manhattan.  (Dec. 4 Pace Decl.

¶ 4.)  Plaintiff has not taken the deposition of any witnesses located outside of Manhattan.  (*Id.*)

Plaintiff initially noticed the depositions of two Varvatos employees who are located in East

Hampton but never took the depositions because, as D&S indicated during informal meet-and-

confer calls, D&S did not want to expend the time to travel to and from East Hampton and did

not want to incur the expense of staying there overnight.  (*See* Decl. of Jordan E. Pace, executed

Nov. 29, 2017 (ECF No. 113) ¶ 2.)

 On October 17, 2017, the Court conditionally certified a collective action for the EPA

claim.  (*See generally* Opinion and Order, entered Oct. 17, 2017 (ECF No. 84).)  As of today,

only 8 of 64 potential EPA plaintiffs have opted in to the collective action (in addition to

Plaintiff), 3 of whom are current employees of Varvatos.  (*See generally* Consents to Join (ECF

Nos. 101-105, 110-111, 114).)

## LEGAL STANDARD

 "[P]laintiffs wishing to proceed through a class action must actually prove—not simply

plead—that their proposed class satisfies each requirement of Rule 23, including (if applicable)

the predominance requirement of Rule 23(b)(3)." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. ___, 134 S. Ct. 2398, 2412 (2014); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."). No class may be certified unless the Court "receive[s] enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 204 (2d Cir. 2008) (citation omitted). Each element must be proven by a preponderance of the evidence. *Id.* at 202. In the words of the Supreme Court, this is a "rigorous analysis." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982) ("[W]e reiterate today that a Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."); *Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*, No. 96 CV 8414 (KMW), 2013 WL 4647190, at *3 (S.D.N.Y. Aug. 29, 2013) (the same "rigorous analysis" applies to the requirements of Rule 23(b)(3)). "[T]he requirements to grant class certification under Rule 23 are much more rigorous than the 'similarly situated' standard that applies to [Fair Labor Standards Act] collective actions." *Murphy v. LaJaunie*, No. 13-CV-6503 (RJS), 2015 WL 4528140, at *3 (S.D.N.Y. July 24, 2015) (citation omitted).

## **ARGUMENT**

### I.   **Plaintiff Must Satisfy All of the Requirements of Rule 23 with Respect to Each of Four Subclasses**

Rule 23(c)(5) permits the Court to divide a proposed class into "subclasses that are each treated as a class under [Rule 23]." Fed. R. Civ. P. 23(c)(5). The Second Circuit has held that, in certain cases, a proposed class *must* be divided into subclasses. *See Marisol A. v. Giuliani*,

126 F.3d 372, 378-79 (2d Cir. 1997) (mandating creation of subclasses where various potential class members had "discrete legal claims pursuant to particular federal and state constitutional, statutory, and regulatory obligations of the defendants").  In this case, the laws underlying the asserted claims have drastically varying:  statutes of limitations (ranging from 180 days to six years); geographic scopes (ranging from a single store to the United States and beyond); available damages (including varying from no liquidated damages to 300% liquidated damages); scienter and other evidentiary requirements (including whether willfulness or intentionality must be proven), and defenses (including whether a "factor other than sex" must be "bona fide").  *Compare* Title VII, the 1980 NYSEPA, the 2016 NYSEPA, and the NYSHRL.  Plaintiff acknowledges that her "Putative Class" must be divided into subclasses and defines them, though she uses the term "members" instead of "subclass."  (*See* Pl.'s Mem. of Law in Support of Her Mot. for Class Cert., filed Nov. 13, 2017 (ECF No. 98) at 2 (defining the "NYEPA members" subclass, the "NYHRL members" subclass, and the "Title VII members" subclass); *see also id.* at 3-4 (discussing certification of subclasses).)  Plaintiff also discusses the differences between the subclasses throughout her brief, including recognizing that the membership between the subclasses varies significantly.  (*See id.* at 4 (discussing subclass sizes); *see also id.* at 9-10, 14 (discussing other key distinctions between the subclasses).)  However, as discussed below, the law requires different definitions for the proposed subclasses than Plaintiff suggests.

### A.    Any Title VII Subclass Must Be Limited to a 180-Day Period

Plaintiff proposes that the Title VII Subclass go back as far as April 13, 2016, incorrectly relying on a 300-day EEOC filing period (and incorrectly calculating the period, too[1]).  (*See* ECF

---

1.  Plaintiff's initial submission to the EEOC was not received by the EEOC until February 10, 2017.  (ECF No. 98 at 19.)  A charge is deemed filed with the EEOC on the date it is received by the EEOC, not when it is mailed.

No. 98 at 19-20.)  A claims under Title VII is barred if a charge is not filed with the EEOC within 180 days after the alleged unlawful employment practice, unless "the person aggrieved *has initially instituted proceedings with a State or local [fair employment practices] agency*,"[2] in which case the deadline is extended to 300 days.  42 U.S.C. § 2000e-5(e)(1) (emphasis added). Normally, filing a charge with the EEOC, which has a worksharing agreement with the NYSDHR, qualifies under a legal fiction as "initially institute[ing] proceedings" with the NYSDHR and thus qualifies for the 300-day rule.  However, at the time Plaintiff made her first submission to the EEOC[3]—February 10, 2017, nine days after commencing this action— Plaintiff was statutorily barred from filing a complaint or instituting proceedings with the NYSDHR under the election of remedies provision of the NYSHRL.  *See* N.Y. Exec. L. § 297(9) ("No person who has initiated any action in a court of competent jurisdiction . . . under any other law of the state based upon an act which would be an unlawful discriminatory practice under this article, may file a complaint with respect to the same grievance under this section.").  Plaintiff did not, therefore, "initially institute[]" any proceeding with the NYSDHR and is limited to the 180-day period, as are all who seek to piggyback on her alleged charge.  *See* 42 U.S.C. § 2000e-5(e)(1); 29 C.F.R. § 1601.13(a)(2) (where the state fair employment practices agency lacks subject matter jurisdiction over a particular charge, a charge must be received by the EEOC within 180 days).  180 days before February 10, 2017, is August 14, 2016.

---

*Kirkland v. Big Lots Stores, Inc.*, 547 Fed. App'x 570, 573 (5th Cir. 2013).  Thus, even if the 300-day period applied, any Title VII claim would be limited to events occurring from April 16, 2017, forward.

2.   The NYSDHR is New York State's fair employment practices agency.

3.   Varvatos does not admit that Plaintiff's first submission to the EEOC was a valid charge or that it has been subsequently amended to cure fatal defects.  The validity of Plaintiff's submissions to the EEOC is an issue that will be addressed on summary judgment.  Varvatos reserves all rights and arguments with respect to this issue.

9

### B.  Significant Changes in the Law Would Require Separate Subclasses for the 1980 NYSEPA and the 2016 NYSEPA

While Plaintiff acknowledges that the differences in the laws require different subclasses, Plaintiff ignores that there are actually *four* proposed subclasses rather than three.  In addition to the Title VII and NYSHRL subclasses, there are two NYSEPA subclasses.  Effective January 19, 2016, the NYSEPA was amended in several significant ways, including:  altering the elements required for the affirmative defense that a wage differential is based on a "factor other than sex" to create the heightened standard of a "bona fide factor other than sex"; expanding the definition of "establishment" to include a region no larger than a county; and tripling the amount of potential liquidated damages from 100% of damages to 300%.  *See* N.Y. Women's Equality Act, L. 2015, c. 362, §§ 1-2 (eff. Jan. 19, 2016).  These differences require two separate subclasses.  Accordingly, Plaintiff's Motion actually seeks certification of the following four subclasses: (i) the "Title VII Subclass," comprising female sales associates employed by Varvatos in the United States since August 14, 2016; (ii) the "NYSHRL Subclass," comprising female sales associates employed by Varvatos in New York State since February 1, 2014; (iii) the "1980 NYSEPA Subclass," comprising female sales associates employed by Varvatos in New York State between February 1, 2011, and January 18, 2016; and (iv) the "2016 NYSEPA Subclass," comprising female sales associates employed by Varvatos in New York State since January 19, 2016.

### C.  Plaintiff Must Prove That Each Proposed Subclass Individually Meets the Requirements of Rule 23(a) and Rule 23(b)

"When plaintiffs attempt to certify two or more subclasses . . . each subclass and its respective representative 'must independently meet the requirements for maintenance of a class action.'"  *Burka v. New York City Transit Auth.*, 110 F.R.D. 595, 601 (S.D.N.Y. 1986) (quoting

7A C. Wright & A. Miller, Federal Practice and Procedure at 191–92 (1972)); "[A] subclass must meet the Rule 23(a) requirements of numerosity, commonality, typicality, and adequate representation, as well as one of the maintainability conditions of Rule 23(b)." *Warren v. Xerox Corp.*, No. 01-CV-2909 (JG), 2004 WL 1562884, at \*17 (E.D.N.Y. Jan. 26, 2004). Except with respect to numerosity, Plaintiff does not address the requirements of Rule 23 with respect to each subclass and thus fails to carry her burden. Moreover, as set forth below, it is clear that Plaintiff cannot meet the requirements of Rule 23(a) or 23(b).

## II.     Plaintiff Cannot Satisfy the Requirements of Rule 23(a)

Rule 23(a) requires Plaintiff to satisfy by a preponderance of the evidence each and every one of four elements:  (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation. Fed. R. Civ. P. 23(a). The failure to prove any one of these elements precludes the certification of any class or subclass. As shown below, Plaintiff fails to satisfy the numerosity and adequacy requirements of Rule 23(a).

### A.     None of the Subclasses Meet the Numerosity Requirement

Plaintiff must first show that each subclass is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Courts in the Second Circuit generally find a lack of numerosity, precluding certification, when a class or subclass has 21 or fewer members and generally find the numerosity requirement satisfied with 40 or more members. *See Ansari v. N.Y. Univ.*, 179 F.R.D. 112 (S.D.N.Y. 1998) (denying certification for lack of numerosity). Under this framework, the 1980 NYSEPA Subclass (20 potential members) and 2016 NYSEPA Subclass (18 potential members) both presumptively fail, the NYSHRL Subclass (24 potential members) barely falls into a gray area, and only the Title VII Subclass (48 potential members)

11

presumptively qualifies.[4]  (*See* Del Gaizo Decl. ¶¶ 3-5, 7.)

However, numbers alone are not sufficient for certification.  *See Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) ("Determination of practicability depends on all the circumstances surrounding a case, not on mere numbers.") (citation omitted).  Courts have denied certification of classes far exceeding the 40-member benchmark for failure to satisfy the numerosity requirement.  *See, e.g., Deen v. New Sch. Univ.,* No. 05 Civ. 7174 (KMW), 2008 WL 331366, at *3 (S.D.N.Y. Feb. 4, 2008) (denying certification to a putative class of 110 where plaintiffs "provide[d] no evidence that joinder . . . would be difficult to accomplish, or . . . would be somehow less efficient than class certification"); *Abu Dhabi Comm. Bank v. Morgan Stanley & Co.*, 269 F.R.D. 252, 257-58 (S.D.N.Y. 2010) (analysis of *Robidoux* factors demonstrates that plaintiffs cannot meet numerosity requirement even if potential class would consist of more than 100 members), *aff'd sub nom. Pa. Pub. Sch. Emp's Ret. Sys. v. Morgan Stanley*, 772 F.3d 111 (2d Cir. 2014) (hereinafter "*PSERS*").  Especially where a class or subclass falls into the gray area between 21 and 40 potential members, courts must consider the *Robidoux* factors: (i) judicial economy; (ii) geographic dispersion; (iii) potential members' financial resources; (iv) potential members' ability to file individual suits; and (v) whether an injunction or other prospective relief is requested.  *Ansari*, 179 F.R.D. at 114-15.  Analysis of these factors shows that certification of any class or subclass, including the Title VII Subclass, would be inappropriate because joinder of individual claims is not impracticable.

### i.    Certifying a Class Action Would Not Avoid A Multiplicity of Actions

The first *Robidoux* factor—judicial economy—focuses on whether or not certifying a

---

4.  Plaintiff concedes that the numbers recited in her brief are not precise and she offers no evidence to support her numbers.  (*See* ECF No. 98 at 4-5.)  Only Varvatos's numbers, which are based on competent evidence, may be considered.

class action would actually avoid "a multiplicity of actions." *Robidoux*, 987 F.2d at 936.

Plaintiff does not address this issue and does not argue, much less prove, that there would be

multiple actions seeking the same relief but for a class action. (*See* ECF No. 98 at 5.) Indeed, all

evidence is to the contrary. As the Court previously noted, Varvatos "explicitly acknowledges

the existence of the male-only [C]lothing [A]llowance policy" in a document that was

disseminated to all sales associates. *Knox*, 2017 WL 4675781, at *11 n.6. Documents similarly

informing female sale associates that only males receive a Clothing Allowance have been

disseminated since at least early 2013, yet not one female sales associate other than Plaintiff has

ever commenced an action alleging that the Clothing Allowance violates Title VII, the

NYSHRL, or any version of the NYSEPA. (*See* Dec. 4 Pace Decl. ¶ 3, Ex. A.) Plaintiff also

personally reached out to two former Varvatos employees in an effort to get them to participate

in this action but neither agreed to do so. (*See id.* Ex. B (text and Facebook messages from

Plaintiff).) Thus, there is no reason to believe that the Court would face a multiplicity of actions,

making this factor weigh against any finding of impracticability for any class or subclass.

> ### ii.    The Members of Most Subclasses Are Concentrated in New York, and Modern Technology Makes Joinder Practicable Notwithstanding Distance

There are no uniform guidelines or standards for what would constitute geographic

dispersion sufficient to support impracticability/numerosity. District courts within this Circuit

have taken conflicting and irreconcilable positions on the issue, but at least one court has denied

class certification where potential class members were spread throughout the New York

metropolitan area. *See Moore v. Trippe*, 743 F. Supp. 201, 211 (S.D.N.Y. 1990) (denying

certification because joining 54 potential plaintiffs located in multiple states in the New York

metropolitan area was not impracticable). That would preclude certification of the NYSHRL,

13

1980 NYSEPA, and 2016 NYSEPA Subclasses, the vast majority of whose members live in the

New York metropolitan area.  (*See* Dec. 4 Pace Decl. ¶ 2.)  For its part, the Second Circuit has

affirmed a district court's finding that joinder was not impracticable notwithstanding that "the

purported class was large and *relatively diverse geographically*."  *PSERS*, 772 F.3d at 120

(emphasis added).  Other than quoting select cases, Plaintiff does not explain why having

plaintiffs in multiple states would make joinder impracticable.  (*See* ECF No. 98 at 5-6.)

Moreover, given modern technology, it is not clear what continuing viability, if any, the

geographic dispersion factor has.  *See Ansari*, 179 F.R.D. at 113, 115 (stating that "dispersion is

not dispositive" and denying certification of a proposed class of 35 dentists from 11 foreign

countries).  In the personal jurisdiction context, the Second Circuit has repeatedly held that "the

conveniences of modern communication and transportation ease what would have been a serious

burden only a few decades ago."[5]  *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305

F.3d 120, 129-30 (2d Cir. 2002) (Sotomayor, J.) (quoting *Metro. Life Ins. Co. v. Robertson-Ceco

Corp.*, 84 F.3d 560, 574 (2d Cir. 1996)).  Plaintiff's deposition testimony demonstrates that

distance is no obstacle to full participation in an action.  Plaintiff testified that she has lived in

East Hampton and California during the pendency of this action and has been able to use

technology—telephone, e-mail, text messaging—to remain actively involved.  (*See* Dec. 4 Pace

Decl. Ex. F at 10:2-17, 22:11-19, 370:11-16.)  In fact, the only time she met with her counsel in

person was to prepare for her deposition.  (*See id.* at 8:16-18.)  Plaintiff does not allege that any

potential members of any subclass live farther than Plaintiff does in California, so there is no

reason why others would not be able to participate and be as adequately represented as Plaintiff

is by using modern technology.  As such, this factor weighs against a finding of impracticability.

---

5.  The geographic dispersion factor was developed nearly a quarter of a century ago.  *See Robidoux*, 987 F.2d at
    936 (1993).

### iii.   Luxury Retail Sales Associates, Some of Whom Earn in Excess of $80,000 Per Year, Have Sufficient Financial Resources to Assert Individual Claims

The Second Circuit established the third factor—the financial resources of class members—in the context of a proposed class of plaintiffs applying for various forms of public assistance, including food stamps, aid for dependent children, and home heating assistance.  *See Robidoux*, 987 F.2d at 933.  The Court held that the plaintiffs were "economically disadvantaged, making individual suits difficult to pursue."  *Id.* at 936.  The proposed class members here bear no resemblance to the *Robidoux* plaintiffs.

As an initial matter, Plaintiff offers no evidence that any potential class member lacks financial resources or is at all economically disadvantaged.  *See Ansari*, 179 F.R.D. at 115 ("[T]here is no evidence that the prospective class members lack the financial resources to participate in Ansari's lawsuit").  While Plaintiff mentions (and misstates[6]) her earnings for the roughly four months in 2016 that she was employed by Varvatos, she omits that she is financially supported by her fiancé, who earned $100,000-$200,00 in 2016.  (*See* Dec. 4 Pace Decl. Ex. F at 254:2-6; *id*. Ex. E at 24:23-25:7.)  Plaintiff instead makes the sweeping statement that potential class members are "retail store employees"—which may not be true for former Varvatos employees—apparently relying on a false stereotype of retail employees as financially limited.  (*See* ECF No. 98 at 6.)  All of Varvatos's retail employees work in *luxury* retail, which means higher wages than the average retail setting.  Plaintiff, as an entry-level sales associate, earned more than double the federal minimum wage, plus 5% commissions on items costing hundreds or thousands of dollars each.  (*See* Dec. 4 Pace Decl. Ex. F at 77:14-78:3.)  "One can

---

6.  Plaintiff's counsel apparently quotes the amount entered in Box 1 of Plaintiff's 2106 W-2.  (*See* ECF No. 98 at 6 (citing 2016 Form W-2 for Tessa Knox from Varvatos (ECF No. 100-6)).)  Box 1 on a W-2 does not include all wages and compensation earned by an employee, as is obvious by looking at the higher number entered in Box 3, which is itself generally lower than actual earnings.

15

reasonably infer that, like [Plaintiff], each [potential class member] has the wherewithal to retain

an attorney either to join in the pending action or to file a separate suit, should he or she wish to

do so." *Ansari*, 179 F.R.D. at 115.  In fact, it is not rare for Varvatos sale associates to earn in

excess of $80,000 per year, and some earn in excess of $100,000.  (*See* Tr. of Dep. of Nicole

Chang, June 29, 2017 (ECF No. 100-2) at 130:12-19.)  Given Plaintiff's failure to show that any

potential class members are economically disadvantaged and evidence instead showing

significant earnings by potential class members, the financial resources factor weighs heavily

against a finding of impracticability with respect to any class or subclass.

### iv. Potential Class Members, Including Current Varvatos Employees, Are Able to File Individual Suits without Fear of Retaliation

Potential class members are able to bring individual suits because there is no evidence

that any of them are incarcerated, unsophisticated, or elderly.  *See Ansari*, 179 F.R.D. at 115

(citations omitted).  Plaintiff does not address this fact, instead focusing on the minority of

potential class members who are current employees of Varvatos (to the exclusion of the majority

who no longer work for Varvatos).  (*See* ECF No. 98 at 6-7.)

Plaintiff's essential argument is that current employees are unable to bring individual

suits because they fear retaliation from Varvatos.  That is conjecture, and it is demonstrably false

conjecture.  Plaintiff offers no evidence that any current employee fears retaliation, thereby

violating the Supreme Court's repeated instruction that Rule 23's requirements must be satisfied

with proof and not mere pleading.  *See Halliburton*, 134 S. Ct. at 2412.  Most of the cases cited

by Plaintiff to support her reliance on conjecture, including the Second Circuit case,[7] rely

directly or indirectly on a 2003 decision from the Northern District of Iowa, which predates the

---

7.  *Shahriar v. Smith & Wollensky Rest. Grp. Inc.*, 659 F.3d 234, 244 (2d Cir. 2011).

16

Supreme Court's clarification that Rule 23 certification requires proof by a preponderance of the evidence. *See Sanft v. Winnebago Indus., Inc.*, 214 F.R.D. 514, 524-26 (N.D. Iowa 2003) (denying class certification for failure to satisfy the numerosity requirement). Even that decision held that possible fear of retaliation was only a "nominal consideration" because, as here, "plaintiff has not come forward with any evidence which would support the proposition that those unidentified class members who are still employed by Winnebago are actually fearful of reprisal or retaliation from defendants should those individuals be forced to join this lawsuit." *Id.* at 525.

Varvatos does not, and will not, retaliate against employees who exercise protected rights, including filing a lawsuit alleging discrimination. All available evidence confirms that Varvatos employees do not fear retaliation. First, Plaintiff was an employee of Varvatos when she engaged counsel and commenced this action. (*See* Compl. (ECF No. 1) ¶ 9.) She clearly did not fear retaliation for filing a lawsuit and, even in her declaration in support of the Motion (ECF No. 99), she does not claim that she ever feared retaliation. Indeed, Plaintiff specifically testified that she did not fear retaliation from Varvatos and that she has not suffered any kind of retaliation from Varvatos. (*See* Dec. 4 Pace Decl. Ex. F at 265:22-266:5.) Second, of the 8 plaintiffs who have affirmatively opted in to the federal Equal Pay Act collective action, 3 of them are current Varvatos employees who clearly do not fear retaliation. (*See generally* ECF Nos. 101-105, 110-111, 114.) As such, the "ability" factor weighs heavily against a finding of impracticability with respect to any class or subclass.

## v.    This Action Does Not Seek Prospective Relief

Another factor is whether the action seeks prospective relief, such as an injunction, that would have an effect on future class members. *See Ansari*, 179 F.R.D. at 116. This action does

not seek any form of prospective relief and Plaintiff's conjecture about Varvatos's future behavior (*see* ECF No. 98 at 8) is just that—conjecture.  This factor thus weighs heavily against a finding of impracticability with respect to any class or subclass.

### vi. Potential Class Members Have Sufficient Incentive to File Their Own Actions If They Wish to Do So

Courts also look at whether potential class members have sufficient financial incentive to file individual lawsuits.  *See Ansari*, 179 F.R.D. at 115-16 ("Nor is this a case where the prospective class members lack a monetary incentive to protect their own interests.").  Plaintiff's own circumstances disprove her argument that potential class members lack sufficient incentive.  (*See* ECF No. 98 at 7-8.)  Plaintiff seeks $24,000 and had sufficient incentive to find counsel and file her own lawsuit.  According to Plaintiff's theory of damages, damages increase with length of tenure.  (*See id.* at 8.)  As Plaintiff is aware, the vast majority of potential class members had longer tenures than Plaintiff and thus could expect larger damage awards than her, meaning that they have greater incentive to file a lawsuit than Plaintiff did when she filed hers.  Most of the awards for successful claims could be between $100,000 and $400,000.  *Cf. Ansari*, 179 F.R.D. at 116 ("A potential award of around $90,000 is hardly the type of de minimis recovery that would discourage individual class members from joining Ansari's suit or from filing suits in their own behalf."); *Deen*, 2008 WL 331366, at *4 (holding that potential awards of $60,000 made individual joinder practicable); *CL-Alexanders Laing & Cruickshank v. Goldfeld*, 127 F.R.D. 454, 457 (S.D.N.Y. 1989) (denying certification where most potential awards exceeded $1,000 and many exceeded $50,000).  Thus, like all of the other factors, potential class members' financial incentive weighs heavily against a finding of impracticability.  Accordingly, Plaintiff has failed to satisfy the numerosity requirement of Rule 23(a) with respect to any class or subclass, precluding certification.

18

**B.**     **Neither Plaintiff nor Her Proposed Class Counsel Will Fairly or Adequately Protect the Interests of Any Class or Subclass**

**i.**     **Plaintiff Has Conflicts with Potential Class Members, a Lack of Credibility, and Other Issues That Preclude Certification**

As an initial matter, Plaintiff cannot serve as a representative of the 1980 NYSEPA Subclass because she is not a part of that class, having worked for Varvatos only after the NYSEPA was significantly amended effective early 2016.  *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) ("[A] class representative must be part of the class . . . ." (citation omitted)); *Roby v. St. Louis Sw. Ry. Co.*, 775 F.2d 959, 961 (8th Cir. 1985) ("A fundamental requirement of representatives in a class action is that they must be members of the subclasses they seek to represent."  (citation omitted)).

For the other proposed subclasses, where the named party is a member of the proposed class or subclass, the adequacy analysis focuses on potential conflicts between the named party and potential class members.  *Amchem*, 521 U.S. at 625.  In this case, Plaintiff has multiple conflicts with most or all of the potential class members she seeks to represent.  First, "[a] fundamental conflict exists where some [class] members claim to have been harmed by the same conduct that benefitted other members of the class."  *Dewey v. Volkswagen AG*, 681 F.3d 170, 184 (3d Cir. 2012) (citation/quotation omitted).  Deposition testimony establishes that female sales associates benefit from the Male Dress Code and, by extension, the Clothing Allowance that facilitates the Male Dress Code.  (*See* Dec. 4. Pace Decl. Ex. D at 32:4-10, 50:17-51:10 (testimony of female sales associate that "It's helpful to me"; "A hundred percent it helps"; "A hundred times it helps"); *id.* Ex. G at 32:23-33:10 (Rule 30(b)(6) testimony establishing that female sales associates think there is a "beneficial effect" for female sales associates).) Plaintiff's claim that she was harmed by the same policies that helped female sales associates make sales and earn commissions creates precisely the kind of conflict that precludes

19

certification.  *See Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1190 (11th Cir. 2003) ("To our knowledge, no circuit has approved of class certification where some class members derive a net economic benefit from the very same conduct alleged to be wrongful by the named representatives of the class.").

Second, a fundamental conflict exists between potential class members, who would want the best representative to advance their case, and Plaintiff, whose credibility issues will reflect poorly upon any class or subclass she represents.  It is undisputed that Plaintiff has had memory issues that affect the reliability of any testimony she might give.  (*See, e.g.*, Dec. 4 Pace Decl. Ex. F at 5:5-7:2.)  It is also undisputed that Plaintiff has put forward inconsistent evidence on issues relevant to the claims and defenses in this case, including whether or not Varvatos is a men's store.[8]  (*See id.* at 67:12-17, 359:13-23.)  At her deposition, Plaintiff took the absurd position that Varvatos is not a men's clothing store because all clothing—including women's lingerie, bikinis, and even something Plaintiff herself called a "man romper"—are unisex.  (*See id.* at 65:8-73:4, 168:10-18.)  Moreover, the evidence shows that Plaintiff, egged on by her then-boyfriend, commenced this action only after receiving a warning for poor sales and other performance issues and, further, that she abandoned her job two weeks before her scheduled last day.  (*See id.* Ex. C; *id.* Ex. F at 255:18-258:17.)  No potential class member will want to be represented by someone with all of these issues.

Additionally, as Plaintiff acknowledges, "'[c]lass certification may properly be denied where the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys.'"  *Kulig v. Midland Funding, LLC*, No. 13-CV-4715 (PKC),

---

8.  Whether or not Varvatos is a men's store—and it emphatically is—may be relevant to certain affirmative defenses that require a legitimate business reason for job or pay differences.

80950224_4

2014 WL 6769741, at *3 (S.D.N.Y. Nov. 20, 2014) (denying reconsideration of decision denying certification) (quoting *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1077–78 (2d Cir. 1995)).  Despite purporting to represent a class covering employees as far back as the beginning of 2011, Plaintiff was not employed by Varvatos, and has no knowledge of Varvatos policies or facts, before her hiring in August 2016.  Plaintiff also worked in only one of the twenty-plus stores whose employees she seeks to represent, in a store where there were no male sales associates during her tenure.  This is significant because the claims in this action require proof that each plaintiff performed work equal to that of a proper male comparator, and Plaintiff has no actual knowledge about the work or job of any male sales associate.  Indeed, Plaintiff's counsel has represented that Plaintiff may not even testify at trial because she has no relevant knowledge.  (*See* Pl.'s Mem. of Law in Opp'n to Def.'s Mots. to Compel, filed Nov. 20, 2017 (ECF No. 106) at 2.)  Separately, Plaintiff's appearance for a deposition and the submission of declarations drafted by counsel bearing Plaintiff's name do not suffice to prove that Plaintiff is sufficiently engaged in the lawsuit to adequately protect the interests of other plaintiffs, including against counsel's competing interest in maximizing attorneys' fees.

The conflicts between Plaintiff and potential class members, combined with Plaintiff's lack of relevant knowledge, preclude any finding of adequate representation and thus preclude certification of any class or subclass.

### ii.    Plaintiff's Counsel Lacks the Experience and Knowledge to Act as Class Counsel[9]

Plaintiff also bears the burden of proving that her proposed class counsel, D&S, will "fairly and adequately represent the interests" of each class and subclass.[10]  *See* Fed. R. Civ.

---

9.    Nothing in this section is intended be an *ad hominem* attack on Plaintiff's counsel.

P. 23(g)(4).  This is essentially a test of counsel's competence, requiring a court to consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).

**Identification or Investigation of Potential Claims.**  Plaintiff offers no argument or evidence of any work done by D&S to identify or investigate potential claims.  Given that Plaintiff bears the burden of proof, this factor weighs against certification.

**Relevant Experience.**  D&S has almost no relevant experience.  D&S is "An IP Litigation Boutique," and the overwhelming majority of its experience is in copyright, trademark, and patent infringement cases, not class actions, employment law, or discrimination law.[11]  (*See* Pace Decl. Ex. H ("The core of our practice involves representing patent, trademark, and copyright owners in litigation programs to protect their markets and monetize their intellectual property assets.").)  A Westlaw search shows only one case in which D&S attempted to litigate a class action, with D&S's client's claims dismissed.  *See generally McGarry & McGarry, LLP v. Bankr. Mgmt. Solutions, Inc.*, Case No. 16 CV 8914, 2017 WL 2619143 (N.D.

---

10. Courts in the Second Circuit are split over whether scrutiny of proposed class counsel falls under Rule 23(a)(4) or 23(g) since the 2003 amendments to Rule 23, but the difference is immaterial.  The analysis is "largely the same" under either subsection.  *See Kalish v. Karp & Kalamotousakis, LLP*, 246 F.R.D. 461, 463 (S.D.N.Y. 2007).

11. For example, D&S represented publishers in suing a law firm, alleging, *inter alia*, that submitting scientific articles to the U.S. Patent and Trademark Office as prior art as part of a patent application constituted copyright infringement.  *See* Jess Krochtengel, *Patent Attys' USPTO Applications Protected By Fair Use*, Law360 (May 22, 2013, 3:09 p.m.), https://www.law360.com/articles/442985/patent-attys-uspto-applications-protected-by-fair-use (noting the court's dismissal of those allegations).  Likewise, the Supreme Court case cited in the declaration of William Dunnegan, a D&S partner, involved a question of the state of mind required for patent infringement and was decided against D&S's client by a vote of 8-1.  *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011).  Plaintiff's motion and the supporting declarations do not disclose that D&S is primarily an intellectual property law firm and that its attorneys have almost no relevant experience.

Ill. June 16, 2017) (non-employment law case).  Similarly, a Westlaw search shows only one case in which D&S attempted to litigate any employment or discrimination matters, which case was also dismissed against D&S's client.  *See generally Hu v. Skadden, Arps, Slate, Meagher & Flom LLP*, 76 F. Supp. 2d 476 (S.D.N.Y. 1999) (non-class action; noting dismissal by the New York State Division of Human Rights and the EEOC, too).  In the *Hu* case, D&S filed a claim under the Age Discrimination in Employment Act ("ADEA") on behalf of a non-US citizen seeking a job outside of the United States despite the "clearly limited" extraterritorial scope of ADEA.  *Id.* at 477-78 (dismissing ADEA claim for lack of subject matter jurisdiction). Plaintiff's failure to establish any track record of success in class action litigation, employment law, or discrimination law precludes any finding that D&S will adequately represent any class or subclass.  *See Lewis v. Ford Motor Co.*, 263 F.R.D. 252, 266-68 (W.D. Pa. 2009) (denying certification).[12]

**Knowledge of Applicable Law.**  Plaintiff's argument on this factor is the unsupported assertion that D&S's "knowledge of the applicable law is adequate."[13]  (ECF No. 98 at 13.)  In reality, D&S's unfamiliarity with employment or discrimination law has threatened to prejudice Plaintiff and other potential plaintiffs throughout this litigation.  For example, D&S drafted for Plaintiff a letter to the EEOC that was intended to be a charge but omitted one of the very basic requirements for a valid charge, the verification required by 29 C.F.R. §§ 1601.9, 1601.3(a). (*See* ECF No. 51-1.)  Moreover, prior to the EEOC asking D&S if Plaintiff was requesting a right-to-sue letter, D&S was apparently unaware that Plaintiff could request such a letter before

---

12. The court in *Lewis* also took issue with counsel's briefing of the plaintiff's class certification motion.  *See* 263 F.R.D. at 267.  Here, Plaintiff's reliance throughout her brief on conjecture, rather than evidence, and repeated string citations without analysis should raise similar concerns.

13. Plaintiff's additional statement that she has not lost a "substantive motion" in this case is cute, given that the only motions decided by the Court to date have been procedural or discovery motions, not substantive motions.

the expiration of the EEOC's 180-day review period per 29 C.F.R. § 1601.28(a)(2), unnecessarily delaying these proceedings.  (*See* ECF No. 58-1.)  Even on this Motion, D&S has miscalculated the statute of limitations for Title VII claims by using the wrong limitations period[14] and the date Plaintiff mailed the letter rather than the date the EEOC received it, which would be the proper date.  (*See* ECF No. 98 at 19-20.)  As another example, D&S served Varvatos with a Rule 30(b)(6) deposition notice that sought testimony on Varvatos's "net sales" for certain years.  (*See* Pl.'s Not. of Rule 30(b)(6) Dep. to Def. Varvatos, dated Aug. 11, 2017 (ECF No. 73-1) at 15 (¶ 124).)  Volume of sales is only relevant to whether or not an entity is covered by the Equal Pay Act/Fair Labor Standards Act, and then it is only the *gross* volume— not *net*—that is relevant, which means the drafter of the notice misunderstood the relevant law.  *See* 29 U.S.C. § 203(s)(1)(A)(ii).  To date, it is not clear that Plaintiff has obtained any discovery on whether Varvatos is covered by the EPA/FLSA.  These examples indicate that D&S lacks sufficient knowledge of applicable law to adequately represent any class or subclass.[15]

**Resources.**  Plaintiff does not address and offers no evidence on the issue of whether D&S can commit sufficient resources to represent any class or subclass.  The available evidence indicates that D&S lacks sufficient resources.  For example, this is a purported nationwide class action and Varvatos disclosed key witnesses in East Hampton, Florida, and California (in addition to Manhattan), yet Plaintiff did not take the deposition of a single witness outside of Manhattan.  (Dec. 4 Pace Decl. ¶ 4.)  While Plaintiff initially noticed the depositions of two

---

14.  As discussed above, because D&S had Plaintiff commence this action before making any submission to the EEOC, Plaintiff and potential class members lost the benefit of the EEOC 300-day filing period and are limited to 180 days.  *See* Section I.A, *supra*.

15.  It also bears noting that D&S allowed Plaintiff's boyfriend/fiancé to participate in communications that would otherwise be privileged, under the mistaken belief that his participation would not destroy the attorney-client privilege.  (*See* Tr. of Oct. 24 Hr'g (ECF No. 96-5) at 18:18-19:22.)  Waiving/destroying privilege is a significant misstep that speaks to knowledge of the law.

80950224_4

Varvatos employees who work in East Hampton, Plaintiff abandoned the depositions because D&S did not want to expend the time to travel to and from East Hampton and did not want to incur the expense of staying there overnight.  (*See* ECF No. 113 ¶ 2.)  D&S's lack of resources or unwillingness to commit resources to this litigation weighs against a finding of adequate representation.

As the foregoing demonstrates, each of the four factors indicates that D&S would not adequately and fairly represent potential class members, meaning that Plaintiff has failed to satisfy the requirements of Rule 23(a) and (g).  That, in turn, precludes certification of any class or subclass.

## III.   Plaintiff Cannot Satisfy the Requirements of Rule 23(b)(3)

Rule 23(b)(3) requires Plaintiff to prove by a preponderance of the evidence that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Superiority, in turn, requires to consideration of four factors enumerated in the rule.  *See* Fed. R. Civ. P. 23(b)(3)(A)-(D).  As shown below, Plaintiff fails to satisfy the requirements of Rule 23(b)(3).

### A.   Common Questions Do Not Predominate

Plaintiff must prove that "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  This "predominance criterion is even more demanding than Rule 23(a)."  *Comcast Corp. v. Behrend*, 569 U.S. ___, 133 S. Ct. 1426, 1432 (2013) (citing *Amchem*).  "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each

member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. ___, 136 S. Ct. 1036, 1045 (2016) (quoting 2 William B. Rubenstein, Newberg on Class Actions § 4:50, at 196-97 (5th ed. 2012)).

Plaintiff's argument on predominance focuses on a few cherry-picked generalizations without reference to the actual elements of any claim (or to any evidence).  Conducting the required "rigorous" analysis reveals that individual questions predominate or, at the very least, are as prevalent as common questions.  For example, the central issue under both the 1980 NYSEPA and the 2016 NYSEPA is whether a proper, identifiable male comparator "in the same establishment" was paid wages for equal work at a higher rate than each plaintiff.  N.Y. Lab. L. § 194(1).  Thus, for the 1980 NYSEPA, each plaintiff must identify a specific male sales associate who worked in the same store at approximately the same time and show that he and she performed equal work.  For the 2016 NYSEPA, each plaintiff must identify a specific male sales associate who worked in the same county at approximately the same time and show that she and he performed equal work.  *See* N.Y. Lab. L. § 194(3) (subsection added effective 2016, expanding the definition of "establishment").  This central issue is an individual issue, not a common issue, because relevant evidence will vary from plaintiff to plaintiff.  Moreover, if, as Plaintiff alleges, "the standard for establishing liability under each statute is virtually identical" (ECF No. 98 at 10), this individual question will need to be answered for all claims.

Individual damages issues also predominate.  Under clear Supreme Court and Second Circuit precedent, "damages questions should be considered at the certification stage when weighing predominance issues."  *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 408 (2d Cir. 2015) (discussing *Comcast*).  "'[T]he fact that damages may have to be ascertained on an individual basis is . . . *a factor that we must consider* in deciding whether issues susceptible to generalized

26

proof "outweigh" individual issues.'" *Id.* (emphasis added) (quoting *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008)).  In this case, damages for each individual plaintiff would have to be calculated separately and would not involve "repetitive calculations," as Plaintiff asserts without support (*see* ECF No. 98 at 15).  The five laws underlying the claims in this case—the EPA, Title VII, the 1980 NYSEPA, the 2016 NYSEPA, and the NYSHRL— each have different measures of damages that vary based on the availability and amount of liquidated damages, the availability of punitive damages, the availability of costs and attorneys' fees, and other issues.  *See, e.g.*, 29 U.S.C. 260; 42 U.S.C. § 1981a; N.Y. Lab. L. § 198(1-a) (1980); N.Y. Lab. L. § 198(1-a) (2016); N.Y. Exec. L. § 297(9).

Plaintiff's failure to show the predominance of common questions based on the elements of each claim and the available evidence precludes certification of any class or subclass under Rule 23(b)(3).

### B.     A Class Action Is Not Superior to Other Available Methods

In addition to predominance, Plaintiff must prove by a preponderance of the evidence that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  The factors relevant to the superiority inquiry are: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).  Analysis of these factors shows that a class action would not be the superior means of litigation.

27

i.   **The Vast Majority of Potential Class Members Would Have a Greater Interest Than Plaintiff in Individually Controlling Litigation**

This factor relates to the "policy at the very core of the class action mechanism, which "is to overcome the problem that *small recoveries* do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 617 (emphasis added). "A class action solves this problem by aggregating the *relatively paltry potential recoveries* into something worth someone's (usually an attorney's) labor." *Id.* (emphasis added) (citation omitted). "This factor weighs against class certification where," as here, "each [potential] class member has suffered sizeable damages or has an emotional stake in the litigation." *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 444 (E.D. Cal. 2013) (citation omitted).

As discussed above (*see* Section II.A.vi, *supra*), Plaintiff seeks $24,000 in this action and had sufficient incentive to find counsel and file her own lawsuit. According to Plaintiff's theory of damages, damages increase with length of tenure. (*See* ECF No. 98 at 8.) As Plaintiff is aware, the vast majority of potential class members had longer tenures than Plaintiff and thus could expect larger damage awards than her, meaning that they have greater incentive to control the prosecution of any claims against Varvatos. Most of the awards for successful claims could be between $100,000 and $400,000. *Cf.* N.Y. Lab. L. § 198(1-a) (2016); 42 U.S.C. § 1981a(b)(3). Rather than the "relatively paltry potential recoveries" that justify a class action, these are precisely the "sizeable damages" that weigh heavily against certification.

Plaintiff relies on the unsupported conjecture that many potential class members "may not reasonably expect to recover enough money in damages to justify the effort and expense of retaining counsel and initiating a lawsuit." (ECF No. 98 at 16 (failing to identify who or how many potential class members this might include).) But Plaintiff ignores the size of potential recoveries and also ignores that the claims in this case provide for statutory attorneys' fees and,

28

further, that most plaintiff-side employment attorneys work on contingency in discrimination cases. None of the cases cited by Plaintiff involved potential recoveries as large as those here and none were employment law cases where statutory attorneys' fees factored into the calculus.

Because most other potential plaintiffs would have a greater interest in individually controlling any litigation,[16] this factor weighs heavily against any finding that the class action mechanism is superior.

### ii.     The Pending Litigation Factor Weighs Against Certification

There is no other pending litigation, but contrary to Plaintiff's contention, that fact weighs against certification. As discussed above (*see* Section II.A.i, *supra*), the Court previously noted that Varvatos "explicitly acknowledges the existence of the male-only [C]lothing [A]llowance policy" in a document that was disseminated to all sales associates. *Knox*, 2017 WL 4675781, at *11 n.6. Documents similarly informing female sale associates that only males receive a Clothing Allowance have been disseminated since at least early 2013, yet not one female sales associate other than Plaintiff has ever commenced an action alleging that the Clothing Allowance violates any law. The inescapable conclusion, supported by deposition testimony, is that Varvatos's female sales associates do not think that the Clothing Allowance is unlawfully discriminatory. (*See* Dec. 4 Pace Decl. Ex. D at 91:21-23.) The class action mechanism is inferior in this case precisely because it would force these female sales associates, who do not think there is any basis for a claim against Varvatos, to either participate in this lawsuit or affirmatively opt out. Accordingly, this factor weighs heavily against any finding of superiority.

---

16. In addition to their sizeable recoveries, other potential class members would want to control litigation and sideline Plaintiff for all of the conflicts, credibility, and other reasons discussed in the adequacy analysis. *See* Section II.B.i, *supra.*

### iii.  The Forum Factor Is Neutral

Varvatos agrees that this District is the ideal forum for litigating this and any related actions.  However, Plaintiff does not argue, much less prove, that any individual actions would be filed anywhere other than this District if a class is not certified.  (*See* ECF No. 98 at 17-18.)  Moreover, any action filed elsewhere would likely be transferred to this District because, as Plaintiff concedes, most witnesses and records are located here.  *See* 28 U.S.C. § 1404(a) (permitting transfer "[f]or the convenience of parties and witnesses"), § 1391(b)(1) (making this District a proper venue for suits against Varvatos).  Accordingly, this factor does not make a class action superior and does not favor certification.

### iv.  The Difficulties Factor Weighs Against Certification

Plaintiff does not squarely address the final factor in the superiority analysis, which looks at "the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(D).  Plaintiff does not argue, much less prove, that a class action would be any easier than individual actions.  In fact, given that Plaintiff seeks to combine subclasses covered by laws with drastically varying statutes of limitations, geographic scopes, available damages, scienter and other evidentiary requirements, and defenses, it appears that managing a class action would present unique difficulties.

Because none of the factors weighs in favor of a class action being superior to other available methods, Plaintiff has failed to carry her burden under Rule 23(b)(3), precluding certification of any class or subclass.

## IV.  Plaintiff's Failure to Meet All of the Requirements of Rule 23(a) and 23(b) Precludes Certification Under Rule 23(c)(4)

Plaintiff seeks certification of a class for discrete issues under Rule 23(c)(4) as an alternative where the proposed subclasses cannot meet the requirements of Rule 23(b)(3).  (*See*

30

ECF No. 98 at 20-21.)  However, Plaintiff ignores that she still must satisfy the requirements of both Rule 23(a) and (b) with respect to each issue she seeks to have determined on a classwide basis.  *Pelman v. McDonald's Corp.*, 272 F.R.D. 82, 85 (S.D.N.Y. 2010) (denying certification of individual issues because of insufficient evidence to establish numerosity).  Plaintiff does not explain, much less prove, how the requirements of Rule 23(a) and (b) are satisfied by limiting determination to any of the issues it lists.  As shown above, Plaintiff cannot satisfy Rule 23(a) or (b), precluding certification of any class or subclass.  (*See* Sections II-III, *supra*.)

## **CONCLUSION**

For the foregoing reasons, Varvatos respectfully requests that the Court deny the motion for class certification with prejudice.

Dated: New York, New York
           December 4, 2017

Respectfully submitted,

HUGHES HUBBARD & REED LLP

By:_____/s/Ned H. Bassen_____
       Ned H. Bassen
       Jordan E. Pace
One Battery Park Plaza
New York, New York 10004-1482
Telephone:  212-837-6000
Facsimile:  212-422-4726
ned.bassen@hugheshubbard.com
jordan.pace@hugheshubbard.com

*Attorneys for Defendant John*
*Varvatos Enterprises, Inc.*

31

80950224_4