DUNNEGAN & SCILEPPI LLC
ATTORNEYS AT LAW
350 FIFTH AVENUE
NEW YORK, NEW YORK 10118

212-332-8300
212-332-8301 TELECOPIER

March 29, 2018

By ECF

Hon. Gabriel W. Gorenstein
United States Magistrate Judge
Daniel Patrick Moynihan
 United States Courthouse
500 Pearl Street
New York, New York 10007

Re: Knox v. John Varvatos Enterprises
17 Civ. 772 (GWG)

Dear Judge Gorenstein,

      Pursuant to Paragraph 2.A of the Court's Individual Practices, the parties jointly submit this letter concerning a discovery dispute. The opt-in plaintiffs request a pre-motion conference in anticipation of a motion for a protective order barring the depositions of opt-in plaintiffs who reside outside of the State of New York, under Rule 26(b)(2)(C), or alternatively, allowing the opt-in plaintiffs to be deposed remotely, under Rule 30(b)(4).

      On October 17, 2017, the Court conditionally certified the EPA claims in this action as a collective action. (Dkt. 84) On February 6, 2018, the Court set April 6, 2018 as the deadline for collective action discovery, and issued several discovery orders. Since March 1, 2018, when the Court dismissed opt-in plaintiffs Sirena Herd and Karla Gomez-Navarro from the collective action (Dkt. 160), there are 13 opt-in plaintiffs in the collective action.

      On February 15, 2018, Varvatos served, on each of the 13 opt-in plaintiffs, 18 requests for the production of documents or tangible things, 16 interrogatories, and 50 requests for admission.

      On March 14, 2018, counsel for Varvatos served notices of deposition on four of the opt-in plaintiffs: (a) Ruby Romero, residing in New York, New York ("Romero"); (b) Pamela Kassen, residing in Los Angeles, California ("Kassen"); (c) Joy Fusaro, residing in Las Vegas, Nevada ("Fusaro"); and (d) Laurentina Chaparro, residing in Seattle, Washington ("Chaparro"). Kassen and Fusaro are current Varvatos employees and work at Varvatos retail stores in Los Angeles and Las Vegas, respectively. The four depositions were noticed for April 3 and April 4, 2018, at the offices of Varvatos's counsel, Hughes Hubbard and Reed LLP, in New York, New

York.  Varvatos anticipates needing roughly four hours to depose each of the noticed opt-in plaintiffs.  Although discovery for the opt-in plaintiffs is scheduled to end on April 6, the parties are willing to agree to a short extension of that period if necessary to accommodate scheduling any opt-in plaintiff depositions that the Court allows.

The parties held a telephonic meet and confer regarding the depositions on March 16, 2018, which lasted for about 10 minutes.  William Dunnegan and Richard Weiss participated on behalf of the opt-in plaintiffs and Brett Collings participated on behalf of Varvatos.  In particular, Mr. Weiss asked if Varvatos would consider alternatives to in-person depositions of Kassen, Fusaro, and Chaparro, who reside thousands of miles from this forum, including taking the depositions remotely, by telephone or videoconference.  Mr. Collings expressed his preference for in-person depositions, but would consider the opt-in plaintiffs' proposal.  In an email dated March 19, 2018, however, Mr. Collings maintained the need for in-person depositions.  In a separate telephonic meet and confer on March 22, 2018 (with the same attorneys present), the parties confirmed that Romero could appear for an in-person deposition, but that they were at an impasse with regard to the three out of state deponents, and that the opt-in plaintiffs would request a conference with the Court.  The respective positions of the parties are set forth as follows.

I.      Statement of the Opt-In Plaintiffs

A.      Varvatos Has No Need To Depose These Opt-In Plaintiffs.

Under Rule 26(b)(2)(C), the Court "must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; [or] (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action."  Here, the Court should bar Varvatos from deposing the out of state plaintiffs because the discovery sought is both unreasonably cumulative and duplicative of evidence already discovered, and Varvatos has better sources of information than these plaintiffs.

The Equal Pay Act violation in this case concerns a nationwide policy.  Under this policy, Varvatos provides each of its male sales associates with an annual clothing allowance of $12,000 of free Varvatos clothing (the "Clothing Allowance"), and provides its female sales associates with no clothing allowance at all.  Varvatos justifies the Clothing Allowance on the ground that it is necessary to accomplish its policy of having its male sales associates comply with the Male Dress Code, which requires male sales associates to wear Varvatos clothing while working in the store.

Given the acknowledged existence of the Clothing Allowance, Mr. Weiss asked Mr. Collings what Varvatos sought to discover in the noticed-depositions.  Mr. Collings responded that Varvatos wanted to get a general "flavor" of how the Clothing Allowance and Male Dress Code worked nationwide, and over a longer period of time, and to that end sought to depose a representative sample of opt-in plaintiffs.

Varvatos admits that the Clothing Allowance exists, and that it operates nationwide. Nicole Chang, Varvatos's Senior Director of Human Resources ("Chang"), and Ben Harris, Varvatos' Vice President of Retail ("Harris"), have also testified, at their Rule 30(b)(1) depositions, that the jobs performed by sales associates at each Varvatos store in the United States are the same. (Chang Deposition, 6.29.2017 at 52:13-16; Harris Deposition, 7.26.2017 at 62:9-17)

Given these facts, and the extensive discovery requests that Varvatos has already served on each of the opt-in plaintiffs, there is no valid purpose to deposing any of the opt-in plaintiffs.

If Varvatos was actually interested in discovering how the Clothing Allowance and Male Dress Code operate in practice, Varvatos would consult its own employees who are not plaintiffs in either the collective or class action. Three such employees have already testified at length about how the Clothing Allowance works: (i) Chang; (ii) Harris; and (iii) Gerard Mayorga, who has been a beneficiary of the Clothing Allowance since he began working for Varvatos in 2002. It is particularly incongruous to seek 16 hours of additional testimony from the opt-in plaintiffs about the operation of the Clothing Allowance, given that they do not receive it, and the Male Dress Code, given that they are not obligated to comply with it.

B.   The Out-of-State Deponents Should Be Deposed Remotely.

Under Rule 30(b)(4), the Court may order "that a deposition be taken by telephone or other remote means." In the event that the Court determines the depositions should go forward, the opt-in plaintiffs request that Kassen, Fusaro, and Chaparro be permitted to testify remotely, via telephone or videoconference.

For each of the out-of-state deponents, the burden of traveling to New York for a 4-hour deposition is substantial. Each would need to take time off work and purchase a round trip ticket and accommodations in New York that could easily total several hundreds of dollars. Additionally, the travel time in each direction for flights from Los Angeles, Las Vegas, and Seattle exceeds 5 hours – longer than each deposition will take.

Courts routinely permit opt-in plaintiffs in a FLSA collective action to be deposed remotely, at defendant's expense, in lieu of requiring opt-in plaintiffs to travel far distances to be deposed. See e.g. Forauer v. Vermont Country Store, Inc., 12 Civ. 276, 2014 WL 2612044, at *7 (D. Vt. June 11, 2014)("...the court ORDERS that these Plaintiffs may be deposed by remote means pursuant to Rule 30(b)(4)."); Allen v. Sears Roebuck & Co., 07 Civ. 11706, 2010 WL 1417644, at *2 (E.D. Mich. Apr. 5, 2010)("Additionally, in lieu of in-person depositions, Defendants may at their expense take telephone or video conference depositions of the opt-in Plaintiffs."); Brasfield v. Source Broadband Servs., LLC, 255 F.R.D. 447, 450 (W.D. Tenn. 2008)("Accordingly, in an effort to support the policies behind the FLSA and alleviate unnecessary burden, the out-of-state opt-in plaintiffs will not be required to travel to Memphis for an oral deposition."); Solais v. Vesuvio's II Pizza & Grill, Inc., 15 Civ. 227, 2015 WL

6110859, at *10 (M.D.N.C. Oct. 16, 2015)("Courts frequently order remote depositions of FLSA plaintiffs at the expense of FLSA defendants.").

This use of Rule 30(b)(4) is particularly appropriate in FLSA collective actions, because unlike in most situations, the opt-in plaintiffs do not choose the forum. Brasfield, at 450 ("In the present case, the plaintiffs residing far away from Memphis have opted-into this lawsuit. They did not choose the forum; the forum was chosen for them."); Whitmer v. Lush Cosmetics NY, LLC, 10 Civ. 298 (SPC), 2011 WL 13143147, at *3 (M.D. Fla. Dec. 7, 2011)("It would be unreasonable to Plaintiffs to attend depositions in the Middle District of Florida. Plaintiffs did not choose the Middle District as his forum, the forum was chosen for them."); Forauer v. Vermont Country Store, Inc., 12 Civ. 276, 2014 WL 2612044, at *6 (D. Vt. June 11, 2014) ("While VCS is correct to point out that Plaintiffs have voluntarily opted in to a lawsuit in the District of Vermont, they 'did not choose the forum; the forum was chosen for them,' Brasfield, 255 F.R.D. at 450, because it is in the District of Vermont where Plaintiffs' cause of action arises."). Had the opt-in plaintiffs refused to opt-in, "they would be forced to file an individual suit in their home forum, thus destroying the benefit to the judicial system of a collective action and efficient resolution of the matter." Brasfield, at 450.

Moreover, allowing plaintiffs to be deposed remotely furthers the goals of the FLSA. "A collective action allows...plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989). "Here, this advantage would be significantly reduced or even eliminated if the proposed deponents are required to travel hundreds of miles for their depositions." Gee v. Suntrust Mortg., Inc., 10 Civ. 1509 (RS)(NC), 2011 WL 5597124, at *2 (N.D. Cal. Nov. 15, 2011)). See also Whitmer v. Lush Cosmetics NY, LLC, 10 Civ. 298 (SPC), 2011 WL 13143147, at *3 (M.D. Fla. Dec. 7, 2011)("In further consideration of the policy behind collective actions, forcing Plaintiffs' counsel to pay for transportation to Florida, local transportation once in Florida, hotel accommodations, lost income, and other expenses would cancel the benefit of joining a collective action suit, in turn, deterring other plaintiffs from entering a collective action."); Brasfield, at 450 ("Furthermore, considering the policy behind the FLSA encouraging collective actions so that plaintiffs may pool their resources, requiring the out-of-state opt-in plaintiffs to travel to Memphis for a deposition would place a burden on them that would cancel much of the benefit gained by joining in the collective action.").

II.     Statement of Varvatos

A.     Varvatos Should Be Permitted To Depose Four Opt-In Plaintiffs.

Varvatos only noticed depositions for four of the 13 opt-in plaintiffs who remain part of the collective action. As the cases Plaintiffs cite in support for their argument that the out-of-state plaintiffs should be deposed remotely make clear, taking depositions of a relatively small sample of a pool of opt-in plaintiffs in FLSA collective actions is commonplace. Whitmer, 2011 WL 13143147, at *2; Forauer, 2014 WL 2612044, at *4 (citing Krueger v. N.Y. Tel. Co., 163 F.R.D. 446, 451-51 (S.D.N.Y. 1995); Smith v. Lowe's Home Centers, Inc., 236 F.R.D. 354, 357-58 (S.D. Oh. 2006). Indeed, in Whitmer, the court specifically noted that the deposition of

roughly one-third of the opt-in class was appropriate – essentially the same proportion of plaintiffs that Varvatos seeks to depose here. 2011 WL 13143147, at *2.

Neither the cases on which the opt-in plaintiffs rely nor the Federal Rules of Civil Procedure support the notion that Varvatos should be barred from deposing any of the opt-in plaintiffs. Indeed, there are generally "'two lines of cases regarding individualized discovery in opt-in class actions': one allowing all opt-in plaintiffs to be subject to discovery and one allowing only a sample of opt-in plaintiffs to be subject to discovery." Lloyd v. J.P. Morgan Chase & Co., No. 11 Civ. 9305 (LTS)(HBP), 2015 WL 1283681, at *3 (S.D.N.Y. Mar. 20, 2015); Forauer, 2014 WL 2612044, at *2. Here, Varvatos has already chosen the less burdensome route, by identifying a small sample of opt-in plaintiffs to depose. See Allen, 2010 WL 1417644, at *2 (permitting defendant to depose *the entire* class of 20 opt-in plaintiffs because the class was small). And Varvatos has further lessened the burden on the opt-in plaintiffs by noticing only half-day depositions. See id. (noting that the burden on plaintiffs would be lessened if depositions were limited to three hours). There is no basis to deprive Varvatos of the right to depose just four of the opt-in class members for up to four hours each.

Contrary to the opt-in plaintiffs' assertions, Varvatos has a legitimate need to depose them. While the Clothing Allowance did indeed apply nationwide, key elements to the legal analysis of the propriety of the Clothing Allowance are the skill, effort, and responsibility required of male and female sales professionals at Varvatos's stores. While at the highest level, the jobs performed by sales professionals at Varvatos stores may be similar, Varvatos is entitled to question the opt-in plaintiffs about the specific types of skills required to perform their jobs, the sales strategies they and their male colleagues employed (and whether they differed), how they interacted with and relied on their male colleagues, how they personally complied with Varvatos's dress code as it applied to female associates, and other elements of their job responsibilities. Clearly the specifics of each plaintiff's response to those lines of inquiry likely will vary and warrant Varvatos's deposition of a small sample of plaintiffs.

Indeed, the interrogatory responses and responses to Varvatos's requests for admission by the four opt-in plaintiffs whom Varvatos seeks to depose varied on a number of topics, including how much money they spent on clothing for work, what brands of clothing they purchased to comply with the dress code for female sales professionals, and how they interacted with their male colleagues. Varvatos has the right to elicit testimony to obtain more detailed information on those – and other – topics that are central to its defenses in this case and that cannot be painted with the broad brush that counsel for the opt-in plaintiffs suggests applies to the issues in this case.

Varvatos noticed depositions of a small sample of plaintiffs who worked at different stores and for relatively long periods of time precisely in order to obtain testimony from opt-in plaintiffs more likely to have substantial experience and insight, as well as different facts that may result from working in different locations. This sampling methodology is both reasonable and entirely consistent with general practice in opt-in class actions. "Protective orders totally prohibiting the deposition of an individual are rarely granted absent extraordinary circumstances." Conti v. Am. Axle & Mfg., Inc., No. 05-cv-72335, 2007 WL 850998, at *1

Hon. Gabriel W. Gorenstein
March 29, 2018
Page 6 of 7

(E.D. Mich., March 16, 2007).  Certainly no such circumstances exist here that would warrant the drastic step of preventing Varvatos from deposing a small set of plaintiffs.

B.	The Opt-In Plaintiffs' Depositions Should Take Place In New York

As an initial matter, if the Court agrees that Varvatos has the right to depose the four opt-in plaintiffs on whom it served notices of deposition, Romero's deposition can certainly proceed in New York because she both lives and works in New York – yet another concession Varvatos made to ease the burden on the opt-in plaintiffs when it selected the small sample of plaintiffs to depose.  With respect to the remaining three plaintiffs (the "Non-Resident Opt-Ins"), Varvatos should also be permitted to conduct in-person depositions in New York.

"[I]t is well settled that a plaintiff is ordinarily required to make him or herself available for a deposition in the jurisdiction in which the action is brought." A.I.A. Holdings v. Lehman Bros., No. 97 Civ. 4978 (LMM)(HBP), 2002 WL 1041356, at *1 (S.D.N.Y. May 20, 2002); see also Atifah v. Union Sec. Ins. Co., No. 08-10042, 2008 WL 2714459, at *1 (E.D. Mich. July 8, 2008) ("Plaintiffs are generally required to make themselves available for examination in the district in which the suit is brought unless doing so creates an unreasonable hardship.").  It is standard practice for the party noticing a deposition to select the location, and for that location to be the venue in which the related lawsuit is proceeding.  The relief counsel for the Non-Resident Opt-Ins seeks in this instance – forcing Varvatos to take their depositions remotely – is an exception to both of those general practices.

Courts can order depositions to be conducted remotely if, for example, the monetary value of the plaintiffs' claims are low and travel would pose a substantial hardship. Zito v. Leasecomm Corp., 233 F.R.D. 395, 398 (S.D.N.Y. 2006).  The Non-Resident Opt-Ins also rely on cases holding that collective actions, and the FLSA in particular, are unique because opt-in plaintiffs do not choose their forum and the FLSA has broad remedial purposes.  However, even FLSA plaintiffs are "generally required to appear for deposition in the jurisdiction where the FLSA action was filed." Gipson v. Sw. Bell Tel. Co., 2008 WL 4499972, at *5-6 (D. Kan. Oct. 1, 2008).  FLSA plaintiffs may only be excused from the general requirement of appearing in the venue where an action is proceeding if doing so poses an "undue" burden or expense, such as where the cost to travel to a deposition approaches or exceeds the plaintiff's potential recovery. Id.; Peterson v. Alaska Commc'ns Sys. Group, Inc., No. 3:12-cv-00090-TMB, 2017 WL 2312952, at *4-5 (D. Alaska Mar. 6, 2017).

Here, however, based on the Non-Resident Opt-Ins' tenure with Varvatos and their allegations in this case, their compensatory and liquidated damages alone could total close to $100,000 for each plaintiff Thus, the expense of traveling to New York for a deposition does not present the type of "undue" burden it might in other FLSA collective actions where the cost of attending a deposition is substantially closer to (or even greater than) the damages plaintiffs are seeking. Peterson, 2017 WL 2312952, at *4-5 (requiring FLSA opt-in plaintiff to travel from New York to Anchorage to be deposed because he sought over $200,000 in damages which was "an amount well in excess of the cost of travel to an accommodation in Anchorage").

      Moreover, Varvatos has repeatedly expressed its willingness to coordinate with the Non-Resident Opt-Ins to schedule depositions for days and times that will reduce whatever inconvenience is associated with coming to New York for the depositions. And while the Non-Resident Opt-Ins claim that Varvatos's willingness to limit the depositions to a half-day each weighs against requiring their appearance in-person, in fact the brevity of the depositions both serves the general economy of the discovery process and will make it easier for the Non-Resident Opt-Ins to travel to New York for their testimony without having to stay for additional days or miss additional time at work.

Respectfully submitted,

| DUNNEGAN & SCILEPPLI LLC | HUGHES HUBBARD & REED LLP |
|---|---|
| By:   s/William Dunnegan<br>   William Dunnegan (WD9316)<br>   Richard Weiss (RW4039)<br>350 Fifth Avenue<br>New York, New York 10118<br>Tel: (212) 332-8300<br>Fax: (212) 332-8301<br>wd@dunnegan.com<br>rw@dunnegan.com<br><br>*Attorneys for Plaintiff Tessa Knox*<br> *And the Opt-In Plaintiffs* | By:   s/Brett M. Collings<br>   Ned H. Bassen<br>   Brett M. Collings<br>One Battery Park Plaza<br>New York, New York 10004<br>Tel: (212) 837-6467<br>Fax: (212) 422-4726<br>ned.bassen@hugheshubbard.com<br>brett.collings@hugheshubbard.com<br><br>*Attorneys for Defendant John Varvatos*<br> *Enterprises, Inc.* |