**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TESSA KNOX

                    Plaintiff,

        v.

JOHN VARVATOS ENTERPRISES, INC.
                    Defendant.

Civil Action No.  1:17-cv-00772 (GWG)

**DEFENDANT JOHN VARVATOS ENTERPRISES, INC.'S MEMORANDUM OF LAW**
**IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

PLAINTIFFS' MISCHARACTERIZATION OF THE material FACTS .......................3

   The Varvatos Clothing Allowance.................................................................. 4

   Job Duties of Male and Female Sales Professionals........................................... 7

   Corporate Employees and Store Oversight....................................................... 9

ARGUMENT .......................................................................................................11

   I.   None of the Plaintiffs Are Entitled to Summary Judgment on Their
       Title VII or New York State Human Rights Law Claims.....................................11

       A.   Plaintiffs Cannot Rely on Circumstantial Evidence to
           Demonstrate That Varvatos Acted With Discriminatory
           Intent. ....................................................................................12

       B.   The Clothing Allowance Policy is Not Facially
           Discriminatory. ........................................................................15

       C.   Plaintiffs Do Not Establish That They Exhausted
           Administrative Remedies Prior to Filing Their Title VII
           Claim......................................................................................18

       D.   Varvatos Has Valid Affirmative Defenses to Plaintiffs'
           Title VII Claim.........................................................................18

       E.   Plaintiffs Who Were Employed by Varvatos in New York
           Are Not Entitled to Summary Judgment on Their New
           York Human Rights Law Claim. ..................................................24

   II.   None of the Plaintiffs Are Entitled to Summary Judgment on Their
       Equal Pay Act Claim..........................................................................24

       A.   Plaintiffs Cannot Establish That the Clothing Allowance
           Male Sales Professionals Receive Constitutes a "Wage"
           Under the EPA. ........................................................................24

       B.   Plaintiffs Cannot Establish That Sales Professionals
           Working at Different Varvatos Stores Worked in the Same
           "Establishment." ......................................................................26

       C.   Male and Female Sales Professionals Do Not Perform
           Equal Work. ............................................................................28

**TABLE OF CONTENTS** – cont'd.

**Page**

D.    The Roles of Male and Female Sales Professionals Require Different Skills.................................................................29

E.    The Roles of Male and Female Sales Professionals Require Different Effort. .........................................................30

F.    Male and Female Sales Professionals Have Different Responsibilities. ...................................................................31

G.    The Clothing Allowance Is Based on a Factor Other Than Sex.......................................................................................32

H.    Plaintiffs Are Not Entitled to Summary Judgment Under New York Labor Law § 194. ..........................................33

CONCLUSION....................................................................................................34

84235158_2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Belfi v. Prendergast*, 191 F.3d 129 (2d. Cir 1999) ....................................................20, 33

*Brennan v. Prince William Hosp. Corp.*, 503 F.2d 282 (4th Cir. 1974).......................21

*Byrne v. Telesector Res. Group, Inc.*, 339 Fed. App'x 13 (2d Cir. 2009) ....................28

*City of Los Angeles Department of Water & Power v. Manhart*, 435 U.S. 702
    (1978)..................................................................................................13, 14, 20

*County of Washington v. Gunther*, 452 U.S. 161 (1981)..............................................11

*Crane v. Vision Quest Nat.*, 2000 WL 1230465 (E.D. Pa. Aug. 23, 2000) ..................17

*Dreves v. Hudson Group (HG) Retail, LLC*, 2013 WL 2634429 (D. Vt. June 12,
    2013) .................................................................................................................20

*E.E.O.C. v. Catholic Healthcare W.*, 530 F. Supp.2d 1096 (C.D. Cal. 2008)..............17

*E.E.O.C. v. Johnson & Higgins, Inc.*, 887 F. Supp. 682 (S.D.N.Y. 1995) ...................17

*E.E.O.C. v. Madison Cmty. Unit Sch. Dist. No. 12*, 818 F.2d 577 (7th Cir. 1987).......21

*E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247 (2d Cir. 2014) ......................28, 29

*Francis v. City of New York*, 235 F.3d 763 (2d Cir. 2000)...........................................18

*Gad v. Kansas State Univ.* 787 F.3d 1032 (10th Cir. 2015) .........................................18

*International Union of United Automotive, Aerospace & Agricultural Implement
    Workers of America, UAW v. Johnson Controls, Inc.*, 499 U.S. 187 (1991)....................13, 14

*Johnson v. New York*, 49 F.3d 75 (2d Cir. 1995).........................................................17

*Kassman v. KPMG LLP*, 2014 WL 3298884 (S.D.N.Y. July 8, 2014) .........................27

*Kearney v. ABN AMRO, Inc.*, 738 F. Supp. 2d 419 (S.D.N.Y. 2010) ..........................11

*Kpaka v. City Univ. of N.Y.*, 708 Fed. App'x 703 (2d Cir. 2017)..................................11

*Ricci v. DeStefano*, 557 U.S. 557 (2009) .....................................................................11

*Rosen v. Thornburgh*, 928 F.2d 528 (2d Cir. 1991).................................................12, 13

## TABLE OF AUTHORITIES – cont'd.

Page(s)

*Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217 (2d Cir. 2008) ...........................................24

*Schleicher v. Preferred Solutions, Inc.*, 831 F.3d 746 (6th Cir. 2016) ...........................................20

*Talwar v. Staten Island Univ. Hosp.*, 610 Fed App'x 28 (2d Cir. 2015) .......................................34

*Tomka v. Seilier Corp.*, 66 F.3d 1295 (2d Cir. 1995) ...................................................................28

*Truelove v. Northeast Capital*, 95 N.Y.2d 220 (N.Y. 2000) ..........................................................33

**Statutes and Rules**

Equal Pay Act ............................................................................................................. *passim*

New York Human Rights Law ...................................................................................10, 24

New York Labor Law § 190(1) ........................................................................................33

New York Labor Law § 194 .............................................................................................33

Title VII ..................................................................................................................... *passim*

**Regulations**

29 C.F.R. § 1601 ..............................................................................................................18

29 C.F.R. § 1604 ..............................................................................................................22

29 C.F.R. § 1620 ..............................................................................................25, 26, 28, 31

Defendant John Varvatos Enterprises, Inc. ("Varvatos") respectfully submits this memorandum of law in opposition to Plaintiffs' motion for summary judgment on the four claims asserted in this action.

## INTRODUCTION

Plaintiffs' motion for summary judgment fails for a number of reasons.  The principal one is that the clothing allowance that Varvatos provides to male sales professionals differs from the clothing allowance Varvatos provides to female sales professionals not because of sex.  It is undisputed that Varvatos does not provide a different clothing allowance, or even any clothing allowance, to all its male employees.  Rather, Varvatos provides a different clothing allowance to those of its male employees who are required to wear/model Varvatos clothing at work and, thus, have to buy such clothing.  Accordingly, the form of clothing allowance that Varvatos provides to male sales professionals is based on their job duties.  Sex is not the – or even a – differentiating factor.  Job duties dictate which type of clothing allowance, if any, that employees receive from Varvatos and, as discussed below, the job duties of Varvatos male and female sales professionals are not the same.

Plaintiffs attempt to overcome these material and determinative facts by mischaracterizing the undisputed facts to create the misimpression that male and female sales professionals at Varvatos have the same job duties but that the male sales professionals receive a benefit that female sales professionals do not.  This simply is not true.  It is undisputed that Varvatos's male sales professionals are required to wear/model Varvatos clothing (which necessitates them purchasing it), as well as provide product knowledge about the clothing they wear to their co-workers and customers, whereas Varvatos's female sales professionals are not.  Plaintiffs repeatedly concede that the Varvatos dress code differs for male and female sales professionals.  However, Plaintiffs attempt to hide that male and female sales professionals have

1

different job duties and that male sales professionals have a burden that female sales professionals lack – to wear/model Varvatos clothing, and thus to buy the same, as well as to be knowledgeable about the Varvatos clothing that they are required to wear/model.

Plaintiffs also erroneously claim that Varvatos pays for 100% of the cost of its male sales professionals' work clothing and 0% of the cost of its female sales professionals' work clothing. In reality, the clothing allowance provided to male sales professionals is frequently insufficient to cover the cost of their full work wardrobe.   In contrast, female sales professionals are allowed to wear any of the numerous brands of clothing that comply with the Varvatos female dress code, and are also provided with a discount – that male sales professionals do not receive – at a sister company, AllSaints, that sells clothing appropriate for them to wear at work at Varvatos.  Thus, while Plaintiffs attempt to artificially differentiate between the AllSaints clothing allowance that only female sales professionals receive and the Varvatos clothing "pull" allowance that male sales professionals receive, they both constitute a clothing allowance related to each group's different  job duties.  Moreover, when Varvatos discontinued its women's clothing line some years ago and no longer required its female sales professionals to wear/model Varvatos clothing to work, Varvatos added a stipend to its female sales professionals' pay.  No such stipend was added to their male colleagues' pay.

Plaintiffs ignore and/or attempt to hide the critical differences between male and female sales professionals' job duties, which flow from the undisputed fact that Varvatos designs and sells only men's clothing.  Instead, Plaintiffs rely on the non-material facts that Varvatos's job description for sales professional does not distinguish between men and women and that Varvatos has a gender-neutral hiring policy.  What is material and undisputed here, and mischaracterized by Plaintiffs, is that Varvatos's male and female sales professionals in fact have

different job duties – not whether they are formally given different titles or hired for technically different positions.

In this case, it is undisputed that Varvatos male sales professionals are required to wear/model, and thus buy, current-season Varvatos clothing, which is expensive, and that female sales professionals are not.  It also is undisputed that, unlike Varvatos's male sales professionals, Varvatos's female sales professionals can wear clothing from dozens of brands at work, many of which are substantially less expensive than Varvatos clothing, or they can wear clothing they already owned prior to working at Varvatos.

Thus, Plaintiffs are not entitled to summary judgment on any of their claims.  Only those male employees required to wear/model Varvatos clothing at work receive any sort of clothing allowance different from what female sales professionals receive, and during the time that female sales professionals had to wear Varvatos clothing at work because Varvatos also then designed and sold women's clothing, the Varvatos female sales professionals received the same type of Varvatos clothing allowance that the male sales professionals now receive.  Thus, the clothing allowance is based on job duties, which, in turn, are based on the essential purpose of Varvatos's business – selling men's clothing, in this case by bringing attention to the look and fit of the men's clothing for sale at Varvatos's stores.

## PLAINTIFFS' MISCHARACTERIZATION OF THE MATERIAL FACTS

Although the material facts of this case are straightforward and undisputed, Plaintiffs present them in a misleading manner that obfuscates the different job duties of male and female sales professionals as well as the applicability of the clothing allowances that male and female sales professionals receive.

3

*The Varvatos Clothing Allowance Policy*

As an initial mater, Plaintiffs artificially distinguish between the clothing allowance provided solely to male sales professionals and the clothing allowance provided solely to female sales professionals in the form of an AllSaints discount. Despite Plaintiffs' attempt to assign them different names and distinguish them in nature, they both operate to allow sales professionals to obtain clothing they are required to wear for work at a reduced cost. And the type of discount provided to male and female sales professionals is directly tied to the requirements and obligations placed upon them by the Varvatos dress code.

Further, Plaintiffs simply state that male sales professionals at full price Varvatos stores can obtain up to $12,000 annually in Varvatos clothing for free, divided up among four clothing "pulls." (May 24, 2018 Memorandum of the Plaintiff, the 13 Opt-In Plaintiffs and the Class in Support of Their Motion for Summary Judgment on Liability on the Four Claims Asserted in This Action ("Pls.' Br.") at 5-6.) What Plaintiffs fail to explain is how the Varvatos clothing allowance provided to male sales professionals is closely tied to the release of Varvatos's new seasonal lines of clothing. Specifically, each time a new seasonal line is released, male sales professionals are permitted to select up to $3,000 worth of clothing (at full retail price) from that season's line that they then wear at work. (May 23, 2018 Declaration of Gerard Mayorga in Support of Varvatos's Motion for Summary Judgment ("Mayorga Decl.") ¶ 15; August 31, 2017 Declaration of Steven Shears in Support of Varvatos's Motion for Summary Judgment ("Shears Decl.") ¶¶ 4-6; May 22, 2018 Declaration of Benjamin Harris in Support of Varvatos's Motion for Summary Judgment ("Harris Decl.") ¶ 17.)

The goal of staggering the series of clothing "pulls" to coincide with the release of seasonal lines of clothing serves the ultimate goal of the clothing allowance provided to male sales professionals – enabling them to fulfill their job responsibilities of wearing/modeling

4

clothing being sold in the Varvatos store to increase visibility of those items.  (Harris Decl. ¶ 34; May 24, 2018 Declaration of Brett Collings in Support of Varvatos's Motion for Summary Judgment ("Collings Decl.") Ex. 9, Fusaro Tr. at 76:6-11; Collings Decl. Ex. 10, Romero Tr. at 23:15-19, 78:23-79:23; Collings Decl. Ex. 12, Chaparro Tr. at 108:11-109:5.)  Accordingly, items like outerwear, which do not conform to the male dress code, are not eligible to be "pulled."  (Mayorga Decl. ¶ 16; May 21, 2018 Declaration of Nicole Chang in Support of Varvatos's Motion for Summary Judgment ("Chang Decl.") ¶ 21.)

Significantly, Plaintiffs allege that the clothing allowance covers 100% of the cost of male sales professionals' wardrobes, and Varvatos provides women with 0% of the cost of the new clothing they wear at work.  (Pls.' Br. at 17.)  Plaintiffs' assertion presumes – falsely – that female sales professions bear a similar, additional cost to comply with the Varvatos Dress Code as that faced by male sales professionals.  In fact, the only parameters placed on them are that their clothing matches the general aesthetic of the Varvatos brand and falls within a broad color palette – something that can be accomplished by shopping at stores far less expensive than Varvatos.  (Collings Decl. Ex. 2; Collings Decl. Ex. 10, Romero Tr. at 74:2-14, 106:6-107:22; Collings Decl. Ex. 12, Chaparro Tr. 76:22-24; Collings Decl. Ex. 3, at 2; Collings Decl. Ex. 4, at 2; Collings Decl. Ex. 5, at 2; Collings Decl. Ex. 7, at 2.)  Moreover, female sales professionals can wear clothing they owned before being hired by Varvatos to work at Varvatos.  (Collings Decl. Ex. 10, Romero Tr. at 70:18-23; Collings Decl. Ex. 8, Kassen Tr. at 55:16-56:6; Harris Decl. ¶ 11; Chang Decl. ¶¶ 25-26.)

Even if a female sales professional had to purchase clothing to wear to work at Varvatos, she could do so at AllSaints, using the clothing allowance Varvatos provides its female sales professionals (but not its male sales professionals) in the form of a 50% discount at that store.

84235158_2

(Collings Decl. Ex. 10, Romero Tr. at 70:18-23; Collings Decl. Ex. 8, Kassen Tr. at 55:16-56:6; Harris Decl. ¶ 11; Chang Decl. ¶¶ 25-26.)  In that way, Varvatos compensates female sales professionals for 50% of any cost they might have to – or choose to – bear to purchase work-appropriate clothing from AllSaints.

The allegation that Varvatos covers the full cost of its male sales professionals' work clothing is similarly inaccurate.  Beyond whatever clothing they "pull" using their clothing allowance, many male sales professionals have to spend their own money to obtain sufficient Varvatos clothing to wear for an entire season.  (Harris Decl. ¶18; Mayorga Decl. ¶ 17; Shears Decl. ¶ 8.)  Varvatos clothing is expensive, so even male sales professionals who "pull" the limit of $3,000 per season may not be able to obtain enough clothing to assemble multiple outfits per week that will also last for an entire season.  (*Id*.; Collings Decl. Ex. 1.)

Plaintiffs also allege that a former Varvatos employee, Ann Byron, "consistently" referred to the Varvatos clothing allowance as a "benefit," and that the clothing allowance is a Facially Discriminatory Policy.  (Pls.' Br. at 6.)  However, Plaintiffs' sole support for the supposed fact that Ms. Byron "consistently" referred to the clothing allowance as a "benefit" are two emails in which she used the word "benefit" a grand total of three times.  (May 24, 2018 Declaration of Richard Weiss in Support of the Motion for Summary Judgment on Liability ("Weiss Decl.") Exs. 13, 15.)  To the contrary, the clothing allowance male sales professionals receive is intended to alleviate, only partially in many cases, a burden that is uniquely placed on them.  (Collings Decl. Ex. 2; Collings Decl. Ex. 9, Fusaro Tr. at 71:15-18; Collings Decl. Ex. 12, Chaparro Tr. at 76:14-17; Collings Decl. Ex. 8, Kassen Tr. at 54:16-22.)  Indeed, in the absence of their clothing allowance, male sales professionals would be required to spend thousands of dollars each season to comply with the requirements placed on them by the Varvatos Dress Code

6

(Collings Decl. Ex. 2), while at the same time their female colleagues could comply with the Dress Code without spending a cent by wearing clothing they already owned.  (Collings Decl. Ex. 1; Collings Decl. Ex. 10, Romero Tr. at 70:18-23; Collings Decl. Ex. 8, Kassen Tr. at 55:16-56:6; Harris Decl. ¶ 11; Chang Decl. ¶¶ 25-26.)  Thus, the clothing allowance they receive is not a benefit to the male sales professionals – it counteracts a burden only they face due to the fact that Varvatos designs and sells only men's clothing.

Similarly, the clothing allowance is not a facially discriminatory policy, as Plaintiffs allege.  The Varvatos Dress Code requires male sales professionals to wear three pieces of Varvatos clothing from the current season every day they are at work.  (Collings Decl. Ex. 2.) The clothing allowance male sales professionals receive is specifically tied to that requirement (which is unique to male employees), not because it is a pretext for discrimination, but because it is the natural consequence of a designer that only makes men's clothing.  As the clothing allowance policy states, male sales professionals "are offered a wardrobe allowance to insure [sic] that their appearance is consistent with the brand."  (Weiss Decl. Ex. 9, at JVE-000137.)

*Job Duties of Male and Female Sales Professionals*

Plaintiffs themselves, while claiming that male and female sales professionals have the same job, concede that is so "[e]xcept with respect to their dress code while working at Varvatos stores."  (Pls.' Br. at 8.)  That Varvatos does not distinguish between male and female sales professionals by giving them different titles does not mean that the duties required of them are coextensive.  Plaintiffs conceded in their own testimony that male sales professionals try on clothing in connection with "product knowledge" meetings held for the release of new seasonal lines of clothing.  (Collings Decl. Ex. 10, Romero Tr. at 42:19-43:14; Collings Decl. Ex. 8, Kassen Tr. at 44:18-25.)  They similarly conceded that male sales professionals try on clothing for customers who inquire about how items fit on men with certain body types.  (Collings Decl.

7

Ex. 9, Fusaro Tr. at 77:7-25; Collings Decl. Ex. 10, Romero Tr. at 82:11-24.)  Female sales

professionals do not – and cannot – perform these job functions, just as they are unable to act as

live models, because the clothing sold in Varvatos stores is designed solely for men.  (Mayorga

Decl. ¶¶ 2, 26; Harris Decl. ¶ 9.)

Despite the critical function male sales professionals serve by wearing/modeling the

current season's Varvatos clothing while at work, Plaintiffs claim that Varvatos does not view

compliance with the Dress Code as a material part of the job of a sales professional.  (Pls.' Br. at

9.)  Contrary to Plaintiffs assertions – which are far from fact – the Dress Code explicitly states

that how sales professionals present themselves is "important" and that it is "essential" that male

sales professionals wear current season Varvatos clothing every day they are at work.  (Collings

Decl. Ex. 2.)  Varvatos also recognizes the impact of having male sales professionals dressed in

current season clothing while at work, and has collected substantial evidence of that policy

leading to increased sales.  (Mayorga Decl. ¶¶ 21, 25; Harris Decl. ¶¶ 36-38; Shears Decl. ¶¶ 18-

20.)[1]

Plaintiffs do not even acknowledge that, at one time, Varvatos designed a line of clothing

for women.  (Collings Decl. Ex 8, Kassen Tr. 38:16-39:5; Collings Decl. Ex. 9, Fusaro Tr. 44:17-

24.)  During that time, Varvatos required its female sales professionals to dress in Varvatos's

women's clothing – and provided them with a clothing allowance equivalent to their male

colleagues.  (Collings Decl. Ex. 9, Fusaro Tr. at 9:2-10:6, 62:16-64:6, 96:9; Collings Decl. Ex. 8,

---

1.      The fact that the Dress Code is not included in job postings in no way detracts from the central function
Varvatos believes it serves.  (Harris Decl. ¶¶ 34-36, 39; Chang Decl. ¶ 29.)  The practice of a clothing
retailer requiring employees to dress in that brand's clothing while at work is widespread in the industry,
and Varvatos routinely seeks experienced salespeople.  (Weiss Decl. Ex. 11, at JVE-000151; Weiss Decl.
Ex. 12; Harris Decl. ¶ 34.)  Thus, it can hardly have come as a surprise to male sales professionals that they
were required to dress in Varvatos while at work – and had they visited any Varvatos store prior to being
hired, they likely would have noticed the fact that all male sales professionals were dressed in Varvatos.  In
any event, regardless of whether job postings provide details about the Dress Code, sales professionals are
informed about the Dress Code's requirements during onboarding.  (Chang Decl. ¶ 8.)

84235158_2

Kassen Tr. at 40:10-41:6, 53:20-24.)  When Varvatos stopped making women's clothing, and female sales professionals thus no longer had to wear Varvatos clothing at work, Varvatos no longer provided its female sales professionals with a clothing "pull" and instead replaced it with an additional stipend in their paychecks, as well as the AllSaints discount subsequently provided to female sales professionals.  (Collings Decl. Ex. 8, Kassen Tr. at 54:11-55:7, 130:23-133:14; Collings Decl. Ex. 9, Fusaro Tr. at 72:22-73:5, 99:17-101:12.)  This clearly demonstrates that the clothing allowance provided to male sales professionals is neither discriminatory nor intended to be so, but rather that it is directly tied to enabling those employees required to wear Varvatos clothing at work to do so.[2]

The sole criterion for whether a sales professional qualifies for the clothing allowance that permits them to "pull" Varvatos clothing is whether that sales professional is required to wear/model (current season) Varvatos clothing while at work.  For the time relevant to this lawsuit, Varvatos only manufactured men's clothing.  Therefore only male sales professionals are required to wear/model Varvatos clothing at work, and thus that is the group receiving a clothing allowance that permits them to "pull" a certain amount of Varvatos clothing.

*Corporate Employees and Store Oversight*

Plaintiffs seize on the fact that certain Varvatos corporate employees are allowed to participate in clothing "pulls" as evidence that Varvatos's clothing allowance policies discriminate.  (Pls.' Br. at 18.)  Eligibility for that clothing "pull" extends to male employees who work at Varvatos stores as well as corporate employees who spend time in Varvatos stores

---

2.       The lack of discriminatory animus is also reflected in the fact that male sales professionals at Varvatos outlet stores receive a smaller clothing allowance than male sales professionals at full price Varvatos stores. (Harris Decl. ¶ 22.)  The clothing for sale at the outlet stores is less expensive, so there is less of a burden placed on male sales professionals working there, hence the smaller clothing allowance.  Varvatos does not use the clothing allowance provided to male sales professionals as a vehicle through which to pay them more than female sales professionals.  It is a policy to counteract a specific burden placed on particular employees.

and/or have positions that involve dealing with members of the public and retail industry. (Chang Decl. ¶ 8.)  For instance, the E-Commerce Merchandising Manager and Vice President of Digital two particular corporate employees referenced by Plaintiffs, are both management-level employees who routinely represent Varvatos externally, including by interacting with customers and other members of the retail industry.  Providing such employees with a clothing allowance in the form of Varvatos clothing is not evidence of discrimination – to the contrary, it is consistent with the legitimate purpose of that clothing allowance, which is to facilitate male employees obtaining current season Varvatos clothing to wear/model so that they can bring attention to those items and boost stores' sales.

Plaintiffs also overstate the degree of control that Varvatos headquarters exercises over specific Varvatos stores.  Although store personnel ultimately report up to Varvatos headquarters, store management controls the day-to-day operations of each store, and determines hourly wages, makes hiring and firing decisions, and sets work schedules.  (Chang Decl. ¶¶ 5, 19; Harris Decl. ¶ 31.)  Varvatos's Vice President of Retail testified that Varvatos "encourages" consultation by store management with corporate supervisors, but he added that such consultation is not required and store managers are free to act on their own.  (Harris Decl. ¶ 30; Weiss Decl. Ex. 2, at 45:16-47:18, 50:25-51:7; Chang Decl. ¶ 5.)  And while Varvatos headquarters sets the general parameters of the clothing allowances provided to male and female sales professionals, store management occasionally provides guidance into the process through which male sales professionals "pull" items using their clothing allowance to ensure the sales staff will have diverse outfits that capture the desired ethos of the upcoming season.  (Mayorga Decl. ¶ 8.)

10

## ARGUMENT

I.   *None of the Plaintiffs Are Entitled to Summary Judgment on Their Title VII or New York State Human Rights Law Claims.*

As Plaintiffs note, to establish liability under Title VII, they must demonstrate that Varvatos intended to discriminate against them because they are female.  *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009).  They must also establish that they were "similarly situated" to male employees who were paid more.  *Kearney v. ABN AMRO, Inc.*, 738 F. Supp. 2d 419, 426 (S.D.N.Y. 2010); *Kpaka v. City Univ. of N.Y.*, 708 Fed. App'x 703, 705 (2d Cir. 2017) (dismissing Title VII claim because plaintiff failed to demonstrate she was similarly situated to comparator).

However, Plaintiffs attempt to skirt their burden of demonstrating that they were similarly situated to male sales professionals by citation to *County of Washington v. Gunther*, 452 U.S. 161 (1981), for the proposition that Title VII plaintiffs need not demonstrate whether their jobs are substantially the same as their comparators.  (Pls.' Br. at 21.)  While that case held that the requirements of Title VII and the EPA are not identical, it did not hold that female Title VII plaintiffs could maintain discrimination claims regardless of whether their jobs were entirely distinct from their male colleagues.  Obviously, Title VII plaintiffs cannot sufficiently allege pay discrimination by comparing their roles to the roles of other male employees with entirely distinct job responsibilities.  Thus, Plaintiffs simply ignore a key element of their Title VII claims – namely, that they are sufficiently similarly situated to male sales professionals in order to maintain a pay discrimination claim under Title VII.

Another fundamental element of Title VII claims is that the plaintiffs were in fact paid less than non-members of the protected class.  *Kearney*, 738 F. Supp. 2d at 426.  Plaintiffs' argument simply presumes that the clothing allowance policy constitutes male sales

11

professionals getting paid more than female sales professionals.  However, the clothing

allowance male sales professionals receive is not an additional benefit conferred upon them – it

is a concession they receive in order to make up for the fact that only they are subject to the

requirement to wear current season Varvatos clothing at work.  (Harris Decl. ¶ 42; Chang Decl.

¶ 27.)  Rather than constitute a bonus or additional pay, the purpose and effect of the clothing

allowance provided to male sales professionals is to place them on equal footing as their female

colleagues by eliminating a substantial cost that would otherwise be foisted solely upon the male

sales professionals.  Furthermore, female sales professionals receive their own clothing

allowance, in the form of a 50% discount at AllSaints (which male sales professionals do not

receive), despite the fact that they may not even need to purchase new clothing to wear at work.

A.    *Plaintiffs Cannot Rely on Circumstantial Evidence to Demonstrate That Varvatos Acted With Discriminatory Intent.*

In addition to ignoring any requirement to demonstrate the similarity of their roles to

those of their male colleagues, Plaintiffs also argue that circumstantial evidence is sufficient to

establish Varvatos's alleged discriminatory intent in an attempt to elevate their paltry evidence to

something approaching the threshold needed to state a valid Title VII claim.  But the cases

Plaintiffs rely on do not support their argument that Varvatos's clothing allowance policy reflects

discriminatory intent.  To the contrary, the cases Plaintiffs cite establish little more than the fact

that inappropriate and inaccurate gender-based assumptions and prior openly hostile remarks can

be interpreted as discriminatory motivation for otherwise arguably objective and neutral

employment decisions.  They are in no way relevant to Plaintiffs' allegations here.

For example, *Rosen v. Thornburgh*, 928 F.2d 528 (2d Cir. 1991), involved an employee

who was subjected to openly hostile comments about his religion.  The court noted repeated

instances in which superiors and fellow trainees made blatantly anti-Semitic remarks.  *Id.* at 530-

31.  Eventually, Rosen was dismissed from the Federal Law Enforcement Training Center ("FLETC"), ostensibly because of his poor performance on a driving test.  In that case, the circumstantial evidence the court relied on to determine that the dismissal could be found to have not been based on Rosen's driving performance but rather discriminatory animus consisted of the multiple and overt instances of discriminatory behavior that had occurred prior to Rosen's ultimate dismissal.  *Id.* at 533-34.  Moreover, the court found that the egregious behavior of the members of FLETC merely raised a question of fact regarding FLETC's intentions, and accordingly found summary judgment to be improper.  *Id*.

In this instance, there is not a shred of evidence – circumstantial or otherwise – that allows Plaintiffs to imbue Varvatos's clothing allowance policy with any sort of discriminatory animus.  Unlike in *Rosen*, where individuals were overtly hostile towards the plaintiff because of his religious beliefs, there is no indication Varvatos has ever treated its female employees poorly.  Indeed, Plaintiffs concede that Varvatos makes gender-neutral hiring decisions for the position of sales professional.

Similarly inapplicable to this case is the type of circumstantial evidence addressed in *City of Los Angeles Department of Water & Power v. Manhart* and *International Union of United Automotive, Aerospace & Agricultural Implement Workers of America, UAW v. Johnson Controls, Inc.*, other cases Plaintiffs cite.  *Manhart* dealt with an employer that required female employees to contribute to a pension plan at a higher rate than male employees because, on average, women live longer than men.  The Court found that the policy reflected an improper generalization because, although it is true that women live longer than men on average, some of the women being forced to pay higher premiums would not outlive their male colleagues.  *Manhart*, 435 U.S. 702, 708 (1978).  The policy in *Manhart* was found to be inappropriate

because gender served as a proxy for lifespan when, in reality, longevity is multifactorial and not solely dependent on an employee's gender. *Id*. at 712. In this case, however, the type of clothing allowance provided to an employee (if any) is directly tied, in 100% of cases, to whether that employee is required to wear Varvatos clothing at work. The clothing allowance policy does not provide circumstantial evidence of discriminatory animus because it is not being used as a proxy or generalization that results in paying male employees more. In fact, it provides a narrowly tailored remedy to a cost that only male sales professionals would otherwise bear.

*Johnson Controls* involved another type of inappropriate generalization. In that case, fertile female employees were prohibited from filling certain jobs that involved exposure to lead as a prophylactic measure to protect their possible unborn children from problems associated with prenatal lead exposure. *Johnson Controls*, 499 U.S. 187, 191-92 (1991). This restriction applied to all fertile female employees, whether they were pregnant or could become pregnant sometime in the future. However, fertile male employees were allowed to fill those roles, despite the fact that lead exposure might have impacted their fertility and the health of their children as well. *Id*. at 197. Thus, the defendant paternalistically restricted the employment opportunities of one sex, while allowing the other sex the freedom to make their own decisions about what risks to subject themselves – and possible unborn children – to. There is no such distinction in this case. Varvatos designs and sells men's clothing. Accordingly, Varvatos requires only its male sales professionals to wear Varvatos clothing at work. That requirement is borne not out of any paternalistic, inaccurate, or generalized belief about women – it is strictly a function of the customers for whom Varvatos clothing is designed.

Plaintiffs' attempt to lower their burden by relying on circumstantial evidence fails. While such evidence may suffice in certain cases, none of the sorts of circumstantial evidence

14

that can buttress a Title VII claim are present here.  None of the cases cited by Plaintiffs addresses a situation where only one gender is actually capable of accomplishing certain job functions.  And with respect to the cases on which Plaintiffs do rely, there are no allegations here that female employees were subjected to overtly hostile comments or treatment that can imbue the clothing allowance policy with discriminatory animus.  Nor can Plaintiffs demonstrate that the clothing allowance policy is based on generalizations that do not equate to actual functional differences between the roles of male and female sales professionals, or that Varvatos artificially made decisions on behalf of its female employees based on gender-normative assumptions.  As a result, Plaintiffs have no support for the element of their Title VII claims that requires proof of discriminatory animus.

B. *The Clothing Allowance Policy is Not Facially Discriminatory.*

Lacking evidence, circumstantial or otherwise, that Varvatos has any discriminatory animus towards its female sales professionals, Plaintiffs attempt to circumvent that element by arguing the clothing allowance policy facially discriminates against female sales professionals. There is no question that only in-store employees identifying as male (and certain male-identifying employees at Varvatos headquarters, who interact with customers and represent Varvatos externally) receive a clothing allowance in the form of clothing "pulls."  (Chang Decl. ¶ 21; Harris Decl. ¶ 13.)  But there is similarly no question that only male sales professionals are required to wear Varvatos clothing at work – and that they must wear at least three pieces of Varvatos clothing from the current season.  (Collings Decl. Ex. 2.)  Nor is there any question that Varvatos provides (only) its female sales professionals their own clothing allowance in the form of a 50% discount at AllSaints, despite the fact that AllSaints also sells men's clothing.  (Chang Decl. ¶ 20.)  Rather than discriminate <u>against</u> women, these clothing allowance policies alleviate a burden that otherwise would be placed <u>only on</u> male sales professionals, and pose a substantial

15

cost for them.  Female sales professionals, on the other hand, are faced with a variety of low-cost (or, potentially, no-cost) options to comply with the Varvatos Dress Code as it applies to them but are nevertheless given the AllSaints discount should they choose to purchase new or additional clothing to wear at work.

Practically speaking, male sales professionals may actually pay more for work clothing in a particular year than their female colleagues, notwithstanding the clothing allowance that they receive.  Many male sales professionals have to spend money above and beyond their clothing allowance to obtain enough clothing to satisfy the Dress Code's "Three Piece Rule" for a full season.  (Harris Decl. ¶ 18; Mayorga Decl. ¶ 17; Shears Decl. ¶ 8.)  And many female sales professionals indicated that they spend around – or even less than – $1,000 annually on clothing to wear to work at Varvatos, demonstrating precisely how female sales professionals can comply with the Dress Code at a far lower cost than their male counterparts (considering a single pair of Varvatos jeans costs hundreds of dollars and a single jacket can cost over a thousand dollars). (Collings Decl. Ex. A; Collings Decl. Ex. 4 (J. Tobak Interrogatory Responses), at 2 (spent "about $1,500" in the 10 months she worked at Varvatos); Collings Decl. Ex. 5 (A. Tossetti Interrogatory Responses), at 2 (spent "approximately $1,574.08" on clothing to wear to work over the nearly two years she worked at Varvatos); Collings Decl. Ex. 6 (Hillary Crandle Interrogatory Responses), at 2 (spent "about $600" on clothing to wear to work during her first year with Varvatos); Collings Decl. Ex. 7 (Michelle Ortiz Interrogatory Responses), at 2 (spent "between $500 and $600" on work clothing during the 10 months she worked at Varvatos).)

This is not a case where an employer artificially created a role or job title and offered it exclusively to men as a pretense for paying them more to take on that role or those responsibilities.  It is common practice in the retail industry for in-store employees to wear the

16

clothing being sold in the store.  (Harris Decl. ¶ 34.)  Varvatos only makes clothing for men.

(Mayorga Decl. ¶¶ 2, 26; Harris Decl. ¶ 9.)  As a result, the only employees capable of wearing

Varvatos clothing while at work are male sales professionals.  (*See* Mayorga Decl. ¶¶ 26-27.)

       The cases cited by Plaintiffs do not support a conclusion that the clothing allowance

policy at Varvatos is facially discriminatory.  Plaintiffs rely heavily on *Johnson v. New York*, 49

F.3d 75 (2d Cir. 1995), which found that a mandatory retirement policy effectively forcing

employees out once they reached age 60 violated the ADEA.  However, that age-based

classification had no direct relationship to whether a particular employee could fulfill the

function of his or her position.  In effect, age was used as a proxy for an employee's ability to

carry out the functions of his or her job.  The situation here is substantially different – since

Varvotos only designs men's clothing, female sales professionals are simply incapable of serving

as live models who wear Varvatos clothing in its stores.  Where a policy reflects an actual

inability of members of a particular class to perform a job function, the policy is not facially

discriminatory.  Plaintiffs' attempt to conflate policies that <u>distinguish</u> between sexes with

policies that <u>discriminate</u> against one sex has no support in the law.[3]

---

3.     Plaintiffs also rely on *E.E.O.C. v. Johnson & Higgins, Inc.*, 887 F. Supp. 682 (S.D.N.Y. 1995), *E.E.O.C. v. Catholic Healthcare W.*, 530 F. Supp.2d 1096 (C.D. Cal. 2008), and *Crane v. Vision Quest Nat.*, 2000 WL 1230465, at *3 (E.D. Pa. Aug. 23, 2000).  None of those cases helps establish that the clothing allowance policy is facially discriminatory – like Plaintiffs other cases, these address assumptions employers made on behalf of female employees and do not address situations where female employees were literally incapable of performing a particular job function.  For instance, in *Catholic Healthcare*, where the defendant did not even contest whether its policy was facially discriminatory, the company attempted to protect female employees from radiation by restricting the functions they could perform, but placed no similar limitation on male employees, whose reproductive health might also be impacted by the radiation in question.  And in *Crane*, the employer assumed female employees would not work a late shift after the company moved to a more dangerous neighborhood.

C.     *Plaintiffs Do Not Establish That They Exhausted Administrative Remedies Prior to Filing Their Title VII Claim.*

It is "essential" that a plaintiff exhaust all administrative remedies with the Equal Employment Opportunity Commission ("EEOC") before instituting a Title VII claim.  *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000).  Plaintiffs' argument in support of establishing that critical element of their Title VII claim consists of a sentence referencing the Court's finding that Knox filed a timely charge with the EEOC.  (Dkt. 158, at 19.)  However, in addition to being timely, an EEOC charge must also be verified.  29 C.F.R. § 1601.9.  As discussed in more detail in Varvatos's Memorandum of Law in Support of its Motion for Summary Judgment, verification requires an EEOC charge to be notarized, and failure to properly verify an EEOC charge can serve as a defense to a Title VII claim.  *Gad v. Kansas State Univ.* 787 F.3d 1032, 1034 (10th Cir. 2015).  Plaintiffs' cursory assertion that they satisfied the EEOC charge prerequisite to filing a Title VII claim is wholly insufficient – nor could Plaintiffs establish that threshold requirement, since only Knox even attempted to file a charge with the EEOC and her charge (though perhaps timely) was deficient.  Thus Plaintiffs have not exhausted their administrative remedies.

D.     *Varvatos Has Valid Affirmative Defenses to Plaintiffs' Title VII Claim.*

Plaintiffs cannot establish a *prima facie* violation under Title VII, even using the simplified standard they espouse.  In any event, if they could do so, Varvatos has valid affirmative defenses to Plaintiffs' Title VII claim that prevent Plaintiffs from obtaining summary judgment.

\*        \*        \*

Any Factor Other Than Sex:  There is no question that eligibility for the clothing allowance provided to male sales professionals (and certain other in-store and corporate

employees) is based purely on which employees are required to wear Varvatos clothing while at work.  The set of employees required to wear Varvatos clothing at work is currently limited to those who identify as male, but that does not render the clothing allowance based on sex.  When Varvatos designed and sold women's clothing, female employees were required to wear Varvatos clothing at work, and thus were provided with a clothing allowance at that time pursuant to the exact same rationale that Varvatos employs currently.  (Collings Decl. Ex. 9, Fusaro Tr. at 9:2-10:6, 62:16-64:6, 96:9-18; Collings Decl. Ex. 8, Kassen Tr. at 40:10-41:6, 53:20-24.)  Accordingly, using the requirements of the Dress Code to determine which employees qualify for the clothing "pull" process is not inherently sex-based.  Simply because Varvatos clothing is currently only designed for men – and can only be modeled by male sales professionals – does not render use of the Dress Code as a determinant for which employees can "pull" Varvatos clothing an inherently sex-based consideration.

Moreover, there are many male employees who work at Varvatos's corporate headquarters who do <u>not</u> receive any clothing allowance.  (Weiss Decl. Ex. 24.)  And female employees themselves receive a clothing allowance in the form of the 50% discount only they may use at AllSaints.  Thus, the clothing allowance system is not a means to provide all male employees with a benefit that female employees do not receive, nor does the Dress Code provide some sort of artificial proxy to accomplish that goal.  Rather, the Dress Code is the natural result of the fact that Varvatos sells men's clothing.  The clothing allowance is narrowly tailored to provide only male employees who are subject to the unique burden created by the Dress Code with a means of obtaining otherwise expensive Varvatos clothing to wear at work, while simultaneously providing female employees with a discount they can use if they choose to purchase new clothing that complies with the Dress Code.

19

In arguing that Varvatos's clothing allowance policy is based on sex, Plaintiffs rely on *Manhart*, but in that case the employer made a distinction explicitly based on sex – it required female employees to contribute more to pension funding than male employees. Furthermore, the justification for doing so was that women lived longer, on average, so they should have to contribute more. *Manhart*, 435 U.S. at 704. The clothing allowance policy that allows certain male employees to participate in clothing "pulls" is not based on gender, but rather which employees have to wear Varvatos clothing to work – it does not make a sweeping sex-based generalization, like the policy in *Manhart*. That clothing allowance correlates perfectly with which employees are required to dress in Varvatos clothing – not to which Varvatos employees identify as male – because not all male employees are required to wear Varvatos clothing at work. Plaintiffs also rely on *Dreves v. Hudson Group (HG) Retail, LLC*, but that case involved an undisputed pay disparity between a male employee and a female employee who the defendant conceded filled the same role. 2013 WL 2634429 (D. Vt. June 12, 2013). The primary issues there were whether the employer properly paid the male employee more based on a cost-of-living adjustment and an inducement to join the company, not to determine whether in fact the two employees filled the same role or either one was faced with a unique burden necessary to the business for which they had to be reimbursed.[4]

To qualify as a valid defense, a "factor other than sex" must also serve a legitimate business purpose. *Belfi v. Prendergast*, 191 F.3d 129, 136 (2d. Cir 1999). Plaintiffs do not even argue that the Dress Code does not constitute a legitimate business practice – nor could they in light of the fact that having employees wear the clothing being sold in a store is common,

---

4.        Plaintiffs also cite *Schleicher v. Preferred Solutions, Inc.*, 831 F.3d 746 (6th Cir. 2016), but that case found that the employer's actions were based on a factor other than sex because it provided the employees in question with a choice regarding their compensation structure.

20

legitimate retail practice and, in this case, only men's clothing is sold in Varvatos stores.  The clothing allowance male sales professionals receive flows naturally from the Dress Code and alleviates the burden placed only on a subset of employees.  Similarly, the clothing allowance female sales professionals receive provides them a discount at a store where they can obtain clothing that complies with the Dress Code as it applies to them.  Thus, not only is the clothing allowance based on a factor other than sex, but it also serves a legitimate business purpose.

Finally, Plaintiffs argue that an employer cannot create a separate duty for men and forbid women from performing it as a pretext to pay the men more.  (Pls.' Br. at 27-28.)  But the cases Plaintiffs cite in support of that argument reference dividing discernibly "equal work into two job classifications" and preventing "qualified female employees" from performing particular duties.  *E.E.O.C. v. Madison Cmty. Unit Sch. Dist. No. 12*, 818 F.2d 577, 585 (7th Cir. 1987); *Brennan v. Prince William Hosp. Corp.*, 503 F.2d 282, 286 (4th Cir. 1974).  Here, Varvatos has not split equal work into two job classifications with disparate pay.  As discussed above, male sales professionals are required to wear Varvatos clothing at work, act as live models, and try clothing on for customers and in connection with meetings with their colleagues.[5]  The different responsibilities that male and female sales professionals have distinguishes this case from *Madison Community*.

Similarly, female sales professionals are not "qualified" to perform the tasks assigned to their male colleagues.  Most critically – and most obviously – female sales professionals cannot wear Varvatos clothing while at work and act as live models because the clothing is designed for men.  It is essential for companies to have and portray their brand unambiguously.  If female

---

5.    Plaintiffs also argue against themselves on this point – on one hand they allege that male and female sales professionals have the same job simply because Varvatos does not give them different titles or otherwise distinguish between them.  But here they rely on case law preventing employers from creating different positions with different titles, but with the same responsibilities and different pay.

sales professionals wore Varvatos clothing designed for men at work, it would create confusion and detract from the brand because the clothing is not intended, or cut and tailored properly, for women.  (Chang Decl. ¶ 13; Mayorga Decl. ¶¶ 12, 26.)

*        *        *

Bona Fide Occupational Qualification ("BFOQ"):  Plaintiffs cite statutory language setting forth the BFOQ defense and argue that Varvatos cannot avail itself of that defense here because it only applies to hiring and employment decisions.  (Pls.' Br. at 28-29.)  However, that argument assumes that male and female sales professionals are hired to fill the same or substantially similar roles.  If, on the other hand, they serve distinct purposes in Varvatos stores – which they clearly do – then for purposes of the BFOQ defense, it is reasonable to distinguish the two roles.  And it follows that women cannot be hired for the functional role of "male sales professional" because one of the key tasks that distinguishes that role is the ability to model Varvatos clothing and provide first-hand product knowledge about the clothing to customers and colleagues.  Thus, once the role of a male sales professional is properly understood to include additional responsibilities beyond those of capable of a female sales professional, the BFOQ defense is relevant because there are obvious and legitimate reasons that women cannot be hired to a position that would involve them modeling men's clothing and anecdotally explaining how the clothing fits on a man's body.

Regulations related to the BFOQ defense specifically acknowledge that sex can constitute a BFOQ where it is "necessary for the purpose of authenticity or genuineness."  29 C.F.R. § 1604.2(a)(2).  The regulations provide the example of making gender-based decisions when hiring an actor or actress to play a particular role.  *Id*.  Similarly, if a clothing retailer sells only

men's clothing and wants to accurately demonstrate how it fits on men, only male employees can accomplish that task.

*        *        *

Business Necessity:  Plaintiffs attempt to dismiss Varvatos's business necessity defense by arguing it cannot apply to a facially discriminatory policy.  But, as described above, the clothing allowance policy is not facially discriminatory – and it is clearly necessary to Varvatos's business.  The practice of clothing retailers having their employees wear the clothing being sold in their stores is widespread because it is known to increase the visibility of the merchandise and boost sales.  (Harris Decl. ¶ 34; Mayorga Decl. ¶ 24; Collings Decl. Ex. 9, Fusaro Tr. at 76:6-11; Collings Decl. Ex. 10, Romero Tr. at 23:15-19, 78:23-79:23; Collings Decl. Ex. 12, Chaparro Tr. at 108:11-109:5.)  Consistent with that practice, Varvatos requires its male sales professionals to dress in Varvatos at work.  (Collings Decl. Ex. 2; Mayorga Decl. ¶ 8; Shears Decl. ¶ 13.)  Varvatos clothing is expensive, so in order to enable the male sales professionals to execute their job duties by obtaining the clothing they need to wear at work, Varvatos provides them with a clothing allowance.  (Harris Decl. ¶¶ 15-18; Chang Decl. ¶ 21.)  Without that clothing allowance, it would be prohibitively expensive for male sales professionals to obtain Varvatos clothing to wear at work, and the inability of male sales professionals to act as in-store live models would negatively impact Varvatos's sales.  Thus, the clothing allowance that male sales professionals receive clearly serves the core function of Varvatos's business and constitutes a business necessity.

*        *        *

Ultimately, Plaintiffs' Title VII claim is flawed for a variety of reasons, including that they cannot demonstrate similarly situated comparators and there is no evidence (circumstantial

23

or otherwise) of any intent to discriminate by Varvatos.  Additionally, the clothing allowance is not a facially discriminatory policy because female sales professionals are provided with a discount at AllSaints and only certain male employees (those required to wear Varvatos clothing at work) are eligible for seasonal clothing "pulls."  Even if Plaintiffs had evidence to substantiate those elements of their Title VII claim, the clothing allowance provided to male sales professionals is based on a factor other than sex, and serves a legitimate business purpose so important that it rises to the level of a business necessity.

      E.    *Plaintiffs Who Were Employed by Varvatos in New York Are Not Entitled to Summary Judgment on Their New York Human Rights Law Claim.*

As Plaintiffs acknowledge, courts "typically treat Title VII and NYHRL discrimination claims as analytically identical, applying the same standard of proof to both claims."  *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 n.9 (2d Cir. 2008).  Accordingly, for all of the reasons discussed above that prevent Plaintiffs from obtaining summary judgment on their federal Title VII claim, they must also be denied summary judgment on their claim based on the New York analog of that statute.

II.    *None of the Plaintiffs Are Entitled to Summary Judgment on Their Equal Pay Act Claim.*

      A.    *Plaintiffs Cannot Establish That the Clothing Allowance Male Sales Professionals Receive Constitutes a "Wage" Under the EPA.*

A fundamental element of an EPA claim is that one sex receives greater "wages" than members of the opposite sex.  The EPA's definition of "wages" includes forms of compensation like "fringe benefits," but nowhere do Plaintiffs explain how the clothing allowance provided to male sales professionals constitutes a "fringe benefit" – or any other sort of "wages" – as those terms apply to the EPA.  Plaintiffs cite regulations and cases that equate "fringe benefits" to medical insurance, life insurance, bonus plans, and retirement benefits.  (Pls.' Br. at 33-34.) Insurance, retirement, and bonus plans are clearly distinct from a clothing allowance – and

24

nowhere do Plaintiffs explain (or cite to any authority) how to bridge the substantial gap between traditional insurance and retirement benefits and a clothing allowance specifically tied to a dress code.

Plaintiffs also cite EEOC regulations interpreting the EPA as including "remuneration for employment" within the meaning of "wages." 29 C.F.R. § 1620.10.  However, the clothing allowance that male sales professionals receive has nothing to do with compensating them for work performed.[6]  Plaintiffs themselves assert that male sales professionals are given a clothing allowance upon starting at Varvatos, before they have performed any work whatsoever for Varvatos.  (Pls.' Br. at 6; Weiss Decl. Ex. 9, at JVE-000137.)  Moreover, all sales professionals are compensated for their work through a combination of an hourly wage and commissions. (Chang Decl. ¶¶ 18-19; Harris Decl. ¶ 31.)  The clothing allowance male sales professionals receive does not constitute compensation for their work.  In fact, if an employee eligible for the clothing "pull" process leaves Varvatos in the middle of a particular season, they are paid the hourly wages and commissions they earned to date, but are not provided with some partial clothing allowance as compensation for working part of a season.

Plaintiffs argue that the clothing allowance that male sales professionals receive constitutes a "benefit" based on two limited statements by a former Varvatos employee and the fact that male sales professionals are taxed on clothing they receive.  (Pls.' Br. at 34.)  However, the isolated statements of one employee – which do not constitute her "consistently" referring to the male employees' clothing allowance as a "benefit" – are not dispositive.  In their attempt to establish that male and female sales professionals have similar roles, Plaintiffs rely heavily on the fact that Varvatos does not have documentation formally distinguishing the roles of male and

---

6.      Neither does the clothing allowance provided to female sales professionals, the 50% discount they receive at AllSaints, depend in any way on prior work that those employees provided to Varvatos.

female sales professional (or indicating that male sales professionals must model Varvatos

clothing).  However, in arguing that the male sales professionals' clothing allowance constitutes

a "benefit," Plaintiffs abandon their insistence on written policies and suggest that passing

comments, by a single employee in just two emails, is enough to conclusively determine that the

clothing allowance provided to male sales professionals falls within the EPA's definition of

"wages."  That is not the case.

Nor is the fact that Varvatos withholds additional taxes from male sales professionals

eligible for clothing "pulls" determinative.  Varvatos's interpretations of IRS requirements with

respect to tax withholdings does not dictate whether any element of its clothing allowance policy

fits within the EPA's specific definition of "wages."  Additionally, Plaintiffs fail to acknowledge

that Varvatos taxes male sales professionals who receive a clothing allowance at 20% of the

retail value of the clothing they "pull" (because that represents the cost of the clothing to

Varvatos, accounting for their average margins).  (Harris Decl. ¶ 19.)  Thus, on one hand,

Plaintiffs ignore how male sales professionals are taxed at a reduced amount when arguing they

are entitled to $3,000 per season, and on the other, they rely on that taxation to argue that the

clothing allowance provided to male sales professionals constitutes "wages" under the EPA.

> B.   *Plaintiffs Cannot Establish That Sales Professionals Working at Different Varvatos Stores Worked in the Same "Establishment."*

The "traditional approach" to the question of whether an EPA plaintiff worked at the

same "establishment" as an opposite-sex comparator considers the specific place of business

where that plaintiff worked.  29 C.F.R. § 1620.9(a).  Knox was the only sales professional at the

East Hampton store for the entire time she was employed there.  Thus, under the "traditional

approach," she has to resort to comparison to predecessors, some of whom preceded her tenure

by years.  Although those male predecessors received a clothing allowance in the form of

clothing "pulls," in determining whether they are adequate comparators, it is relevant to consider how the store's conditions and the requirements placed on the East Hampton male sales professionals changed over time – which presents an issue of fact.  Rather than address those points, Knox simply stops at asserting that they received a clothing allowance and assumes that establishes her male predecessors as relevant comparators for all EPA purposes, but it does not.

She fares no better under the "modern approach" to determining what constitutes an "establishment" under the EPA.  That approach considers whether there is centralized control of "salary administration, and job assignments or functions."  *Kassman v. KPMG LLP*, 2014 WL 3298884, at *8 (S.D.N.Y. July 8, 2014).  Managers of individual stores control the day-to-day operations of their stores, set employee schedules, independently manage hiring and firing, and make decisions regarding employees' hourly wages.  (Chang Decl. ¶¶ 5, 19; Harris Decl. ¶ 31.)  Although the general commission structure that applies to all sales professionals equally and the parameters of the clothing allowance policy are set by Varvatos's corporate headquarters, store management also oversees the clothing "pull" process under the clothing allowance.  Ensuring the clothing allowance provided to male sales professionals is effective in advancing Varvatos's goal of increasing the visibility of particular items, store management provides instruction to employees on what items to select.  (Harris Decl. ¶ 26.)  Store management is also involved in setting sales targets for specific employees, which determines when they hit various thresholds for commission purposes.  (Chang Decl. ¶ 18.)  Thus, the many Varvatos stores around the United States hardly constitute the unified nationwide enterprise that Knox asserts.  Rather,

distinctions in hourly wages, store staffing, and particular expectations placed on sales

professionals distinguish the various Varvatos retail locations.[7]

      C.     *Male and Female Sales Professionals Do Not Perform Equal Work.*

      Demonstrating that that a plaintiff performed equal work as a comparator is a

"demanding" standard.  *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254-55 (2d Cir.

2014).  Although Plaintiffs do not have to demonstrate that the jobs of the male and female sales

professionals are identical, they must demonstrate that they are "substantially equal" and not just

"merely comparable."  29 C.F.R. § 1620.13(a); *Tomka v. Seilier Corp.*, 66 F.3d 1295, 1310 (2d

Cir. 1995).  Plaintiffs themselves acknowledge that a difference exists between the jobs of male

and female sales professionals – they are subject to different dress codes.  (Pls.' Br. at 39.)  They

also acknowledge that female sales professionals are provided with a 50% discount at AllSaints,

which male sales professionals do not receive.  (*Id.*)

      Plaintiffs argue that Varvatos does not distinguish between the roles of male sales

professionals and female sales professionals in its job postings, which renders those jobs equal.

However, job titles or descriptions are not dispositive of whether individuals perform equal

work; the relevant inquiry focuses on the actual responsibilities and content of the individuals'

jobs.  *Byrne v. Telesector Res. Group, Inc.*, 339 Fed. App'x 13, 16 (2d Cir. 2009); *E.E.O.C. v.

Port Auth.*, 768 F.3d at 254-55.  As discussed in more detail below, male sales professionals are

given extra responsibilities not required of female sales professionals – it is those distinctions in

their roles that render the work performed by male and female sales professionals unequal.  The

fact that they have the same title is irrelevant.

---

7.     Plaintiffs ignore the distinctions between full price Varvatos retail stores and Varvatos outlet stores.
        However, male sales professionals at outlet stores receive a smaller clothing allowance and those stores sell
        different merchandise than full price retail stores.  (Harris Decl. ¶¶ 4, 22.)

Plaintiffs also point to the fact that male and female sales professionals receive the same hourly wage and commission rates as evidence that they perform equal work.  (Pls.' Br. at 39.) However, all sales professionals do not receive the same hourly wage.  A particular sales professional's hourly wage is determined by the store in which he or she works, the individual's experience and qualifications, and the store's payroll budget.  (Chang Decl. ¶ 19; Harris Decl. ¶ 31.)  In fact, the average hourly wage received by female sales professionals is higher than the average hourly wage male sales professionals earn.  (Chang Decl. ¶ 19.)

In any event, individuals in different positions at a company can receive the same pay despite having different roles.  If anything, Plaintiffs' argument demonstrates Varvatos's lack of discriminatory animus and policy of gender-neutral hiring and compensation.  The additional responsibilities placed on male sales professionals are tied closely to the requirement that they obtain Varvatos clothing to wear at work.  Therefore, the clothing allowance that is provided to them serves to eliminate the unique burden placed on male sales professionals, and levels the playing field – such that when they receive comparable hourly wages and equal commission rates as their female colleagues, male sales professionals do not have to devote a substantial portion of that income to purchasing clothing to wear to work when female sales professionals are not forced to do the same (and are provided with their own clothing allowance in the form of a 50% discount at AllSaints).

D.   *The Roles of Male and Female Sales Professionals Require Different Skills.*

As Plaintiffs acknowledge, equal skill involves "such factors as experience, training, education, and ability."  *E.E.O.C. v. Port Auth.*, 768 F.3d at 255 (emphasis added).  Plaintiffs focus solely on whether it requires greater experience and training for male sales professionals to comply with the Dress Code than it does for female sales professionals.  (Pls.' Br. at 40.) Nowhere do they address the question of whether both men and women are able to comply with

29

the Dress Code for male sales professionals.  Clearly they are not.  The Dress Code requires male

sales professionals to wear three pieces of current season Varvatos clothing while at work.

(Collings Decl. Ex. 2.)  The purpose of having male sales professionals wear Varvatos clothing

at work is for them to serve as models and bring attention to items being sold in the store that

they are also wearing.  (Harris Decl. ¶ 32; Chang Decl. ¶ 9; Mayorga Decl. ¶ 24.)  Female sales

professionals lack the ability to serve that function.  They cannot wear Varvatos clothing,

designed and cut for men, and act as live models who display to customers how that clothing fits

on the people for whom it is designed.  Accordingly, they lack the requisite skill to fulfill one of

the key roles played by male sales professionals.

      E.    *The Roles of Male and Female Sales Professionals Require Different Effort.*

      Plaintiffs matter-of-factly assert that it requires the same effort for male and female sales

professionals to comply with the Dress Code because they both have to wear brand-appropriate

clothing at work, and male sales professionals do not have to exert any greater physical effort

than their female colleagues to comply with the Dress Code.  (Pls.' Br. at 41.)  But the only

evidence they cite in support is the testimony of Varvatos's senior director of human resources,

Nicole Chang, who said she does not think that wearing three pieces of Varvatos clothing

requires more effort than wearing three pieces of clothing from another brand.  (Weiss Decl. Ex.

1, at 86:17-87:1.)

      Plaintiffs' reliance is misplaced.  First, Ms. Chang was comparing the effort required to

wear three pieces of Varvatos clothing to three pieces of another brand's clothing – but female

sales professionals are under no obligation to comply with "Three Piece Rule."  (Collings Decl.

Ex. 2.)  More glaringly, Plaintiffs cite to no testimony of any current or former sales professional

to establish whether dressing in Varvatos clothing at work requires additional effort.  Sales

professionals regularly have to retrieve and stock merchandise, which requires moving around

the stores.  Male sales professionals have to do so while wearing Varvatos clothing, which

generally fits quite tightly, and while wearing either a vest or a jacket in order to comply with the

Dress Code, which can be hot and further restrict their movement.  (Mayorga Decl. ¶ 19.)

Plaintiffs cannot meet their summary judgment burden by relying on an isolated snippet

of testimony by a Varvatos employee who never worked as a sales professional, and focused on

a factual premise different from the actual Dress Code, while simultaneously ignoring the

realities that male sales professionals inherently face in working while wearing at least three

pieces of tight-fitting Varvatos clothing.

F.    *Male and Female Sales Professionals Have Different Responsibilities.*

EEOC regulations, cited by Plaintiffs, provide examples of what constitutes different

responsibilities for employees.  Tasks as inconsequential as having to turn the lights off in a

particular part of the workplace are not sufficiently significant to rise to the level of different

responsibilities.  29 C.F.R. § 1620.17(b)(3).  However, if an employee temporarily serves as a

supervisor, or determines whether to accept personal checks as a form of payment from

customers, those tasks constitute different responsibilities under the EPA.  29 C.F.R.

§§ 1620.18(b)(1)-(2).

Plaintiffs wrongly allege that the responsibilities Varvatos places on its male sales

professionals to dress in Varvatos clothing, act as live models, and serve as subject matter

experts about the clothing they are wearing are somehow less significant than determining

whether to accept a personal check as payment.  (Pls.' Br. at 41-42.)  Contrary to Plaintiffs'

assertions, Varvatos views having its male sales professionals dress in Varvatos and provide

product knowledge as essential to the business.  Indeed, the Dress Code explains how

"important" and "essential" it is for male sales professionals to dress in Varvatos clothing while

at work.  (Collings Decl. Ex. 2.)  Varvatos also has anecdotal evidence about how having its

31

male sales professionals wear the clothing for sale in its stores leads to increased sales. (Mayorga Decl. ¶¶ 21, 25; Harris Decl. ¶¶ 36-38; Shears Decl. ¶¶ 18-20.)

Plaintiffs' attempt to minimize the importance of having male sales professionals dress in Varvatos by claiming it is a "passive" responsibility is misguided.  Male sales professionals have to layer and style the clothing they wear to match seasonal trends.  They must learn nuanced details, including particular ways to button shirts or tie scarves, in order to accurately represent the Varvatos brand.  (Harris Decl. ¶¶ 27, 32.)  And they must take care to assemble outfits that represent the brand and promote sales.[8]

The responsibility that male sales professionals act as live models is certainly more important to Varvatos's business than the theoretical responsibility of an employee determining whether to accept personal checks as payment.  Plaintiffs cannot demonstrate that male and female sales professionals have the same responsibilities and, therefore, they are not entitled to summary judgment.

G.    *The Clothing Allowance Is Based on a Factor Other Than Sex.*

Plaintiffs advance the same arguments that the clothing allowance provided to male sales professionals is not based on a factor other than sex with respect to their EPA claim as they do for their Title VII claim.  For the same reasons discussed above, the clothing allowance policy that allows male sales professionals to "pull" clothing seasonally is in fact based on a factor other than sex – namely, whether an employee is required to wear Varvatos clothing while at work.

---

8.    Plaintiffs argue that answering questions about clothing for sale in Varvatos stores is a function that female sales professionals serve along with their male colleagues.  But only the male sales professionals wear the clothing for sale in the store and only they acquire the knowledge about how the clothing fits, feels, and gets broken in.  (Mayorga Decl. ¶ 21.)  Thus, when female sales professionals answer customers' questions about the clothing, they often do so using information provided by their male colleagues, and derived from the unique responsibility those male sales professionals have to wear the clothing for sale in Varvatos stores.  (*Id.*; Harris Decl. ¶¶ 40-41.)

As discussed above, not all male Varvatos employees are required to wear Varvatos clothing at work, and those that are not required to do so are not eligible to "pull" clothing.

Additionally, the clothing allowance provided to male sales professionals serves a legitimate business purpose because it is directly tied to ensuring that in-store male employees can wear Varvatos clothing to work, which helps boost sales.  Rather than constituting an artificially created responsibility used as pretext to pay male employees more, the clothing allowance provided to male sales professionals is consistent with industry practice in which clothing retailers require employees to wear that brand's clothing while at work, and frequently provide them with a clothing allowance to cover part or all of the cost of doing so.  (Harris Decl. ¶ 34.)

H.   *Plaintiffs Are Not Entitled to Summary Judgment Under New York Labor Law § 194.*

As Plaintiffs acknowledge, claims under NYLL § 194 are evaluated according to roughly the same framework as claims under the EPA.  (Pls.' Br. at 46.)  Thus, for the same reasons discussed above that prove fatal to their EPA claim, Plaintiffs are not entitled to summary judgment on their claim under NYLL § 194.  Moreover, the definition of "wages" under NYLL § 194 is more restrictive than under the EPA; it includes "earnings of an employee for labor or services rendered."  NYLL § 190(1); *Truelove v. Northeast Capital*, 95 N.Y.2d 220, 224 (N.Y. 2000).  As discussed above, the clothing allowance provided to certain male employees does not constitute earnings for labor that they render to Varvatos.  Plaintiffs themselves assert that male sales professionals are allowed to "pull" clothing upon being hired, and eligibility for seasonal clothing "pulls" has nothing to do with how long, how much, or how well a male sales professional has worked for Varvatos.  (Pls.' Br. at 6.)

33

Furthermore, to state a claim under New York Labor Law § 194, "in addition to establishing the elements of an Equal Pay Act claim, a plaintiff must produce evidence of discriminatory animus." *Talwar v. Staten Island Univ. Hosp.*, 610 Fed App'x at 29 n.2 (citing *Belfi*, 191 F.3d at 139). For the reasons discussed above with respect to Plaintiffs' Title VII claim, they cannot demonstrate any discriminatory intent by Varvatos. The clothing allowance provided to male sales professionals is designed to allow them to obtain what would otherwise be prohibitively expensive Varvatos clothing to wear at work. That policy promotes the essential purpose of Varvatos – bringing attention to and selling Varvatos clothing. It does not reflect any discriminatory animus.

## CONCLUSION

Plaintiffs' claims are based on Title VII, the Equal Pay Act, and analogous statutes under New York law. They are not entitled to summary judgment on any of those claims for the many reasons discussed above, including that they cannot demonstrate sufficiently similar responsibilities to those of their male colleagues, and that the clothing allowance provided to male sales professionals is not facially discriminatory, serves a legitimate business purpose, and is based on a factor other than sex.

84235158_2

DATED:  June 13, 2018

HUGHES HUBBARD & REED LLP

By:  _____/s/ Ned H. Bassen_____
        Ned H. Bassen
        Brett M. Collings
One Battery Park Plaza
New York, New York 10004
Tel:  (212) 837-6000
Fax:  (212) 299-4726
ned.bassen@hugheshubbard.com
brett.collings@hugheshubbard.com

*Attorneys for Defendant John Varvatos
Enterprises, Inc.*

35

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on June 13, 2018, I caused to be electronically filed the foregoing MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT by using the CM/ECF system, which sends a notice of electronic filing to all counsel of record who have registered to receive notices from the Court under the CM/ECF system.

_____
Brett M. Collings