**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TESSA KNOX

                    Plaintiff,

        v.

JOHN VARVATOS ENTERPRISES, INC.
                    Defendant.

Civil Action No.  1:17-cv-00772 (GWG)


**DEFENDANT JOHN VARVATOS ENTERPRISES, INC.'S REPLY IN SUPPORT OF**
**ITS MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................1

ARGUMENT ......................................................................................................................2

    I.    Plaintiffs Fail to Establish A Valid Title VII Claim ................................................2

          A.    Plaintiffs Have No Evidence That Varvatos Intended to Discriminate Against Them ........................................................................2

          B.    The "Clothing Allowance" Is Not Discriminatory on its Face ................................................................................................................5

          C.    Varvatos Has Valid Affirmative Defenses to Plaintiffs' Title VII Claims ............................................................................7

          D.    Knox Did Not File a Verified Charge With the EEOC ............................10

    II.    Varvatos is Entitled to Summary Judgment on Plaintiffs' EPA and NYSEPA Claims..........................................................................................11

          A.    Plaintiffs Do Not Explain How They and Male Sales Professionals Receive Unequal "Wages." ................................................11

          B.    Male and Female Sales Professionals Do Not Perform Equal Work ................................................................................................13

          C.    The Jobs of Male and Female Sales Professionals Require Different Skill, Effort, and Responsibility................................................14

CONCLUSION..................................................................................................................17

84337748_3

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*American Nurses Association v. Illinois*, 783 F.2d 716 (7th Cir. 1986) ...........................................4

*Barrett v. Forest Laboratories, Inc.,* 39 F. Supp.3d 407 (S.D.N.Y. 2014)..................................3, 4

*Furnco Constr. Corp. v. Waters*, 438 U.S. 567 (1978)..............................................................8, 9

*International Union, United Automotive, Aerospace & Agricultural Implement Workers of America, UAW v. Johnson Controls, Inc.*, 499 U.S. 187 (1991).....................5, 6, 9

*Johnson v. New York*, 49 F.3d 75 (2d Cir. 1995).......................................................................5, 6

*McGuinness v. Lincoln Hall*, 263 F.3d 49 (2d Cir. 2001) ............................................................3

*Wards Cove Packing Co. v. Atonio*, 490 U.S. 642 (1989).......................................................8, 10

**Statutes and Rules**

New York Human Rights Law ......................................................................................................11

New York Labor Law § 198 .........................................................................................................12

**Regulations**

29 C.F.R. § 1601.3 ......................................................................................................................10

29 C.F.R. § 1620.......................................................................................................................14, 16

84337748_3

Defendant John Varvatos Enterprises, Inc. ("Varvatos") respectfully submits this reply in support of its motion for summary judgment on each of the four claims in Plaintiffs' Complaint, both with respect to Tessa Knox individually and the collective and class action Plaintiffs.

## INTRODUCTION

Plaintiffs' Opposition ignores and/or mischaracterizes the record evidence and the law applicable to the undisputed facts. Varvatos provides the "clothing allowance" at issue here[1] to just a subset of male employees, all of whom have a job duty – and face a corresponding burden – related to Varvatos's business, and on which the "clothing allowance" is based. This key material fact does not apply to certain other Varvatos male employees as well as Varvatos female employees, neither of whom receive that particular "clothing allowance." Thus, the Varvatos "clothing allowance" is not based on sex.

Plaintiffs propose their own system through which Varvatos could provide its male sales professionals with Varvatos clothing to wear at work in a fashion Plaintiffs claim would not be discriminatory. Aside from the practical challenges with Plaintiffs' proposal, the possibility that Varvatos could outfit its male sales professionals in Varvatos clothing in a different way does not in any way render Varvatos's existing "clothing allowance" discriminatory. Rather, Plaintiffs ask this Court to substitute its business judgment for Varvatos's. This is inappropriate, especially where, as here, Varvatos's existing "clothing allowance" is based on a specific job duty (and corresponding burden) applicable only to certain employees, and which is directly related to Varvatos's business – designing and selling men's clothing.

---

1. Plaintiffs refer to Varvatos's practice of allowing its male sales professionals to "pull" up to $3,000 worth of clothing (at full retail price) each time a new seasonal clothing line is released as "the Clothing Allowance." While that process is the focus of their claims, there are in fact many types of clothing allowances that retailers, including Varvatos, provide. Indeed, Varvatos provides all employees with a clothing allowance in the form of a 65% discount off clothing sold in its stores. (May 21, 2018 Declaration of Nicole Chang in Support of Varvatos's Motion for Summary Judgment ("Chang Decl.") ¶ 20.) Additionally, Varvatos provides female employees with a clothing allowance in the form of a 50% discount at a sister store, AllSaints. (*Id.*)

Plaintiffs cannot contest the material facts of this case: Varvatos clothing is designed for men; Varvatos clothing is expensive; Varvatos, like similar clothing retailers, requires sales professionals for whose sex the clothing is designed to wear/model the clothing for sale in its stores while at work; these sales professionals thus need to buy Varvatos clothing; Varvatos provides these sales professionals with a "clothing allowance"; Varvatos does not require all its male employees to wear/model – and therefore buy – its clothing; Varvatos does not provide the "clothing allowance" to male employees who are not required to wear/model Varvatos clothing at work; Varvatos does not require its female sales professionals to wear/model Varvatos clothing while at work and, therefore, they do not need to buy Varvatos clothing; Varvatos does not provide these female sales professionals with the "clothing allowance."[2]  These undisputed material facts warrant summary judgment for Varvatos.  Plaintiffs' Opposition does not cast doubt on this conclusion because Plaintiffs rely on non-material, ancillary facts and inapplicable and/or mischaracterized precedent.

## **ARGUMENT**

I.  *Plaintiffs Fail to Establish A Valid Title VII Claim.*

    A.  *Plaintiffs Have No Evidence That Varvatos Intended to Discriminate Against Them.*

Plaintiffs argue that they can maintain a valid Title VII claim without demonstrating that they performed similar work to their male colleagues because the Varvatos "clothing allowance" is discriminatory on its face.  (June 13, 2018 Memorandum of the Plaintiff, the 13 Opt-In

---

2.  Varvatos provides the "clothing allowance" at issue here to its male sales professionals and other male in-store employees, as well as male employees who are based out of Varvatos's corporate headquarters but have customer- and industry-facing jobs.  (Chang Decl. ¶ 21.)  It also provides female sales professionals with a separate clothing allowance – a 50% discount at AllSaints, which is a sister store that sells clothing consistent with the Varvatos brand aesthetic.  (*Id.* at ¶ 20.)  Although female sales professionals are not required to wear/model Varvatos clothing at work, they can use the clothing allowance they receive to purchase clothing compliant with their dress code.  Thus, the various clothing allowances provided to Varvatos employees are consistent with the specific requirements placed on those employees.

84337748_3

Plaintiffs, and the Class in Opposition to Defendant's Motion for Summary Judgment ("Pls.' Opp'n") at 3.)  However, the cases Plaintiffs rely on are inapposite.

First, *McGuinness v. Lincoln Hall* involved a dispute about severance pay in which the court found that the plaintiff did in fact have a comparator whose role was similar enough to hers to permit her to state a *prima facie* Title VII claim.  263 F.3d 49, 53-54 (2d Cir. 2001).  The court in *McGuinness* focused on plaintiffs having to establish that they are "similarly situated in <u>all material</u> respect" to the employee they point to as a comparator, and did not excuse Title VII plaintiffs from identifying a comparator altogether.  *Id.* at 54 (emphasis added).  As discussed, Plaintiffs here cannot demonstrate any male employees similarly situated in all material respects.[3]

Two other cases that Plaintiffs cite shed some light on when a plaintiff can be excused from identifying relevant comparators – and those holdings make clear how far Plaintiffs fall short of meeting this threshold.  First, consistent with Varvatos's arguments in support of summary judgment, *Barrett v. Forest Laboratories, Inc.*, rules that the EPA and Title VII "must be construed in harmony, particularly where claims made under the two statutes arise out of the same discriminatory pay policies."  39 F. Supp.3d 407, 451 (S.D.N.Y. 2014).  One "key difference" identified in *Barrett* is that a Title VII claim "requires a showing of discriminatory intent."  *Id.* at 451-52.  "[A] Title VII plaintiff could succeed by showing that her employer intentionally depressed her wages, even if the employer did not employ any similarly situated males."  *Id.* at 452.  In other words, a plaintiff could maintain a Title VII claim if there is evidence that her pay was <u>intentionally</u> reduced, in the absence of male comparators against

---

3.   Plaintiffs also find no refuge in *McGuinness*'s dicta, which is inapplicable to the ultimate holding and does not help Plaintiffs establish when or how a Title VII claim can be maintained absent evidence of a relevant comparator.

whom to measure her compensation.  Again, this is not true here.  Plaintiffs lack any evidence either that their pay was reduced, or that Varvatos intentionally discriminated against them. Plaintiffs' claims are based on the allegation that male sales professionals receive <u>additional</u> pay through a "clothing allowance" which is tied directly to a job duty and burden that certain male employees have to wear/model Varvatos clothing at work.

Similarly, *American Nurses Association v. Illinois,* permitted a plaintiff to maintain a Title VII claim "where there is direct evidence that an employer has <u>intentionally</u> depressed a woman's salary because she is a woman."  783 F.2d 716, 721 (7th Cir. 1986) (emphasis in original).  The court in *American Nurses* noted that "[t]he decision [] does not approve a cause of action based on a <u>comparison</u> of the wage rates of dissimilar jobs."  *Id.* (emphasis in original). As *American Nurses* made clear, disparate pay for employees who have different job responsibilities cannot serve as the basis for a Title VII claim.  Yet that is precisely what Plaintiffs argue.  They wrongly attempt to sidestep the need to demonstrate similar roles to their male comparators, which they cannot do, by claiming the "clothing allowance" is facially discriminatory, which it is not (not all male employees receive it), and that, on its own, suffices to establish their Title VII claim.

Even if Plaintiffs were not required to show similar job duties, they could not prove the sort of intentional discrimination required by *Barrett* and *American Nurses*.  As Plaintiffs acknowledge, Varvatos has a sex-neutral hiring policy, Varvatos utilizes the same commission structure for male and female sales professionals, and Varvatos determines the hourly pay of male and female sales professionals without regard to their sex.  (Chang Decl. ¶¶ 18-19; May 22, 2018 Declaration of Benjamin Harris in Support of Varvatos's Motion for Summary Judgment ("Harris Decl.") ¶ 31.)  Plaintiffs do not allege, nor can they show, anything approaching

4

systematic hostility towards them due to their sex.  The only discriminatory activity that is

alleged is the "clothing allowance" provided to male employees who alone are required to

wear/model Varvatos clothing at work – and necessarily would have to buy clothing in order to

do so.  The requirement that male sales professionals wear/model Varvatos clothing is a common

industry practice based on business necessity, and the corresponding "clothing allowance" is

justified by the male sales professionals' job duties and what would otherwise be the prohibitive

cost to obtain clothing Varvatos clothing to wear at work.[4]  The isolated nature of Plaintiffs'

allegations – and the wholly reasonable business justification for the "clothing allowance" –

renders Plaintiffs unable to demonstrate the discriminatory intent required for a Title VII claim.

> B.    *The "Clothing Allowance" Is Not Discriminatory on its Face.*

Plaintiffs argue that the "clothing allowance" provided to male sales professionals

constitutes a benefit to male employees that female employees do not receive, and therefore is

facially discriminatory.  (Pls.' Opp'n at 6.)  Plaintiffs analogize Varvatos's "clothing allowance"

to policies found to be discriminatory in *International Union, United Automotive, Aerospace &*

*Agricultural Implement Workers of America, UAW v. Johnson Controls, Inc.* and *Johnson v. New*

*York*, but neither case supports their argument.

In *Johnson Controls*, the court found an employer's policy of preventing female

employees from holding certain positions in which they could be exposed to lead facially

discriminatory.  The court did so because the policy in question – ostensibly designed to protect

---

4.    Plaintiffs argue, citing to no authority but a 17-year old Louisiana Law Review article, that "discriminatory intent" does not mean hostility towards members of a protected class.  Instead, they suggest that "discriminatory intent" merely means that an employee's race or sex motivated an adverse employment decision.  Plaintiffs fail to explain how an employer's adverse decision motivated by sex is not reflective of ill will towards members of that sex.  Nor do Plaintiffs explain why an employer's otherwise nondiscriminatory treatment of female employees would not be relevant to determining whether an isolated and allegedly discriminatory action was actually motivated by the fact that those employees were women (whether or not Plaintiffs are required to prove more systematic hostility).

employees' unborn children from the possible harms of lead exposure – used sex as a proxy for fertility and completely ignored any effects that lead exposure might have on fertile male employees' children.  499 U.S. 187, 197-98 (1991).  Here, Varvatos relies on no such assumptions nor makes such sex-based exclusions.  Varvatos designs clothing for men.  Thus, the only employees capable of demonstrating how that clothing fits and looks on men are its male employees.  Having female employees also wear the men's clothing designed by Varvatos would wrongfully and misleadingly depict Varvatos as a unisex clothing company.

*Johnson v. New York* involved a situation where employees were effectively forced to retire at age 60.  49 F.3d 75, 77 (2d Cir. 1995).  Although the employer's actual requirement was that its employees maintain active status in the Air National Guard ("ANG"), this effectively constituted a forced retirement age because the ANG forced members out once they turned 60.  *Id*.  Thus, the employer's requirement was not "merely correlated with age" but "in fact implement[ed] an age-based criterion," which constituted a violation of the Age Discrimination in Employment Act's explicit language.  *Id*. at 79-80.  To the contrary, Varvatos only requires certain male employees – those who work in its stores and/or have customer-facing roles – to wear/model Varvatos clothing.  There are a number of male employees at Varvatos's corporate headquarters who do not interact with customers or members of the fashion industry and therefore do not have to wear/model Varvatos clothing.  They do not receive a "clothing allowance."  It is thus clear that by tying the "clothing allowance" to Varvatos's legitimate business interest and the job duty requiring certain male employees to wear Varvatos clothing, Varvatos has not used the "clothing allowance" as a proxy to provide male employees with an extra benefit.  Here, the "clothing allowance" is inextricably linked to the undisputed fact that

6

Varvatos is a male fashion company that requires a particular subset of employees to wear/model, and therefore buy, Varvatos clothing being sold in its stores – it is not tied to sex.

      C.    *Varvatos Has Valid Affirmative Defenses to Plaintiffs' Title VII Claims.*

Even if Plaintiffs could establish a *prima facie* Title VII claim, which they cannot, the "clothing allowance" is indisputably based on a factor other than sex and furthers a business purpose, which provide valid affirmative defenses to Plaintiffs' claims.

<u>Any Factor Other Than Sex</u>:  Plaintiffs argue that there "is a 100 percent correlation between being a male, being subject to the Male Dress Code and receiving the Clothing Allowance."  (Pls.' Opp'n at 8.)  They are wrong.  As they acknowledge in their own summary judgment papers, not all male employees at Varvatos receive the "clothing allowance."  (May 24, 2018 Declaration of Richard Weiss in Support of the Motion for Summary Judgment on Liability ("Weiss Decl.") Ex. 24.)  Only those male employees who work in Varvatos stores, or who work out of Varvatos headquarters but have a customer-facing or industry-facing role are required to wear/model, and therefore buy, Varvatos clothing.  (Chang Decl. ¶ 21; Harris Decl. ¶ 13.)  And it is only those employees who receive the "clothing allowance."  (Chang Decl. ¶ 21; Harris Decl. ¶ 15.)  Thus, all male employees do <u>not</u> receive a "clothing allowance," contrary to Plaintiffs' assertion.  The "clothing allowance" does not correspond with sex but, rather, with job duties.

<u>Bona Fide Occupational Qualification ("BFOQ")</u>:  Plaintiffs argue that the BFOQ defense does not apply to claims of pay discrimination.  (Pls.' Opp'n at 10-11.)  However, male and female sales professionals essentially serve different roles at Varvatos stores because male sales professionals are required to wear Varvatos clothing at work, acting as live models – a job duty that women are neither required to do nor capable of doing since Varvatos manufactures

7

men's clothing.  (May 23, 2018 Declaration of Gerard Mayorga in Support of Varvatos's Motion for Summary Judgment ("Mayorga Decl.") ¶¶ 26-28; Harris Decl. ¶ 10-11.)

Plaintiffs then argue that having male sales professionals dress in Varvatos is not essential to Varvatos's business.  (Pls.' Opp'n at 12.)  This is a business judgment that Varvatos, not Plaintiffs (nor frankly a court), is entitled to make.  *See Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 661 (1989) (courts "should proceed with care" before mandating adherence to an employee's proposed alternative policy because "courts are generally less competent than employers to restructure business practices"); *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577-78 (1978) (holding same, and warning about the "dangers" of courts attempting to identify "best practices" rather than evaluating whether a particular policy is unlawful or a legitimate non-discriminatory practice).

Plaintiffs are again wrong. It is a widespread practice by clothing retailers to have their employees dress in the brand(s) being sold in a given store because it is well-known to increase sales.  (Harris Decl. ¶ 34; Mayorga Decl. ¶ 24; May 24, 2018 Declaration of Brett Collings in Support of Varvatos's Motion for Summary Judgment ("Collings Decl.") Ex. 9, Fusaro Tr. at 76:6-11; Collings Decl. Ex. 10, Romero Tr. at 23:15-19, 78:23-79:23; Collings Decl. Ex. 12, Chaparro Tr. at 108:11-109:5.)  Rather than rely exclusively on static presentations like mannequins and floor displays, Varvatos has its male sales professionals dress in and model Varvatos clothing at work to increase the visibility of the items they are wearing, show how they can be paired together, and ultimately boost sales.  (Harris Decl. ¶ 34; Mayorga Decl. ¶ 24.)

Plaintiffs allege that having male sales professionals dress in Varvatos cannot be critical to Varvatos's business because Varvatos hires women as sales professionals and does not always have a male sales professional in each of its stores.  (Pls.' Opp'n at 12.)  Contrary to Plaintiffs'

8

84337748_3

claim, Varvatos's dress code explicitly provides that how sales professionals present themselves is "important" and that it is "essential" that male sales professionals wear current season Varvatos clothing every day they are at work.  (Collings Decl. Ex. 2.)  What Varvatos's gender neutral hiring policy reflects is the fact that both men and women can act as sales professionals in its stores, but that male sales professionals are capable of performing additional tasks that help boost a store's overall sales.  Additionally, when men are hired as sales professionals, it is critical that they wear Varvatos clothing at work because if they wore other brands, customers would certainly see and might be inclined to ask about – and ultimately purchase – those items made by Varvatos's competitors.  If nothing else, having male sales professionals dress in Varvatos prevents the highly problematic situation where male sales professionals would in effect be promoting rival brands.  This concern uniquely applies to male sale professionals – the brands worn by female sales professionals will not cause analogous confusion or negatively impact sales since customers know Varvatos manufactures men's clothing.

Business Necessity:  Plaintiffs cite to *Johnson Controls* for the proposition that business necessity cannot be used to justify a facially discriminatory policy (Pls.' Opp'n at 13), but for the reasons discussed above, *Johnson Controls* is clearly distinguishable from the facts of this case and the "clothing allowance" is not facially discriminatory.

Plaintiffs also repeatedly suggest that Varvatos could enjoy the benefits attendant with having male sales professionals dress in Varvatos while at work by essentially loaning male sales professionals Varvatos clothing to wear at work.  (Pls.' Opp'n at 13.)  Again, Plaintiffs are improperly asking to substitute their, and the Court's, business judgment for Varvatos's. *Furnco*, 438 U.S. at 578.  Plaintiffs also ignore the alternative policy standard followed by the courts, including cases heavily relied upon by Plaintiff.  *See Johnson Controls*, 499 U.S. at 194

9

(ruling that the alternative policy must not only be less discriminatory, but also meet the defendant's legitimate business interest); *Wards Cove*, 490 U.S. at 661 (any alternative procedure proposed by plaintiffs "must be equally effective as [the employer's] chosen . . . procedures in achieving [the employer's] legitimate . . . goals.  Moreover, factors such as the cost or other burdens of proposed [alternatives] are relevant in determining whether they would be equally as effective.").

Plaintiffs' proposal essentially distinguishes from the existing "clothing allowance" in that male sales professionals would not be entitled to keep Varvatos clothing after it is no longer in season.  Given the relatively limited wardrobe most male sales professionals have for any given quarter, they have to wear many of the items of Varvatos clothing they have quite frequently – and while moving around in the Varvatos stores.  As a result, by the end of a season, the clothing can show signs of wear and have little value to Varvatos – or its male sales professionals.  Plaintiffs suggest that Varvatos could collect that clothing and reap whatever value it has at the end of a season, but they fail to reconcile the notion of a second-hand market for well-worn clothes with the fact that Varvatos is a luxury brand that designs high-end clothing and needs to portray and maintain that image.  Plaintiffs' alternative policy in and of itself is not a feasible policy for luxury brands like Varvatos, nor does it equally advance Varvatos's legitimate business necessity of increasing the visibility of items being sold in the store, thus increasing sales.

> D.   *Knox Did Not File a Verified Charge With the EEOC.*

Plaintiffs argue that Knox properly verified the form she submitted to the EEOC because she signed it under penalty of perjury.  (Pls.' Opp'n at 14.)  As Plaintiffs note, 29 C.F.R. § 1601.3 defines "verified" as including notarized documents or documents "supported by an

10

unsworn declaration in writing under penalty of perjury."  Nowhere do EEOC regulations permit a charge to be "verified" simply by signing – and not notarizing – the form in question, without a supporting declaration made under penalty of perjury.

\*        \*        \*

Plaintiffs cannot establish that they had similar job duties as their male colleagues, that Varvatos had any discriminatory intent or that the "clothing allowance" is facially discriminatory, or that Varvatos's affirmative defenses lack merit.  Accordingly, Varvatos is entitled to summary judgment on Plaintiffs' Title VII claim.[5]

II.    _Varvatos is Entitled to Summary Judgment on Plaintiffs' EPA and NYSEPA Claims._

A.    _Plaintiffs Do Not Explain How They and Male Sales Professionals Receive Unequal "Wages."_

Plaintiffs' entire rebuttal to Varvatos's arguments about whether they receive equal "wages" constitutes an attack on one minor point, to the complete exclusion of valid arguments made about why Plaintiffs receive equal wages to their male counterparts.  Specifically, Plaintiffs focus solely on whether female sales professionals receive additional pay to compensate for the lack of a "clothing allowance" in the same form that the male sales professionals receive.  (Pls.' Opp'n at 16-20.)

Plaintiffs admit that at least certain female sales professionals began receiving additional pay when they were no longer provided with a clothing allowance that gave them free clothing after Varvatos stopped selling its women's clothing line.  (_Id_. at 19.)  They then rely on the fact that the additional pay is not formally documented in a policy or referenced in earlier

---

5.    Claims of pay discrimination under New York's Human Rights Law are analyzed using the same standards as a federal Title VII claim and thus, for the same reasons that Varvatos is entitled to summary judgment dismissing Plaintiffs' Title VII claim, so too is Varvatos entitled to summary judgment on Plaintiffs' claim under the New York Human Rights Law.

correspondence to suggest that it may not exist.  This argument is disingenuous at best.  The only

two Plaintiffs employed during the transition away from the prior female clothing allowance

both independently testified at deposition to the exact same additional pay that Varvatos gave to

its female sales professionals when it stopped selling its women's clothing line. (Collings Decl.

Ex. 8, Kassen Tr. at 54:11-55:7, 130:23-133:14; Collings Decl. Ex. 9, Fusaro Tr. at 72:22-73:5,

99:17-101:12.)

Most significantly, Plaintiffs fail to address whatsoever the fact that the "clothing

allowance" provided to male sales professionals falls outside of the definition of "wages" under

the EPA.  Nowhere do Plaintiffs even attempt to explain how allowing employees to select a

limited number of items to wear at work constitutes compensation, as defined by the relevant

regulations – which list much more traditional forms of remuneration like health insurance and

vacation time.  Plaintiffs also fail to address the fact that female sales professionals receive a

50% discount at AllSaints that their male colleagues do not receive.  Under Plaintiffs' theory,

that discount – provided solely to female employees – would have to constitute "wages" and

therefore the value that female employees can obtain from that discount would have to be

weighed against the value to male sales professionals of the "clothing allowance" they receive.

Plaintiffs fail to even engage in that calculus, much less explain how male sales professionals

receive higher "wages" than female sales professionals.[6]

---

6.  Plaintiffs do address whether the "clothing allowance" provided to male sales professionals constitutes a
    "wage" under the New York EPA, but simply make the cursory argument that the "clothing allowance" "fits
    neatly within the plain meaning of 'benefits or wage supplements.'"  (Pls.' Opp'n at 32.)  However, the
    examples of "benefits or wage supplements" set forth in the New York statute are "reimbursement for expenses;
    health, welfare, and retirement benefits; and vacation, separation or holiday pay."  N.Y. Labor Law § 198-c(2).
    The "clothing allowance" amounts to providing male sales professionals with a uniform, which does not "fit
    neatly" or at all obviously alongside the traditional forms of compensation listed by NYLL § 198 despite
    Plaintiffs' conclusory allegation to the contrary.

B.    _Male and Female Sales Professionals Do Not Perform Equal Work._

Plaintiffs attempt to undermine the fact that male and female sales professionals have different job duties by arguing that Varvatos must prove that it requires all male sales professionals to carry out those duties regularly.  (Pls.' Opp'n at 21.)  Varvatos's male sales professionals are indeed required to wear/model Varvatos clothing regularly; in fact, they must do so the entire time they are working.  Plaintiffs then concede that male sales professionals have to try on clothing for customers and in connection with "product knowledge" meetings, but seek to brush aside those additional responsibilities by alleging that male sales professionals perform those functions "erratic[ally]."  (_Id._ at 22.)  In support, a number of Opt-In Plaintiffs submitted formulaic declarations with similar, and self-serving, testimonials about rarely asking male colleagues to try on clothing for customers.  However, while Plaintiffs seek to diminish the role their male colleagues played, the undisputed material fact remains that male sales professionals are asked to try on clothing in order to serve as a reference both for their colleagues and for customers.[7]

More importantly, and typical of Plaintiffs' opposition brief, they completely ignore the most substantial responsibility that differentiates male and female sales professionals – male sales professionals are indisputably required to wear at least three pieces of current season

---

[7].    Plaintiffs also claim that the responsibility to try on items for customers is not limited to male sales professionals because three Opt-In Plaintiffs recounted trying on clothing for customers.  Laurentina Chaparro indicated she did so _once_ in the three years she worked at Varvatos, Joy Fusaro recalled "at least" _one_ occasion in the nearly 14 years she has worked at Varvatos, and Pamela Kassen stated she tried on clothing for customers "on several occasions" over the nearly 14 years she has worked at Varvatos.  (Chaparro May 31, 2018 Declaration in Opposition to Varvatos's Motion for Summary Judgment, ¶ 9; Fusaro June 8, 2018 Declaration in Opposition to Varvatos's Motion for Summary Judgment, ¶ 7; Kassen June 7, 2018 Declaration in Opposition to Varvatos's Motion for Summary Judgment, ¶ 7.)   Clearly a handful of instances, over the course of over thirty years of combined experience – and with no similar experiences reported by any other Opt-In Plaintiffs – does not establish that female sales professionals have the same responsibility to try on clothing for customers as do male sales professionals (who even Plaintiffs admit do so as often as monthly).  (Pandey June 6, 2018 Declaration in Opposition to Varvatos's Motion for Summary Judgment, ¶ 5; Fusaro June 8, 2018 Declaration in Opposition to Varvatos's Motion for Summary Judgment, ¶ 5.)

13

Varvatos clothing at work.  (Collings Decl. Ex. 2.)  Female sales professionals are not.  (*Id.*)  As a result, male sales professionals serve as live, in-store models who draw attention to the Varvatos clothing they wear, every hour of every day they work.  (Harris Decl. ¶ 32; Chang Decl. ¶ 9; Mayorga Decl. ¶ 24.)  The requirements to wear and model Varvatos clothing and style it to match the current ethos of the brand are requirements unique to male sales professionals – and justified by Varvatos's business.

   C.   <u>The Jobs of Male and Female Sales Professionals Require Different Skill, Effort, and Responsibility.</u>

   <u>Skill</u>:  Plaintiffs acknowledge that, regardless of "how much expertise a female sales professional gains, no matter how hard she works, she can never be a man."  (Pls.' Opp'n at 23.)  They are correct – and that is why only male sales professionals possess the skill necessary to model Varvatos clothes, which are designed for men.  (*See* Mayorga Decl. ¶¶ 26-28.)  Plaintiffs seem to assume that "skill" – as used in the context of the EPA – has the same meaning as in everyday parlance, and that it only encompasses qualities that individuals can develop.

   Plaintiffs fail to address the fact that part of "skill," as defined under the EPA, includes the "ability" to carry out a particular task.  29 C.F.R. § 1620.15.  Plaintiffs cannot deny that they lack the ability to appropriately model the menswear designed and sold by Varvatos.  To be clear, Varvatos designs and sells high-end, expensive men's clothing and it would be inconsistent with that business for female sales professionals to be wearing and modeling Varvatos men's clothing at work on a regular basis.

   <u>Effort</u>:  Plaintiffs attempt to diminish the effort required to wear Varvatos clothing while at work because Varvatos emphasizes the comfort of its clothing, and by suggesting that male sales professionals could select comfortable items to wear to work and that female sales professionals similarly wear "uncomfortable, restrictive" clothing.  (Pls.' Opp'n at 25-26.)

14

Varvatos does not contest that its clothing is designed to be comfortable.  But the fact that its clothing is comfortable in a more relaxed setting does not mean that Varvatos's clothing is comfortable to wear when working on your feet all day, moving between multiple floors, stocking merchandise, and doing the other work required of sales professionals.  (Mayorga Decl. ¶ 19.)  The clothing that a person would find comfortable working a desk job may not necessarily be as comfortable if the same person wore the same outfit to work at a construction site.

Furthermore, the Three Piece Rule requires male sales professionals to wear a jacket or vest to work.  While those items can be, and are designed to be, comfortable in many settings, they can make it difficult to perform the more demanding physical parts of a sales professional's job.  Ignoring the plain language and purpose of the Dress Code, Plaintiffs' suggest that male sales professionals could simply "pull" clothing that fits more loosely and would allow them to meet the demands of their job more easily.  However, virtually all Varvatos clothing is cut to fit tightly – and indeed must be cut so in order to match the brand's aesthetic – and male sales professionals are not free to eschew wearing a jacket or vest pursuant to the Varvatos Dress Code.  Female sales professionals, on the other hand, can select clothing from brands that do not fit as tightly, and they are not subject to the Three Piece Rule – or any other rule that requires them to wear multiple layers while at work.  (Collings Decl. Ex. 2.)

Plaintiffs also argue that male sales professionals do not endure any extra stress because of the financial demands associated with the Varvatos Dress Code as it applies to them because they receive the "clothing allowance."  (Pls.' Opp'n at 27.)  But that is precisely the point. Unlike female sales professionals, male sales professionals must acquire, and wear, new Varvatos clothing every season in order to stay compliant with the Dress Code.  (Collings Decl. Ex. 2.)  In the absence of the "clothing allowance" provided to male sales professionals, they

15

would have to spend thousands of dollars each season to obtain Varvatos clothing to wear/model at work.  The "clothing allowance" they receive prevents the male sales professionals from being subjected to a unique and substantial cost.

Responsibility:  Plaintiffs' discussion of the assessment of responsibility under the EPA focuses on the relative accountability of male and female sales professionals, and states in conclusory fashion that the accountability for male and female sales professionals to comply with the Varvatos Dress Code is the same.  (Pls.' Opp'n at 24.)  However, as Plaintiffs admit, the Dress Code has different requirements for male and female sales professionals.  (Collings Decl. Ex. 2; Collings Decl. Ex. 10, Romero Tr. at 54:21-55:10,  66:11-15; Collings Decl. Ex. 12, Chaparro Tr. at 76:18-21; Harris Decl. ¶ 11; Chang Decl. ¶ 14; Mayorga Decl. ¶¶ 12, 22-23.) Male sales professionals are the only ones accountable for wearing Varvatos clothing at work and styling the pieces in a way that matches Varvatos brand and current seasonal trends.  (Harris Decl. ¶¶ 27, 32; Collings Decl. Ex. 2.)  Female sales professionals, on the other hand, are not limited to wearing Varvatos clothing at work and do not face the pressure of trying to comport their outfits with the specific seasonal trends being promoted by Varvatos.  (Chang Decl. ¶¶ 13-14; Harris Decl. ¶ 13; Mayorga Decl. ¶ 12.)

Plaintiffs analogize the obligation to comply with the substantially different dress code requirements as the difference between one employee turning out the lights and another who did not have to.  (Pls.' Opp'n at 24.)  This analogy ignores that the difference between male and female sales professionals is not incidental or minimal but is fundamental.  (Harris Decl. ¶ 32; Chang Decl. ¶ 9; Mayorga Decl. ¶ 24.)  It also conflates an employee's accountability with an employee's authority – which is not the standard by which an employee's responsibilities are judged in accordance with the EPA.  29 C.F.R. § 1620.17(a).  In this case, male sales

16

professionals are subject to a different and stricter dress code than female sales professionals, compliance with which is important to Varvatos's business.  Thus, the Varvatos Dress Code alone puts additional responsibility, and accountability, on male sales professionals.[8]

\*       \*       \*

Plaintiffs' failure to establish that they receive different "wages" from their male colleagues, as well as their inability to demonstrate that they perform equal work requiring equal skill, effort, and responsibility, prevents them from establishing entitlement to recovery under the EPA or its New York state analog, and entitles Varvatos to summary judgment on these claims.

## CONCLUSION

For the reasons set forth above and in Varvatos's May 24, 2018 memorandum in support of its motion for summary judgment, Varvatos requests that the Court grant its motion for summary judgment on each of Plaintiffs' claims.

DATED:  June 22, 2018

HUGHES HUBBARD & REED LLP

By:  _____/s/ Ned H. Bassen_____
Ned H. Bassen
Brett M. Collings
One Battery Park Plaza
New York, New York 10004
Tel:  (212) 837-6000
Fax:  (212) 299-4726
ned.bassen@hugheshubbard.com
brett.collings@hugheshubbard.com

*Attorneys for Defendant John Varvatos Enterprises, Inc.*

---

8. Plaintiffs do not address the fact that male sales professionals also have additional responsibility because they are accountable for trying on clothing from new seasonal lines in conjunction with product knowledge meetings and for customers who ask to see how items fit on men with certain builds.  (Harris Decl. ¶ 33; Chang Decl. ¶ 11; Mayorga Decl. ¶ 22.)

17

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on June 22, 2018, I caused to be electronically filed the foregoing REPLY IN SUPPORT OF DEFENDANT JOHN VARVATOS ENTERPRISES, INC.'S MOTION FOR SUMMARY JUDGMENT by using the CM/ECF system, which sends a notice of electronic filing to all counsel of record who have registered to receive notices from the Court under the CM/ECF system.

_____

Brett M. Collings