UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

TESSA KNOX,                                                    :

                                        Plaintiff,    :

                    -against-                          :              17 Civ. 772 (GWG)

JOHN VARVATOS ENTERPRISES, INC.,    :              ECF Case

                                        Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE OF KNOX,
THE 13 OPT-IN PLAINTIFFS, AND THE CLASS TO ALLOW PLAINTIFFS
TO OFFER VARVATOS' INSURANCE POLICY INTO EVIDENCE
TO PROVE THE AMOUNT OF PUNITIVE DAMAGES THE
JURY SHOULD AWARD TO IMPACT VARVATOS


DUNNEGAN & SCILEPPI LLC
Attorneys for the Plaintiff, the 13
 Opt-In Plaintiffs and the Class
350 Fifth Avenue
New York, New York 10118
(212) 332-8300

Plaintiff Tessa Knox ("Knox"), the 13 opt-in plaintiffs and the members of the Class the Court certified in an order entered February 21, 2018 (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of their motion for an order allowing Plaintiffs to introduce into evidence during Phase 2 of the trial – if the jury decides that punitive damages are appropriate under Title VII – the insurance policy of defendant John Varvatos Enterprises, Inc. ("Varvatos") with Ironshore Indemnity Inc. ("Insurance Policy") for the purpose of proving the minimum amount of punitive damages the jury should award to have any deterrent or punitive impact on Varvatos.

<u>Statement of Relevant Facts</u>

With its initial disclosures, Varvatos produced its Insurance Policy.  The Insurance Policy purports to cover damages, including punitive damages, that are awarded against Varvatos in an employment discrimination case:

> "The Insurer shall pay on behalf of the Company all Loss which the Company shall be legally obligated to pay as a result of a Claim (including an Employment Practices Claim) first made against the Company during the Policy Period or the Discovery Period for a Wrongful Act, and reported to the Insurer pursuant to Section VII. (Section I.C., JVE-000005)

> \*       \*       \*

> 'Loss' shall mean compensatory damages (including back pay and front pay), punitive or exemplary damages, the multiple portion of any multiplied damage award, judgments, settlements, pre- and post-judgment interest, and Costs of Defense." (Section II.O, JVE-000007)

The policy also avoids New York law on the issue of whether punitive damages are insurable by providing "[i]t is understood and agreed that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage for punitive or exemplary damages or the multiple portion of any multiplied damage award." (Section II.O, JVE-000007)  Nevada law allows insurance for punitive damages. Nev. Rev. Stat. § 681 A.095

The maximum amount for which the Policy will indemnify Varvatos is $5 million. (JVE-000001)  Varvatos cannot plausibly argue that this provision does not cover the amount of punitive damages in this case.

If Varvatos wishes to argue that it does not have coverage for the punitive damages, a prospect we consider remote, Varvatos is free to argue that point to the jury.

<u>Argument</u>

I.

THE INSURANCE POLICY IS RELEVANT TO THE ISSUE
OF THE AMOUNT OF PUNITIVE DAMAGES THE
JURY SHOULD AWARD

If the jury determines during Phase 1 of the Trial that Varvatos is liable for punitive damages under Title VII, then the jury could not award an amount consistent with the purposes of a punitive damages award without considering the Insurance Policy.

A.      <u>The Purpose Of An Award Of Punitive Damages Is To Deter And Punish</u>

Punitive damages are an available remedy under Title VII.  42 U.S.C. § 1981a(b)(1) provides:

> "A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."

The determination of whether to award punitive damages, as well as the amount of punitive damages within certain statutory limits, are issues for the jury. <u>Landgraf v. USI Film Prod.</u>, 511 U.S. 244, 247 (1994)("The Civil Rights Act of 1991 (1991 Act or Act) creates a right to recover compensatory and punitive damages for certain violations of Title VII of the Civil Rights Act of 1964....The Act further provides that any party may demand a trial by jury if such

damages are sought.")

The purpose of a punitive damages award is to deter and punish the defendant. Exxon Shipping Co. v. Baker, 554 U.S. 471, 492 (2008)("Regardless of the alternative rationales over the years, the consensus today is that punitives are aimed not at compensation but principally at retribution and deterring harmful conduct."); City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 266–67 (1981)("Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct.").

Plaintiffs' proposed jury instruction concerning the amount of punitive damages provides:

> "Knox and the Title VII Class members have asked you to award them punitive damages. The purpose of punitive damages is not to compensate the plaintiffs for the harm done to them, but to punish Varvatos for wrongful conduct and to deter similar wrongful conduct from Varvatos and others.
>
> In determining the amount of punitive damage, if any, to award Knox and the Title VII class members, you may consider the evidence regarding Varvatos's financial resources in fixing the amount of such damages, including whether Varvatos's insurance company will pay the punitive damages award on Varvatos's behalf."

Varvatos' Insurance Policy materially impacts how the jury will apply this rule of law.

B.     Unless The Jury Can Consider The Insurance Policy In
       Determining The Amount Of Punitive Damages, The Purpose Of
       An Award Of Punitive Damages Will Be Frustrated Because The Jury
       Will Not Know What Amount Is Necessary To Deter And Punish Varvatos

The Policy covers an award of damages, including punitive damages, up to $5 million. If the jury determines during Phase 1 of the Trial that punitive damages are appropriate, the jury must in Phase 2 of the trial, determine the amount of punitive damages. If the jury cannot consider Varvatos' Insurance Policy in determining the appropriate amount of punitive damages,

the jury could (i) award punitive damages in an amount that the jury believes will deter and

punish Varvatos but (ii) because the insurance policy covers punitive damages, award an amount

of punitive damages that will not deter or punish Varvatos to any degree whatsoever.  That result

would frustrate the purpose of an award of punitive damages.  Accordingly, to assist the jury in

determining the amount of punitive damages that are necessary to deter and punish Varvatos, the

Court should allow the jury to consider the Insurance Policy during the phase of the trial at

which the jury will determine the amount of punitive damages.

C.      Allowing The Jury To Consider The Insurance Policy To
        Determine The Amount Of Punitive Damages Is Consistent With The
        Established Rule Of Allowing The Jury To Consider Evidence Of Net Worth

Because the purpose of punitive damages is to deter and punish a defendant, courts

generally allow a jury to consider the financial resources of the defendant in determining the

amount of damages. Whitney v. Citibank, N.A., 782 F.2d 1106, 1119 (2d Cir. 1986)("In

determining the amount and effectiveness of exemplary damages to be awarded against a

defendant, the court may take into consideration the defendant's wealth or net worth....This

consideration is relevant as enabling the fact finder to arrive at an award of sufficient substance

to make the offender 'smart', since a lesser award would probably not achieve the desired

deterrent effect.")(Internal citations omitted.); Iannone v. Frederic R. Harris, Inc., 941 F. Supp.

403, 414 (S.D.N.Y. 1996)("In addition, because punitive damages are designed to serve a

deterrent function, they must take into account the financial circumstances of the

defendant...Thus, punitive damages that in other respects appear to be reasonably related to

compensatory damages might be too low to serve as an effective deterrent.")(Internal citations

omitted.); See also BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 591 (1996)("Since a fixed

dollar award will punish a poor person more than a wealthy one, one can understand the

relevance of this factor to the State's interest in retribution (though not necessarily to its interest in deterrence, given the more distant relation between a defendant's wealth and its responses to economic incentives).").

In other contexts, plaintiffs may introduce evidence of defendant's wealth.  For example, one purpose of statutory damages under the Copyright Act, 17 U.S.C. § 504(c), is to deter future infringing conduct. Stevens v. Aeonian Press, Inc., 2002 WL 31387224, at *3 (S.D.N.Y. Oct. 23, 2002)("Defendants' financial circumstances also are relevant in determining an amount of damages that will serve to deter future infringing conduct. Discovery has shown that Defendants possess substantial assets, that they have made sizeable unexplained expenditures, and that they have transferred over $1.5 million of their personal assets to limited partnerships for the benefit of their children since the inception of this litigation."). NJMG, Inc. v. Fox News Network, LLC, 13 Civ. 7153 (ER), Dkt. 188 at 2/2 (S.D.N.Y. Feb. 11, 2016)("Fox News' motion in limine to preclude evidence or argument regarding Fox News' revenues, profits, and financial status (Doc. 148) is GRANTED in part and DENIED in part. Fox News' motion is GRANTED as to evidence regarding the gross revenues and net profits of Fox News and the television programs *Justice with Judge Jeanine* and *Special Report with Bret Baier*. Fox News' motion is DENIED as to Fox News' overall financial status as a large for profit corporation.").

We concede that this is an issue of first impression. See Mathie v. Fries, 121 F.3d 808, 816 (2d Cir. 1997)("Although we do not decide the question of whether a fact-finder can rely upon the existence of an indemnity agreement in order to *increase* an award of punitive damages, we rule that a fact-finder can properly consider the existence of such an agreement as obviating the need to determine whether a defendant's limited financial resources justifies some *reduction* in the amount that would otherwise be awarded."). Anderson v. Aparicio, 25 F. Supp.3d 303, 314

(E.D.N.Y. 2014), aff'd and remanded sub nom. Anderson v. Cty. of Suffolk, 621 F. App'x 54

(2d Cir. 2015)("As plaintiff acknowledges, the Second Circuit has repeatedly refrained from

deciding 'whether a fact-finder can rely upon the existence of an indemnity agreement in order to

increase an award of punitive damages.' Mathie, 121 F.3d at 816; see also Vasbinder v.

Scott, 976 F.2d 118, 122 (2d Cir. 1992) ('[w]e do not consider the extent to which an

indemnification agreement is relevant to the amount of punitive damages that may properly be

awarded'). The question, then, remains open in this Circuit.").[1]

## II.

### ALLOWING THE JURY TO CONSIDER THE INSURANCE POLICY TO DETERMINE THE AMOUNT OF PUNITIVE DAMAGES WOULD NOT INVOLVE ANY IMPERMISSIBLE INFERENCE UNDER THE FEDERAL RULES OF EVIDENCE

FRE 411 bars the admission of insurance to prove liability.  It provides:

"Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control."

FRE 411 does not bar the admission of an insurance policy to prove the amount of

damages.  Dallas v. Goldberg, 2002 WL 1013291, at *5 (S.D.N.Y. May 20, 2002)("The Court

---

[1] In Anderson, the plaintiff challenged the court's refusal to instruct the jury that any award against the defendant would be indemnified by the County.  In holding that plaintiff was not prejudiced, the Court reasoned that although the Second Circuit had not decided whether indemnification agreements could be used to increase a punitive damage award, it would be inappropriate to instruct the jury as to the existence of the County's indemnification arrangement because "a jury may fix an unrealistic punitive award, based upon a municipality's footing of the bill" and "an award of punitive damages against a municipality 'punishes' only the taxpayers, who took no part in the commission of the tort." Anderson, at 315.  Unlike Anderson, where the entity that would indemnify the defendant is a government entity that (i) has unlimited taxing power and (ii) will indemnify any award, and therefore the defendant will never personally experience the punishment, in this case, the indemnifier is a private insurance company that will only indemnify up to $5 million, and any amount that exceeds that limit will be borne by the defendant.

notes that Federal Rule of Evidence 411, invoked by Defendants in support of their argument for

preclusion of indemnity evidence, merely precludes the use of liability insurance evidence 'upon

the issue of whether the person acted negligently or otherwise wrongfully.' Fed. R. Evid. 411.

No such purpose underlies the proffer here; Rule 411 is therefore irrelevant to the issue at

hand."); <u>Scherer v. City of New York</u>, 2007 WL 2710100, at *10 (S.D.N.Y. Sept. 7, 2007)

("Second, Federal Rule of Evidence 411 pertains to the admissibility of insurance evidence in

relation to liability or fault, not with respect to the amount of a damage award.").

III.

ALLOWING THE JURY TO CONSIDER THE POLICY WILL NOT<br>UNFAIRLY PREJUDICE VARVATOS

Plaintiffs would offer the Insurance Policy into evidence only after the jury has

determined Varvatos' liability for back pay damages, the amount of the back pay damages, and

the Title VII class members entitlement to an award of punitive damages. <u>Smith v. Lightning</u>

<u>Bolt Prods., Inc.</u>, 861 F.2d 363, 373–74 (2d Cir. 1988)("Since it often would be prejudicial to a

defendant to attempt to litigate its financial condition during the trial on the issues of liability and

compensatory damages, the preferred method of accommodating the various interests is to delay

trial as to the amount of an award of punitive damages until the usual issues of liability and

compensatory damages have been tried, along with the matter of whether the defendant's conduct

warrants any award of punitive damages at all. If the jury finds in favor of the claimant on all of

these issues, the parties should then be allowed to present evidence with respect to the amount of

the punitive damage award.").  By that point, the only purpose for which the evidence could be

used would be to set the amount of punitive damages – for which it is relevant.

8

<u>Conclusion</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their motion to permit the plaintiffs to introduce the Insurance Policy into evidence before the jury determines the amount of the punitive damages award.

Dated:  New York, New York
        April 25, 2019

DUNNEGAN & SCILEPPI LLC

By  *s/*William Dunnegan
        William Dunnegan (WD9316)
        wd@dunnegan.com
        Richard Weiss (RW4039)
        rw@dunnegan.com
    Attorneys for the Plaintiff, the 13
        Opt-In Plaintiffs and the Class
    350 Fifth Avenue
    New York, New York 10118
    (212) 332-8300