UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

TESSA KNOX,                                    :

                        Plaintiff,    :

            -against-                          :            17 Civ. 772 (GWG)

JOHN VARVATOS ENTERPRISES, INC.,    :            ECF Case

                        Defendant.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

MEMORANDUM OF LAW IN SUPPORT OF THE MOTION IN LIMINE OF KNOX,
THE 13 OPT-IN PLAINTIFFS AND THE CLASS TO PRECLUDE VARVATOS
FROM OFFERING EVIDENCE OR ARGUMENT CONCERNING ANY
PLAINTIFF'S JOB PERFORMANCE

DUNNEGAN & SCILEPPI LLC
Attorneys for the Plaintiff, the 13
 Opt-In Plaintiffs and the Class
350 Fifth Avenue
New York, New York 10118
(212) 332-8300

Table of Contents

Table of Authorities ...................................................................................................... ii

Preliminary Statement .................................................................................................... 1

Argument ......................................................................................................................... 2

    I.     THE PLAINTIFFS' JOB PERFORMANCE IS IRRELEVANT
         TO ANY CLAIM OR DEFENSE IN THIS ACTION ........................................... 2

        A.     Job Performance Is Irrelevant For The Equal Pay Act Claim ................... 2

               1.     Poor Job Performance Is Irrelevant To
                     Plaintiff's *Prima Facie* Case ............................................................ 3

               2.     Job Performance Is Not A Factor Other Than Sex ......................... 4

               3.     Job Performance Is Irrelevant To
                     Any Other Element Of The EPA Claim ......................................... 5

        B.     Job Performance Is Irrelevant For The New York Equal Pay Act Claim....5

        C.     Job Performance Is Irrelevant For The Title VII Claim ............................. 6
               1.     Job Performance Is Irrelevant To The *Prima Facie* Case............... 6

               2.     Job Performance Is Irrelevant To Varvatos' Affirmative
                     Defenses ......................................................................................... 7

               3.     Job Performance Is Irrelevant To Any Other Title VII Element ..... 7

        D.     Job Performance Is Irrelevant For The NY HRL Claim............................. 7

    II.     EVIDENCE CONCERNING PLAINTIFFS' JOB PERFORMANCE
         WOULD BE UNFAIRLY PREJUDICIAL.............................................................. 8

        A.     JV Has Attempted To Discover Unflattering
               Evidence of Plaintiffs' Job Performances .................................................. 8

        B.     Evidence Of Any Plaintiff's Poor Job Performance
               Would Be Unfairly Prejudicial ................................................................. 9

Conclusion ..................................................................................................................... 10

Table of Authorities

**Cases**

Belfi v. Prendergast,
191 F.3d 129 (2d Cir. 1999)................................................................................. 2, 3

Cruz v. Coach Stores, Inc.,
202 F.3d 560 (2d Cir. 2000).................................................................................. 8

DeLuca v. Sirius XM Radio, Inc.,
2017 WL 3671038 (S.D.N.Y. Aug. 7, 2017) ....................................................... 5

E.E.O.C. v. Port Auth. of New York & New Jersey,
768 F.3d 247 (2d Cir. 2014)............................................................................ 3, 3-4, 4

Farias v. Instructional Systems, Inc.,
259 F.3d 91 (2d Cir. 2001)................................................................................... 8

International Union, United Auto., Aerospace & Agric. Implement Workers, UAW v. Johnson
    Controls, Inc.,
499 U.S. 187 (1991)............................................................................................. 7

Kent v. Papert Companies, Inc.,
309 A.D.2d 234, 764 N.Y.S.2d 675 (1st Dep't 2003) ......................................... 5

Mandell v. County of Suffolk,
316 F.3d 368 (2d Cir. 2003)................................................................................. 8

Pfeiffer v. Lewis County,
308 F.Supp.2d 88 (N.D.N.Y.2004) ...................................................................... 5

Ricci v. DeStefano,
557 U.S. 557 (2009).............................................................................................. 6

Salamon v. Our Lady of Victory Hosp.,
514 F.3d 217 (2d Cir. 2008),
as amended (Apr. 22, 2008)................................................................................7-8

Tomka v. Seiler Corp.,
66 F.3d 1295 (2d Cir. 1995)................................................................................. 3

Torres v. Pisano,
116 F.3d 625 (2d Cir. 1997)................................................................................. 8

ii

Trumble v. Cty. of Oswego,
2012 WL 39636 (N.D.N.Y. Jan. 6, 2012).....................................................................5

Watson v. Fort Worth Bank & Trust,
487 U.S. 977 (1988)......................................................................................................6

**Rules**

FRE 401 ..........................................................................................................................2

FRE 402 ..........................................................................................................................2

FRE 403 .......................................................................................................................2, 8

Fed. R. Civ. P. 30(b) ....................................................................................................8, 9

**Statutes**

29 C.F.R. § 1620.13 .......................................................................................................3

29 C.F.R. § 1620.15 .....................................................................................................3-4

29 C.F.R. § 1620.16 .......................................................................................................4

29 C.F.R. § 1620.17 .......................................................................................................4

29 U.S.C. § 206 ..............................................................................................................3

29 U.S.C. § 216 ..............................................................................................................2

29 U.S.C. § 255 ..............................................................................................................2

**Other**

EEOC Compliance Manual § 10–IV(E)(2) (2000) ........................................................3

Plaintiff Tessa Knox ("Knox"), the 13 opt-in plaintiffs and the members of the Class the Court certified in an order entered February 21, 2018 (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of their motion for an order precluding defendant John Varvatos Enterprises, Inc. ("Varvatos") from offering evidence concerning the job performance of Knox or any of the Plaintiffs.

<u>Preliminary Statement</u>

Plaintiffs challenge a single Varvatos policy – the Clothing Allowance – that Varvatos applies to each of its stores in the United States and to all of its sales professionals, depending on their sex.  Varvatos admits that it gives the Clothing Allowance to all of its sales professionals who are male, and not to any of its sales professionals who are female.  Varvatos has therefore admitted that job performance is not a factor in deciding whether or not to give a sales professional the Clothing Allowance.

The Plaintiffs allege that the Clothing Allowance violates the Equal Pay Act, the New York Equal Pay Act, Title VII, and the New York Human Rights Law because it is facially discriminatory (under Title VII and the NY HRL) and because it amounts to unequal pay for equal work (under all four statutes).  This case will not turn on whether or not the individual Plaintiffs were good at their jobs.  Evidence concerning their job performance is therefore not relevant to any claim or defense alleged in this action.

Varvatos, however, has taken discovery on the job performance of Knox, and four of the EPA plaintiffs.  We believe that Varvatos will attempt to use this evidence to impermissibly imply that Knox or some of the Plaintiffs were poor employees, and for that reason do not deserve a verdict in their favor.

1

Because this information is irrelevant under Rule 402, and unfairly prejudicial under Rule

403, Varvatos should not be allowed to offer this evidence.

<u>Argument</u>

I.

THE PLAINTIFFS' JOB PERFORMANCE IS IRRELEVANT
TO ANY CLAIM OR DEFENSE IN THIS ACTION

FRE 402 provides that "[i]rrelevant evidence is not admissible." FRE 401 provides that:

"Evidence is relevant if:
(a) it has any tendency to make a fact more or less probable than it would be
without the evidence; and
(b) the fact is of consequence in determining the action."

A plaintiff's job performance is irrelevant because it is of no consequence in determining this

action.  Any evidence concerning any plaintiffs' job performance should therefore be excluded.

A.    <u>Job Performance Is Irrelevant For The Equal Pay Act Claim</u>

"To prove a violation of the EPA, a plaintiff must first establish a *prima facie* case of

discrimination..." <u>Belfi v. Prendergast</u>, 191 F.3d 129, 135 (2d Cir. 1999).  If plaintiff proves a

*prima facie* case, then the burden is on the defendant to prove that the disparity in pay was based

on a factor other than sex. *Id.* at 136. The plaintiff then has the opportunity to prove that the

alleged factor other than sex is a pretext. *Id.* The remedies sought here are damages, which is the

amount of the discrepancy, and an equal sum in liquidated damages. 29 U.S.C. § 216(b).  A

plaintiff may extend the statute of limitations for a third year if she can prove the violation was

willful, and the defendant may escape a judgment of liquidated damages if it can prove the

violation was in good faith. 29 U.S.C. § 255(a).

1. <u>Poor Job Performance Is Irrelevant To Plaintiff's *Prima Facie* Case</u>

"To prove a violation of the EPA, a plaintiff must first establish a *prima facie* case of discrimination by showing: 'i) the employer pays different wages to employees of the opposite sex; ii) the employees [in the same establishment] perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions.'" <u>Belfi v. Prendergast</u>, 191 F.3d 129, 135 (2d Cir. 1999) (quoting <u>Tomka v. Seiler Corp.</u>, 66 F.3d 1295, 1310 (2d Cir. 1995)).

While job performance is clearly irrelevant to the first and third factors, it is equally irrelevant to the second factor – that the performance of the jobs require equal "skill, effort, and responsibility." 29 U.S.C. § 206(d).  The focus is not on how well the plaintiff does the job, but whether the plaintiff is performing the same job as a comparator at all, which is measured by whether the two jobs share a common core of tasks. <u>E.E.O.C. v. Port Auth. of New York & New Jersey</u>, 768 F.3d 247, 255 (2d Cir. 2014) ("To satisfy this standard, a plaintiff must establish that the jobs compared entail common duties or content, and do not simply overlap in titles or classifications ... This focus on job content has been a constant in the context of the EPA. For example, the EEOC's own regulations provide that 'equal work' under the EPA is established not by reference to 'job classifications or titles but ... rather [by] actual job requirements and performance.' 29 C.F.R. § 1620.13(e). Similarly, the EEOC's Compliance Manual states that '[j]ob *content* ... determines the equality of jobs,' and 'whether two jobs are substantially equal' turns on 'whether the jobs have the same 'common core' of tasks.' EEOC Compliance Manual § 10–IV(E)(2) (2000).")(citations omitted).

"[E]qual skill is defined as including 'such factors as experience, training, education, and ability,'" <u>E.E.O.C. v. Port Auth. of New York & New Jersey</u>, 768 F.3d 247, 255 (2d Cir.

2014)(quoting 29 C.F.R. § 1620.15(a)).  An employee's job performance is not relevant to the question of whether or not the jobs require the same amount of degree of skills. 29 C.F.R. 1620.15(a) ("The efficiency of the employee's performance in the job is not in itself an appropriate factor to consider in evaluating skill.").

"Equal effort, by turn, looks to 'the measurement of the physical or mental exertion *needed for the performance of a job.*' *Id.* § 1620.16(a) (emphasis added)." <u>E.E.O.C. v. Port Auth. of New York & New Jersey</u>, 768 F.3d 247, 255 (2d Cir. 2014). How well the plaintiff actually performed her job is not relevant in determining the degree of physical or mental exertion required to perform the job.

"And equal responsibility turns on 'the degree of accountability *required in the performance of the job,* with emphasis on the importance of the *job obligation.*' *Id.* § 1620.17(a) (emphasis added)." <u>E.E.O.C. v. Port Auth. of New York & New Jersey</u>, 768 F.3d 247, 255 (2d Cir. 2014).  Job performance is not relevant to evaluating the importance of a given job obligation.

        2.    <u>Job Performance Is Not A Factor Other Than Sex</u>

A plaintiffs' job performance cannot be a factor other than sex in this case, because Varvatos has already admitted that there is no gender-neutral reason that male sales professionals receive a Clothing Allowance while female sales professionals do not.  Varvatos has admitted that, categorically, "we do not provide a clothing allowance for female employees" (Dkt. 69-1 at 2/6), and "[c]lothing allowances are provided to male employees only." (Dkt. 69-1 at 2/6) Varvatos has also admitted that "all male retail employees receive a clothing allowance," regardless of job performance. (Dkt 20-1 at 2/2)  Varvatos has stated that male sales professionals receive the Clothing Allowance "upon hire," before they have even performed the

job. (Dkt. 188-9 at JVE-000137; Dkt. 188-1 at 117:2-5; Dkt. 188-4 at 30:22-31:8)  Varvatos has

testified that no female sales professional has ever received a Clothing Allowance. (Dkt. 188-6 at

85:13-22; 87:8-16)  Varvatos also testified that:

> "Q. Do you think the fact that the clothing allowance is given only to men as
> opposed to women is not based on gender?
>
> A. We are a menswear company, we only provide clothing allowances to men so
> by default that is in a sense by gender."

Consequently, Varvatos cannot claim that any Plaintiff did not receive a Clothing Allowance

because of poor job performance.

  3.     Job Performance Is Irrelevant To
         Any Other Element Of The EPA Claim

Job performance is not relevant to any other element of the EPA claim, including (i) any

affirmative defense of Varvatos, (ii) the issue of whether or not Varvatos's violation was willful,

or (iii) any remedy claimed by any member of the EPA Collective Action.  Consequently, the job

performance of the Plaintiffs is irrelevant to the EPA claims.

B.     Job Performance Is Irrelevant For The New York Equal Pay Act Claim

The NY EPA is New York's state law analogue to the federal EPA, and the two are

essentially interpreted the same. DeLuca v. Sirius XM Radio, Inc., 2017 WL 3671038, at *21

(S.D.N.Y. Aug. 7, 2017)("An equal pay claim under the NYEPA is analyzed under the

same standards [as the federal EPA].")(citing Kent v. Papert Companies, Inc., 309 A.D.2d 234,

246, 764 N.Y.S.2d 675, 684 (1st Dep't 2003)); Trumble v. Cty. of Oswego, 2012 WL 39636, at

*5 (N.D.N.Y. Jan. 6, 2012) ("The NYEPA is analyzed under the same standard as the

EPA.")(citing Pfeiffer v. Lewis County, 308 F.Supp.2d 88, 98 n. 8 (N.D.N.Y.2004)).

The only material differences between the two statutes are that (i) the NY EPA statute of

limitations is six years; (ii) the NY EPA can only be invoked by employees who worked in the

State of New York; (iii) an "establishment" cannot encompass an area larger than a county; (iv) if the violation was willful, liquidated damages may be up to 300% of the pay discrepancy; and (v) the availability of prejudgment interest as a remedy.  The Plaintiffs' job performance is not relevant to any of these additional issues.

C.      Job Performance Is Irrelevant For The Title VII Claim

A female plaintiff asserting a sex discrimination claim under Title VII must prove that her employer intended to discriminate against her because she was female. Ricci v. DeStefano, 557 U.S. 557, 577 (2009)("A disparate-treatment plaintiff must establish 'that the defendant had a discriminatory intent or motive' for taking a job-related action.") (quoting Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 986 (1988)).  The defendant can escape liability if the plaintiff cannot prove that the defendant intended to discriminate, or if the defendant can prove an affirmative defense.  The only affirmative defenses that Varvatos has argued in this case are that (i) the Clothing Allowance is based on a factor other than sex; and (ii) gender is a *bona fide* occupational qualification.  The remedies available include back pay (here, the pay discrepancy), compensatory damages (economic damages other than back pay), and, if Varvatos acted with malice or reckless indifference to the risk that it was violating Title VII, punitive damages.

1.      Job Performance Is Irrelevant To The *Prima Facie* Case

In this case, the Plaintiffs allege that the Clothing Allowance violates Title VII under two theories.  First, it is a facially discriminatory policy that explicitly treats male and female employees differently.  Second, the Clothing Allowance represents unequal pay for equal work.

Under the first theory, Plaintiffs must prove that the Clothing Allowance policy explicitly treats male and female sales professionals differently because of their sex. Whether or not the Clothing Allowance is such a policy will not depend, at all, on the job performance of female sales

6

professionals, or any reason that Varvatos may have had. <u>Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc.</u>, 499 U.S. 187, 199 (1991)("Whether an employment practice involves disparate treatment through explicit facial discrimination does not depend on why the employer discriminates but rather on the explicit terms of the discrimination.").

Under the second theory, the Plaintiffs will need to prove the elements of their EPA claim and that Varvatos intended to treat male and female sales professionals differently. As argued above in Point I.A.1, job performance is not a factor in establishing a *prima facie* EPA case.

    2.    <u>Job Performance Is Irrelevant To Varvatos' Affirmative Defenses</u>

Because Varvatos admits that job performance does not determine whether or not a sales professional receives a Clothing Allowance, job performance cannot be a factor other than sex.

Any plaintiffs' job performance is not relevant to whether or not gender is a BFOQ. The BFOQ defense applies only if the defendant admits that its policy discriminates on the basis of gender.  If Varvatos admits that gender is the basis of its Clothing Allowance policy, then no plaintiffs' job performance is relevant.

    3.    <u>Job Performance Is Irrelevant To Any Other Title VII Element</u>

No plaintiff's job performance factors into any other Title VII element, including the amount of damages, or whether Varvatos acted with malice or reckless indifference to the rights of the plaintiffs.

D.    <u>Job Performance Is Irrelevant For The NY HRL Claim</u>

The NY HRL is New York's Title VII analogue.  Accordingly, the two are evaluated under the same standards. <u>Salamon v. Our Lady of Victory Hosp.</u>, 514 F.3d 217, 226 n.9 (2d Cir. 2008), as amended (Apr. 22, 2008)("We typically treat Title VII and NYHRL discrimination claims as

analytically identical, applying the same standard of proof to both claims. See <u>Mandell v. County of Suffolk</u>, 316 F.3d 368, 377 (2d Cir. 2003); <u>Torres v. Pisano</u>, 116 F.3d 625, 629 n. 1 (2d Cir. 1997)"); <u>Farias v. Instructional Sys., Inc.</u>, 259 F.3d 91, 98 (2d Cir. 2001)("Plaintiffs' claims of discrimination under the Human Rights Laws of New York City and New York State are evaluated using the same analytic framework used in Title VII actions.")(citing <u>Cruz v. Coach Stores, Inc.</u>, 202 F.3d 560, 565 n. 1 (2d Cir. 2000)).

The only material differences are that (i) plaintiffs must have worked in the State of New York, (ii) the statute of limitations is three years; and (iii) there are no punitive damages. Job performances is irrelevant to these additional issues as well.

## II.

## EVIDENCE CONCERNING PLAINTIFFS' JOB PERFORMANCE WOULD BE UNFAIRLY PREJUDICIAL

FRE 403 provides that:

> "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Even if the Court determines that evidence of any plaintiff's job performance could be relevant, the Court should still exclude the evidence, because it would be unfairly prejudicial.

A.    JV Has Attempted To Discover Unflattering
       Evidence of Plaintiffs' Job Performances

Nicole Chang ("Chang") testified at her Rule 30(b)(6) deposition that Varvatos regarded Knox as an unsatisfactory employee because she did not meet her sales goals and did not comport herself properly on the sales floor. (Dkt. 188-6 at 47:13-22)  Chang also testified at length concerning Knox's supposed failures as an employee in connection with a corrective action letter Varvatos gave to Knox before she resigned her position at Varvatos. (Dkt. 188-1 at 170:12 –

8

200:11)  The corrective action letter criticized Knox's failure to meet her sales goals, her body language on the sales floor, her failure to bring in repeat clients, and her punctuality. (Corrective Action Letter)  Knox disputed these conclusions in her response to the corrective action letter, and Chang also criticized several of Knox's responses as "false." (Dkt. 188-1 at 194:18-25; 200:3-11) Counsel for Varvatos also questioned Knox extensively about perceived inaccuracies and omissions on her resume (Knox at 45:22-48:2) and application materials (Knox at 56:15 – 59:4), and her punctuality for the deposition. (Knox at 48:3-23)

Varvatos deposed opt-in plaintiffs Pamela Kassen, Joy Fusaro, Laurentina Chaparro, and Ruby Romero.  At their depositions, Varvatos questioned each opt-in plaintiff about their job performance, including whether or not they met their sales goals. (Kassen at 109:8 – 110:19; Fusaro 32:1-20; Chaparro at 114:15 – 115:18; Romero 50:8-52:6)

B.     Evidence Of Any Plaintiff's Poor Job Performance Would Be Unfairly Prejudicial

Whether or not these criticisms of Knox are accurate (and Knox disputes them), they are not relevant to the claims or defenses in this action.  On the other hand, their potential to confuse the jury or unfairly prejudice the Plaintiffs is obvious.  One misleading inference is that Knox did not deserve to earn the same compensation as her male colleagues because she was an unsatisfactory employee.  It is also possible that the jury would be confused and think that Knox's failures on the sales floor are relevant to a comparison of the jobs of male and female sales professionals.

<u>Conclusion</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their

motion to exclude evidence concerning any plaintiffs' job performance.

Dated:  New York, New York
          April 25, 2019

DUNNEGAN & SCILEPPI LLC

By  *s/*William Dunnegan
       William Dunnegan (WD9316)
       wd@dunnegan.com
       Richard Weiss (RW4039)
       rw@dunnegan.com
Attorneys for the Plaintiff, the 13
   Opt-In Plaintiffs and the Class
350 Fifth Avenue
New York, New York 10118
(212) 332-8300