UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

TESSA KNOX,                                          :

                                Plaintiff,   :

              -against-                        :          17 Civ. 772 (GWG)

JOHN VARVATOS ENTERPRISES, INC.,   :          ECF Case

                          Defendant.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## JOINT REQUESTS TO CHARGE WITH OBJECTIONS

Pursuant to Rule 51 of the Federal Rules of Civil Procedure and the Individual Practices of the Court, (i) plaintiff Tessa Knox ("Knox"), the 13 opt-in plaintiffs ("Opt-In Plaintiffs"), and the members of the class that the Court certified in an order entered February 21, 2018 (the "Class") (collectively "Plaintiffs"), and (ii) defendant John Varvatos Enterprises, Inc. ("Varvatos") jointly request that the Court, in addition to its usual charges, instruct the Jury based upon the following charges designated as "Agreed."  Where the parties could not agree on a proposed charge, Plaintiffs and Varvatos have objected and/or proposed their individual charge.

The parties agree that the Court should conduct the trial in phases, but disagree as to what those phases should involve.  The statement of each party is set forth below.

<u>Plaintiffs' Statement</u>

Plaintiff's Pre-Trial Memorandum contains in Point I a complete discussion of the phases in which the Court should conduct the trial.

In the first phase of the trial, the Court should present to the jury the following issues:

(i)      Whether Plaintiffs should recover from Varvatos under the Equal Pay Act, the New York Equal Pay Act, Title VII of the Civil Rights Act of 1964, and the New York Human Rights Law, although each statute will not require a separate charge or a separate verdict;

(ii)      If so, the amount of backpay damages each plaintiff sustained as a result of not receiving one "pull" of the Clothing Allowance, representing either $3,000 in retail value at a retail store or $1,500 in retail value at an outlet store;

(iii)      Whether Varvatos willfully violated the EPA, thereby extending the statute of limitations to three, rather than only two, years prior to the suit; and

(iv)      Whether the Class is entitled to recover punitive damages under Title VII.

Proposed jury charges 1 to 36 concern the first phase of the trial.

In the second phase of the trial, which should occur if the jury determines in the first phase of the trial that either that punitive damages are appropriate under Title VII or that the violation of the NY EPA was willful, the Court should present to the jury the question of the amount of punitive damages that should be awarded under Title VII and/or the amount of liquidated damages that should be awarded under the NY EPA.

Requests to charge 37 to 43 concern the second phase of the trial.

In the third phase of the trial, which should occur if the jury determines in the first phase that any plaintiff should recover under the EPA, the Court should determine whether Knox and the Opt-In Plaintiffs are entitled to liquidated damages under the EPA, and if so the amount of those liquidated damages for each "pull."

In the fourth phase of the trial, which should occur if any plaintiff is entitled to any damages, the Court should determine the amount to damages that each Plaintiff should recover

based upon the prior determinations of the jury and the Court, and the number of "pulls" each plaintiff missed, and enter judgment for each plaintiff accordingly.

<u>Varvatos' Statement</u>

As discussed in Varvatos' Trial Memorandum, the Court should conduct the trial in the following phases:

(1) <u>Phase 1</u>:  At the end of Phase 1 of the trial, the Court should instruct the jury on liability (under all of Plaintiffs' claims) and compensatory damages, and submit those issues to the jury.  Subject to Varvatos' objections, Proposed Instructions 1 to 32 apply to Phase 1.

(2) <u>Phase 2</u>:  In the event that the jury finds in favor of the Plaintiffs on any of their claims and awards any damages in Phase 1, the Court should instruct the jury on the issues of damage enhancements, including:  (a) whether the Opt-in Plaintiffs, to the extent they prevail on the EPA claim, are entitled to three years' worth of compensatory damages; (b) whether the Title VII plaintiffs, to the extent they prevail on the Title VII claim, are entitled to punitive damages and in what amount; and (c) whether the New York EPA Plaintiffs, to the extent they prevail on the NYEPA claim, are entitled to liquidated damages, and in what amount.  Subject to Varvatos' objections, Proposed Instructions 35 to 43 apply to Phase 2.

(3) <u>Phase 3</u>:  This corresponds to Plaintiffs' proposed third phase.  In Phase 3, the Court should determine whether the Opt-In Plaintiffs are entitled to liquidated damages under the EPA, and in what amount.  In the exercise of its discretion the Court may or may not determine this amount on a per "pull" basis as suggested by the Plaintiff.

(4) <u>Phase 4</u>:  This corresponds largely to Plaintiffs' proposed fourth phase.  In Phase 4, the Court should determine the damages that each Plaintiff should recover based upon the prior determinations of the Court and the jury, including elimination of any duplication of damages.

By submitting these requests to charge, neither party is waiving its right to argue that the evidence presented at trial does not create an issue of fact.

Dated:  New York, New York
April 25, 2019

DUNNEGAN & SCILEPPI LLC

By  s/William Dunnegan
    William Dunnegan (WD9316)
    wd@dunnegan.com
    Richard Weiss (RW4039)
    rw@dunnegan.com
Attorneys for the Plaintiff, the 13
    Opt-In Plaintiffs and the Class
350 Fifth Avenue
New York, New York 10118
(212) 332-8300

HUGHES HUBBARD & REED LLP

By  s/Ned Henry Bassen
    Ned Henry Bassen
    bassen@hugheshubbard.com
Attorney for Defendant
    John Varvatos Enterprises, Inc.
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

<u>Tessa Knox v. John Varvatos Enterprises, Inc.,</u>
17 Civ. 772 (GWG)

<u>No. 1 – The Parties</u>

<u>Plaintiffs' Proposed Instruction</u>

Throughout these instructions:

I will refer to the plaintiff and class representative Tessa Knox as "Knox."

I will refer to Laurentina Chaparro, Hillary Crandle, Joy Fusaro, Alyssa Hickey, Margaret Holcomb, Pamela Kassen, Michelle Ortiz, Tripti Pandey, Ruby Romero, Wijdan Shoubaki, Jena Tobak, Christina Torres, and Arissia Tossetti as the "Opt-In Plaintiffs."

I will refer to the members of the class as the "Class."

I will refer to Knox, the Opt-In Plaintiffs and the "Class" as "Plaintiffs" or each as a "Plaintiff."

I will refer to defendant John Varvatos Enterprises, Inc. as "Varvatos."

<u>Varvatos' Limited Objection</u>

Varvatos objects to Plaintiffs' Proposed Instruction only in that Ms. Knox should properly be referred to in the jury instructions as Class Representative Knox.  Otherwise, Varvatos agrees to the instruction as proposed.

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)


No. 2 – The Claims (Agreed)

The Plaintiffs are asserting four claims in this case.

Two claims are under federal statutes and two claims are under New York State statutes.

(1)      The Equal Pay Act.  Knox and the Opt-In Plaintiffs are asserting this claim.  I will refer to them as the "Equal Pay Act Plaintiffs."

(2)      The New York State Equal Pay Act.  Knox and 29 other present or former female sales professionals asserting this claim.  I will refer to these plaintiffs asserting a claim under the New York Equal Pay Act as the "NY EPA Class."

(3)      Title VII of the Civil Rights Act of 1964.  Knox and 57 other present or former female sales professionals are asserting a claim under Title VII.

(4)      The New York State Human Rights Law.  Knox and 22 other present or former female sales professionals are asserting this New York State law.  I will refer to Plaintiffs asserting a claim under Title VII or the New York State Human Rights Law as the "Title VII Class."

I will now explain to you the elements and defenses of each of these claims.

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

No. 3 – Equal Pay Act Elements

Varvatos's Proposed Charge

Let me begin with the Equal Pay Act.

Under the Equal Pay Act, it is unlawful for an employer to pay different wages to employees who are performing equal work under similar working conditions because of an employee's sex.

To prove their claim under the Equal Pay Act, the Equal Pay Act Plaintiffs do not need to prove that Varvatos intended to discriminate against them on the basis of their sex.

To succeed on the Equal Pay Act claims, the Equal Pay Act Plaintiffs must prove each of the following elements:

(1)     The job of a female sales professional and the job of a male sales professional require substantially equal skill, effort, and responsibility;

(2)     The jobs are performed under similar working conditions; and

(3)     A female sales professional was paid less wages than a male sales professional.

The parties agree on the second element – similar conditions.  "Similar conditions" under the Equal Pay Act include "surroundings" such as toxic chemicals and fumes and "hazards". The parties agree that male and female sales professionals work under similar conditions. Therefore, you do not need to make any determination regarding this element.

The parties dispute the other two elements – substantially equal jobs and equal wages.

Plaintiffs' Objection

Plaintiffs object to the use of the word "responsibility" and propose the use of the word "accountability."  The parties agree that responsibility means accountability.  See Proposed Instruction 14 below.[1]  Defining "responsibility" as "accountability" is unnecessary when accountability could be used in the first instance.

---

[1] Varvatos disagrees with the foregoing statement.  Varvatos does not agree that "responsibility" and "accountability" mean the same thing here.

3

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

No. 4 – Equal Pay Act – Substantially Equal Jobs – Generally

Varvatos's Proposed Instruction

To succeed on their Equal Pay Act Claims, The Equal Pay Act Plaintiffs will have to prove that the job of a Varvatos female sales professional requires substantially equal skill, effort, and responsibility as the job of a Varvatos male sales professional.

Plaintiffs' Objection

Plaintiffs object to the use of the word "responsibility," and propose the use of the word "accountability." The parties agree that "responsibility" means "accountability." See proposed instruction 14 below.[2] Defining "responsibility" as "accountability" is unnecessary when "accountability" could be used in the first instance.

---

[2] Varvatos disagrees with the foregoing statement. Varvatos does not agree that "responsibility" and "accountability" mean the same thing here.

<u>Tessa Knox v. John Varvatos Enterprises, Inc.,</u>
17 Civ. 772 (GWG)

<u>No. 5 – Equal Pay Act – Substantially Equal Jobs – Generally</u>

<u>Plaintiffs' Proposed Instruction</u>

At all relevant times, at all Varvatos stores in the United States, all female sales professionals had the same job as all other female sales professionals.

At all relevant times, at all Varvatos stores in the United States, all male sales professionals had the same job as all other male sales professionals.

You must determine whether female sales professionals have a substantially similar job as male sales professionals in terms of skill, effort, and accountability.

<u>Varvatos' Objection</u>

Varvatos objects because Plaintiffs' Proposed Instruction treats the jobs of male sales professionals at retail and outlet stores as the same.  The jobs are not the same, in particular here, because male sales professionals at retail and outlet stores have dress code obligations which differ and that difference ties directly into the different limits of Clothing Allowance for the male sales professionals in retail and outlet stores.

Varvatos objects to the use of the term "accountability" rather than responsibility.  The Equal Pay Act and the implementing regulations consistently describe the comparison between the relevant jobs in terms of "skill, effort and responsibility,"[3] not skill, effort and accountability. The term "accountability" is referenced in defining "responsibility," but that does not make the two terms interchangeable.  Given the plain language of the statute and the related regulations, there is no ground or reason to replace the term "responsibility" with "accountability."

---

[3] <u>See, e.g.</u>, 29 U.S.C. § 206 (d)(1) ("No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal <u>skill, effort, and responsibility</u> …") (emphasis added); 29 C.F.R. § 1620.13(a) ("The EPA prohibits discrimination by employers on the basis of sex in the wages paid for "equal work on jobs the performance of which requires equal <u>skill, effort and responsibility</u> and which are performed under similar working conditions.") (emphasis added); <u>id.</u> at (c) ("The rate of pay must be equal for persons performing equal work on jobs requiring equal <u>skill, effort, and responsibility</u>, and performed under similar working conditions.") (emphasis added); 29 C.F.R. § 1620.14(a) ("What constitutes <u>equal skill, equal effort, or equal responsibility</u> cannot be precisely defined. … However, differences in skill, effort or responsibility which might be sufficient to justify a finding that two jobs are not equal within the meaning of the EPA if the greater <u>skill, effort, or responsibility</u> has been required of the higher paid sex, do not justify such a finding where the greater <u>skill, effort, or responsibility</u> is required of the lower paid sex. …") (emphasis added).

<u>Tessa Knox v. John Varvatos Enterprises, Inc.,</u>
17 Civ. 772 (GWG)

Varvatos further objects that using the term "accountability" without putting it into the context of the definition of "responsibility" is misleading, prejudicial and likely to create confusion.

<u>Varvatos' Proposed Instruction</u>

For the purposes of this case and the comparison of the jobs of female and male sales professionals required, the parties agree that:

At all relevant times, male sales professionals at all Varvatos Retail Stores in the United States had the same job.

At all relevant times, female sales professionals at all Varvatos Retail Stores in the United States had the same job.

At all relevant times, male sales professionals at all Varvatos Outlet Stores in the United States had the same job.

At all relevant times, female sales professionals at all Varvatos Outlet Stores in the United States had the same job

<u>Plaintiffs' Objection</u>

Plaintiffs object because there is no evidentiary basis to distinguish, for this purpose, between jobs at retail and outlet stores.

6

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

No. 6 – EPA – Substantially Equal Jobs

Plaintiffs' Proposed Instruction

In deciding whether jobs require substantially equal skill, effort and accountability, you should compare the jobs, not the individual employees holding those jobs.[4]

The jobs of sales professionals who are female do not need to be identical to the jobs of sales professionals who are male.  The law requires proof only that the performance of the jobs demands "substantially equal" skill, effort and responsibility.[5]  Insignificant or insubstantial differences do not matter, and may be disregarded.[6]

Job classifications, descriptions or titles are not controlling.[7]

---

[4] Eleventh Circuit Civil Pattern Jury Instructions (2019) § 4.13 at 249("You should compare the jobs – not the individual employees holding those jobs."); Third Circuit Model Jury Instructions (2018) § 11.1.1 at 8 ("In determining whether [plaintiff's] job required substantially equal skill, effort, and responsibility as that of the male employee(s), you must compare the jobs and not the individual employees holding those jobs.").

[5] Tomka v. Seiler Corp., 66 F.3d 1295, 1310 (2d Cir. 1995)("A plaintiff need not demonstrate that her job is identical to a higher paid position, but only must show that the two positions are 'substantially equal.'").

[6] Riser v. QEP Energy, 776 F.3d 1191, 1196 (10th Cir. 2015)("Thus, '[i]nsubstantial or minor differences in the degree or amount of skill, or effort, or responsibility required for the performance of jobs will not render the equal pay standard inapplicable.'") (quoting 29 C.F.R. 1620.14(a));  Carey v. Foley & Lardner LLP, 577 F. App'x 573, 579 (6th Cir. 2014) ("'Insubstantial or minor differences in the degree or amount of skill, or effort, or responsibility required for the performance of jobs will not render the equal pay standard inapplicable.'") (quoting 29 C.F.R. § 1620.14(a)); Hunt v. Nebraska Pub. Power Dist., 282 F.3d 1021, 1030 (8th Cir. 2002)("Two jobs could require '[i]nsubstantial or minor differences in the degree or amount of skill, or effort, or responsibility' and still be substantially equal. 29 C.F.R. 1620.14(a)."); Laffey v. Nw. Airlines, Inc., 740 F.2d 1071, 1083 (D.C. Cir. 1984)("This 'substantially equal' test, which has been adopted by no fewer than nine other circuits, Thompson v. Sawyer, 678 F.2d 257, 272 n. 12 (D.C. Cir. 1982), necessarily implies that there can be job responsibilities— including supervisory duties—so 'insubstantial or minor' as not to 'render the equal pay standard inapplicable.' Laffy I [Laffey v. Nw. Airlines, Inc., 667 F.2d [429,] 449 [(D.C. Cir. 1976)] (quoting 29 C.F.R. § 800.122 (1975)).").

[7] 29 C.F.R. § 1620.13(e)("Application of the equal pay standard is not dependent on job classifications or titles but depends rather on actual job requirements and performance."). E.E.O.C. v. Port Auth. of New York & New Jersey, 768 F.3d 247, 255 (2d Cir. 2014)

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

Varvatos's Objection

Varvatos objects to the use of the term, "accountability" instead of "responsibility."  See Varvatos' Objection to Instruction No. 5, regarding the same.

Varvatos also objects to the following language in Plaintiffs' Proposed Instruction:  "The law requires proof *only* that the performance of the jobs demands 'substantially equal' skill, effort and responsibility.  *Insignificant or insubstantial differences do not matter, and may be disregarded*."  (Emphasis added.)  Varvatos objects to the foregoing language on the grounds that it is one-sided and prejudicial.  Instead, a simple statement of the law that the jobs don't need to be "identical" is both accurate and balanced.  In the event that the Court permits any of the language from Plaintiffs' foregoing instruction, Varvatos requests that the terms "only" be dropped, and the following be added:  "But the equal work standard is demanding, requiring substantial equality of the jobs being compared."[8]

Varvatos' Proposed Instruction

In proving that female sales professionals and male sales professionals have substantially equal jobs, the Equal Pay Act Plaintiffs will not need to prove that the jobs are identical, but that they are "substantially equal in skill, effort and responsibility."[9]

In deciding whether jobs require substantially equal skill, effort and responsibility, you should compare the jobs, not the individual employees holding those jobs.

Job classifications, descriptions or titles are not controlling.[10]

---

("In Tomka v. Seiler Corporation, [66 F.3d 1295, 1310 (2d Cir. 1995)] we stated that 'job content and not job title or description' is the central concern of an EPA claim."); 29 C.F.R. § 1620.13(e)("Application of the equal pay standard is not dependent on job classifications or titles but depends rather on actual job requirements and performance.").

[8] See E.E.O.C. v. Port Auth. of New York & New Jersey, 768 F.3d 247, 255 (2d Cir. 2014) ("While the equal work inquiry does not demand evidence that a plaintiff's job is 'identical' to a higher-paid position, the standard is nonetheless demanding, requiring evidence that the jobs compared are 'substantially equal.'" (citing Lavin–McEleney v. Marist Coll., 239 F.3d 476, 480 (2d Cir.2001)).

[9] ABA Model Jury Instructions, Employment Cases § 2.03[1] at 94 ("The term 'equal work' as used in the Equal Pay Act does not mean identical work, but work that is substantially equal in skill, effort, and responsibility."); 29 C.F.R. § 1620.14(a) ("It should be kept in mind that 'equal' does not mean 'identical.'").

[10] 29 C.F.R. § 1620.13(e)("Application of the equal pay standard is not dependent on job classifications or titles but depends rather on actual job requirements and performance.").

<u>Tessa Knox v. John Varvatos Enterprises, Inc.</u>,
17 Civ. 772 (GWG)

<u>No. 7 – EPA – Substantially Equal Jobs – Differences Within Sexes</u>

Plaintiffs' Proposed Instruction

When comparing the jobs of sales professionals who are female and sales professionals who are male, you must look at the skill, effort and accountability that all male sales professionals use to perform their jobs, and ignore the tasks that some, but not all, male sales professionals use to perform their jobs.[11]

In addition, if some sales professionals who are female perform the same tasks as some sales professionals who are male, then you should not use those functions to distinguish between the jobs of male sales professionals and female sales professionals.[12]

Varvatos' Objection

Varvatos objects to the use of the term, "accountability" instead of "responsibility."  <u>See</u> Varvatos' Objection to Instruction No. 5, regarding the same.

Varvatos further objects to Plaintiffs' Proposed Instruction on the grounds that it is unnecessarily duplicative and cumulative of prior instructions.  By repeating and emphasizing what does not make two jobs unequal for the purposes of the EPA, Plaintiffs' Proposed Instruction is one-sided and prejudicial.  First, Varvatos has agreed that the jury may be instructed that the jobs of male and female sales professionals may be compared generally without the need to compare the jobs of any individual sales professionals.  (<u>See</u> Varvatos' Proposed Jury Instruction No. 5.)  Second, Varvatos has agreed that the jury may be instructed that in deciding whether jobs require substantially equal skill, effort and responsibility, the jury should compare the jobs, not the individual employees holding those jobs.  (<u>See</u> Varvatos'

---

[11] <u>Brennan v. Prince William Hosp. Corp.</u>, 503 F.2d 282, 286 (4th Cir. 1974)("Higher pay is not related to extra duties when one or more of the following circumstances exists: Some male employees receive higher pay without doing the extra work." (citing <u>Shultz v. American Can Co.-Dixie Products</u>, 424 F.2d 356 (8th Cir. 1970); <u>Shultz v. Wheaton Glass Co.</u>, 421 F.2d 259 (3d Cir. 1970)); <u>Brobst v. Columbus Servs. Int'l</u>, 761 F.2d 148, 158 (3d Cir. 1985)("As we stated in [<u>Schultz v.</u>] <u>Wheaton Glass</u>, [421 F.2d 259 (3d Cir. 1970)] the fact that the male selector-packers performed 16 additional tasks was not enough to support the finding of different work, in part because the district court made no finding that all male selector-packers performed this extra work.").

[12] <u>Brennan v. Prince William Hosp. Corp.</u>, 503 F.2d 282, 286 (4th Cir. 1974)("Higher pay is not related to extra duties when one or more of the following circumstances exists:...Female employees also perform extra duties of equal skill, effort, and responsibility.")(citing <u>Hodgson v. Fairmont Supply Co.</u>, 454 F.2d 490 (4th Cir. 1971)).

<u>Tessa Knox v. John Varvatos Enterprises, Inc.</u>,
17 Civ. 772 (GWG)

Proposed Jury Instruction No. 6.)  If, based on the weight of the evidence, the jury attributes any tasks performed by some male sales professionals to male sales professionals generally, it also is free to attribute, based on the weight of the evidence, the tasks performed by some female sales professionals to female sales professionals generally.

   Additionally, Plaintiffs' Proposed Instruction is misleading.  Here, the differences that Plaintiffs' instruction appears to implicate – *e.g.*, male sales professionals modeling clothes at product-knowledge meetings – are not additional tasks assigned to any selected set of male sales professionals.  Rather, it is Varvatos' contention that these are tasks that are tied to the role of a male sales professional in a way that they are not tied to the role of a female sales professional by virtue of Varvatos designing and marketing clothes for men.

<u>Tessa Knox v. John Varvatos Enterprises, Inc.,</u>
17 Civ. 772 (GWG)

<u>No. 8 – Equal Pay Act – Substantially Equal Skill (Agreed)</u>

Skill, under the Equal Pay Act, refers to the experience, training, education, and ability required to perform a job.

Varvatos is not suggesting that female and male sales professionals require different skills or abilities to perform their jobs.  Therefore, you do not need to decide this issue.

The parties disagree, however, on whether the jobs of female and male sales professionals involve substantially equal effort and responsibilities.

I will now instruction you on these two issues.

<u>Tessa Knox v. John Varvatos Enterprises, Inc.,</u>
17 Civ. 772 (GWG)

<u>No. 9 – Equal Pay Act – Substantially Equal Effort (Agreed)</u>

First, let me instruct you on substantially equal effort.

The Equal Pay Act Plaintiffs have to prove that the jobs of female sales professionals and the male sales professionals require substantially equal effort. Effort, under the EPA, is concerned with the measurement of the physical or mental exertion needed for the performance of a job. Jobs may require equal effort in their performance even though the effort may be exerted in different ways. Occasional or sporadic performance of an activity which may require extra physical or mental exertion is not alone sufficient to justify a finding of unequal effort. "'Effort' encompasses the total requirements of a job." Job factors which cause stress are to be considered in determining the effort required by the job.

12

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

No. 10 – Equal Pay Act – Substantially Equal Effort

Plaintiffs' Proposed Instruction

Additionally, the fact that the male sales professionals may have been assigned additional tasks not assigned to an Equal Pay Act plaintiff does not necessarily make the jobs unequal.  If the additional tasks do not take a significant total amount of all of the employees' time, or if an Equal Pay Act plaintiff also performs duties which require additional effort, in these situations the additional effort is insufficient to make the jobs unequal.[13]

Varvatos' Objection

Varvatos objects to Plaintiffs' Proposed Instruction on the grounds that it is unnecessarily duplicative and cumulative of prior instructions.  In particular, the parties' joint Instruction No. 9 already tracks 29 C.F.R. § 1620.16(b) to state that: "[j]obs may require equal effort in their performance even though the effort may be exerted in different ways" and that "[o]ccasional or sporadic performance of an activity which may require extra physical or mental exertion is not alone sufficient to justify a finding of unequal effort."  See 29 C.F.R. § 1620.16(b).

Varvatos further objects to Plaintiffs' Proposed Instruction on the grounds that by emphasizing and illustrating only what does not make two jobs unequal for the EPA, Plaintiffs' Proposed Instruction is one-sided, prejudicial and argumentative.

To the extent that the Court overrules Varvatos' objections, Varvatos proposes the following, more balanced, instruction:

> *Equal effort does not mean that employees must use effort in the same way. If there is no real difference in the amount or degree of effort it takes to perform each job, the jobs require equal effort. But if one job requires additional tasks that take more time and effort, the two jobs do not require substantially equal effort.*[14]

---

[13] Usery v. Columbia Univ., 568 F.2d 953, 959 (2d Cir. 1977)("Nor will effort expended on additional tasks assigned to male employees necessarily suffice to justify a pay differential. If the additional tasks do not consume a significant total amount of all of the employees' time, or if female employees also perform duties which require additional effort, or if third persons who perform the additional tasks as their primary job are paid less than the male employees in question, in these situations the additional effort is insufficient to differentiate the male positions under the Act.")(Citations omitted.).

[14] Eleventh Circuit Civil Pattern Jury Instructions (2013) § 4.13 at 230.

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

No. 11 – Equal Pay Act – Substantially Equal Accountability

Plaintiffs' Proposed Instruction

To decide whether the jobs of sales professionals who are male and sales professionals who are female involve substantially equal "accountability," you should consider the degree of accountability that each job requires.[15] You may consider factors such as:

(a)     whether the male sales professionals are expected to direct or supervise the work of others;

(b)     whether the male sales professionals are authorized to represent Varvatos in dealing with customers, suppliers, or other third parties to a greater extent than an EPA plaintiff; and

(c)     the potential consequences to Varvatos of inadequate or improper performance of the jobs, which may include possible damage to valuable equipment, possible loss of business or productivity, and the possibility of incurring legal liability to third parties.[16]

Varvatos' Objection

Varvatos objects to the use of the term, "accountability" instead of "responsibility."  See Varvatos' Objection to Instruction No. 5, regarding the same.

Varvatos objects to Plaintiffs' Proposed Instruction because it relies on distinctions or illustrative factors that are not relevant to this case, e.g., differences in supervisory duties and differences impacting equipment.  These distinctions and illustrations all also favor Plaintiffs and are, therefore, prejudicial.  Varvatos' Proposed Instruction No. 12, instead, tracks the terms of 29 C.F.R. § 1620.17 to provide the general standard for "substantially equal responsibility" as well

---

[15] E.E.O.C. v. Port Auth. of New York & New Jersey, 768 F.3d 247, 255 (2d Cir. 2014) ("And equal responsibility turns on 'the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation.'")(quoting 29 C.F.R. § 1620.17(a)).

[16] Eleventh Circuit Civil Pattern Jury Instructions (2013) § 4.13 at 230-31 ("To decide whether the jobs involve substantially equal "responsibility," you should consider the degree of accountability that each job requires. You may consider factors such as: (a) whether the employees are expected to direct or supervise the work of others; (b) whether the employees are authorized to represent [name of defendant] in dealing with customers, suppliers, or other third parties; and (c) the potential consequences to [name of defendant] of inadequate or improper performance of the jobs [, which may include possible damage to valuable equipment, possible loss of business or productivity, and the possibility of incurring legal liability to third parties].").

<u>Tessa Knox v. John Varvatos Enterprises, Inc.</u>,
17 Civ. 772 (GWG)

as illustrative examples of both what does and does not constitute substantially equal
responsibility.

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

No. 12 – Equal Pay Act – Substantially Equal Responsibility

Varvatos's Proposed Charge

Now, I will instruct you on substantially equal responsibilities.

The Equal Pay Act Plaintiffs have to prove that the jobs of female sales professionals and male sales professionals include substantially equal responsibilities.  Responsibility under the Equal Pay Act is concerned with the "degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation."[17]

"Differences in the degree of responsibility required in the performance of otherwise equal jobs cover a wide variety of situations."[18]  Employees who perform "generally similar jobs" may have "differences in responsibilities" that make the jobs unequal under the Equal Pay Act.[19]  Minor responsibilities (e.g., turning out the lights in the department at the end of the business day) do not make two jobs not substantially equal in terms of responsibilities.[20]  Other differences in job responsibilities or obligations (e.g., the responsibility to decide whether or not to accept customer checks at a retail shop) may make the jobs not substantially equal.[21]

---

[17] 29 C.F.R. § 1620.17(a) ("The equal pay standard applies to jobs the performance of which requires equal responsibility. Responsibility is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation. Differences in the degree of responsibility required in the performance of otherwise equal jobs cover a wide variety of situations.").

[18] Id.

[19] 29 C.F.R. § 1620.17(b)(2) ("Other differences in responsibilities of employees in generally similar jobs may require similar conclusions. Sales clerks, for example, who are engaged primarily in selling identical or similar merchandise may be given different responsibilities. Suppose that one employee of such a group (who may be either a man or a woman) is authorized and required to determine whether to accept payment for purchases by personal checks of customers. The person having this authority to accept personal checks may have a considerable, additional degree of responsibility which may materially affect the business operations of the employer. In this situation, payment of a higher wage rate to this employee would be permissible.").

[20] 29 C.F.R. § 1620.17(b)(3) ("On the other hand, there are situations where one employee of the group may be given some minor responsibility which the others do not have (e.g., turning out the lights in his or her department at the end of the business day) but which is not of sufficient consequence or importance to justify a finding of unequal responsibility.").

[21] 29 C.F.R. § 1620.17(b)(2) ("Sales clerks, for example, who are engaged primarily in selling identical or similar merchandise may be given different responsibilities. Suppose that one

16

<u>Tessa Knox v. John Varvatos Enterprises, Inc.</u>,
17 Civ. 772 (GWG)

<u>Plaintiffs' Objection</u>

Because the Second Circuit and EEOC equate responsibility with accountability,[22] it is unnecessary and potentially confusing to instruct the jury using both terms.  That is especially true for this instruction because the sentence:

> "Other differences in job responsibilities or obligations (e.g., the responsibility to decide whether or not to accept customer checks at a retail shop) may make the jobs not substantially equal"

carries a different, and incorrect meaning, unless the word "accountability" is used.

_____

employee of such a group (who may be either a man or a woman) is authorized and required to determine whether to accept payment for purchases by personal checks of customers. The person having this authority to accept personal checks may have a considerable, additional degree of responsibility which may materially affect the business operations of the employer. In this situation, payment of a higher wage rate to this employee would be permissible.").

[22] <u>E.E.O.C. v. Port Auth. of New York & New Jersey</u>, 768 F.3d 247, 255 (2d Cir. 2014) ("And equal responsibility turns on 'the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation.'")(quoting 29 C.F.R. § 1620.17(a)).

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

No. 13 – Equal Pay Act

Plaintiffs' Proposed Charge

I will now turn to the third element of the Equal Pay Act claim.

The third element of the Equal Pay Act claim is whether Varvatos pays its female sales professionals less than Varvatos pays its male sales professionals.

Varvatos's Objection

Varvatos objects to Plaintiffs' Proposed Instruction because the reference to the "third element" of the Equal Pay Act claim might be confusing – the jury will consider, at most, two elements of the EPA claim (i.e., whether the jobs of male and female sales professionals are substantially equal and whether or not female sales professionals are paid wages less than male sales professionals).

18

<u>Tessa Knox v. John Varvatos Enterprises, Inc.,</u>
17 Civ. 772 (GWG)

<u>No. 14 – Equal Pay Act – Unequal Pay</u>

<u>Plaintiffs' Proposed Charge</u>

In order to succeed on the Equal Pay Act Claims, the Equal Pay Act Plaintiffs will need to prove that they were paid a lower wage than male sales professionals, i.e., that the value of the overall clothing assistance that the Equal Pay Act Plaintiffs received (the AllSaints' discount) is less than the value of the overall clothing assistance that the male sales professionals received (the Clothing Allowance).

<u>Varvatos' Objection</u>

Varvatos objects to Plaintiffs' Proposed Instruction on the grounds that it is repetitive and cumulative of Plaintiffs' Proposed Instruction No. 15.  Varvatos' Proposed Instruction No. 16 incorporates the subject matter of the above instruction.

<u>Tessa Knox v. John Varvatos Enterprises, Inc.</u>,
17 Civ. 772 (GWG)

<u>No. 15 – Equal Pay Act – Unequal Pay</u>

<u>Plaintiffs' Proposed Instruction</u>

To prove this element, the EPA Plaintiffs must prove that Varvatos pays its sales professionals who are male any amount of wages more than the amount Varvatos pays its sales professionals who are female, even if it is only a very small amount.[23]

"Wages," under the Equal Pay Act, include all forms of compensation, including benefits, such as the Clothing Allowance and the AllSaints discount.[24]

<u>Varvatos' Objection</u>

Varvatos objects to Plaintiffs' Proposed Instruction on the grounds that it is repetitive and cumulative of Plaintiffs' Proposed Instruction No. 14.

---

[23] <u>Hernandez v. Kellwood Co.</u>, 2003 WL 22309326, at *9 (S.D.N.Y. Oct. 8, 2003)("Defendants argue, however, that, the disparity between Plaintiff's pay and that of her co-worker Simmons was so small that the difference should be considered *de minimis* and, therefore, insufficient to establish that element of the *prima facie* case. Neither the language of the EPA nor the relevant case law, however, carves out an exception for *de minimis* differences in pay.")(Emphasis in original.); <u>Hodgson v. Am. Bank of Commerce</u>, 447 F.2d 416, 420 (5th Cir. 1971) ("Any difference in the wages paid to the respective sexes is prohibited by the Act unless adequately justified under one of the statutory exceptions."); <u>E.E.O.C. v. Mercy Hosp. & Med. Ctr.</u>, 709 F.2d 1195, 1198 (7th Cir. 1983)("We note that the degree of wage differential cannot itself serve as a basis for finding a violation of the Act; on the other hand, *any* difference in wages paid to the respective sexes for *equal* work is prohibited by the Act, unless justified by one of the statutory exceptions listed in the Act.")(Emphasis in original.).

[24] <u>ABA Model Jury Instructions, Employment Cases</u> § 2.04[1][b] ("As defined under the Equal Pay Act, wages include all forms of compensation, including those other than cash wages, such as fringe benefits.  You should consider all evidence you have heard concerning the wages the defendant pays employees in determining whether the plaintiff has been paid a lower wage than an employee of the opposite sex."); <u>see also</u> 29 C.F.R. § 1620.10 ("Under the EPA, the term 'wages' generally includes all payments made to [or on behalf of] an employee as remuneration for employment. The term includes all forms of compensation irrespective of the time of payment, whether paid periodically or deferred until a later date, and whether called wages, salary, profit sharing, expense account, monthly minimum, bonus, uniform cleaning allowance, hotel accommodations, use of company car, gasoline allowance, or some other name.  Fringe benefits are deemed to be remuneration for employment.")

<u>Tessa Knox v. John Varvatos Enterprises, Inc.,</u>
17 Civ. 772 (GWG)

Varvatos also objects to Plaintiffs' Proposed Instruction on the grounds that the reference to the difference in "amount" of wages is prejudicial and not directly applicable to the facts of this case.

First, the relevant statute and its implementing regulation do not refer to the degree of wage differential, and certainly not the difference in the absolute "amount" of wages.[25]  An instruction regarding the absolute amount of the differential is, therefore, unnecessary.

Second, in this case, in particular, where the disputed wage differential is not a simple difference in salary, for example, but a valuation of the tangible and intangible aspects of the Clothing Allowance and the AllSaints' discount, an instruction regarding "small" differences in the "amount" of the wages is confusing and prejudicial.  In the event that the foregoing objection is overruled, Varvatos requests that the following, more balanced language be appended to Varvatos' Proposed Instruction No. 16:  "whether by a small or large amount."

---

[25] <u>See</u> 29 U.S.C. § 206 (d)(1) ("No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee."); 29 C.F.R. § 1620.10 ("Under the EPA, the term 'wages' generally includes all payments made to [or on behalf of] an employee as remuneration for employment. The term includes all forms of compensation irrespective of the time of payment, whether paid periodically or deferred until a later date, and whether called wages, salary, profit sharing, expense account, monthly minimum, bonus, uniform cleaning allowance, hotel accommodations, use of company car, gasoline allowance, or some other name.  Fringe benefits are deemed to be remuneration for employment.").

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

No. 16 – Equal Pay Act – Wages

Varvatos' Proposed Instruction

If you find that the jobs of male and female sales professionals at Varvatos are not substantially equal, then you must decide in favor of Varvatos on the Equal Pay Act Claims. Else, you should consider the second element of the Equal Pay Act claims – wages.

"Wages," under the Equal Pay Act, include all forms of compensation, including benefits, such as the Clothing Allowance and the AllSaints discount.[26]

In order to succeed on the Equal Pay Act Claims, the Equal Pay Act Plaintiffs will need to prove that they were paid less wages[27] than male sales professionals, i.e., that the clothing assistance that they received (*i.e.*, the AllSaints' discount) is less than the value of the clothing assistance that the male sales professionals received (*i.e.*, the Clothing Allowance).

Plaintiffs' Objection

This is repetitive of Proposed Request 15.

---

[26] ABA Model Jury Instructions, Employment Cases § 2.04[1][b] ("As defined under the Equal Pay Act, wages include all forms of compensation, including those other than cash wages, such as fringe benefits.  You should consider all evidence you have heard concerning the wages the defendant pays employees in determining whether the plaintiff has been paid a lower wage than an employee of the opposite sex."); see also 29 C.F.R. § 1620.10 ("Under the EPA, the term 'wages' generally includes all payments made to [or on behalf of] an employee as remuneration for employment. The term includes all forms of compensation irrespective of the time of payment, whether paid periodically or deferred until a later date, and whether called wages, salary, profit sharing, expense account, monthly minimum, bonus, uniform cleaning allowance, hotel accommodations, use of company car, gasoline allowance, or some other name.  Fringe benefits are deemed to be remuneration for employment.")

[27] See 29 U.S.C. § 206 (d)(1) ("No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying *wages* to employees in such establishment at a *rate* less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where …") (emphasis added).

*Tessa Knox v. John Varvatos Enterprises, Inc.*,
17 Civ. 772 (GWG)

No. 17 – Equal Pay Act – Prima Facie Case and Affirmative Defenses

Varvatos' Proposed Charge

If you find that the Equal Pay Act Plaintiffs have not proven that Varvatos paid them less than the male sales professionals for performing substantially equal work, then your verdict must be for Varvatos on the Equal Pay Act Claims.

If you find that the Equal Pay Act Plaintiffs have proven that Varvatos paid them less than the male sales professionals for performing substantially equal work, then you must consider Varvatos' affirmative defense to the Equal Pay Act Claims.

Plaintiffs' Objection

Plaintiffs object to an instruction on this affirmative defense because it is not, as a matter of law, available to Varvatos given the undisputed facts in this case, for the reasons set forth in Plaintiffs' trial memorandum.

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

No. 18 – Equal Pay Act – Factor Other Than Sex

Varvatos' Proposed Instruction

As an affirmative defense, Varvatos contends that the difference in clothing assistance it provides to female and male sales professionals is the result of a factor other than sex. Specifically, Varvatos claims that the difference in pay is attributable to the legitimate business reason that Varvatos designs and markets men's clothing and requires the male sales professionals, but not the female sales professionals, to wear Varvatos clothing only, while they are at work.  To establish this defense, Varvatos must prove that plaintiffs' sex played no part in the difference in wages.[28]

If you find that Varvatos has established this affirmative defense, your verdict must be in favor of Varvatos on the Equal Pay Act Claims.  If not, then you verdict must be in favor of the Equal Pay Act Plaintiffs, if they have proved all the other elements of the Equal Pay Act claims.[29]

Plaintiffs' Objection

If the Court decides to give a charge on this issue, it should give the following charge:

*The first affirmative defense that Varvatos has offered to the Equal Pay Act claim is that the sales professionals who are female are paid less because of a factor other than sex.*

*To establish this affirmative defense, Varvatos must prove that sales professionals who are female received less pay because of a gender-neutral, legitimate business*

---

[28] Third Circuit Instructions for Employment Discrimination Claims Under the Equal Pay Act (*last updated Oct. 2018*) § 11.2.4 at 25 ("If you find that [plaintiff] has proved each of the elements that she must establish in support of her claim under the Equal Pay Act, you must then consider [defendant's] defense. [Defendant] contends that the difference in pay between the two jobs was the result of a factor other than sex.  Specifically, [defendant] claims that the difference in pay is attributable to [employee's education] [employee's experience] [training programs in which employees participate] [any other factor other than sex on which defendant has presented sufficient evidence to raise a jury question]. To establish that this defense, [defendant] must prove that [plaintiff's] sex played no part in the difference in wages.").

[29] Varvatos' Trial Memorandum addresses why Varvatos is entitled to this affirmative defense.

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

reason.[30]  For the defense to be successful, gender cannot play any part in the decision to pay the women less.[31]

       If you find that Varvatos has established this affirmative defense, your verdict must be in favor of Varvatos on the Equal Pay Act claim.

       But if you find that Varvatos has not established this affirmative defense, then your verdict should be for the Equal Pay Act Plaintiffs.

---

[30] Belfi v. Prendergast, 191 F.3d 129, 136 (2d Cir. 1999)("Further, to successfully establish the 'factor other than sex' defense, an employer must also demonstrate that it had a legitimate business reason for implementing the gender-neutral factor that brought about the wage differential."); Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 526 (2d Cir. 1992)("For these reasons, we hold that an employer bears the burden of proving that a bona fide business-related reason exists for using the gender-neutral factor that results in a wage differential in order to establish the factor-other-than-sex defense.").

[31] Dreves v. Hudson Grp. (HG) Retail, LLC, 2013 WL 2634429, at *5 (D. Vt. June 12, 2013)("This requires demonstrating that the pay disparity was based *solely* on factors other than sex."); Schleicher v. Preferred Sols., Inc., 831 F.3d 746, 754 (6th Cir. 2016), cert. denied, 137 S. Ct. 531, 196 L. Ed. 2d 408 (2016)("We strictly interpret this defense: '[U]nless the factor of sex provides *no* part of the basis for the wage differential, the requirements [for the defense] are not met.' Beck-Wilson v. Principi, 441 F.3d 353, 365 (6th Cir. 2006)(quoting Brennan v. Owensboro–Daviess Cty. Hosp., 523 F.2d 1013, 1031 (6th Cir. 1975))…"); Mulhall v. Advance Sec., Inc., 19 F.3d 586, 590 (11th Cir. 1994)("In fact, defendants must show that the factor of sex provided *no basis* for the wage differential.")(emphasis in original).

<u>Tessa Knox v. John Varvatos Enterprises, Inc.</u>,
17 Civ. 772 (GWG)

<u>No. 19 – EPA – Statute of Limitations</u>

<u>Plaintiffs' Proposed Instruction</u>

Varvatos asserts the affirmative defense of the statute of limitations.  This is not a complete defense to the claims of the EPA plaintiffs.  It only effects the number of years that the Equal Pay Act Plaintiffs may claim damages and as a result may affect the number of Equal Act Plaintiffs who can successfully assert the claim.

Under the Equal Pay Act, an Equal Pay Act Plaintiff is entitled to recover damages that she suffered from the date of your verdict to at least two years before the filing of her lawsuit.

However, if you find that Varvatos willfully violated the Equal Pay Act, then each EPA Plaintiff is entitled to recover damages that she suffered from the date of your verdict to three years before the filing of her lawsuit.

You should find that Varvatos willfully violated the Equal Pay Act if Varvatos knew or showed a reckless disregard for whether or not its conduct resulted in paying women less than men for performing substantially equal work under similar working conditions.[32]

Varvatos' conduct may have been willful even if you find that Varvatos did not act with an intent to violate the law.[33]

---

[32] <u>Pollis v. New Sch. for Soc. Research</u>, 132 F.3d 115, 119 (2d Cir. 1997)("A defendant's violation of the Equal Pay Act is willful or reckless within the meaning of § 255(a) if 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'")(quoting <u>Reich v. Waldbaum, Inc.</u>, 52 F.3d 35, 39 (2d Cir.1995) (quoting <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 133 (1988)).

[33] <u>Pollis v. New Sch. for Soc. Research</u>, 132 F.3d 115, 119-20 (2d Cir. 1997)("A plaintiff need not show that an employer acted with intent to discriminate or in bad faith. <u>See</u> <u>Trans World Airlines, Inc. v. Thurston</u>, 469 U.S. 111, 126 n. 19, 105 S.Ct. 613, 624 n. 19, 83 L.Ed.2d 523 (1985)...This evidence—that the New School knew that Pollis was paid less than comparable males, but did not rectify the situation—is sufficient to support the jury's finding of reckless or willful violation of the Equal Pay Act."); <u>Trans World Airlines, Inc. v. Thurston</u>, 469 U.S. 111, 126 n. 19 (1985)("Courts below have held that an employer's action may be 'willful,' within the meaning of § 16(a) of the FLSA, even though he did not have an evil motive or bad purpose. See <u>Nabob Oil Co. v. United States</u>[, 190 F.2d 478, 480 (10th Cir. 1951)]. We do not agree with TWA's argument that unless it intended to violate the Act, double damages are inappropriate under § 7(b) of the ADEA. Only one Court of Appeals has expressed approval of this position. <u>See Loeb v. Textron, Inc.</u>, 600 F.2d 1003, 1020, n. 27 (CA1 1979).").

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

Varvatos's Objection

Varvatos objects to Plaintiffs' Proposed Instruction because Varvatos is not disputing that the statute of limitations issue goes to the potential enhancement of damages.  The instruction is better included in the damages-enhancement phase of the trial, in particular because the "willfulness" determination relates both to damage-enhancements under the Equal Pay Act and the New York Equal Pay Act.[34]

---

[34] Ebbert v. Nassau Cty., No. 05-CV-5445(FB)(AKT), 2009 WL 935812, at *6 (E.D.N.Y. Mar. 31, 2009) ("As the County recognizes, however, its statute of limitations defense affects only the amount of damages each plaintiff may recover. Since the parties have agreed to bifurcate this action into liability and damages phases, the Court will wait until the end of the liability phase to determine whether there is sufficient evidence of wilfullness to submit the issue to the jury.").

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

No. 20 – Title VII and NY HRL – Liability Generally (Agreed)

I will now turn to the claim of the Title VII Class.

The Title VIII Class claims that Varvatos engaged in pay discrimination in violation of Title VII of the Civil Rights Act, which is a federal law, and the New York State Human Rights Law, which is a New York State statute.  The elements of these claims are the same.[35]  I will therefore refer to claims under these statutes as claims for violations of "Title VII."

I will therefore instruct you on these claims together.  For convenience, I will refer to Plaintiffs' claims under these two statutes as the Title VII claims.

---

[35] Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) ("The identical standards apply to employment discrimination claims brought under Title VII, Title IX, New York Executive Law § 296, and the Administrative Code of the City of New York.").

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

No. 21 – Title VII and NY HRL – Liability Generally – Standard

Plaintiffs' Proposed Instruction

Under Title VII, it is illegal for an employer to discriminate against an employee in terms of compensation because of that employee's sex.[36]

To succeed on their claims for violation of Title VII, the Title VII Class must prove that (1) Varvatos paid them less than men and (2) their sex was a motivating factor[37] in Varvatos's decision to pay them less than men.[38]

Varvatos' Objection

Varvatos objects to Plaintiffs' Proposed Instruction on the grounds that it does not make any reference to the assessment of whether male and female sales professionals are similarly situated.

Varvatos' Proposed Instruction

Under Title VII, it is illegal for an employer to discriminate against an employee in terms of compensation because of that employee's sex.[39]

---

[36] 42 U.S.C. § 2000e-2(a)(1)("It shall be an unlawful employment practice for an employer--to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...").

[37] 42 U.S.C. § 2000e-2(m)("Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."); Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015)("As to the second element, an action is 'because of' a plaintiff's race, color, religion, sex, or national origin where it was a 'substantial' or 'motivating' factor contributing to the employer's decision to take the action.").

[38] Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015)("Title VII thus requires a plaintiff asserting a discrimination claim to allege two elements: (1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin.").

[39] 42 U.S.C. § 2000e-2(a)(1)("It shall be an unlawful employment practice for an employer--to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...").

<u>Tessa Knox v. John Varvatos Enterprises, Inc.</u>,
17 Civ. 772 (GWG)

     To succeed on their claims for violation of Title VII, the Title VII Class must prove that (1) Varvatos paid them less than similarly-situated men and (2) their sex was a motivating factor in Varvatos decision to pay them less than men.

### Plaintiffs' Response to Objection

     Plaintiffs object because their Title VII claim is not dependent on whether male and female sales professionals have substantially the same job, or whether they are similarly situated. <u>McGuinness v. Lincoln Hall</u>, 263 F.3d 49, 54 (2d Cir. 2001)("We have already noted that because a Title VII plaintiff may establish a prima facie case of discrimination in a number of different ways depending on the specific facts of a given case, *Shumway* does not require that a plaintiff always be able to show disparate treatment of an otherwise similarly situated employee as a necessary prerequisite to a prima facie case under Title VII."). <u>See</u> <u>Annunziata v. Int'l Bhd. of Elec. Workers Local Union # 363</u>, No. 15-CV-03363 (NSR), 2018 WL 2416568, at *10 (S.D.N.Y. May 29, 2018)("Unlike the EPA, Title VII does *not* 'require that a plaintiff always be able to show disparate treatment of an otherwise similarly situated employee as a necessary prerequisite to a prima facie case....' *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 n.2 (2d Cir. 2001) (citing *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir. 2001) ); *see also Gunther*, 452 U.S. at 179 (declining to extend the EPA's 'equal work' requirement to Title VII pay discrimination cases). Rather, a "Title VII plaintiff [may] succeed by showing that her employer intentionally depressed her wages, even if the employer did not employ any similarly-situated males.' *Barrett*, 39 F. Supp. 3d at 452; *see also Gibson v. Jacob K. Javits Convention Ctr. of New York*, No. 95-CV-9728 (LAP), 1998 WL 132796, at *5 (S.D.N.Y. Mar. 23, 1998) ('Where, as here, a Title VII wage discrimination claim is asserted without an allegation that the jobs in question are substantially equal, the requisite showing under Title VII is merely that the plaintiff's wages were depressed because of intentional sex discrimination.')."

<u>Tessa Knox v. John Varvatos Enterprises, Inc.</u>,
17 Civ. 772 (GWG)

<u>No. 22 – Title VII and NY HRL – Motivating Factor</u>

<u>Plaintiffs' Proposed Instruction</u>

To prove that sex was a motivating factor in Varvatos's decision, the Title VII Class does not have to prove that their sex was the only reason that Varvatos did not give them a Clothing Allowance or a comparable benefit.  It is enough if they prove that their sex influenced Varvatos's decision.  If a Title VII Class member's sex made a difference in Varvatos's decision, you may find that it was a motivating factor in Varvatos's decision.[40]

<u>Varvatos's Objection</u>

Varvatos objects to Plaintiffs' Proposed Instruction on the grounds that the language in the instruction is one-sided and prejudicial, in particular, the following language:  (1) "[i]t is *enough* if they prove that their sex influenced Varvatos's decision."  (Emphasis added.)  The "made a difference" language provides little guidance, and is vague and potentially confusing.

<u>Varvatos' Proposed Instruction</u>

In order to succeed on their claims, the Title VII Plaintiffs must prove that their sex was a motivating or substantial factor in Varvatos' decision to give female and male sales professionals different clothing assistance.[41]  The Title VII Plaintiffs do not have to prove that sex was the only reason for the decision, but that it played a motivating or substantial role or had a determinative influence in the decision-making.[42]

---

[40] <u>Eleventh Circuit Civil Pattern Jury Instructions</u> (2013) § 4.5 at 101("To prove that [race/religion/sex/national origin] was a motivating factor in [name of defendant]'s decision, [name of plaintiff] does not have to prove that [his/her] [race/religion/sex/national origin] was the only reason that [name of defendant] [discharged [him/her] from employment/denied [him/her] a promotion]. It is enough if [name of plaintiff] proves that [race/religion/sex/ national origin] influenced the decision. If [name of plaintiff's [race/religion/sex/national origin] made a difference in [name of defendant]'s decision, you may find that it was a motivating factor in the decision.").

[41] 42 U.S.C. § 2000e-2(m) ("Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.").

[42] <u>Ali v. Tribune Entm't Co.</u>, No. 93 CIV. 1398 (CSH), 1996 WL 384913, at *6 (S.D.N.Y. July 10, 1996) (in a mixed motive case, the "plaintiff must focus her proof on the alleged discrimination itself and prove that a prohibited discriminatory factor had a 'motivating' or 'substantial' role in the challenged employment decision;" although "[i]t is not necessary for her to show that the forbidden animus was the sole, true, or principal reason.") (internal citations

<u>Tessa Knox v. John Varvatos Enterprises, Inc.</u>,
17 Civ. 772 (GWG)

<u>No. 23 – Title VII and NYSHRL – Similarly Situated Employees</u>

<u>Varvatos' Proposed Instruction</u>

In this case, the Title VII Plaintiffs have alleged that Varvatos has discriminated against them because of their sex with regard to the clothing assistance that Varvatos provides to male sales professionals.  Therefore, in determining whether Varvatos has discriminated against the Title VII Plaintiffs because of their sex, you must consider whether female and male sales professionals at Varvatos are similarly situated in all material respects.  There can be no discrimination by Varvatos for providing its male and female sales professionals different clothing assistance if the female sales professionals are not similarly situated to the male sales professionals.[43]

<u>Plaintiffs' Objection</u>

Plaintiffs object because their Title VII claim is not dependent on whether male and female sales professionals have substantially the same job, or whether they are similarly situated. <u>McGuinness v. Lincoln Hall</u>, 263 F.3d 49, 54 (2d Cir. 2001)("We have already noted that because a Title VII plaintiff may establish a prima facie case of discrimination in a number of different ways depending on the specific facts of a given case, *Shumway* does not require that a plaintiff always be able to show disparate treatment of an otherwise similarly situated employee as a necessary prerequisite to a prima facie case under Title VII.").  <u>See</u> <u>Annunziata v. Int'l Bhd. of Elec. Workers Local Union # 363</u>, No. 15-CV-03363 (NSR), 2018 WL 2416568, at *10 (S.D.N.Y. May 29, 2018)("Unlike the EPA, Title VII does *not* 'require that a plaintiff always be able to show disparate treatment of an otherwise similarly situated employee as a necessary

_____

omitted); <u>Hazen Paper Co. v. Biggins</u>, 507 U.S. 604, 610, 113 S. Ct. 1701, 1706, 123 L. Ed. 2d 338 (1993) ("Whatever the employer's decisionmaking process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome.").

[43] <u>Williams v. New York State Unified Court Sys. Office of Court Admin.</u>, No. 16-CV-2061 (VSB), 2017 WL 4402562, at *11 (S.D.N.Y. Sept. 30, 2017) ("Where a plaintiff relies on the disparate treatment to support his discrimination claim, he must allege that '[he] was similarly situated in all material respects to the individuals with whom [he] seeks to compare herself.'") (quoting <u>Brown v. Daikin Am. Inc.</u>, 756 F.3d 219, 230 (2d Cir. 2014)); <u>Foray v. Bell Atl.</u>, 56 F. Supp. 2d 327, 329–30 (S.D.N.Y. 1999) ("To establish discrimination under Title VII, plaintiff must show that he was treated differently from 'similarly situated' persons of the opposite sex. To be 'similarly situated, the individuals with whom [plaintiff] attempts to compare [him]self must be similarly situated in all material respects.") (citing <u>Shumway v. United Parcel Serv., Inc.</u>, 118 F.3d 60, 64 (2d Cir.1997); <u>DeCintio v. Westchester County Med. Ctr.</u>, 807 F.2d 304, 306 (2d Cir.1986), <u>cert. denied</u>, 484 U.S. 825, 108 S.Ct. 89, 98 L.Ed.2d 50 (1987)) (internal quotation marks omitted).

<u>Tessa Knox v. John Varvatos Enterprises, Inc.,</u>
17 Civ. 772 (GWG)

prerequisite to a prima facie case....' *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 n.2 (2d Cir. 2001) (citing *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir. 2001) ); *see also Gunther*, 452 U.S. at 179 (declining to extend the EPA's 'equal work' requirement to Title VII pay discrimination cases). Rather, a "Title VII plaintiff [may] succeed by showing that her employer intentionally depressed her wages, even if the employer did not employ any similarly-situated males.' *Barrett*, 39 F. Supp. 3d at 452; *see also Gibson v. Jacob K. Javits Convention Ctr. of New York*, No. 95-CV-9728 (LAP), 1998 WL 132796, at *5 (S.D.N.Y. Mar. 23, 1998) ('Where, as here, a Title VII wage discrimination claim is asserted without an allegation that the jobs in question are substantially equal, the requisite showing under Title VII is merely that the plaintiff's wages were depressed because of intentional sex discrimination.')."

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

No. 24 – Title VII and NY HRL – Motivating Factor

Plaintiffs' Proposed Instruction

There are two different ways in which you can find that the sex was a motivating factor for the Clothing Allowance.

First, if you find for the Equal Pay Act claims that the jobs performed by sales professionals who are male and sales professionals who are female were substantially similar, then the Title VII class can prove that sex was a motivating factor in Varvatos' decision to not give them a clothing allowance if they can prove the existence of a facially discriminatory policy.[44] A facially discriminatory policy is one that explicitly states[45] that whether or not a sales professional receives a Clothing Allowance is based on the sales professional's sex.[46]

Second, even if you find for the Equal Pay Act claims that the jobs performed by sales professionals who are male and sales professionals who are female were not substantially similar, then the Title VII Class can prove that sex was a motivating factor in Varvatos's

---

[44] Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)("In a disparate treatment case, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision. The employer may have relied upon a formal, facially discriminatory policy requiring adverse treatment of employees with that trait. Or the employer may have been motivated by the protected trait on an ad hoc, informal basis.")(citations omitted); Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc., 499 U.S. 187, 199 (1991)("Whether an employment practice involves disparate treatment through explicit facial discrimination does not depend on why the employer discriminates but rather on the explicit terms of the discrimination."); Johnson v. State of N.Y., 49 F.3d 75, 79 (2d Cir. 1995)("In cases such as this, where there is direct evidence that the disparate treatment (here, discharge) is age-dependent, the *McDonnell Douglas* search for a motive is unnecessary and therefore inapplicable.").

[45] DiBiase v. SmithKline Beecham Corp., 48 F.3d 719, 727 (3d Cir. 1995)("The touchstone of explicit facial discrimination is that the discrimination is apparent from the terms of the policy itself."); Cmty. House, Inc. v. City of Boise, 490 F.3d 1041, 1048 (9th Cir. 2007)("A facially discriminatory policy is one which on its face applies less favorably to a protected group.") (Footnote omitted.); Piercy v. Maketa, 480 F.3d 1192, 1204 (10th Cir. 2007)("Given the job posting's clear language that women need not apply, the facial discrimination is equally clear.").

[46] Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc., 499 U.S. 187, 199-200 (1991)("Whether an employment practice involves disparate treatment through explicit facial discrimination does not depend on why the employer discriminates but rather on the explicit terms of the discrimination....We hold that Johnson Controls' fetal-protection policy is sex discrimination forbidden under Title VII unless respondent can establish that sex is a 'bona fide occupational qualification.'").

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

decision to not give them a clothing allowance if they can also prove that but for their gender, Varvatos would have provided them with a Clothing Allowance or a comparable benefit of equal value.[47]

If you find that Plaintiffs have proven the elements of their Title VII claim, then you should consider any affirmative defense of Varvatos.

Varvatos' Objections

Varvatos objects to Plaintiffs' Proposed Instruction for the reasons set forth in its Trial Memorandum.

---

[47] City of Los Angeles, Dep't of Water & Power v. Manhart, 435 U.S. 702, 711 (1978)("Such a practice does not pass the simple test of whether the evidence shows treatment of a person in a manner which but for that person's sex would be different.")(internal quotation omitted); Birch v. Cuyahoga Cty. Prob. Court, 392 F.3d 151, 163 (6th Cir. 2004) ("Thus, *Gunther* instructs that a Title VII plaintiff suing for wage discrimination (and, by extension, a plaintiff suing under OH. REV. CODE ANN. § 4112.02) is not required, as part of her *prima facie* case, to point to a person of the opposite sex performing equal work for greater pay when there is other highly probative evidence that her salary would have been higher but for her sex.")

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

No. 25 – Title VII and NY HRL – Affirmative Defenses

Varvatos's Proposed Instruction

If you decide that the Title VII Plaintiffs have proven that they were unlawfully discriminated against on the basis of their sex, you must then consider Varvatos' affirmative defenses.

Varvatos asserts three affirmative defenses to the Title VII claims.  In particular, Varvatos asserts that its decision to provide different clothing assistance to male and female sales professionals is based on: (1) a factor other than sex; (2) a bona fide occupational qualification; and/or a (3) business necessity.

If you find that Varvatos has proven any one of these affirmative defenses, you must find in favor of Varvatos on the Title VII claims.  Otherwise, you must find in favor or the Title VII Plaintiffs if they have proven the other elements of their Title VII claims.

Plaintiffs' Objection

Plaintiffs object to any charge concerning affirmative defenses to the Title VII claim for the reasons set forth in their pretrial memorandum and summarized below.

If the Court give a charge, it should give the following charge:

*Varvatos asserts three affirmative defenses to the Human Rights Law claims.*

*They are that giving the Clothing Allowance only to men is (i) based upon a factor other than sex, (ii) based upon a bona fide occupational requirement, and (iii) a business necessity.*

36

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

No. 26 – Title VII and NY HRL – Factor Other Than Sex

Varvatos's Proposed Instruction

The factor other than sex defense is the same as I instructed you on under the Equal Pay
Act claim.  If you found under the Equal Pay Act claim that Varvatos has proven that the
difference in clothing assistance it provides to female and male sales professionals is based on a
factor other than sex, then you must find the same here as to the Title VII Class.

If you find that Varvatos has not proven this first affirmative defense, then you must
consider Varvatos' next affirmative defense.[48]

Plaintiffs' Objection

The Court should not instruct the jury on this affirmative defense because it is not, as a
matter of law, available to Varvatos based upon the undisputed facts in this case, for the reasons
set forth in Plaintiffs' trial memorandum.

---

[48] Varvatos' Trial Memorandum addresses why Varvatos is entitled to this affirmative defense.

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

No. 27 – Title VII and NYSHRL – Bona Fide Occupational Qualification Defense

Varvatos's Proposed Instruction

The next affirmative defense you have to consider for Varvatos is called the bona fide occupational qualification defense.

Under the bona fide occupations qualification or BFOQ defense, an employer may lawfully treat employees of different sexes differently if it proves that is reasonably necessary to the normal operation of its particular business.[49]  To establish the BFOQ defense for its policy of giving female and male sales professionals different clothing assistance, Varvatos must prove: (1) that the policy relates to the essence or central function of its business, and (2) it is reasonably necessary to its business.[50]

As an example, under the law, sex is a bona fide occupational qualification or BFOQ where the defendant shows that it is necessary for the purpose of authenticity or genuineness of

---

[49] 42 U.S.C. § 2000e-2(e)(1) ("Notwithstanding any other provision of this subchapter, (1) it shall not be an unlawful employment practice for an employer to hire and employ employees, for an employment agency to classify, or refer for employment any individual, for a labor organization to classify its membership or to classify or refer for employment any individual, or for an employer, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining programs to admit or employ any individual in any such program, on the basis of his religion, sex, or national origin in those certain instances where religion, sex, or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise.").

[50] Westchester Cty. Corr. v. Cty. of Westchester, 346 F. Supp. 2d 527, 533 (S.D.N.Y. 2004) ("Therefore, in order to sustain a BFOQ defense, the Defendants must show 1. the job qualifications that the employer invokes to justify his discrimination must relate to the essence or central function of his business, and 2. they must be "reasonably necessary" to the particular business.") (citing Western Air Lines, Inc. v. Criswell, 472 U.S. 400, 414–415, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985)).

its business, as in the case of hiring women for the role of actresses and men for the role of actors.[51]  This is one, though not the only way, that Varvatos could prove the BFOQ defense.[52]

### Plaintiffs' Objection

The Court should not instruct the jury on this affirmative defense because it is not, as a matter of law, available to Varvatos based upon the undisputed facts in this case, for the reasons set forth in Plaintiffs' trial memorandum.

In essence, the defense of a bona fide occupational qualification to a Title VII claim should not be extended to provide a defense to a Title VII claim for unequal pay for substantially similar work because the EPA prevents that form of discrimination, and Title VII should not lead to a different result than the EPA on this theory.  Refusing to pay women a compensating benefit to a benefit provided to men cannot be based upon what is, or is not, a central function of a business.

Varvatos's statement of law that "Any proposed alternatives must themselves be reasonable – i.e. they must be equally effective as Varvatos' chosen policy with respect to factors such as costs and other burden" is incorrect.  Varvatos's authority for this proposition, Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 660–61 (1989), is not a case that considered the BFOQ defense, but rather a case that discussed the requirements for the business necessity defense. 490 U.S. at 660-61. ("Finally, if on remand the case reaches this point, and respondents cannot persuade the trier of fact on the question of petitioners' business necessity defense, respondents may still be able to prevail. To do so, respondents will have to persuade the factfinder that "other tests or selection devices, without a similarly undesirable racial effect, would also serve the employer's legitimate [hiring] interest[s]"; by so demonstrating, respondents would prove that "[petitioners were] using [their] tests merely as a 'pretext' for discrimination.")

Moreover, for a BFOQ defense, the defendant has the burden to make a "strong showing" that the alternative is not reasonable. See White v. Dep't of Corr. Servs., 814 F. Supp.2d 374, 386

---

[51] 29 C.F.R. § 1604.2(a)(2) ("Where it is necessary for the purpose of authenticity or genuineness, the Commission will consider sex to be a bona fide occupational qualification, e.g., an actor or actress."); Criswell v. W. Airlines, Inc., 709 F.2d 544, 549 (9th Cir. 1983), aff'd sub nom. W. Air Lines, Inc. v. Criswell, 472 U.S. 400, 105 S. Ct. 2743, 86 L. Ed. 2d 321 (1985) ("If you find that plaintiffs have persuaded you by a preponderance of the evidence that their involuntary retirements were the result of policies in which age discrimination was a determining factor, then you must consider defendant's defense that age is a 'bona fide occupational qualification' for its Second Officers (flight engineers). This defense is usually abbreviated 'BFOQ'. The BFOQ defense is available only if it is reasonably necessary to the normal operation-essence-of defendant's business. In this regard, I instruct you that the normal operation-essence-of Western's business is the safe transportation of air passengers.").

[52] Varvatos' Trial Memorandum addresses why Varvatos is entitled to this affirmative defense.

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

(S.D.N.Y. 2011)("In the face of potential alternatives, gender-based hiring is only permissible if the defendant makes a strong showing that such alternatives are not reasonable. *See, e.g., Henry,* 539 F.3d at 582 ("The BFOQ defense extends only to those policies that are 'reasonably necessary to the normal operation' of the institution. It does not excuse investigation of and reliance upon alternatives that involve minor additional costs or inconveniences." (citing 42 U.S.C. § 2000e–2(e)(1))); *Forts v. Ward,* 621 F.2d 1210, 1217 (2d Cir.1980) (reversing district court decision granting permanent injunction barring male prison guards from performing certain duties during night shift on the grounds that reasonable alternatives to this gender-based employment policy were available).").

If the Court decides to give a charge on this issue, it should give the following charge:

> *Varvatos' second affirmative defense is called the bona fide occupational requirement.*

> *Varvatos may be allowed to discriminate between its male and female employees if it can prove that its decision to give men but not women a Clothing Allowance, or a compensating benefit, was related to the essence or central function of Varvatos's business, and reasonably necessary to performing that function successfully.[53]*

> *This defense is extremely narrow.[54] If Varvatos could accomplish its legitimate business objectives in a non-discriminatory or less discriminatory way, and Varvatos*

---

[53] Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc., 499 U.S. 187, 203 (1991)("We stressed that in order to qualify as a BFOQ, a job qualification must relate to the 'essence,' [Dothard v. Rawlinson, 433 U.S. 321, 333 (1977)] (emphasis deleted), or to the 'central mission of the employer's business,' [Western Air Lines, Inc. v. Criswell, 472 U.S. 400, 413 (1985)]"); Westchester Cty. Corr. v. Cty. of Westchester, 346 F. Supp.2d 527, 533 (S.D.N.Y. 2004) ("[T]o sustain a BFOQ defense, the Defendants must show 1. the job qualifications that the employer invokes to justify his discrimination must relate to the essence or central function of his business, and 2. they must be 'reasonably necessary' to the particular business. See Western Air Lines, Inc. v. Criswell, 472 U.S. 400, 414–415 [] (1985).").

[54] Dothard v. Rawlinson, 433 U.S. 321, 334 (1977)("We are persuaded by the restrictive language of s 703(e), the relevant legislative history, and the consistent interpretation of the Equal Employment Opportunity Commission that the bfoq exception was in fact meant to be an extremely narrow exception to the general prohibition of discrimination on the basis of sex."); Westchester Cty. Corr. v. Cty. of Westchester, 346 F. Supp.2d 527, 533 (S.D.N.Y. 2004)("In applying the defense, it is important to recognize that the BFOQ defense is intended to be an 'extremely narrow exception' to the general prohibition of discrimination of the basis of sex.");

> *cannot reasonably explain why it did not adopt those non-discriminatory or less discriminatory alternatives, Varvatos cannot prove this defense.[55]*

If you find that Varvatos is entitled to the BFOQ defense, then you must return a verdict for Varvatos on the Title VII Claims.  Otherwise, you must consider an additional affirmative defense.

Varvatos' Objection

Varvatos objects to Plaintiffs' Proposed Instruction on the grounds that the term, "compensating benefit" is vague and confusing and that the instruction fails to take into account the clothing assistance provided to female sales professionals, and is thus misleading and incomplete.

Varvatos further objects to Plaintiffs' Proposed Instruction because it mischaracterizes the record by stating that Varvatos provides males sales professionals a Clothing Allowance and that it provides female sales professionals no clothing assistance.  That is incorrect – Varvatos provides female sales professionals a 50% AllSaints discount that it does not provide to male sales professionals.

Varvatos also objects to the prejudicial and argumentative characterization of the defense as narrow.  Whether or not the defense is narrowly construed is not an element of the affirmative defense that Varvatos has to prove.  Once the jury is instructed on the elements of the defense, it should be left to the jury to decide whether or not it applies to this case.

Further, as discussed in Varvatos' Trial Memorandum, Varvatos does not believe that the jury is required to consider alternatives with regard to the BFOQ defense.  However, in the event that the Court decides to give an instruction regarding alternatives, Varvatos requests the following:

> *In order to prove the reasonableness of its policy, Varvatos is not required to prove that no other alternative exists to meet its legitimate business purpose.  However, you may consider alternatives that Plaintiffs have raised in judging whether the differential between the clothing assistance Varvatos provides to female and male sales professionals is reasonable for Varvatos' stated purpose.  Any proposed alternatives must themselves be reasonable, e.g., in terms of costs and other burdens.[56]*

---

[55] White v. Dep't of Corr. Servs., 814 F. Supp.2d 374, 386 (S.D.N.Y. 2011)("In the face of potential alternatives, gender-based hiring is only permissible if the defendant makes a strong showing that such alternatives are not reasonable.").

[56] See, e.g., Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc., 499 U.S. 187, 217–18 (1991) (citing cases that confirm that "costs are

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

No. 28 – Title VII and HRL – Business Necessity

Varvatos's Proposed Instruction

As an affirmative defense, Varvatos has also contended that its provision of different clothing assistance to female sales professionals and male sales professionals is justified on grounds of business necessity.  To prove this defense, Varvatos must establish that (1) the difference is job-related, i.e., it is related to the respective jobs of female sales professionals and male sales professionals, and (2) it is consistent with a business necessity.[57]  If you determine that Varvatos establishes this, then it is the Title VII Plaintiffs' burden to show that a different alternative exists that would serve Varvatos' legitimate interests without the discriminatory effect that the plaintiffs are claiming.[58]  Any alternative proposed by Plaintiffs must be equally effective as Varvatos' chosen wardrobe-related policy in achieving Varvatos' legitimate business goals.  Factors such as the cost or other burdens of the Plaintiffs' proposed alternatives are relevant in this determination.[59, 60]

Plaintiffs' Objection

The Court should not instruct the jury on this affirmative defense because it is not, as a matter of law, available to Varvatos based upon the undisputed facts in this case, for the reasons set forth in Plaintiffs' trial memorandum.

---

relevant in determining whether a discriminatory policy is reasonably necessary for the normal operation of a business.").

[57] M.O.C.H.A. Soc'y, Inc. v. City of Buffalo, 689 F.3d 263, 274 (2d Cir. 2012) (once plaintiff carried its burden of establishing a prima facie case under Title VII, burden shifted to the defendant to show that the challenged test was "job related for the position in question and consistent with business necessity.") (citing 42 USC § 2000e-2(k)(1)(A)(i)).

[58] M.O.C.H.A. Soc'y, Inc. v. City of Buffalo, 689 F.3d 263, 274 (2d Cir. 2012) ("This returned the burden to [plaintiff] to show that a different test or selection mechanism would have served the employer's legitimate interests 'without a similarly undesirable racial effect.'") (internal citations omitted).

[59] Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 641 (1989) (any alternative procedure proposed by plaintiffs "must be equally effective as [the employer's] chosen . . . procedures in achieving [the employer's] legitimate . . . goals.  Moreover, factors such as the cost or other burdens of proposed [alternatives] are relevant in determining whether they would be equally as effective.") (quoting Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 998 (1988)).

[60] Varvatos' Trial Memorandum addresses why Varvatos is entitled to this affirmative defense.

<u>Tessa Knox v. John Varvatos Enterprises, Inc.</u>,
17 Civ. 772 (GWG)

If the Court decides to give a charge on this issue, it should give the following charge:

> *Varvatos's third defense is that its decision to give the Clothing Allowance to sales professionals who are male and not sales professionals who are female is job-related and consistent with a business necessity.*

> *For Varvatos to show that its decision to give the Clothing Allowance to sales professionals who are male and not sales professionals who are female, without providing the female sales associates with a compensating benefit, is consistent with Varvatos' business necessity and job-related, Varvatos must show that the asserted business necessity is vital to the business. Varvatos cannot satisfy this burden simply by demonstrating that the male-only Clothing Allowance is convenient or beneficial to its business.* [61]

<u>Varvatos' Objection</u>

Varvatos objects to Plaintiffs' Proposed Instruction on the grounds that the term, "compensating benefit" is vague and confusing and that the instruction fails to take into account the clothing assistance provided to female sales professionals, and is thus misleading and incomplete.

Varvatos further objects to Plaintiffs' Proposed Instruction because it mischaracterizes the record by stating that Varvatos provides males sales professionals a Clothing Allowance and that it provides female sales professionals no clothing assistance.  That is incorrect – Varvatos provides female sales professionals a 50% AllSaints discount that it does not provide to male sales professionals.

Varvatos also objects to Plaintiffs' instruction as misleading and incomplete because it refers to Varvatos' burden on "business necessity" without also instructing the jury that other potential alternatives to achieve Varvatos' legitimate business purpose need to be equally

---

[61] <u>E.E.O.C. v. Beauty Enterprises, Inc.</u>, No. 3:01CV378 (AHN), 2005 WL 2764822, at *3 (D. Conn. Oct. 25, 2005)("For Beauty to show that the English-only rule is consistent with business necessity and job-related, Beauty must show more than that its English-only policy is consistent with mere expediency. [*Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 97 (2d Cir.2003).] Beauty cannot satisfy this burden simply by demonstrating that the English-only rule is convenient or beneficial to its business. Instead, Beauty must show that the asserted business necessity is vital to the business.[4] [*Conroy*, 333 F.3d at 97.]"); <u>See</u> <u>also</u> <u>Conroy v. New York State Dep't of Corr. Servs.</u>, 333 F.3d 88, 97–98 (2d Cir. 2003)("We endorse the views of the Ninth Circuit and hold that in proving a business necessity, an employer must show more than that its inquiry is consistent with "mere expediency." An employer cannot simply demonstrate that an inquiry is convenient or beneficial to its business. Instead, the employer must first show that the asserted "business necessity" is vital to the business.").

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

effective, e.g., in terms of cost and administrative burden.[62]  The foregoing is discussed in further detail in Varvatos' Trial Memorandum.

---

[62] Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 641 (1989) (any alternative procedure proposed by plaintiffs "must be equally effective as [the employer's] chosen . . . procedures in achieving [the employer's] legitimate . . . goals.  Moreover, factors such as the cost or other burdens of proposed [alternatives] are relevant in determining whether they would be equally as effective.") (quoting Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 998 (1988)).

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

No. 29 – Damages – Generally (Agreed)

If you find that the Equal Pay Act Plaintiffs or the Title VII Class have proven one or more claims, then you must turn to the issue of damages.[63]

Just because I am instructing you on damages does not mean that I have any opinion on whether or not Varvatos should be found liable.[64]

---

[63] Eleventh Circuit Civil Pattern Jury Instructions (2013) § 4.13 at 232 ("If you find that [name of plaintiff] has proved each element [he/she] must prove, you must decide the issue of [his/her] compensatory damages.]").

[64] Third Circuit Instructions for Employment Discrimination Claims Under Title VII (*last updated Oct. 2018*) § 5.4.1 at 71 ("I am now going to instruct you on damages. Just because I am instructing you on how to award damages does not mean that I have any opinion on whether or not [defendant] should be held liable.").

<u>Tessa Knox v. John Varvatos Enterprises, Inc.</u>,
17 Civ. 772 (GWG)

<u>No. 30 – Compensatory Damages (Agreed)</u>

First, I will instruct you on compensatory damages.

The award of compensatory damages is meant to put a plaintiff in the position he or she would have occupied if the alleged discrimination had not occurred.  You are not allowed to impose or increase the amount of compensatory damages to penalize a defendant.  A plaintiff who succeeds on a claim has the burden of proving damages by a preponderance of the evidence. Compensatory damages must not be based on speculation or guesswork.  You should determine what amount of damages, if any, has been proven by each Plaintiff, no more and no less.

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

No. 31 – Damages – Calculation

Plaintiffs' Proposed Instruction

To compensate the plaintiffs, you must determine the amount of money to make them whole for their loss as of today, not how much Varvatos needed to pay them to make them whole at the time Varvatos did not pay them.[65]

Varvatos' Objection

Varvatos objects to Plaintiffs' Proposed Instruction because it is confusing and unnecessary.  If Plaintiffs' intent is to instruct on "actual" damages, then that should be done in those explicit terms.

---

[65] United States v. City of New York, 847 F. Supp.2d 395, 422 (E.D.N.Y. 2012)("'(The 'value' of health insurance is only equivalent to the insurance premium being paid if that value is assessed on the day of the tort (past-assessed value), as opposed to assessed today (present value).... [L]iability is based on the actual loss to the plaintiff, not on a projection of what the loss might be....'). In other words, it makes little sense for the court to determine the City's insurance based on an ex ante predictive model now that the court has the benefit of real-world information about the costs incurred by the victims.")(quoting Pattee v. Georgia Ports Auth., 512 F. Supp.2d 1372, 1381 (S.D. Ga. 2007)).

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

No. 32 – Damages – Compensatory Damages

Varvatos' Proposed Instruction

Plaintiffs in this case are claiming back pay, i.e., lost compensation.  Back pay is the difference in the value of the clothing assistance that the female sales professional claim they should have received and the value they did receive.  .[66]

To determine the back pay in this case, you should determine:

(1) the value of the clothing "pulls" that Varvatos provides to its males sales professionals and not its female sales professionals, less the corresponding tax burden on the male sales professionals as a result of the clothing "pulls"; and

(2) the value of the All Saints Discount that Varvatos provides to its female sales professionals and not its male sales professionals.

In doing so, you should consider all relevant facts in evidence, including the different dress code requirements for male and female sales professionals, the advantages and disadvantages of the respective requirements, and the proportionality of the clothing assistance Varvatos provides in connection with those requirements.

In addition, you will need to consider that each Plaintiff had a duty to mitigate her damages.  This means that a plaintiff is required to make reasonable efforts under the circumstances to reduce his or her damages.[67]

In valuing clothing "pulls," you should value either on a per-pull or quarterly basis or an annual basis for a single male sales professional.  You will need to value the clothing "pulls" for

[66] Eleventh Circuit Civil Pattern Jury Instructions (2013) § 4.13 at 233 ("[Name of plaintiff]'s lost compensation is the difference between the amount [name of defendant] should have paid [name of plaintiff] and the amount [name of defendant] actually paid [name of plaintiff]. Put another way, [name of plaintiff]'s lost compensation is the difference between [name of plaintiff]'s compensation and the [average] compensation of the [male/ female] employee[s] in [a] substantially equal job[s].").

[67] Third Circuit Instructions for Employment Discrimination Claims Under Title VII (*last updated Oct. 2018*) § 5.4.3 at 81 ("You are further instructed that [plaintiff] has a duty to mitigate [his/her] damages--that is [plaintiff] is required to make reasonable efforts under the circumstances to reduce [his/her] damages.  It is [defendant's] burden to prove that [plaintiff] has failed to mitigate. So if [defendant] persuades you, by a preponderance of the evidence, that [plaintiff] failed to obtain substantially equivalent job opportunities that were reasonably available to [him/ her], you must reduce the award of damages by the amount of the wages that [plaintiff] reasonably would have earned if [he/she] had obtained those opportunities.").

<u>Tessa Knox v. John Varvatos Enterprises, Inc.</u>,
17 Civ. 772 (GWG)

retail stores and outlet stores separately because the Clothing Allowance in the outlet stores is half of what it is in the retail stores.

In putting a value to the AllSaints discount, you should value it on a quarterly or annual basis – consistent with how you value the clothing "pulls" – for a single female sales professional.

Because different Plaintiffs worked at Varvatos for different durations of time, rather than have you calculate the total amount of damages for each plaintiff over the course of their employment at Varvatos, the Court will complete the calculation to make the damage award to each plaintiff who is entitled to a damages award based on the back pay you determine for a single plaintiff.

<u>Plaintiffs' Objection</u>

Plaintiffs object because the damage determination should not be a summary that sets forth which facts the jury should consider.  Counsel should do that during closing argument.

Plaintiffs objects on the ground that the maximum value of clothing that can be obtained using the AllSaints discount is not $20,000 per year.

Plaintiffs object to any reference to any tax that male sales associate pay, because Varvatos has no admissible evidence that male sales professionals actually pay tax on the Clothing Allowance, as opposed to incur taxable income as a result of the Clothing Allowance. In addition, any reference to the amount that male sales professionals pay in tax would be misleading unless there were a corresponding instruction that the judgment actually collected in this case would represent income on which the female sales professionals would actually pay tax.

Plaintiffs object to the instruction on mitigation of damages because there is no authority that a plaintiff has any obligation to mitigate damages by doing anything other than pursuing similar job opportunities during a period of unemployment.  Varvatos has no authority for the proposition that female sales professionals had an obligation to buy the Varvatos clothing with their own after-tax dollars to mitigate the loss that Varvatos's discrimination has caused.  We cannot find any.

Plaintiffs object because the charge does not instruct the jury as to the time period at which the damage could be calculated.  For example, the Varvatos Employee discount does not apply to Members of the Title VIII class who are not current employees of Varvatos, and therefore cannot be taken into consideration in determining the damages of plaintiffs who are not current employees, and should not be taken into consideration in determining the damages of current employees because current employees may not be employees at the time of the entry of judgment.

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

No. 33 - Value of the Clothing Allowance Per "Pull"

Plaintiffs' Proposed Instruction

The Court is asking you to determine the amount of damages on a per "pull" basis. The plaintiffs in the case have worked at Varvatos for different amounts of time. Rather than have you calculate the total amount of damages each plaintiff sustained over their employment at Varvatos, we want you to determine the value of a single "pull." The Court will complete the calculation to make the damage award to each plaintiff who is entitled to a damage award.

Varvatos' Objection

Varvatos objects to Plaintiffs' Proposed Instruction because it focuses on valuing the Clothing Allowance only (as opposed to the Clothing Allowance and the AllSaints' discount), which may be misleading for the jury and restrict the set of factors that the jury considers in determining back pay.

<u>Tessa Knox v. John Varvatos Enterprises, Inc.</u>,
17 Civ. 772 (GWG)

<u>No. 34 – Value of the Clothing Allowance</u>

<u>Plaintiffs' Proposed Instruction</u>

Some of the plaintiffs worked at Varvatos' outlet stores for all or part of their time at
Varvatos. At Varvatos' outlet stores, the amount of the Clothing Allowance is half what it is at
Varvatos' retail stores. You will need to determine the value of each "pull" for those plaintiffs
who worked at outlet stores separately from plaintiffs who worked at retail stores.

<u>Varvatos' Proposed Instruction</u>

Varvatos objects to Plaintiffs' Proposed Instruction because it focuses on valuing the
Clothing Allowance only (as opposed to the Clothing Allowance and the AllSaints' discount),
which may be misleading for the jury and restrict the set of factors that the jury considers in
determining back pay.  Otherwise, Varvatos does not object to the notion that the jury will need
to value the "pulls" separately for Varvatos retail and outlet stores.

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

No. 35 – Title VII – Eligibility for Punitive Damages (Agreed)

If you find in favor of the Title VII Class and against Varvatos on its affirmative defenses, you should consider whether the Title VII Class is entitled to punitive damages in addition to any award of actual damages.

The purpose of an award of punitive damages is not to compensate the plaintiffs but, instead, to punish a defendant for wrongful conduct and to deter similar companies from engaging in similar wrongful conduct.

An award of compensatory damages is not a prerequisite to an award of punitive damages.

A finding by you that Varvatos is liable for discrimination does not automatically mean that Varvatos also is liable for punitive damages.  Punitive damages are awarded in exceptional cases, such as in cases to punish the employer and to deter others.

<u>Tessa Knox v. John Varvatos Enterprises, Inc.</u>,
17 Civ. 772 (GWG)


<u>No. 36 – Title VII – Punitive Damages – Standard</u>


<u>Plaintiffs' Proposed Instruction</u>

To be entitled to an award of punitive damages, the Title VII Class must prove that Varvatos intended to violate their legally protected rights or acted in the face of a perceived risk that its action would violate plaintiffs' legally protected rights.[68]


<u>Varvatos' Objection</u>

Varvatos objects to Plaintiffs' Proposed Instruction because it eliminates the malice and recklessness and egregious conduct standard that is a prerequisite for the award of punitive damages.[69]

Varvatos also objects to Plaintiffs' Proposed Instruction because it eliminates the good faith defense.

---

[68] 42 U.S.C. § 1981a(b)(1)("A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."). <u>Kolstad v. Am. Dental Ass'n</u>, 527 U.S. 526, 536 (1999)("an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law."); <u>Tse v. UBS Fin. Servs., Inc.</u>, 568 F. Supp.2d 274, 309 (S.D.N.Y. 2008)("In order to recover punitive damages, plaintiff must prove only that the employer intentionally acted with the knowledge that it may be acting 'in violation of' the law, even if it did not know it was 'engaging in discrimination.'")(quoting <u>Farias v. Instructional Systems, Inc.</u>, 259 F.3d 91, 101 (2d Cir. 2001)).

[69] <u>Farias v. Instructional Sys., Inc.</u>, 259 F.3d 91, 102 (2d Cir. 2001) (punitive damages are permitted only where there is evidence of "conscious knowledge [by defendant that it] was violating the law" or "'egregious' or 'outrageous' conduct from which an inference of malice or reckless indifference could be drawn."); <u>id</u>. at 101 ( "As an alternative to proving that the defendant knew it was acting in violation of federal law, '[e]gregious or outrageous acts may serve as evidence supporting an inference of the requisite 'evil motive.'") (quoting <u>Kolstad v. American Dental Ass'n</u>, 527 U.S. 526, 538 (1999)).

53

<u>Tessa Knox v. John Varvatos Enterprises, Inc.</u>,
17 Civ. 772 (GWG)

<u>Varvatos' Proposed Instruction</u>

To establish entitlement to punitive damages, the Title VII Plaintiffs must prove that Varvatos acted with malice or reckless indifference to their rights.  Malice or reckless indifference means an evil motive or intent or acting with reckless or callous indifference.[70]

If the employer believes in good faith that its actions were not in violation of the law, it cannot be said that the employer was acting with malice or reckless indifference and, as such, punitive damages should not be awarded.  In determining whether Varvatos has engaged in good faith efforts to comply with the law with regard to the clothing assistance, you should consider any relevant factor demonstrating Varvatos' efforts, or lack thereof, to comply with the law.[71]

<u>Plaintiffs' Objections</u>

Plaintiffs object because to the use of the term "evil motive" because an evil motive is not a requirement for punitive damages.  <u>Kolstad v. Am. Dental Ass'n</u>, 527 U.S. 526, 536 (1999)("an

---

[70] ABA Model Jury Instructions, Employment Cases § 1.07[7] at 78 ("To establish entitlement to punitive damages, [the plaintiff] must prove, by a preponderance of the evidence, that:   1. the employer acted with malice or reckless indifference to [the plaintiff's] rights; and, 2. the employer should be held liable for its employee's unlawful conduct.  Malice or reckless indifference may be found where the employer is motivated by an evil motive or intent or acts with reckless or callous indifference to the rights of [the plaintiff] to be free of [discrimination or harassment].");  <u>see also</u> <u>Farias v. Instructional Sys., Inc.</u>, 259 F.3d 91, 102 (2d Cir. 2001) (punitive damages are permitted only where there is evidence of "conscious knowledge [by defendant that it] was violating the law" or "'egregious' or 'outrageous' conduct from which an inference of malice or reckless indifference could be drawn.");  <u>id</u>. at 101 ( "As an alternative to proving that the defendant knew it was acting in violation of federal law, '[e]gregious or outrageous acts may serve as evidence supporting an inference of the requisite 'evil motive.'") (quoting <u>Kolstad v. American Dental Ass'n</u>, 527 U.S. 526, 538 (1999)).

[71] <u>ABA Model Jury Instructions, Employment Cases</u> § 1.07[7] at 78-79 ("In making this determination, you should be aware that a finding by you that the employer is liable for unlawful discrimination [or harassment] does not automatically mean that the employer is liable for punitive damages. For example, if the employer believes in good faith that its actions were not discriminatory, it could not be said that the employer was acting with malice or reckless indifference to [the plaintiff's] rights and, as such, punitive damages should not be awarded. …In determining whether [the defendant] has engaged in good faith efforts to comply with the law, you should consider any relevant factor demonstrating [the defendant's] efforts, or lack thereof, to comply with the law against discrimination [or harassment], including such factors as whether [the defendant] has instituted an anti-discrimination [or anti-harassment] policy, and whether [the defendant] has trained its managerial personnel with respect to equal employment opportunity laws.").

<u>Tessa Knox v. John Varvatos Enterprises, Inc.</u>,
17 Civ. 772 (GWG)

employer must at least discriminate in the face of a perceived risk that its actions will violate federal law.").  The use of that term could potentially mislead the jury.

Plaintiffs object to the second paragraph because it states what the standard for an entitlement to punitive damages is not.  It is therefore argument.

Plaintiffs object to the last paragraph because it addresses the amount of punitive damages, which the jury should address in a later phase of the trial only after it has determined plaintiffs' entitlement to punitive damages.

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

No. 37 – Title VII – Punitive Damages

Plaintiffs' Proposed Instruction

Knox and the Title VII Class members have asked you to award them punitive damages. The purpose of punitive damages is not to compensate the plaintiffs for the harm done to them, but to punish Varvatos for wrongful conduct and to deter similar wrongful conduct from Varvatos and others.[72]

In determining the amount of punitive damages, if any, to award the Title VII Class, you may consider the evidence regarding Varvatos's financial resources in fixing the amount of such damages, including whether Varvatos's insurance company will pay all or any portion of the punitive damages award on Varvatos's behalf.[73]

Varvatos' Objection

Varvatos objects to Plaintiffs' Proposed Instruction because based on Varvatos' proposed trial phases, the instruction regarding entitlement to and amount of punitive damages will need to be given together, just once.

As detailed in its Trial Memorandum, Varvatos objects to Plaintiffs introducing any evidence regarding insurance coverage in this case.

Plaintiffs' Response to Varvatos's Objection

Varvatos's potential argument that the jury should consider it potentially limited ability to pay punitive damages, but not consider its insurance for those punitive damages is logically and practically inconsistent.

---

[72] Exxon Shipping Co. v. Baker, 554 U.S. 471, 492 (2008)("Regardless of the alternative rationales over the years, the consensus today is that punitives are aimed not at compensation but principally at retribution and deterring harmful conduct."); Mugavero v. Arms Acres, Inc., 680 F. Supp. 2d 544, 588 (S.D.N.Y. 2010)("In considering whether a punitive award is excessive, courts must 'bear in mind that the purpose of punitive awards is to punish the wrongdoer and to deter others.'")(quoting Mathie v. Fries, 121 F.3d 808, 817 (2d Cir. 1997).

[73] Whitney v. Citibank, N.A., 782 F.2d 1106, 1119 (2d Cir. 1986)("In determining the amount and effectiveness of exemplary damages to be awarded against a defendant, the court may take into consideration the defendant's wealth or net worth....This consideration is relevant as enabling the fact finder to arrive at an award of sufficient substance to make the offender 'smart', since a lesser award would probably not achieve the desired deterrent effect.")(Internal citations omitted.);

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

No. 38 – Title VII Punitive Damages – Consideration of Varvatos' Insurance Coverage

Plaintiffs' Proposed Instruction

In making your award of punitive damages you may consider whether or not Varvatos has insurance coverage for plaintiffs' claims for punitive damages in this case.

To determine whether or not Varvatos has insurance coverage for plaintiffs' claims for punitive damages in this case, you should begin with the question of whether Varvatos's insurance contract with Ironshore Insurance Company insures Varvatos for plaintiffs' claims for punitive damages in this case.

Varvatos argument that the jury should not consider liability insurance when determining the amount of compensatory damages, as FRE 411 requires, is a reason that the amount of compensatory damages and the amount of punitive damages should be determined in different phases of the trial that will involve the presentation of different evidence.

Varvatos' Objection

As detailed in its Trial Memorandum, Varvatos objects to Plaintiffs introducing any evidence regarding insurance coverage in this case.

As also detailed in its Trial Memorandum, Varvatos objects to the submission to the jury of the question of whether or not Varvatos has insurance coverage for any potential damages that may be awarded in this matter.

Varvatos objects to the last sentence of Plaintiffs' Proposed Instruction as argumentative and improper to be submitted to the jury.  By way of clarification, Varvatos agrees with Plaintiffs that compensatory damages and the amount of punitive damages should not be considered in the same phase of the trial.

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

No. 39 – Title VII Punitive Damages – Determination of Varvatos's Insurance Coverage

Plaintiffs' Proposed Instruction

There are two steps in the analysis of whether Varvatos's insurance contract with Ironshore Insurance Company, which I will refer to as Ironshore, covers plaintiffs' claims for punitive damages.

First, you must determine whether the insurance contract between Varvatos and Ironshore, in itself, provides insurance to Varvatos for plaintiffs' claim for punitive damages.

If the language of the contract is clear as to whether it covers punitive damages for plaintiffs' claim for punitive damages, then the clear language of the contract controls.

If the language of the contract is ambiguous, then you must interpret the contract based upon all the facts and circumstances to attempt to determine the intent of the parties.

If the facts and circumstances do not allow you to draw a conclusion as to whether the insurance contract provided insurance coverage for plaintiffs' claims for punitive damages, then you should resolve that question against the insurance company and conclude that Varvatos has insurance coverage for plaintiffs' claims for punitive damages in this case.[74]

Second, even if you find that the insurance policy did not, in itself, provide insurance coverage for the claims of plaintiffs' for punitive damages, then you should determine whether Ironshore will be required to provide insurance coverage to Varvatos under the doctrine of "insurance by estoppel."

Under the doctrine of insurance by estoppel, if an insurance company represents that it will provide insurance coverage for a claim, and if the insured relies upon that representation of the insurance company to its detriment in taking actions concerning the claim, then the insurance company will be not be allowed to deny insurance coverage.[75]

---

[74] Pagan v. NYNEX Pension Plan, 52 F.3d 438, 443 (2d Cir. 1995)("The rule of *contra proferentem* is 'that when one party is responsible for the drafting of an instrument, absent evidence indicating the intention of the parties, any ambiguity will be resolved against the drafter.'")(citing O'Neil v. Retirement Plan For Salaried Employees of RKO General, Inc., 37 F.3d 55, 61 (2d Cir.1994)).

[75] Bluestein & Sander v. Chicago Ins. Co., 276 F.3d 119, 122 (2d Cir. 2002)("Under New York common law, an insurer, who undertakes the defense of an insured, may be estopped from asserting a defense to coverage, no matter how valid, if the insurer unreasonably delays in disclaiming coverage and the insured suffers prejudice as a result of that delay."); Albert J. Schiff Assocs., Inc. v. Flack, 51 N.Y.2d 692, 699, 417 N.E.2d 84, 87 (N.Y. 1980)("Distinguished from waiver, of course, is the intervention of principles of equitable estoppel, in an appropriate

<u>Tessa Knox v. John Varvatos Enterprises, Inc.,</u>
17 Civ. 772 (GWG)

<u>Varvatos' Objection</u>

As detailed in its Trial Memorandum, Varvatos objects to Plaintiffs introducing any evidence regarding insurance coverage in this case.

As also detailed in its Trial Memorandum, Varvatos also objects to the submission to the jury of the question of whether or not Varvatos has insurance coverage for any potential damages that may be awarded in this matter.

---

case, such as where an insurer, though in fact not obligated to provide coverage, without asserting policy defenses or reserving the privilege to do so, undertakes the defense of the case, in reliance on which the insured suffers the detriment of losing the right to control its own defense. In such circumstances, though coverage as such does not exist, the insurer will not be heard to say so.").

<u>Tessa Knox v. John Varvatos Enterprises, Inc.</u>,
17 Civ. 772 (GWG)

<u>No. 40 – Title VII Punitive Damages – Extent of Varvatos's Insurance Coverage</u>

<u>Plaintiffs' Proposed Instruction</u>

If you find either that the insurance contract in itself provides for insurance coverage for plaintiffs' claims for punitive damages, or if you find that Varvatos has insurance coverage for plaintiffs' claims for punitive damages as a result of the doctrine of insurance by estoppel, then you may conclude that Varvatos has insurance coverage for plaintiffs' claims for punitive damages.

If you decide to consider whether Varvatos has insurance coverage for plaintiff's claims for punitive damages, and if you determine that Varvatos has insurance coverage for plaintiffs' claims for punitive damages, then in determining the amount of punitive damages you should consider the amount of insurance coverage that Varvatos has from that insurance company that can be applied to plaintiffs' claims  for punitive damages in this case in this case.

<u>Varvatos' Objection</u>

As detailed in its Trial Memorandum, Varvatos objects to Plaintiffs introducing any evidence regarding insurance coverage in this case.

As also detailed in its Trial Memorandum, Varvatos also objects to the submission to the jury of the question of whether or not Varvatos has insurance coverage for any potential damages that may be awarded in this matter.

<u>Tessa Knox v. John Varvatos Enterprises, Inc.</u>,
17 Civ. 772 (GWG)

<u>No. 41 – Title VII – Amount of Punitive Damages</u>

<u>Varvatos' Proposed Instruction</u>

In determining the amount of punitive damages, you should consider all relevant factors, such as the impact or severity of the defendant's conduct and the amount of compensatory damages, [as well as the effect of the damages award on the defendant's financial condition][76]. But, punitive damages must bear a reasonable relationship to the plaintiff's actual injury.[77,]

<u>Plaintiffs' Objections</u>

Plaintiffs object to instructing the jury that it should consider the Varvatos's financial condition without instructing the jury concerning Varvatos's insurance coverage for the punitive damages that the jury would potentially award.

Plaintiffs object to the sentence "[b]ut, punitive damages must bear a reasonable relationship to the plaintiff's actual injury." That sentence communicates nothing to the jury because it is not tied to any standard.   In addition, the statement is inconsistent with the applicable to the statutory cap of $200,000.

---

[76] As noted in Varvatos' Trial Memorandum, Varvatos reserves the right to present evidence regarding the impact of any damages award on its financial condition.

[77] <u>ABA Model Jury Instructions, Employment Cases</u> § 1.07[7] at 79-80 ("However, no single numerical equation exists to easily relate punitive to compensatory damages. In determining a reasonable relationship to the actual injury, you must consider all relevant factors.  These include:  1. the impact or severity of [defendant's] conduct, 2. the amount of time [the defendant] conducted itself in this manner, 3. the amount of compensatory damages, 4. the potential profits [the defendant] may have made from this conduct, 5. the attitudes and actions of [the defendant's] top management after the misconduct was discovered, 6. the effect of the damages award on [the defendant's) financial condition, and 7. any punishment [the defendant) may receive from other sources."); <u>ABA Model Jury Instructions, Employment Cases</u> § 1.07[7] at 79 ("The amount of punitive damages, if appropriate, is within your discretion. Punitive damages must bear a reasonable relationship to [the plaintiff's] actual injury."); <u>Kauffman v. Maxim Healthcare Servs.</u>, Inc., 509 F. Supp. 2d 210, 221 (E.D.N.Y. 2007) (considering what amount of punitive damages "would be proportionate to the actual injury suffered by Plaintiff"); <u>Kauffman v. Maxim Healthcare Servs., Inc.</u>, 509 F. Supp. 2d 210, 219 (E.D.N.Y. 2007) ("In <u>Cush–Crawford</u>, the jury awarded zero dollars ($0.00) in actual damages and one hundred thousand dollars ($100,000.00) in punitive damages on a Title VII hostile work environment claim. The Second Circuit concluded that the absence of actual or nominal damages did not preclude an award of punitive damages. <u>Cush–Crawford</u>, 271 F.3d at 359. However, unlike the plaintiff in Cush–Crawford, Plaintiff was awarded substantial compensatory damages.") (citing <u>Cush-Crawford v. Adchem Corp.</u>, 271 F.3d 352, 357 (2d Cir. 2001))..

61

<u>Tessa Knox v. John Varvatos Enterprises, Inc.</u>,
17 Civ. 772 (GWG)

<u>No. 42 – EPA (Lost Compensation, Equal Pay Act Enhancement)</u>

<u>Varvatos' Proposed Instruction</u>

In general, a plaintiff who is successful on a federal Equal Pay Act claim is entitled to a back pay award for two years only, unless that plaintiff proves that the defendant acted with willfulness.[78] "Willful" means that the defendant knew or showed reckless disregard for whether or not its conduct was prohibited by federal law. Thus the plaintiff must prove that the defendant knew of the existence and the effect of the Equal Pay Act and knowingly or recklessly violated or disregarded its requirements.[79]

Therefore, in this case, to be entitled to three years' worth of lost compensation, the Equal Pay Act Plaintiffs must prove that Varvatos either knew it was violating the law or showed reckless disregard for the law with regard to the clothing assistance it provided to Plaintiff in comparison to the clothing assistance it provided to the male sales professionals.

If the employer believes in good faith that its actions were not in violation of the law, it cannot be said that the employer was acting willfully to violate the law.[80]  In determining

---

[78] 29 U.S.C. § 255(a) (EPA violations only entitle plaintiffs to two years' worth of damages unless they can demonstrate that a violation was "willful.").

[79] <u>ABA Model Jury Instructions, Employment Cases</u> § 2.05[1] at 120 ("If you determine that the plaintiff has satisfied [his/her] burden of proving the essential elements of this case by a preponderance of the evidence, and you determine that the defendant has not met its burden of proving the existence of one of the four exceptions by a preponderance of the evidence, you must then also determine whether the defendant's conduct was 'willful.' 'Willful' means that the defendant knew or showed reckless disregard for whether or not its conduct was prohibited by federal law. Thus the plaintiff must prove that the defendant knew of the existence and the effect of the Equal Pay Act and knowingly or recklessly violated or disregarded its requirements."); <u>See Pollis v. New Sch. for Soc. Research</u>, 132 F.3d 115, 119 (2d Cir. 1997) (defendant's violation of the Equal Pay Act is willful or reckless within the meaning of § 255(a) if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.") (citation omitted); <u>Parada v. Banco Indus. de Venez., CA.</u>, 753 F.3d 62, 71 (2d Cir. 2014) (willfulness requires proof "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute;" "the plaintiff bears the burden of proof on the issue of willfulness for statute of limitations purposes.") (citation and internal quotation marks omitted).

[80] <u>See Perez v. Platinum Plaza 400 Cleaners, Inc.</u>, No. 12 CIV. 9353 (PAC), 2015 WL 13402755, at *4 (S.D.N.Y. June 16, 2015) ("Defendants' failure to demonstrate a good faith effort to comply with the dictates of the FLSA further impact Plaintiffs' damages calculations, because a showing of willfulness triggers a three-year statute of limitations period under the FLSA.").

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

whether Varvatos has engaged in good faith efforts to comply with the law with regard to the clothing assistance, you should consider any relevant factor demonstrating Varvatos' efforts, or lack thereof, to comply with the law.[81]

Plaintiffs' Objection

The Court should charge the jury concerning the statute of limitations for the NY EPA violation during Phase 1 of the trial.  Fed. R. Civ. P. 8 provides that the statute of limitations is an affirmative defense.  In addition, because the jury will have to determine the entitlement of the Title VII class to punitive damages before determining the amount of punitive damages, the Court should ask the jury to determine the willfulness of the NY EPA violation, at the same time it determines the entitlement to punitive damages.

---

[81] ABA Model Jury Instructions, Employment Cases § 1.07[7] at 78-79 ("In making this determination, you should be aware that a finding by you that the employer is liable for unlawful discrimination [or harassment] does not automatically mean that the employer is liable for punitive damages. For example, if the employer believes in good faith that its actions were not discriminatory, it could not be said that the employer was acting with malice or reckless indifference to [the plaintiff's] rights and, as such, punitive damages should not be awarded. …In determining whether [the defendant] has engaged in good faith efforts to comply with the law, you should consider any relevant factor demonstrating [the defendant's] efforts, or lack thereof, to comply with the law against discrimination [or harassment], including such factors as whether [the defendant] has instituted an anti-discrimination [or anti-harassment] policy, and whether [the defendant] has trained its managerial personnel with respect to equal employment opportunity laws.").

<u>Tessa Knox v. John Varvatos Enterprises, Inc.,</u>
17 Civ. 772 (GWG)

<u>No. 43 – NY EPA – Liquidated Damages</u>

<u>Plaintiffs' Proposed Instruction</u>

If you find in favor of any of the New York Equal Pay Act Plaintiffs and find that they are entitled to any lost compensation, you should then consider whether they are entitled to additional damages, called liquidated damages.

The purpose of these liquidated damages is not to compensate the plaintiffs for the harm done to them, but to punish Varvatos for wrongful conduct and to deter similar wrongful conduct from Varvatos and others.[82]

Under the New York Equal Pay Act, a plaintiff can be awarded liquidated damages up to three times the lost compensation award, if any, if that plaintiff proves that the defendant-employer violated the NYEPA "willfully."[83]  "Willfully under the NY EPA has the same meaning as willfulness under the federal Equal Pay Act statute, on which I instructed you earlier, concerning the statute of limitations.[84]

Therefore, in this case, you should award a NYEPA Plaintiff liquidated damages if that Plaintiff proves, by a preponderance of evidence, that Varvatos either knew it was violating the law or that Varvatos showed reckless disregard for the law with regard to the clothing benefits it

---

[82] <u>Exxon Shipping Co. v. Baker</u>, 554 U.S. 471, 492 (2008)("Regardless of the alternative rationales over the years, the consensus today is that punitives are aimed not at compensation but principally at retribution and deterring harmful conduct."); <u>Mugavero v. Arms Acres, Inc.</u>, 680 F. Supp. 2d 544, 588 (S.D.N.Y. 2010)("In considering whether a punitive award is excessive, courts must 'bear in mind that the purpose of punitive awards is to punish the wrongdoer and to deter others.'")(quoting <u>Mathie v. Fries</u>, 121 F.3d 808, 817 (2d Cir. 1997).

[83] N.Y. Lab. L. § 198(1-a)("...except such liquidated damages may be up to three hundred percent of the total amount of the wages found to be due for a willful violation of section one hundred ninety-four of this article.").

[84] <u>Copantitla v. Fiskardo Estiatorio, Inc.</u>, 788 F. Supp. 2d 253, 317 (S.D.N.Y. 2011) ("The 'willful' standard under the New York Labor Law 'does not appreciably differ from the FLSA's willfulness standard' in connection with its statute of limitations.  [<u>Kuebel v. Black Decker Inc.</u>, 643 F.3d 352, 366, 2011 WL 1677737, at *11 (2d Cir. May 1, 2011) (internal quotation marks omitted).]  Under that standard, "[a]n employer willfully violates the [law] when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act." [<u>Id</u>. (internal quotation marks omitted)].").

<u>Tessa Knox v. John Varvatos Enterprises, Inc.,</u>
17 Civ. 772 (GWG)

provided to Plaintiff in comparison to the clothing benefits it provided to male sales professionals.[85]

In determining the amount of liquidated damages to award the NY EPA Class, you may consider the evidence regarding Varvatos's financial resources in fixing the amount of such damages, including whether Varvatos's insurance company will pay all or any portion of the punitive damages award on Varvatos's behalf.[86]

In determining the amount of the liquidated damages award, you may not give the plaintiffs an additional award of more than three times the value of each "pull" of the Clothing Allowance, as determined by the jury in Phase 1.[87]

<u>Varvatos' Objection</u>

As detailed in its Trial Memorandum, Varvatos objects to Plaintiffs introducing any evidence regarding insurance coverage in this case.

---

[85] ABA Model Jury Instructions, Employment Cases § 2.05[1] ("If you determine that the plaintiff has satisfied [his/her] burden of proving the essential elements of this case by a preponderance of the evidence, and you determine that the defendant has not met its burden of proving the existence of one of the four exceptions by a preponderance of the evidence, you must then also determine whether the defendant's conduct was 'willful.' 'Willful' means that the defendant knew or showed reckless disregard for whether or not its conduct was prohibited by federal law. Thus the plaintiff must prove that the defendant knew of the existence and the effect of the Equal Pay Act and knowingly or recklessly violated or disregarded its requirements."); <u>See Pollis v. New Sch. for Soc. Research</u>, 132 F.3d 115, 119 (2d Cir. 1997) (defendant's violation of the Equal Pay Act is willful or reckless within the meaning of § 255(a) if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."); <u>Parada v. Banco Indus. de Venez.</u>, <u>CA.</u>, 753 F.3d 62, 71 (2d Cir. 2014) (willfulness requires proof "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute;" "the plaintiff bears the burden of proof on the issue of willfulness for statute of limitations purposes") (citation and internal quotation marks omitted).

[86] <u>Whitney v. Citibank, N.A.</u>, 782 F.2d 1106, 1119 (2d Cir. 1986)("In determining the amount and effectiveness of exemplary damages to be awarded against a defendant, the court may take into consideration the defendant's wealth or net worth....This consideration is relevant as enabling the fact finder to arrive at an award of sufficient substance to make the offender 'smart', since a lesser award would probably not achieve the desired deterrent effect.")(Internal citations omitted.).

[87] N.Y. Lab. L. § 198(1-a)("...except such liquidated damages may be up to three hundred percent of the total amount of the wages found to be due for a willful violation of section one hundred ninety-four of this article.").

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

Varvatos objects to the last sentence of this instruction as inaccurate and misleading.  The jury can award up to three times of the compensatory damages it determines, not just the valuation of the clothing "pulls".

Varvatos' Proposed Instruction

If you find in favor of any of the New York Equal Pay Act Plaintiffs and find that they are entitled to any lost compensation, you should then consider whether they are entitled to enhanced damages.  The New York Equal Pay Act Plaintiffs are asking that in addition to any lost compensation award, they also be awarded additional damages, called liquidated damages.

Under the New York Equal Pay Act, a plaintiff can be awarded liquidated damages up to three times the back pay or lost compensation award, if any, if that plaintiff proves that the defendant-employer violated the NYEPA "willfully."[88]  Willfulness under the NYEPA has the same meaning as willfulness under the federal Equal Pay Act statute on which I instructed you earlier.[89]  Therefore, in this case, you should award a NYEPA Plaintiff liquidated damages if that Plaintiff proves, by a preponderance of evidence, that Varvatos either knew it was violating the law or showed reckless disregard for the law with regard to the clothing assistance it provided to Plaintiff in comparison to the clothing assistance it provided to male sales professionals.[90]

---

[88] N.Y. Lab. L. § 198(1-a)("...except such liquidated damages may be up to three hundred percent of the total amount of the wages found to be due for a willful violation of section one hundred ninety-four of this article.").

[89] Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 317 (S.D.N.Y. 2011) ("The 'willful' standard under the New York Labor Law 'does not appreciably differ from the FLSA's willfulness standard' in connection with its statute of limitations.  Under that standard, '[a]n employer willfully violates the [law] when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act.'" (quoting Kuebel v. Black Decker Inc., 643 F.3d 352, 366, 2011 WL 1677737, at *11 (2d Cir. May 1, 2011)).

[90] ABA Model Jury Instructions, Employment Cases § 2.05[1] ("If you determine that the plaintiff has satisfied [his/her] burden of proving the essential elements of this case by a preponderance of the evidence, and you determine that the defendant has not met its burden of proving the existence of one of the four exceptions by a preponderance of the evidence, you must then also determine whether the defendant's conduct was 'willful.'  'Willful' means that the defendant knew or showed reckless disregard for whether or not its conduct was prohibited by federal law. Thus the plaintiff must prove that the defendant knew of the existence and the effect of the Equal Pay Act and knowingly or recklessly violated or disregarded its requirements."); See Pollis v. New Sch. for Soc. Research, 132 F.3d 115, 119 (2d Cir. 1997) (defendant's violation of the Equal Pay Act is willful or reckless within the meaning of § 255(a) if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.") (citation omitted); Parada v. Banco Indus. de Venez., CA., 753 F.3d

Tessa Knox v. John Varvatos Enterprises, Inc.,
17 Civ. 772 (GWG)

If the employer believes in good faith that its actions were not in violation of the law, it cannot not be said that the employer was acting willfully to violate the law.  In determining whether Varvatos has engaged in good faith efforts to comply with the law with regard to the clothing assistance, you should consider any relevant factor demonstrating Varvatos' efforts, or lack thereof, to comply with the law.[91]

---

62, 71 (2d Cir. 2014) (willfulness requires proof "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute;" "the plaintiff bears the burden of proof on the issue of willfulness for statute of limitations purposes") (citation and internal quotation marks omitted).

[91] ABA Model Jury Instructions, Employment Cases § 1.07[7] at 78-79 ("In making this determination, you should be aware by you that the employer is liable for unlawful discrimination [or harassment] does not automatically mean that the employer is liable for punitive damages. For example, if the employer believes in good faith that its actions were not discriminatory, it could not be said that the employer was acting with malice or reckless indifference to [the plaintiff's] rights and, as such, punitive damages should not be awarded. ...In determining whether [the defendant] has engaged in good faith efforts to comply with the law, you should consider any relevant factor demonstrating [the defendant's] efforts, or lack thereof, to comply with the law against discrimination [or harassment], including such factors as whether [the defendant] has instituted an anti-discrimination [or anti-harassment] policy, and whether [the defendant] has trained its managerial personnel with respect to equal employment opportunity laws.").