UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

TESSA KNOX,                                          :

                              Plaintiff,   :

               -against-                            :              17 Civ. 772 (GWG)

JOHN VARVATOS ENTERPRISES, INC.,   :              ECF Case

                              Defendant.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

TRIAL MEMORANDUM OF PLAINTIFF,
THE 13 OPT-IN PLAINTIFFS AND THE CLASS

DUNNEGAN & SCILEPPI LLC
Attorneys for the Plaintiff, the 13
  Opt-In Plaintiffs and the Class
350 Fifth Avenue
New York, New York 10118
(212) 332-8300

Table of Contents

Table of Authorities ..................................................................................................... iii

I.    THE COURT AND THE JURY SHOULD RESOLVE THE FOLLOWING
      ISSUES IN THE FOLLOWING ORDER ...........................................................1

Phase 1 – Liability, Back Pay And Willfulness ...................................................1

      A.    Back Pay Under The EPA ...........................................................1

      B.    Back Pay Under The NY EPA .....................................................2

      C.    Varvatos's Willfulness ................................................................2

            1.    Under The EPA ................................................................3

                  a.    Statute Of Limitations Under The EPA ...............................3

                  b.    Liquidated Damages Under The EPA...................................4

            2.    Under The NY EPA .........................................................4

      D.    Back Pay Under The NY HRL .....................................................5

      E.    Entitlement To Punitive Damages ...............................................6

Phase 2 – Punitive Damages Under Title VII And Liquidated Damages Under The
      NY EPA...............................................................................................6

      A.    Punitive Damages Under Title VII ..............................................6

      B.    Liquidated Damages Under The NY EPA....................................7

Phase 3 – Amount Of EPA Liquidated Damages .................................................9

      A.    EPA Claims...................................................................................9

      B.    The NY EPA Claims .....................................................................13

Phase 4 – Judgment...................................................................................................15

II.   THE COURT SHOULD DISMISS VARVATOS'S
      AFFIRMATIVE DEFENSES............................................................................15

      A.    Factor Other Than Sex ................................................................15

    B.      Bona Fide Occupational Qualification........................................................15

          1.      The BFOQ Defense Does Not Apply To Pay Discrimination Claims ..................................................................................................15

          2.      A BFOQ Cannot Logically Provide A Defense To Plaintiffs' Equal Pay Claims ......................................................................17

          3.      Varvatos Cannot Prove The Elements Of A BFOQ Defense ........18

                a.      Varvatos Cannot Prove That Virtually All Female Sales Professionals Cannot Wear Or Model Varvatos Clothing..............................................................................18

                b.      Varvatos Cannot Prove That It Is Reasonably Necessary For Male Sales Professionals To Wear Varvatos Clothing ............................................................................20

                c.      Varvatos Cannot Prove That It Is Reasonably Necessary To Its Business That Female Sales Professionals Not Wear Varvatos Clothing .....................................................21

                d.      Varvatos Cannot Establish A BFOQ Defense Because It Has Not Considered Any Alternatives .............23

                e.      Varvatos's Assertion Of What Is Reasonably Necessary Is Not Entitled To Any Deference...................25

    C.      Business Necessity......................................................................25

    D.      Varvatos's Unaddressed Affirmative Defenses ..........................27

III.    THE JURY SHOULD DETERMINE WHETHER VARVATOS'S VIOLATION WAS WILLFUL AND WHETHER INCREASED LIQUIDATED DAMAGES ARE APPROPRIATE ...............................................27

IV.    THE JURY SHOULD DETERMINE WHETHER PUNITIVE DAMAGES ARE APPROPRIATE UNDER TITLE VII .........................................................28

Table of Authorities

**Cases**

Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.,
515 F.3d 1150 (11th Cir. 2008) ................................................................................. 10

Barfield v. New York City Health & Hosps. Corp.,
537 F.3d 132 (2d Cir. 2008) ............................................................................. 10, 13

Barrett v. Forest Labs., Inc.,
39 F. Supp.3d 407 (S.D.N.Y. 2014) ......................................................................... 17

Brock v. Superior Care, Inc.,
840 F.2d 1054 (2d Cir. 1988) ................................................................................. 1-2

Brock v. Wilamowsky,
833 F.2d 11 (2d Cir. 1987) ........................................................................... 10, 11, 13

Che v. Massachusetts Bay Transp. Auth.,
342 F.3d 31 (1st Cir. 2003) ..................................................................................... 30

Chowdhury v. Hamza Express Food Corp.,
666 F. App'x 59 (2d Cir. 2016) ................................................................................. 8

City of Los Angeles, Dep't of Water & Power v. Manhart,
435 U.S. 702 (1978) ........................................................................................... 18-19

Cox v. Quick & Reilly, Inc.,
401 F. Supp.2d 203 (N.D.N.Y. 2005) ....................................................................... 2

Crews v. City of Ithaca,
2018 WL 1441282 (N.D.N.Y. Mar. 21, 2018) ......................................................... 24

Diaz v. Pan Am. World Airways, Inc.,
442 F.2d 385 (5th Cir. 1971) ................................................................................... 23

DiMarco–Zappa v. Cabanillas,
238 F.3d 25 (1st Cir. 2001) ..................................................................................... 30

Dothard v. Rawlinson,
433 U.S. 321 (1977) ........................................................................................... 18, 20

Ebbert v. Nassau Cty.,
2009 WL 935812 (E.D.N.Y. Mar. 31, 2009) ............................................................. 9

E.E.O.C. v. C.R. England, Inc.,
644 F.3d 1028 (10th Cir. 2011) ................................................................. 23

E.E.O.C. v. Delaware Dep't of Health and Soc. Servs.,
865 F.2d 1408 (3rd Cir. 1989) .................................................................. 28

E.E.O.C. v. Fremont Christian Sch.,
781 F.2d 1362 (9th Cir. 1986) .................................................................. 16

Farias v. Instructional Systems, Inc.,
259 F.3d 91 (2d Cir. 2001).......................................................................... 29

Feder v. Bristol-Myers Squibb Co.,
33 F. Supp.2d 319 (S.D.N.Y. 1999)........................................................... 23

Fernandez v. Wynn Oil Co.,
653 F.2d 1273 (9th Cir. 1981) .................................................................. 22

Gortat v. Capala Bros.,
795 F.3d 292 (2d Cir. 2015).............................................................. 2, 3, 10

Griffin v. Astro Moving & Storage Co. Inc.,
2015 WL 1476415 (E.D.N.Y. Mar. 31, 2015) ............................................ 2

Hart v. Rick's Cabaret Int'l, Inc.,
967 F. Supp.2d 901 (S.D.N.Y. 2013)........................................................... 3

Healey v. Southwood Psychiatric Hosp.,
78 F.3d 128 (3d Cir. 1996)........................................................................ 26

Henry v. Milwaukee Cty.,
539 F.3d 573 (7th Cir. 2008) .................................................................... 24

Herman v. RSR Sec. Servs. Ltd.,
172 F.3d 132 (2d Cir. 1999)................................................................ 10, 11

Hill v. Airborne Freight Corp.,
212 F. Supp.2d 59, 76 (E.D.N.Y. 2002),
aff'd,
93 F. App'x 260 (2d Cir. 2004) ................................................................ 30

Inclan v. New York Hosp. Grp., Inc.,
95 F. Supp.3d 490 (S.D.N.Y. 2015)........................................................... 10

International Union, United Auto., Aerospace & Agric. Implement Workers, UAW v. Johnson
    Controls, Inc.,
499 U.S. 187 (1991) ................................................................................................ 20, 24, 25

Jeldness v. Pearce,
30 F.3d 1220 (9th Cir. 1994) ...................................................................................... 25-26

Kolstad v. Am. Dental Ass'n,
527 U.S. 526 (1999) ........................................................................................................ 29

Kuebel v. Black & Decker Inc.,
643 F.3d 352 (2d Cir. 2011) .............................................................................................. 3

Lavin-McEleney v. Marist Coll.,
239 F.3d 476 (2d Cir. 2001) .............................................................................................. 9

Luciano v. Olsten Corp.,
110 F.3d 210 (2d Cir. 1997) .............................................................................................. 6

MacMillan v. Millennium Broadway Hotel,
873 F. Supp.2d 546 (S.D.N.Y. 2012) ................................................................................ 6

Martin v. Cooper Elec. Supply Co.,
940 F.2d 896 (3rd Cir. 1991) .......................................................................................... 11

McLean v. Garage Mgmt. Corp.,
2012 WL 1358739 (S.D.N.Y. Apr. 19, 2012) .................................................................... 3

Parrish v. Sollecito,
280 F. Supp.2d 145 (S.D.N.Y. 2003) .............................................................................. 29

Passantino v. Johnson & Johnson Consumer Prod., Inc.,
2212 F.3d 493 (9th Cir. 2000) ........................................................................................ 30

Pleener v. New York City Bd. of Educ.,
311 F. App'x 479 (2d Cir. 2009) .................................................................................... 22

Pollis v. New Sch. for Soc. Research,
132 F.3d 115 (2d Cir. 1997) ................................................................................... *passim*

Quinones v. City of Evanston,
829 F. Supp. 237 (N.D. Ill. 1993) .................................................................................. 16

Reich v. S. New England Telecommunications Corp.,
121 F.3d 58 (2d Cir. 1997) ........................................................................................ 10-11

Reich v. Waldbaum, Inc.,
52 F.3d 35 (2d Cir. 1995) ........................................................................................ 27

Rucker v. Higher Educ. Aids Bd.,
669 F.2d 1179 (7th Cir. 1982) ................................................................................. 22

Scott v. City of New York,
2009 WL 1138719 (S.D.N.Y. Apr. 27, 2009) ....................................................... 3, 10

Smith v. Lightning Bolt Prods., Inc.,
861 F.2d 363 (2d Cir. 1988) ...................................................................................... 7

Song v. Ives Labs., Inc.,
957 F.2d 1041 (2d Cir. 1992) ..................................................................................... 5

Trans World Airlines, Inc. v. Thurston,
469 U.S. 111 (1985) ................................................................................................ 27

Tse v. UBS Fin. Servs., Inc.,
568 F. Supp.2d 274 (S.D.N.Y. 2008) ................................................................... 29, 30

United States v. Sabhnani,
599 F.3d 215 (2d Cir. 2010) .................................................................................. 1-2

Wards Cove Packing Co. v. Atonio,
490 U.S. 642 (1989) ................................................................................................ 56

Westchester Cty. Corr. v. Cty. of Westchester,
346 F. Supp.2d 527 (S.D.N.Y. 2004) .................................................................... 18, 20

Western Airlines, Inc. v. Criswell,
472 U.S. 400 (1985) ................................................................................................ 20

White v. Dep't of Corr. Servs.,
814 F. Supp.2d 374 (S.D.N.Y. 2011) ..................................................................... 23

Williams v. Tri–County Growers,
747 F.2d 121 (3rd Cir. 1984) .................................................................................. 11

Zimmermann v. Assocs. First Capital Corp.,
251 F.3d 376 (2d Cir. 2001) ................................................................................... 29

## Statutes and Regulations

29 U.S.C. § 206 ............................................................................................ 9, 10

29 U.S.C. § 207 ................................................................................................... 9

29 U.S.C. § 216 ......................................................................................... 2, 9, 13

29 U.S.C. § 255 ....................................................................................... 2, 8, 27

29 U.S.C. § 260 ................................................................................ 7, 9, 10, 12

42 U.S.C. § 1981a ................................................................................... *passim*

42 U.S.C. § 2000e-2 ......................................................................... 15, 20, 25

29 C.F.R. § 1604.02 ..................................................................................... 19, 22

N.Y. Lab. Law § 198 ................................................................................ *passim*

N.Y. Lab. Law § 663 ........................................................................................ 10

Executive Law § 296 ........................................................................................ 5, 6

## Other

1. L. Larson Employment Discrimination § 13.00 (1985) ............................. 16

Plaintiff Tessa Knox ("Knox"), the 13 opt-in plaintiffs and the members of the Class that the Court certified in an order entered February 21, 2018 (collectively, "Plaintiffs") respectfully submit this memorandum to address the following issues that are likely to arise during the trial: (i) Which issues should the Court resolve and which issues should the jury resolve, and in what order? (ii) What legal issues should the Court remove from the trial because there is no reasonable dispute with respect to them? (iii) Should the Court allow the jury to decide whether to award liquidated damages under the NY EPA? and (iv) Should the Court allow the jury to decide whether to award punitive damages under Title VII?

I.

THE COURT AND THE JURY SHOULD RESOLVE THE<br>FOLLOWING ISSUES IN THE FOLLOWING ORDER

The Court should conduct the trial in four phases.  Phase 1 should present certain issues for the jury to decide.  Phase 2, if necessary, should present additional issues for the jury to decide, based upon additional evidence.  Phase 3 should involve the Court deciding certain issues based upon either the findings of the jury in Phase 1, or on evidence presented in Phase 1.  Phase 4 should involve the Court applying the findings in the prior phases to enter judgment.

Phase 1 – Liability, Back Pay And Willfulness

Phase 1 should involve the jury's determination of the following five issues, on which Plaintiffs have a right to a jury trial.

A.     Back Pay Under The EPA

Are Knox and the 13 opt-in plaintiffs (the "EPA plaintiffs") entitled to back pay under the Equal Pay Act, and what amount of back pay should be awarded? United States v. Sabhnani, 599 F.3d 215, 260 (2d Cir. 2010)("In Brock [v. Superior Care, Inc., 840 F.2d 1054, 1063 (2d Cir. 1988)], this Court determined that in suits by the Secretary of Labor or an employee for back

1

wages and liquidated damages under 29 U.S.C. §§ 216(b) and (c), an employer is entitled to

a jury trial on the issue of the amount of back pay due pursuant to the Seventh Amendment.").

B.      Back Pay Under The NY EPA

Are the members of the class asserting a claim under the NY EPA (the "NY EPA class")

entitled to back pay under the NY EPA and what amount of back pay should be awarded? See

e.g. Gortat v. Capala Bros., 795 F.3d 292, 294 (2d Cir. 2015)("On May 10, 2013, the jury

returned a verdict finding Defendants liable on Plaintiffs' FLSA and NYLL claims, and finding

not liable those plaintiffs against whom Defendants had filed counterclaims."); Griffin v. Astro

Moving & Storage Co. Inc., 2015 WL 1476415, at *1 (E.D.N.Y. Mar. 31, 2015)("After

a jury trial, the jury found Defendant liable to Plaintiffs for overtime wages under both the FLSA

and the NYLL and determined that Defendant's failure to pay Plaintiffs' overtime was willful.").

The Court should ask the jury to determine damages on a per "pull" basis.

C.      Varvatos's Willfulness

Is Varvatos's violation of the EPA and the NY EPA willful?  Cox v. Quick & Reilly,

Inc., 401 F. Supp.2d 203, 213 (N.D.N.Y. 2005)("Additionally, plaintiff will be given the

opportunity to present evidence to the jury that defendants' violation of the EPA was willful. The

question of 'willfulness,' as it bears on the application of a statute of limitations, is a question of

fact for the jury.").

The jury's finding on this issue will have several consequences.

1.      Under The EPA

a.      Statute Of Limitations Under The EPA

If the jury finds that Varvatos's violation of the EPA was willful, then the EPA plaintiffs

will be entitled to back pay for three years prior to the filing of the complaint. 29 U.S.C. § 255.

   b. <u>Liquidated Damages Under The EPA</u>

  If the jury finds that Varvatos's violation of the EPA was willful, then the Court cannot find that Varvatos's violation of the EPA was in good faith. <u>Scott v. City of New York</u>, 2009 WL 1138719, at *1 (S.D.N.Y. Apr. 27, 2009)("However, the Second Circuit has squarely held-along with the majority of other Circuits-that a district court may not find good faith after a jury has concluded that the employer willfully violated the FLSA.")(citing <u>Pollis v. New Sch. for Soc. Research</u>, 132 F.3d 115, 120 (2d Cir. 1997)); <u>Gortat v. Capala Bros.</u>, 949 F. Supp.2d 374, 380 (E.D.N.Y. 2013)("Where a jury has returned a finding of willful violations of the FLSA, courts typically do not exercise their discretion to reduce an award of liquidated damages under the FLSA."). If the Court cannot determine that Varvatos acted in good faith, then the EPA Plaintiffs should be entitled to 100 % liquidated damages, that the Court should assess during Phase 3.

   2. <u>Under The NY EPA</u>

  If the jury finds that Varvatos's violation of the NY EPA was willful, then liquidated damages under the NY EPA would be available.

  "Willfulness" has the same meaning under the EPA and NY EPA. <u>Hart v. Rick's Cabaret Int'l, Inc.</u>, 967 F. Supp.2d 901, 937 (S.D.N.Y. 2013)("'The willfulness standards for the FLSA statute of limitations and NYLL liquidated damages do not differ to any appreciable extent.'") (quoting <u>McLean v. Garage Mgmt. Corp.</u>, 2012 WL 1358739, at *7 (S.D.N.Y. Apr. 19, 2012)); <u>See</u> <u>also</u> <u>Kuebel v. Black & Decker Inc.</u>, 643 F.3d 352, 366 (2d Cir. 2011)("The district court reasonably concluded, and the parties do not contest, that the NYLL's willfulness standard 'does not appreciably differ' from the FLSA's willfulness standard.") (citation omitted).

Under the 2009 amendments to the NY EPA, if Varvatos's violation was not in good faith, and it would not be in "good faith" if the violation were willful, then the NY EPA class members are entitled to an award of liquidated damages equal to 25% of their back pay award for pulls of the Clothing Allowance that occurred after February 1, 2011 and prior to April 9, 2011. New York Lab. Law § 198(1-a) ("In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee reasonable attorney's fees and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to twenty-five percent of the total amount of the wages found to be due.").

Under the 2011 amendments to the NY EPA, if Varvatos's violation was not in good faith, and it would not be in "good faith" if the violation were willful, then the NY EPA class members are entitled to an award of liquidated damages equal to 100% of their back pay award for pulls of the Clothing Allowance that occurred on or after April 9, 2011. New York Lab. Law § 198(1-a) ("In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due.").

Under the 2016 amendments to the NY EPA, if Varvatos's violation was willful, then the NY EPA class members are entitled to an enhanced award of liquidated damages up to 300% of

their back pay award for pulls of the Clothing Allowance that occurred on or after January 19,
2016. New York Lab. Law. § 198(1-a) ("In any action instituted in the courts upon a wage claim
by an employee or the commissioner in which the employee prevails, the court shall allow such
employee to recover the full amount of any underpayment, all reasonable attorney's fees,
prejudgment interest as required under the civil practice law and rules, and, unless the employer
proves a good faith basis to believe that its underpayment of wages was in compliance with the
law, an additional amount as liquidated damages equal to one hundred percent of the total
amount of the wages found to be due, except such liquidated damages may be up to three
hundred percent of the total amount of the wages found to be due for a willful violation of
section one hundred ninety-four of this article.").

If the jury determines Varvatos's violation was not willful the court should determine the
good faith of Varvatos under both statutes during Phase 3.

D.    Back Pay Under The NY HRL

Are the NY HRL class members entitled to back pay under the NY HRL and what
amount of back pay should be awarded? Song v. Ives Labs., Inc., 957 F.2d 1041, 1047–48 (2d
Cir. 1992)("In contrast, because Executive Law § 296 permits the recovery of monetary
damages, claims made in federal court under this provision are characterized as legal in nature
and are tried to a jury, in accordance with the federal practice requiring jury trial in all actions at
law.").[1]

---

[1]  The Title VII claims for back pay are equitable in nature, and therefore no right to a jury trial
exists.  However, because the claims of the NY HRL class members factually and legally overlap
with the claims of the Title VII class members, and because the Court's determination in equity
under Title VII cannot be inconsistent with the jury's determination under the NY HRL, the
Court should reach the same result under the Title VII claims as the jury DOES for the NY HRL
claims. Song v. Ives Labs., Inc., 957 F.2d 1041, 1048 (2d Cir. 1992)("[A] district court sitting at

E.     Entitlement To Punitive Damages

Are the Title VII class members eligible for an award of punitive damages? 42 U.S.C.

§ 1981a(c) ("If a complaining party seeks compensatory or punitive damages under this section--

(1) any party may demand a trial by jury;…"); MacMillan v. Millennium Broadway Hotel, 873

F. Supp.2d 546, 564 (S.D.N.Y. 2012) ("The Court will not disturb the jury's determination

that punitive damages were warranted in this action."); Luciano v. Olsten Corp., 110 F.3d 210,

221 (2d Cir. 1997)("When viewed as a whole, therefore, § 1981a envisions that the level of

punitive damages to be awarded will initially be set by the jury, and that the jury will make that

determination without being influenced by the statutory caps.").

If the jury finds that Varvatos is not liable for back pay under the EPA, NY EPA, Title

VII, and NY HRL, then the trial should end with Phase 1 with a verdict for Varvatos.

Otherwise, the trial should proceed to Phase 2.

Phase 2 – Punitive Damages Under Title VII And Liquidated Damages Under The NY EPA

Phase 2 should involve the jury's determination on the following two issues.

A.     Punitive Damages Under Title VII

If the jury finds during Phase 1 that Varvatos is liable for punitive damages, the jury

should determine the amount of those punitive damages in Phase 2.

Phase 2 will require the presentation of evidence concerning punitive damages that could

not be presented to the jury during Phase 1.  For example, evidence concerning Varvatos's

financial condition should not be presented to the jury to determine liability for punitive

damages, but may be presented to the jury after liability for punitive damages is established.

---

equity in a Title VII action must resolve the Title VII claims in accordance with the jury's
determination on the Executive Law § 296 claim.").

Smith v. Lightning Bolt Prods., Inc., 861 F.2d 363, 373–74 (2d Cir. 1988)("Since it often would be prejudicial to a defendant to attempt to litigate its financial condition during the trial on the issues of liability and compensatory damages, the preferred method of accommodating the various interests is to delay trial as to the amount of an award of punitive damages until the usual issues of liability and compensatory damages have been tried, along with the matter of whether the defendant's conduct warrants any award of punitive damages at all. If the jury finds in favor of the claimant on all of these issues, the parties should then be allowed to present evidence with respect to the amount of the punitive damage award.").  Evidence of Varvatos' insurance coverage should also be admissible at this stage.  Plaintiffs have submitted a separate motion in limine on this issue.

B.      Liquidated Damages Under The NY EPA

If the jury finds that Varvatos willfully violated the NY EPA, the jury should determine the amount of additional liquidated damages to award the NY EPA class members, for "pulls" that occurred on or after January 19, 2016, for a total liquidated damages award under the NY EPA.

We do not know of any case that has considered whether the Court or the jury should determine the amount of liquidated damages, under the 2016 amendments to the NY EPA.  For three reasons, we believe that the New York legislature intended to require the jury to determine the amount of Increased liquidated damages under the NY EPA.

First, the text of the NY EPA suggests that the issue should be tried to a jury.  Unlike the EPA, which explicitly leaves the amount of liquidated damages to the Court's "sound discretion," 29 U.S.C. § 260, the text of the NY EPA makes no reference to the Court's discretion, but provides that "the court shall allow such employee to recover the full amount of

7

any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due, except such liquidated damages may be up to three hundred percent of the total amount of the wages found to be due for a willful violation of section one hundred ninety-four of this article." N.Y. Lab. Law § 198(1-a).

Second, the 2016 Amendment to the NY EPA suggests that the New York Legislature intended to impose a stronger penalty than the EPA.  Before the 2016 Amendment to the NY EPA, courts within the Second Circuit had concluded that the Legislature intended to conform the liquidated damages provision of the NY EPA to the EPA. See e.g.  Chowdhury v. Hamza Express Food Corp., 666 F. App'x 59, 61 (2d Cir. 2016).  However, by allowing an award of liquidated damages up to 300% of back pay damages, the NY EPA has broken ranks with the EPA, and allowed plaintiffs to recover substantially larger amounts of liquidated damages.

Third, the standard for willfulness is essentially the same as the standard for eligibility for punitive damages under Title VII, for which a right to a jury trial exists.  Compare Pollis v. New Sch. for Soc. Research, 132 F.3d 115, 119 (2d Cir. 1997)("A defendant's violation of the Equal Pay Act is willful or reckless within the meaning of § 255(a) if 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'") with 42 U.S.C. § 1981a(b)(1) ("malice or with reckless indifference to the federally protected rights of an aggrieved individual").  Just as both the eligibility for punitive damages and the amount of punitive damages are questions for the jury, so too should the questions of the eligibility and the amount of liquidated damages be questions for the jury.

<u>Phase 3 – Amount Of EPA Liquidated Damages</u>

Phase 3 should involve the Court's determination of liquidated damages on the following claims.

A.      <u>EPA Claims</u>

If the jury found that Varvatos willfully violated the EPA, the Court should award liquidated damages equal to 100% of the back pay award for the EPA plaintiffs.  The EPA provides that "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).  <u>See</u> e.g. <u>Pollis v. New Sch. for Soc. Research</u>, 132 F.3d 115, 120 (2d Cir. 1997)("Under 29 U.S.C. § 206(d), therefore, compensatory damages for the Equal Pay Act violation should have been calculated by reference to the three-year limitations period for willful violations, and the resulting compensatory award should be doubled pursuant to the Fair Labor Standards Act's liquidated damages provision, 29 U.S.C. § 260."); <u>Lavin-McEleney v. Marist Coll.</u>, 239 F.3d 476, 479 (2d Cir. 2001)(affirming in its entirety the decision of the district court which awarded a successful EPA plaintiff liquidated damages); <u>Ebbert v. Nassau Cty.</u>, 2009 WL 935812, at *2 (E.D.N.Y. Mar. 31, 2009)("The EPA requires liquidated damages in an amount equal to unpaid wages...").

If the jury finds that Varvatos's violation of the EPA was willful, then the Court may not find that Varvatos's violation of the EPA was in good faith. <u>Pollis v. New Sch. for Soc. Research</u>, 132 F.3d 115, 120 (2d Cir. 1997)("This evidence—that the New School knew that <u>Pollis</u> was paid less than comparable males, but did not rectify the situation—is sufficient to support the jury's finding of reckless or willful violation of the Equal Pay Act ... Under 29

U.S.C. § 206(d), therefore, compensatory damages for the Equal Pay Act violation should have been calculated by reference to the three-year limitations period for willful violations, and the resulting compensatory award should be doubled pursuant to the Fair Labor Standards Act's liquidated damages provision, 29 U.S.C. § 260."); Gortat v. Capala Bros., 949 F. Supp.2d 374, 380 (E.D.N.Y. 2013); Scott v. City of New York, 2009 WL 1138719, at *1 (S.D.N.Y. Apr. 27, 2009); See also Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1166 (11th Cir. 2008).

If the jury does not find that Varvatos willfully violated the EPA and NY EPA, the Court should determine in Phase 3 whether Varvatos violated the EPA and NY EPA in good faith. "Good faith" has the same meaning under both the EPA and NY EPA. Inclan v. New York Hosp. Grp., Inc., 95 F. Supp.3d 490, 505 (S.D.N.Y. 2015)("The statutory text of the liquidated damages provisions of the present NYLL is not identical to that of the FLSA. Compare N.Y. Lab. Law §§ 198(1–a), 663(1), with 29 U.S.C. § 260.  However, courts have not substantively distinguished the federal standard from the current state standard of good faith.").

The burden of proving "good faith" is on the defendant. Brock v. Wilamowsky, 833 F.2d 11, 19 (2d Cir. 1987)("Under § 260, the employer bears the burden of establishing the defense of good faith.").  The burden of proving good faith is heavy. Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 150 (2d Cir. 2008)("This court has characterized the employer's burden as 'a difficult one,' emphasizing that 'double damages [are] the norm and single damages the exception.'") (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999)).

The "good faith" defense has a subjective and objective component.

First, "[t]o establish 'good faith,' a defendant must produce 'plain and substantial evidence of at least an honest intention to ascertain what the Act requires and to comply with

it.'" Reich v. S. New England Telecommunications Corp., 121 F.3d 58, 71 (2d Cir. 1997) (quoting Brock v. Wilamowsky, 833 F.2d 11, 19 (2d Cir. 1987). "'Good faith' in this context requires more than ignorance of the prevailing law or uncertainty about its development." *Id.* Proof that the defendant did not purposefully violate the law is not sufficient. "Nor is good faith demonstrated by the absence of complaints on the part of employees, see [Williams v.] Tri–County Growers, 747 F.2d [121] at 129 [(3rd Cir. 1984)], or simple conformity with industry-wide practice, see [Martin v.] Cooper Elec. [Supply Co.], 940 F.2d [896] at 910 [(3rd Cir. 1991)]; [Brock v.] Wilamowsky, 833 F.2d [11] at 19–20 [(2d Cir. 1987)]." *Id.*

Second, the defendant must demonstrate that it had objectively reasonable grounds to believe its conduct was legal. Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142–43 (2d Cir. 1999)("Nor did appellant, for reasons already discussed, demonstrate objectively reasonable grounds for believing that RSR was in compliance with the FLSA. Because appellant failed to prove both subjective good faith and objective reasonableness, liquidated damages were properly assessed against him.").

Varvatos will not be able to establish the good faith defense because Varvatos cannot prove that it took active steps to ascertain what the EPA required and to comply with those requirements. Varvatos has no admissible evidence that it has ever made any effort, by consulting with an attorney or otherwise, to determine whether the Clothing Allowance complies with the law. (Dkt. 188-6 at 125:10-128:22) Varvatos's lack of effort is striking, given the facts that should have prompted such an inquiry, including: (i) the facially discriminatory nature of the Clothing Allowance policy, which explicitly treats male and female employees differently; (ii) the complaints Varvatos received from numerous female sales professionals concerning the discriminatory Clothing Allowance policy, both orally and in writing (Dkt. 188-6 at 70:24-

11

73:10); and (iii) the Varvatos clothing allowance policy for female employees in the United Kingdom to "make them 'whole.'" (Dkt. 188-19)

In addition, Varvatos will not be able to prove that it had an objectively reasonable belief that its conduct did not violate the EPA. The Clothing Allowance is not based on a factor other than sex, and Varvatos has not offered any other affirmative defense for the EPA claim. There is no documentary evidence that Varvatos considered the male and female sales professional positions to be substantially unequal, or even different, jobs. Varvatos had one job description for sales professionals that did not distinguish between men and women. Varvatos did not even explain to prospective male sales professionals that they needed to wear Varvatos clothes to work. Furthermore, the compensation was not equal. No reasonable person could conclude that $12,000 per year of free clothing is equal to, or worth less than, a 50% discount at AllSaints that allows a female sales professional to receive a maximum discount of $5,000 per year. Additionally, the fact that Varvatos withholds income tax for the Clothing Allowance but not the AllSaints Discount makes it clear that the Clothing Allowance is income, and therefore compensation, and the AllSaints Discount is not income, and therefore not compensation.

If the jury determined that the violation was not willful and Varvatos proves that its violation of the EPA was in good faith, then the Court has the discretion to (i) decline to award liquidated damages, (ii) award an amount of liquidated damages that is less than 100% of the back pay award, or (iii) award an amount of liquidated damages that is equal to 100% of the back pay award. 29 U.S.C. § 260 ("In any action commenced prior to or on or after May 14, 1947 to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had

reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.").

If Varvatos does not prove that its violation was in good faith, then the Court has no discretion to diminish or decline the award of liquidated damages. Brock v. Wilamowsky, 833 F.2d 11, 20 (2d Cir. 1987)("The Act does not authorize the court to decline to award liquidated damages, in whole or in part, unless the employer has established its good-faith, reasonable-basis defense ... Given its findings as to the lack of good faith and of any reasonable basis for Continental's belief in the lawfulness of its conduct, the court was required to award liquidated damages for the entire period."); Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 150 (2d Cir. 2008)("Under the FLSA, a district court is generally required to award a plaintiff liquidated damages equal in amount to actual damages.").

No evidence should be required during Phase 3 because all the evidence concerning Varvatos's good faith should have been presented during Phase 1 or Phase 2.

B.    The NY EPA Claims

After the jury determines the amount of liquidated damages under the NY EPA in Phase 2, the Court may need to reduce any award to comply with the statute.

There are three versions of the NY EPA's liquidated damages provision that apply to this action.

For those "pulls" of the Clothing Allowance that took place between February 1, 2011 and April 8, 2011, the NY EPA class members should be entitled to an award of liquidated damages of 25%, unless Varvatos can prove that its violation was in good faith. New York Lab.

Law § 198(1-a) ("In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee reasonable attorney's fees and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to twenty-five percent of the total amount of the wages found to be due.").

For those "pulls" of the Clothing Allowance that took place on or after April 9, 2011, the NY EPA class members will be entitled to an award of liquidated damages of 100%, unless Varvatos can prove that its violation was in good faith. New York Lab. Law § 198(1-a) ("In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due.").

For those "pulls" of the Clothing Allowance that took place on or after January 19, 2016, the NY EPA class members will be able to seek liquidated damages of up to 300% of the back pay award if the jury finds that the violation was willful. New York Lab. Law § 198(1-a) ("In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due, except

such liquidated damages may be up to three hundred percent of the total amount of the wages found to be due for a willful violation of section one hundred ninety-four of this article.").

<u>Phase 4 – Judgment</u>

Assuming that the jury has determined that at least some of the Plaintiffs are entitled to some damages, the Court should calculate the damages based upon the number of "pulls" of the Clothing Allowance that each Plaintiff has been denied.  We expect that the parties will stipulate as to the number of "pulls" for each Plaintiff.  Judgment may be entered upon these amounts.

II.

THE COURT SHOULD DISMISS VARVATOS'S AFFIRMATIVE DEFENSES

A.    <u>Factor Other Than Sex</u>

In Plaintiffs' memoranda in support of and in opposition to summary judgment, Plaintiffs argued that the Clothing Allowance was, as a matter of law, based on sex. (Dkt. 185 at 36-38/59; Dkt. 191 at 14-17/40; Dkt. 205 at 19-21/46)  At oral argument on January 15, 2019, the Court appeared to agree. (Dkt. 224 at 54:10-14)

> "Mr. Dunnegan:       … You can't create a position for which only men can apply and then say that women don't -- then it's based upon a factor other than sex because --
>
> The Court:     I agree with you on that.  You win on that.  If it wasn't clear already in my colloquy, it is based on sex.  I agree with that."

B.    <u>Bona Fide Occupational Qualification.</u>

1.    <u>The BFOQ Defense Does Not Apply To Pay Discrimination Claims</u>

The Bona Fide Occupational Qualification ("BFOQ") defense does not apply to pay discrimination claims under Title VII.  Section 2000e-2(e) provides, in relevant part:

> "[I]t shall not be an unlawful employment practice for an employer to **hire and employ employees**...on the basis of his religion, sex, or national origin in those certain instances where religion, sex, or national origin is a *bona fide* occupational

qualification reasonably necessary to the normal operation of that particular business or enterprise." (Emphasis added.)

See also E.E.O.C. v. Fremont Christian Sch., 781 F.2d 1362, 1366–67 (9th Cir. 1986)("It has been noted that this exception does not apply to the full range of possibly discriminatory employment actions.  See 1 L. Larson, Employment Discrimination § 13.00 (1985). 'It uses only the words 'to hire and employ,' while the earlier section [§ 703(a)] detailing unlawful employment practices lists, in addition, such specific acts as 'to discharge' and ... includes a catchall phrase, 'or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment.'' Id. at 4-1 to 4-2. 'While this disparity between the description of the offense and the defense has caused little litigation, it should not be overlooked, since the oversight might tempt a defendant *mistakenly to invoke the BFOQ exception in a case involving, say, discrimination in pay.*' Id. at 4-2 (Emphasis added.) Accordingly, we conclude that the BFOQ exception does not apply to the discriminatory provision of benefits involved here.")(alteration in original); Quinones v. City of Evanston, 829 F. Supp. 237, 242 (N.D. Ill. 1993)("It is difficult to imagine that this provision was meant to cover decisions involving benefits. Indeed, every one of the cases Evanston cites for its proposition involves the use of the age BFOQ with regard to hiring and discharge situations. An occupational qualification, by definition, is an endowment or acquirement that fits a person to a certain *employment*.").

The Court should not transform Plaintiffs' unequal pay claims into hiring discrimination claims simply to allow Varvatos to reply upon a BFOQ defense.  Varvatos argues that it hires sales employees without regard to sex.  Varvatos Rule 30(b)(6) deposition of October 26, 2017 provides:

16

"Q.     Does JV ever advertise opening sales associate positions differently for men or for women?

No.

Q.     When JV has an opening for a sales associate position, does JV ever have a preference as to whether the sales associate position is filled by a man over a woman?

No."   (Tr. 98:3-99-6)

Plaintiffs should be entitled to try their unequal pay claims, which under the plain language of Title VII should not be subject to a BFOQ defense.

> 2.     A BFOQ Defense Cannot Logically Provide
>         A Defense To Plaintiffs' Equal Pay Claims.

Plaintiffs' claim under Title VII is that Varvatos intentionally compensates women less than men because they are women.  Even if a jury finds that the jobs of male and female sales professionals are not "substantially equal" under the EPA, Plaintiffs would still retain their pay discrimination claim against Varvatos because Varvatos intentionally paid men more because they were men. Barrett v. Forest Labs., Inc., 39 F. Supp.3d 407, 434 n. 9 (S.D.N.Y. 2014)("It is worth noting, however, one way in which Title VII wage discrimination claims are less rigorous than Equal Pay Act (EPA) claims: whereas a Title VII claim requires a showing of intentional discrimination and EPA claims do not, an EPA claim requires a showing that a male employee performed equal work—whereas a Title VII plaintiff could succeed simply by showing that an employer intentionally depressed the wages of female employees, even if the employer did not employ any male employees.").

Whether or not Varvatos may lawfully refuse to hire women to be "male sales professionals" does not negate Plaintiffs' equal pay claim.  Title VII prohibits Varvatos from

paying its female employees less than its male employees because they are female, even if the men and women occupy different jobs.

 3. <u>Varvatos Cannot Prove The Elements Of A BFOQ Defense</u>

 Even if a BFOQ defense were available in this case, and even if such a defense were relevant, Varvatos cannot prove that it has established the elements of a BFOQ defense.

 a. Varvatos Cannot Prove That Virtually All Female
   <u>Sales Professionals Cannot Wear Or Model Varvatos Clothing</u>

 To establish a BFOQ defense, Varvatos must make "a factual showing that 'all or substantially all' members of the targeted group would be 'unable to perform safely and efficiently the duties of the job involved.' <u>Dothard [v. Rawlinson</u>, 433 U.S. 321, 333 (1977)] (internal quotations omitted)." <u>Westchester Cty. Corr. v. Cty. of Westchester</u>, 346 F. Supp.2d 527, 534 (S.D.N.Y. 2004).  Varvatos writes:

> "The purpose of having male sales professionals wear Varvatos clothing at work is for them to serve as models and bring attention to items being sold in the store that they are also wearing. (Harris Decl. ¶ 32; Chang Decl. ¶ 9; Mayorga Decl. ¶ 24.) **Female sales professionals lack the ability to serve that function. They cannot wear Varvatos clothing, designed and cut for men**, and act as live models who display to customers how that clothing fits on the people for whom it is designed." (Emphasis added.) (Dkt. 189 at 35/41)

 Varvatos, however, has failed to offer any evidence that all, or substantially all, female sales professionals cannot wear, and model, the Varvatos clothing.  Rather than offer evidence, Varvatos rests its argument upon a stereotype.

 A BFOQ defense cannot rest upon a stereotype. <u>City of Los Angeles, Dep't of Water & Power v. Manhart</u>, 435 U.S. 702, 707 (1978)("It is now well recognized that employment decisions cannot be predicated on mere 'stereotyped' impressions about the characteristics of males or females. Myths and purely habitual assumptions about a woman's inability to perform certain kinds of work are no longer acceptable reasons for refusing to employ qualified

individuals, or for paying them less."); 29 C.F.R. § 1604.2(a)(1)(ii)("The Commission will find

that the following situations do not warrant the application of the bona fide occupational

qualification exception: ... (ii) The refusal to hire an individual based on stereotyped

characterizations of the sexes. Such stereotypes include, for example, that men are less capable

of assembling intricate equipment: that women are less capable of aggressive salesmanship. The

principle of nondiscrimination requires that individuals be considered on the basis of individual

capacities and not on the basis of any characteristics generally attributed to the group.").

Contrary to Varvatos's arguments based upon sexual stereotypes, undisputed evidence

proves that some of Varvatos's female sales professionals can, and do, wear Varvatos clothing.

(Dkt. 195 ¶ 9; Dkt. 199 ¶ 7; Dkt. 200 ¶ 7 (female sales professionals trying on Varvatos clothing

for customers); Dkt. 179-3 at 2/13; Dkt. 179-5 at 2/13; Dkt. 179-7 at 2/13; Dkt. 193-1 at 100:17-

105:8 (female sales professionals buying Varvatos clothing to wear to work at Varvatos)) Indeed,

Varvatos admits that it sells clothing to females for their own use. (Dkt. 184 at 21/36; "[T]he vast

majority of customers purchasing clothing in Varvatos stores are buying items to be worn by

men.")  Women come in different body types, and arguing that no woman has the body type that

approximates the body type of a man (even if many do not) is no more than a stereotype.

While Varvatos argues that its customers do not want to buy unisex clothing (Dkt. 206,

¶¶ 3-8; Dkts. 206-1; 206-2; 206-3; 206-5), Varvatos markets some unisex clothes.  Varvatos, for

example, sells a t-shirt with the PLAYBOY® bunny logo on it.  (Dkt. 206 at ¶ 5; Dkt. 206-2)  A

clip previously posted at the URL https://www.youtube.com/watch?v=dxVklYG5Goc, showed a

female PLAYBOY® Playmate wearing that t-shirt.  John Varvatos, the founder of Varvatos,

appears on camera and states, in part, "I wore it to a concert a few weeks ago" and "all the guys

in the band asked me where they could get one." (Dkt. 206 at ¶¶ 3-4; Dkt. 206-1)  The

undisputable intent of John Varvatos in this video was to communicate that both men and women could wear the Varvatos t-shirt with the PLAYBOY® bunny logo on it.  Accordingly, Varvatos's argument that its customers do not want to buy unisex clothing is incorrect.

> b.   Varvatos Cannot Prove That It Is Reasonably Necessary
> For Male Sales Professionals To Wear Varvatos Clothing

The BFOQ defense is extremely narrow. Dothard v. Rawlinson, 433 U.S. 321, 334 (1977)("We are persuaded by the restrictive language of [§] 703(e), the relevant legislative history, and the consistent interpretation of the Equal Employment Opportunity Commission that the BFOQ exception was in fact meant to be an extremely narrow exception to the general prohibition of discrimination on the basis of sex."  To qualify for the BFOQ defense, the sex discrimination must be "'reasonably 'necessary' to the 'normal operation' of the 'particular' business." Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc., 499 U.S. 187, 201 (1991)(quoting 42 U.S.C. § 2000e-2(e)).  "We stressed that in order to qualify as a BFOQ, a job qualification must relate to the 'essence,' Dothard [v. Rawlinson,] 433 U.S. [321, 333], (emphasis deleted), or to the 'central mission of the employer's business,' [Western Airlines, Inc. v.] Criswell, 472 U.S. [400, 413 (1985)]." Johnson Controls, 499 U.S. at 203.  Westchester Cty. Corr. v. Cty. of Westchester, 346 F. Supp.2d 527, 534 (S.D.N.Y. 2004)("A valid BFOQ defense requires a *factual showing* that 'all or substantially all' members of the targeted group would be 'unable to perform safely and efficiently the duties of the job involved.'")(quoting Dothard, 433 U.S. at 333)(Emphasis added.)

Varvatos cannot prove that it is reasonably necessary for the success of its business that male sales professionals wear Varvatos clothes while working in its stores.  Beyond a couple anecdotes, Varvatos has no admissible evidence that the Male Dress Code increases sales at Varvatos stores at all, much less to such a significant amount that ceasing the practice would

jeopardize its business. (Dkt. 188-7 at 17:9-18:7; 26:18-27:6)  In any case, almost all of these anecdotes involve customers who were already in the store (Dkt. 182 at ¶¶ 35-41), and thus presumably were looking to buy Varvatos clothing anyway.

Varvatos cannot prove that any customer purchased any article of clothing just because a male sales professional was wearing that article of clothing.  The item on a mannequin or a shelf may have caused the item to be purchased.  Anecdotes that took place outside the store are irrelevant, because male sales professionals are not required to wear the Varvatos clothing while not at work.

Moreover, Varvatos knows that it can operate its stores without male sales professionals wearing Varvatos clothes.  In opposition to Varvatos's motion for summary judgment, Knox provided several instances (some of which lasted years), where Varvatos did not employ any male sales professionals in certain stores. (Dkt. 191 at 19/40)  Varvatos admits that "[a]t certain times particular Retail Stores or Outlet Stores may only employ male or female sales professionals." (Dkt. 190 at 5/45)  If Varvatos knowingly operates stores without male sales professionals wearing Varvatos clothing, then Varvatos cannot plausibly argue that having its male sales professionals wear Varvatos clothing is reasonably necessary to its business.

To the extent Varvatos argues that it is reasonably necessary to its business that male sales professionals not wear the clothing of a competitor, Varvatos runs into the same problem as before: There is no admissible evidence that Varvatos's sales would be hurt if its male sales professionals were wearing the clothing of a competitor.  Moreover, Varvatos could mitigate any potential harm to its sales by requiring that the male sales professionals not wear to work any clothing with the visible branding of a competitor, as Varvatos requires for female sales

professionals. (Dkt. 188-8 at 2/5)("The following is not to be worn by any employees working on the sales floor:...Branded clothing that is not JV...").

c.     Varvatos Cannot Prove That It Is Reasonably
       Necessary To Its Business That Female Sales
       <u>Professionals Not Wear Varvatos Clothing.</u>

Varvatos cannot argue that giving a Clothing Allowance only to men is necessary because "[h]aving female sales professionals wear Varvatos clothing would detract from the brand's authenticity and genuineness by creating confusion about who the brand is designed for and could discourage men from purchasing what they would mistake as a unisex, or certainly less masculine, brand." (Dkt. 184 at 28/36)

An employer cannot justify this type of discrimination on the ground that it is necessary to appeal to the prejudices of its customers. <u>Pleener v. New York City Bd. of Educ.</u>, 311 F. App'x 479, 482 (2d Cir. 2009)("We agree that federal law does not permit an employer to discriminate based on race to accommodate the actual or perceived invidious biases of its clientele...29 C.F.R. § 1604.2(a)(1)(iii) (providing that bona fide occupational qualification exception does not generally apply to 'refusal to hire an individual because of the preferences of coworkers, the employer, clients or customers'"). <u>See</u> 29 C.F.R. § 1604.2(a)(1)(iii)("The Commission will find that the following situations do not warrant the application of the bona fide occupational qualification exception:…. (iii) The refusal to hire an individual because of the preferences of coworkers, the employer, clients or customers except as covered specifically in paragraph (a)(2) of this section."); <u>Rucker v. Higher Educ. Aids Bd.</u>, 669 F.2d 1179, 1181 (7th Cir. 1982)("Customer preference has repeatedly been rejected as a justification for discrimination against women."); <u>Fernandez v. Wynn Oil Co.</u>, 653 F.2d 1273, 1276–77 (9th Cir. 1981)("Nor does stereotyped customer preference justify a sexually discriminatory practice.");

22

Diaz v. Pan Am. World Airways, Inc., 442 F.2d 385, 389 (5th Cir. 1971)("it would be totally anomalous if we were to allow the preferences and prejudices of the customers to determine whether the sex discrimination was valid. Indeed, it was, to a large extent, these very prejudices the Act was meant to overcome. Thus, we feel that customer preference may be taken into account only when it is based on the company's inability to perform the primary function or service it offers."); E.E.O.C. v. C.R. England, Inc., 644 F.3d 1028, 1039 (10th Cir. 2011)("At the outset, we acknowledge that an employer's accommodation of the discriminatory preferences of other employees, clients, or customers could, under certain circumstances, expose the employer to liability for discrimination."); Feder v. Bristol-Myers Squibb Co., 33 F. Supp.2d 319, 333 (S.D.N.Y. 1999)("The bona fide occupational qualification cases stand for the proposition that one cannot justify otherwise unlawful discrimination on the ground that one's customers do not like to deal with members of a protected class. They reflect the view that the goal of equality is served best by eliminating the ability of customers to undermine the employment discrimination laws by imposing their prejudices on employers as well as the ability of employers to continue in discriminatory practices by blaming their customers.").

In any case, there is no admissible evidence that Varvatos's customers would be confused or discouraged at the prospect of female sales professionals wearing Varvatos clothing to such a degree as to significantly impact Varvatos's business.

      d.     **Varvatos Cannot Establish A BFOQ Defense
Because It Has Not Considered Any Alternatives.**

Varvatos has the burden to prove that there are no reasonable alternatives to its discriminatory conduct. White v. Dep't of Corr. Servs., 814 F. Supp.2d 374, 386 (S.D.N.Y. 2011)("In the face of potential alternatives, gender-based hiring is only permissible if the defendant makes a strong showing that such alternatives are not reasonable."); Crews v. City of

Ithaca, 2018 WL 1441282, at *7 (N.D.N.Y. Mar. 21, 2018)("Further, the defendant must be able to show that no reasonable alternatives to the discriminatory policy existed.").

However, Varvatos has no evidence that it needs male sales professionals to own the Varvatos clothing that Varvatos provides as a result of the Clothing Allowance.  Varvatos, at best for it, only needs the male sales professionals to wear the Varvatos clothing.  Varvatos could therefore achieve its purported business need, in a non-discriminatory manner, by (i) issuing Varvatos clothing to male sales professionals to wear to work, (ii) issuing brand appropriate clothing to female sales professionals (perhaps from Varvatos's sister store) to wear to work, and (iii) taking back that clothing after the sales professionals no longer need to wear to work.  Or Varvatos could give the female sales professionals a benefit of equal value.  These obvious variations to Varvatos's Clothing Allowance would, in a non-discriminatory manner, meet Varvatos's purported business need of having its male sales professionals wear the Varvatos clothing while working.  While this would shift to Varvatos the cost of providing work clothing for its female sales professionals, Varvatos represents that this can be done "inexpensively." (Dkt. 184 at 6/36)  In addition, that cost could be less than the revenue Varvatos could realize from monetizing the Varvatos clothing it takes back from its male sales professionals at the end of the season.

In any case, the expense of providing equal benefits is not a BFOQ. International Union, United Auto., Aerospace & Agric. Implement Workers, UAW v. Johnson Controls, Inc., 499 U.S. 187, 210 (1991)("The extra cost of employing members of one sex, however, does not provide an affirmative Title VII defense for a discriminatory refusal to hire members of that gender."); Henry v. Milwaukee Cty., 539 F.3d 573, 582 (7th Cir. 2008)("The BFOQ defense extends only to those policies that are 'reasonably necessary to the normal operation' of the

institution, 42 U.S.C. 2000e–2(e)(1). It does not excuse investigation of and reliance upon alternatives that involve minor additional costs or inconveniences.").  Although the Supreme Court left open the possibility that there could be costs that are "so prohibitive as to threaten the survival of the employer's business," Johnson Controls, at 210-211, Varvatos has not provided any admissible evidence that the expense of any of these alternatives would threaten Varvatos's business.

> e.    Varvatos's Assertion Of What Is Reasonably
>        Necessary Is Not Entitled To Any Deference.

At oral argument, counsel for Varvatos argued that if Varvatos made a determination that its policy was reasonably necessary to its business, and that there were no reasonable alternatives, neither plaintiffs nor the Court could second guess that determination. (Oral Argument at 59:15-18.)  That is incorrect. White v. Dep't of Corr. Servs., 814 F. Supp.2d 374, 386 (S.D.N.Y. 2011)("In the face of potential alternatives, gender-based hiring is only permissible if the defendant makes a *strong showing* that such alternatives are not reasonable.")(Emphasis added.).

C.    Business Necessity

The business necessity defense is not available as a defense to claims which allege intentional discrimination. 42 U.S.C. § 2000e-2(k)(2)("A demonstration that an employment practice is required by business necessity may not be used as a defense against a claim of intentional discrimination under this subchapter."). See also International Union, United Auto., Aerospace & Agric. Implement Workers, UAW v. Johnson Controls, Inc., 499 U.S. 187, 188 (1991)("Because respondent's policy involves disparate treatment through explicit facial discrimination, the business necessity defense and its burden shifting under Wards Cove [Packing Co. v. Atonio, 490 U.S. 642 (1989)] are inapplicable here."); Jeldness v. Pearce, 30

F.3d 1220, 1230 (9th Cir. 1994)("In interpreting Title VII, the Supreme Court also made it clear that the business necessity defense is not available in disparate treatment cases, but only in disparate impact cases.")(citing Johnson Controls, *Id.*); Healey v. Southwood Psychiatric Hosp., 78 F.3d 128, 131 (3d Cir. 1996)("A different affirmative defense may be offered to counter each of these theories of liability. In a disparate treatment case, the defendant's affirmative defense is that its policy, practice, or action is based on a [BFOQ]. In a disparate impact case, on the other hand, the appropriate defense is that of business necessity.").

In this case, the Plaintiffs have alleged that Varvatos violated Title VII and the NY HRL by intentionally discriminating against female sales professionals. See Dkt. 69 ¶ 1 ("Knox is bringing this action to recover damages from JV for intentional discrimination in compensation on the basis of sex."); ¶ 27 ("JV intentionally violated Title VII because the Clothing Allowance confers an annual benefit of $12,000 only on male sales associates of JV, and not on female sales associates of JV, and therefore discriminates in the conditions or privileges of employment on the basis of sex."); ¶ 28 ("By expressly conditioning the Clothing Allowance on the gender of the employee, JV has engaged in intentional discrimination based upon sex, and engaged in a discriminatory practice with malice and/or with reckless indifference to Knox's federally protected rights."); ¶ 34 ("As a result of JV's intentional violation of Title VII, Knox is entitled to damages, including compensatory damages, costs, and attorneys' fees. As a result of JV's malicious and/or reckless violation of Title VII, Knox is entitled to punitive damages."). Because Plaintiffs have alleged intentional discrimination, the business necessity defense should not go to the jury.

D.     Varvatos's Unaddressed Affirmative Defenses

In its Answer, Varvatos asserted 31 unnumbered affirmative defenses. (Dkt. 79 ¶¶ 73-104)  On May 24, 2018, Plaintiffs moved for summary judgment on, *inter alia*, Varvatos's affirmative defenses. (Dkt. 187)  On June 13, 2018, Varvatos opposed Plaintiffs' motion for summary judgment. (Dkt. 189)  In its opposition, Varvatos only raised three defenses: (i) factor other than sex; (ii) *bona fide* occupational qualification; and (iii) business necessity. (Dkt. 189 at 23-28/41)  On January 15, 2019, the Court orally denied all motions for summary judgment, without discussion of Varvatos's defenses, other than those three defenses.  The Court should dismiss Varvatos's remaining defenses, for which Varvatos has offered no evidence.

III.

THE JURY SHOULD DETERMINE WHETHER VARVATOS'S
VIOLATION WAS WILLFUL AND WHETHER INCREASED
LIQUIDATED DAMAGES ARE APPROPRIATE

"Willfulness" is relevant, at a minimum, to whether an EPA Plaintiff may apply a three-year statute of limitations, and whether liquidated damages of up to 300 percent of the back pay damages are available under the NY EPA for "pulls" after January 19, 2016.

"A defendant's violation of the Equal Pay Act is willful or reckless within the meaning of § 255(a) if 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" Pollis v. New Sch. for Soc. Research, 132 F.3d 115, 119 (2d Cir. 1997)(quoting Reich v. Waldbaum, Inc., 52 F.3d 35, 39 (2d Cir. 1995)).  "A plaintiff need not show that an employer acted with intent to discriminate or in bad faith." Pollis, *Id.* citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 126 n. 19 (1985)).

Evidence that demonstrates that the defendant was aware of a payment disparity between male and female employees in comparable positions, but failed to rectify the disparity, is

27

sufficient to support a finding of willfulness. <u>Pollis v. New Sch. for Soc. Research</u>, 132 F.3d 115, 120 (2d Cir. 1997)("This evidence—that the New School knew that Pollis was paid less than comparable males, but did not rectify the situation—is sufficient to support the jury's finding of reckless or willful violation of the Equal Pay Act.")(<u>citing E.E.O.C. v. Delaware Dep't of Health and Soc. Servs.</u>, 865 F.2d 1408, 1419 (3rd Cir. 1989)).

Here, Varvatos knew that the male sales professionals received the Clothing Allowance and the female sales professionals did not, despite the comparable nature of the jobs.  The Clothing Allowance facially discriminates between male and female sales professionals. Numerous female sales professionals complained about the discriminatory Clothing Allowance policy, both orally and in writing. (Dkt. 188-6 at 70:24-73:10)  Varvatos gives its female sales professionals in the United Kingdom a clothing allowance to "make them 'whole.'" (Dkt. 188-19)  Varvatos's senior director of human resources explicitly acknowledged in an email to a human resources professional at Marc Jacobs that "males will get an allowance, females in similar positions and levels will not." (Dkt. 188-19)

If the jury concludes that Varvatos's violation of the EPA was willful, the Court should allow the jury to award liquidated damages up to 300% for those "pulls" on or after January 19, 2016.

IV.

THE JURY SHOULD DETERMINE WHETHER
PUNITIVE DAMAGES ARE APPROPRIATE UNDER TITLE VII

42 U.S.C. § 1981a(b)(1) sets forth the standard for an award of punitive damages:

"A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."

Applying this statute, the Supreme Court in Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 536 (1999), held an award of punitive damages requires that "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law." See also Tse v. UBS Fin. Servs., Inc., 568 F. Supp.2d 274, 309 (S.D.N.Y. 2008)("In order to recover punitive damages, plaintiff must prove only that the employer intentionally acted with the knowledge that it may be acting 'in violation of' the law, even if it did not know it was 'engaging in discrimination.'")(quoting Farias v. Instructional Systems, Inc., 259 F.3d 91, 101 (2d Cir. 2001)). In Kolstad, the Supreme Court rejected the holding of an *en banc* panel of the United States Court of Appeals for the D.C. Circuit that held that a plaintiff must prove egregious misconduct. Kolstad, 527 U.S. at 535 ("While egregious misconduct is evidence of the requisite mental state, [citation omitted], § 1981a does not limit plaintiffs to this form of evidence, and the section does not require a showing of egregious or outrageous discrimination independent of the employer's state of mind. Nor does the statute's structure imply an independent role for 'egregiousness' in the face of congressional silence.").

Evidence that the employer was generally familiar with anti-discrimination law creates a question of fact for the jury as to whether punitive damages are appropriate. Zimmermann v. Assocs. First Capital Corp., 251 F.3d 376, 385 (2d Cir. 2001)("However, we agree with Judge Spatt that Haslam's acknowledgment of training in 'equal opportunity' permits an inference of the requisite mental state"); Tse v. UBS Fin. Servs., Inc., 568 F. Supp.2d 274, 309 (S.D.N.Y. 2008)("Evidence that the employer was generally familiar with anti-discrimination law when it committed the discriminatory act is sufficient to permit the inference that it acted with the requisite state of mind to justify an award of punitive damages."); Parrish v. Sollecito, 280 F. Supp.2d 145, 153 (S.D.N.Y. 2003)("Moreover, general knowledge of anti-discrimination law

29

and policy is sufficient to ascribe awareness that particular discriminatory acts are prohibited by federal law.").  See Hill v. Airborne Freight Corp., 212 F. Supp.2d 59, 76 (E.D.N.Y. 2002), aff'd, 93 F. App'x 260 (2d Cir. 2004)("Arguably, it was reasonable for the jury to infer that Airborne's managers knew that their actions were in violation of federal law simply by virtue of the well-established Supreme Court case law on discrimination and retaliation, the long standing statutory schemes proscribing such conduct, the size of Airborne, and the common knowledge in today's society that employment discrimination is impermissible.").

In addition, courts have found that the same evidence that a plaintiff uses to prove intent for liability purposes under Title VII often proves malice or reckless indifference under Section 1981a. Passantino v. Johnson & Johnson Consumer Prod., Inc., 212 F.3d 493, 515 (9th Cir. 2000) ("Thus, in general, intentional discrimination is enough to establish punitive damages liability."); Che v. Massachusetts Bay Transp. Auth., 342 F.3d 31, 41 (1st Cir. 2003)("In fact, we have continued to recognize that 'acts of intentional discrimination are just the sort of conduct that punitive damages are aimed to deter.'")(quoting DiMarco–Zappa v. Cabanillas, 238 F.3d 25, 38 (1st Cir. 2001)).

At trial, the Plaintiffs will offer substantial evidence that Varvatos discriminated in the face of a perceived risk that it was violating Title VII, including that: (i) Varvatos is a large, sophisticated company with a Human Resources department (Dkt. 188-1 at 14:15-19), (ii) Varvatos represents to its employees in its Employee Handbook that Varvatos provides "equal employment opportunities" to all employees and that Varvatos complies with all federal, local, and state anti-discrimination laws; (iii) numerous female sales professionals complained to Varvatos about the Clothing Allowance policy, both orally and in writing (Dkt. 188-6 at 70:24-73:10); (iv) Varvatos has at times informed its female sales professionals that it is working on

30

implementing a Clothing Allowance for female sales professionals, including in response to complaints from female sales professionals (Dkt. 188-29; Dkt. 188-20); and (v) while Varvatos gives female employees in the United Kingdom a clothing allowance to "make them 'whole'" (Dkt. 188-19), Varvatos warned its employees to keep that policy secret from female sales professionals in the United States. (Dkt. 188-15 at JVE-001660).

The Court should therefore allow the jury to determine whether punitive damages are appropriate under Title VII.

Dated: New York, New York
       April 25, 2019

DUNNEGAN & SCILEPPI LLC

By _s/William Dunnegan_____
    William Dunnegan (WD9316)
    wd@dunnegan.com
    Richard Weiss (RW4039)
    rw@dunnegan.com
Attorneys for the Plaintiff, the 13
    Opt-In Plaintiffs and the Class
350 Fifth Avenue
New York, New York 10118
(212) 332-8300