**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TESSA KNOX<br><br>            Plaintiff,<br><br>    v.<br><br>JOHN VARVATOS ENTERPRISES, INC.<br>                  Defendant. | Civil Action No. 1:17-CV-00772<br>(GWG) |

**DEFENDANT JOHN VARVATOS ENTERPRISES, INC.'S**
**TRIAL MEMORANDUM OF LAW**

93910104_1

## TABLE OF CONTENTS

I.  PLAINTIFFS' PROPOSED "MOTIVATING FACTOR" INSTRUCTION IS IMPROPER, AND THE "BUT FOR" TEST PLAINTIFFS ADVOCATE IS INAPPLICABLE HERE......................................................................................1

II.  THE "BONA FIDE OCCUPATIONAL QUALIFICATION" DEFENSE IS AVAILABLE TO VARVATOS AND THE COURT SHOULD INSTRUCT THE JURY ACCORDINGLY. ........................................................................3

III.  THE "BUSINESS NECESSITY" DEFENSE IS AVAILABLE TO VARVATOS AND THE COURT SHOULD INSTRUCT THE JURY ACCORDINGLY......................5

IV.  THE "FACTOR OTHER THAN SEX" DEFENSE IS AVAILABLE TO VARVATOS AND THE COURT SHOULD INSTRUCT THE JURY ACCORDINGLY. .......................................................................................6

V.  VARVATOS NEED NOT DEMONSTRATE THE ABSENCE OF LESS DISCRIMINATORY ALTERNATIVES TO ESTABLISH ITS BFOQ DEFENSE...........................................................................................8

VI.  TO THE EXTENT THE AVAILABILITY OF LESS DISCRIMINATORY ALTERNATIVES IS RELEVANT TO ANY OF VARAVATOS' DEFENSES, PLAINTIFFS BEAR THE BURDEN OF DEMONSTRATING THAT SUCH ALTERNATIVES ARE REASONABLE, EQUALLY EFFECTIVE, AND COMPARABLE IN COST TO THE CHALLENGED POLICIES. ..................9

VII.  THIS COURT SHOULD EXCLUDE ALL EVIDENCE REGARDING THE LIABILITY INSURANCE POLICY HELD BY VARVATOS. ......................................11

VIII.  PLAINTIFFS IMPROPERLY CATEGORIZE THE QUESTION OF WHETHER VARVATOS WILLFULLY VIOLATED THE EQUAL PAY ACT AS A LIABILITY ISSUE...........................................................................13

IX.  PLAINTIFFS' PROPOSED PHASING OF THE TRIAL IS INEFFICIENT AND WOULD RESULT IN UNDUE PREJUDICE TO VARVATOS. ...................................14

93910104_1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520 (2d Cir. 1992) (quoting 109
 Cong. Rec. 9196 (1963) ................................................................................................7

*Anderson v. Aparicio*, 25 F. Supp. 3d 303 (E.D.N.Y. 2014), *aff'd and remanded
 on other grounds sub nom. Anderson v. Cty. of Suffolk*, 621 F. App'x 54 (2d
 Cir. 2015) .....................................................................................................................11

*Bauer v. Lynch*, 812 F.3d at 351 ..........................................................................1, 2, 3

*Belfi v. Prendergast*, 191 F.3d 129 (2d Cir. 1999) ...............................................6

*Capaldo v. Pan Am. Fed. Credit Union*, No. 86 CV 1944, 1987 WL 9687
 (E.D.N.Y. Mar. 30, 1987), *aff'd sub nom. Capaldo v. Pan Am Fed. Credit
 Union*, 837 F.2d 1086 (2d Cir. 1987) ......................................................................7,8

*City of Los Angeles, Dep't of Water & Power v. Manhart*, 435 U.S. 702 (1978) .................1, 2

*Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253 (S.D.N.Y. 2011) ....................14

*Drury v. Waterfront Media, Inc.*, No. 05 CIV. 10646 (JSR), 2007 WL 737486
 (S.D.N.Y. Mar. 8, 2007) ..............................................................................................6

*Ebbert v. Nassau Cty.*, No. 05-CV-5445 (FB) (AKT), 2009 WL 935812
 (E.D.N.Y. Mar. 31, 2009) ............................................................................................13

*Ferrara v. City of Yonkers*, No. 13 CIV. 1221 KBF, 2015 WL 2414542 (S.D.N.Y.
 May 21, 2015) ................................................................................................................4

*Fesel v. Masonic Home of Delaware, Inc.*, 447 F. Supp. 1346 (D. Del. 1978),
 *aff'd*, 591 F.2d 1334 (3d Cir. 1979) ......................................................................10, 11

*Furnco Construction Corp. v. Waters*, 438 U.S. 567 (1978) ...............................10

*Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81 (2d Cir. 2000) ..............10

*Halladay v. Verschoor*, 381 F.2d 100 (8th Cir.1967) ..........................................12

*Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123 (2d Cir. 1996)...........................................6

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v.
 Johnson Controls, Inc.*, 499 U.S. 187 (1991) ..........................................................10

*Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011)..........................................15

*Lawson v. Trowbridge*, 153 F.3d 368 (7th Cir.1998) ...................................................12

*Levin v. Delta Air Lines, Inc.*, 730 F.2d 994 (5th Cir. 1984) .........................................10

*Longo v. Carlisle DeCoppet & Co.*, 537 F.2d 685 (2d Cir. 1976)....................................7

*M.O.C.H.A. Soc'y, Inc. v. City of Buffalo*, 689 F.3d 263 (2d Cir. 2012) .....................5, 9

*Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989)......................................................10

*Scherer v. City of New York*, No. 03 CIV. 8445 (RWS), 2007 WL 2710100
   (S.D.N.Y. Sept. 7, 2007) .........................................................................................12

*Tavora v. New York Mercantile Exch.*, 101 F.3d 907 (2d Cir. 1996) ..............................7

*Wards Cove Packing Co. v. Atonio*, 490 U.S. 642 (1989).........................................9, 10

*Washington Cty. v. Gunther*, 452 U.S. 161 (1981), 109 Cong. Rec. 9203 (1963) .......6, 7

*Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977 (1988)................................................9

*Westchester Cty. Corr. v. Cty. of Westchester*, 346 F. Supp. 2d 527 (S.D.N.Y.
   2004) ..................................................................................................................3, 8, 9

*Western Air Lines, Inc. v. Criswell,* 472 U.S. 400 (1985) ...............................................3

*Williams v. McCarthy*, No. 05 CIV. 10230 (SAS), 2007 WL 3125314 (S.D.N.Y.
   Oct. 25, 2007) .......................................................................................................12

**Statutes and Rules**

42 U.S.C.A. § 2000e-2 (West 2019).................................................................................3

29 U.S.C. § 206(d)(1)(iv) (West 2019).............................................................................6

29 U.S.C. § 255(a) ....................................................................................................13, 14

Equal Pay Act ......................................................................................................2, 6, 13

Federal Rule of Evidence 403..........................................................................................12

N.Y. Lab. L. § 198(1-a) ...................................................................................................14

New York Equal Pay Act..................................................................................................14

New York Human Rights Law ..........................................................................................4

93910104_1

New York Labor Law ...................................................................................................................15

**Regulations**

29 C.F.R. § 1604.2(a)(2) (2019) ....................................................................................................4

**Secondary Sources**

Lex K. Larson, 3 Larson on Employment Discrimination § 43.03……………………………..4

## PRELIMINARY STATEMENT

This case is not about unlawful treatment between men and women.  It is not even about unfair treatment between men and women.  Rather, it is about a menswear company[1] that lawfully markets its clothes by requiring its male sales professionals—and only its male sales professionals—to wear/model them at work, and accordingly provides clothing assistance to men and women that is commensurate with their respective job requirements.

This trial memorandum addresses the issues of law that have arisen in the course of the preparation of the parties' joint pretrial submissions.  In conjunction with this trial memorandum, Varvatos is submitting a separate motion *in limine* to exclude evidence regarding (1) Varvatos' clothing assistance policies in the United Kingdom; and (2) a YouTube video published by Playboy that depicts a woman wearing a Playboy bunny tee shirt designed by Varvatos for men.

## ARGUMENT

### I.      PLAINTIFFS' PROPOSED "MOTIVATING FACTOR" INSTRUCTION IS IMPROPER, AND THE "BUT FOR" TEST PLAINTIFFS ADVOCATE IS INAPPLICABLE HERE.

Plaintiffs seek to instruct the jury regarding the "but for" test established in *City of Los Angeles, Dep't of Water & Power v. Manhart*, 435 U.S. 702 (1978), but as the court held in *Bauer v. Lynch*, the *Manhart* "but for" test is not applicable where, as here, there is evidence that the challenged policy distinguishes between the sexes in order to proportionately account for the different constraints they face.  812 F.3d 340, 351 (4th Cir. 2016).

In *Bauer v. Lynch*, the court held that a policy that facially distinguished between men and women by requiring male FBI agent trainees to perform a larger number of push-ups

---

1.   Plaintiffs have refused to stipulate that Varvatos designs and markets clothes for men.

than female FBI trainees to demonstrate their physical fitness did not constitute unlawful discrimination under Title VII even though had the male plaintiff been female, he would have been held to a lower standard.  *Id.*  There, the court rejected the application of the *Manhart* test because a "singular focus on the 'but for' element of Bauer's claim offers the obvious conclusion that the numbers of push-ups men and women must complete are not the same, but skirts the fundamental issue of whether those normalized requirements treat men in a different manner than women."  *Id.*  The court in *Bauer* ultimately held that even though the policy at issue explicitly required different minimum numbers of push-ups for men and women, the policy properly accounted for the different physiological constraints faced by men and women, and therefore did not constitute prohibited discrimination under Title VII.  *Id.*  *Bauer* stands for the proposition that facially distinguishing between the sexes does not always constitute unlawful discrimination against one or the other.  *Id.*

This case is more similar to *Bauer* than *Manhart* in that the differential in clothing assistance provided to male and female sales professionals accords with the different dress code requirements imposed on male and female sales professionals, and therefore is not unlawfully discriminatory under Title VII.  Accordingly, the overly simplistic "but for" language from *Manhart* is not applicable here.  *See Bauer*, 812 F.3d at 351 ("Put succinctly, an employer does not contravene Title VII when it utilizes physical fitness standards that distinguish between the sexes on the basis of their physiological differences but impose an equal burden of compliance on both men and women, requiring the same level of physical fitness of each.  Because the FBI purports to assess physical fitness by imposing the same burden on both men and women, this rule applies to Bauer's Title VII claims.").

Relatedly, Plaintiffs seek to instruct the jury that if they "find for the Equal Pay Act claims that the jobs performed by sales professionals who are male and sales professionals who are female were substantially similar, then the Title VII class can prove that sex was a motivating factor in Varvatos' decision to not give them a clothing allowance if they can prove the existence of a facially discriminatory policy."  However, for the reasons discussed above, simply finding that a policy distinguishes between men and women on its face is not categorically sufficient in and of itself to show that sex was a motivating factor in Varvatos' decision to provide different clothing assistance to male and female sales professionals.  *See Bauer v. Lynch*, 812 F.3d at 351.

## II.   THE "BONA FIDE OCCUPATIONAL QUALIFICATION" DEFENSE IS AVAILABLE TO VARVATOS AND THE COURT SHOULD INSTRUCT THE JURY ACCORDINGLY.

Plaintiffs contend that the Court should not instruct the jury on the bona fide occupational qualification ("BFOQ") affirmative defense, but their position relies on an overly simplistic reading of the relevant statutory language.  The statutory language establishing the BFOQ defense provides that it shall not be unlawful for an employer to discriminate on the basis of sex where sex "is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise."  42 U.S.C.A. § 2000e-2 (West 2019).  To succeed on a BFOQ defense, an employer must prove: (1) that the qualification relates to the essence or central function of the employer's business, and (2) the qualification is reasonably necessary to the employer's business.  *See Westchester Cty. Corr. v. Cty. of Westchester*, 346 F. Supp. 2d 527, 533 (S.D.N.Y. 2004) ("Therefore, in order to sustain a BFOQ defense, the Defendants must show 1. the job qualifications that the employer invokes to justify his discrimination must relate to the essence or central function of his business, and 2. they must be

'reasonably necessary' to the particular business.") (citing *Western Air Lines, Inc. v. Criswell,*
472 U.S. 400, 414–415 (1985)).

      The sex of an employee may constitute a bona fide occupational qualification
where it is "necessary for the purpose of authenticity or genuineness." 29 C.F.R. § 1604.2(a)(2)
(2019); *see also Ferrara v. City of Yonkers*, No. 13 CIV. 1221 KBF, 2015 WL 2414542, at *4
(S.D.N.Y. May 21, 2015) (rejecting plaintiff's Title VII and New York Human Rights Law
claims because sex was a BFOQ.  For instance, hiring only male actors to play male roles would
be permissible under Title VII because being male would generally be considered a bona fide
occupational qualification for playing a male role.  *See* 29 CFR § 1604.2(a)(2).  Similarly, "[i]f
the product to be advertised is a man's razor, the television commercial must have a man shaving
his face."  Lex K. Larson, 3 Larson on Employment Discrimination § 43.03 (Lexis, 2019
update).

      The BFOQ defense applies here because it permits Varvatos, whose central
business objective is to design and sell menswear, to require only men to wear exclusively
Varvatos clothing while working, and to provide them with clothing assistance to help them
comply with that requirement.  Because Varvatos does not sell women's clothes, Varvatos does
not require its female sales professionals to wear/model Varvatos' clothing while working.
Instead, female sales professionals are only required to comport with a general dress code that
involves wearing professional clothes that blend with Varavatos' colors and fabrics.
Accordingly, the clothing assistance Varvatos provides to its female sales professionals is
commensurate with their more lenient dress code requirements.

      Plaintiffs have previously argued that the BFOQ defense is not available to
Varvatos because this case involves a compensation claim, for which Plaintiffs contend the

BFOQ defense is not available.  But Plaintiffs' position relies on a simplistic reading of the relevant statutory provision.  Title VII provides that employers may "hire and employ employees on the basis of sex where sex is a bona fide occupational qualification.  *See* 42 U.S.C.A. § 2000e-2(e)(1).  It defies common sense to interpret that language, as Plaintiffs argue, to mean that the BFOQ defense cannot justify providing different clothing assistance to men and women who are permissibly hired to perform different roles and therefore have different dress requirements.  Because the BFOQ defense allows Varvatos to employ only men to wear/model the menswear Varvatos sells, and because the differential in clothing assistance between male sales professionals and female sales professionals is directly related to the different, valid job requirements for male and female sales professionals, the BFOQ defense is available.

## III.   THE "BUSINESS NECESSITY" DEFENSE IS AVAILABLE TO VARVATOS AND THE COURT SHOULD INSTRUCT THE JURY ACCORDINGLY.

Plaintiffs object to the inclusion of a jury instruction regarding the business necessity defense on the grounds that the business necessity defense is categorically not available to claims involving disparate treatment.  However, in *M.O.C.H.A. Soc'y, Inc. v. City of Buffalo*, the Second Circuit expressly found that "an employer cannot be held liable under Title VII, **whether on a theory of disparate treatment or disparate impact**, for conduct justified by business necessity."  689 F.3d 263, 283 (2d Cir. 2012) (emphasis added).  There, the court affirmed the district court's ruling that disparate treatment was justified by business necessity.  *Id.*  ("In awarding summary judgment to Buffalo on M.O.C.H.A.'s disparate treatment claim, the district court relied on its previous finding that the 1998 examination was job related and, thus, justified by business necessity.").  Accordingly, the Court should instruct the jury as to the business necessity defense here.

IV.    THE "FACTOR OTHER THAN SEX" DEFENSE IS AVAILABLE TO VARVATOS AND THE COURT SHOULD INSTRUCT THE JURY ACCORDINGLY.

Even if Plaintiffs can carry their burden to show by a preponderance of evidence that Varvatos paid unequal wages on the basis of sex for equal work, Plaintiffs cannot succeed in establishing unlawful discrimination under the Equal Pay Act ("EPA"), Title VII, or their state analogs where, as here, the alleged difference is attributable to a factor other than sex. *See* 29 U.S.C. § 206(d)(1)(iv) (West 2019); *Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123, 132 (2d Cir. 1996) ("The Supreme Court has held that the Bennett Amendment to Title VII incorporates the enumerated affirmative defenses of the Equal Pay Act into Title VII in sex discrimination cases."); *Drury v. Waterfront Media, Inc.*, No. 05 CIV. 10646 (JSR), 2007 WL 737486, at *5 (S.D.N.Y. Mar. 8, 2007) ("Title VII incorporates the affirmative defenses set forth in the Equal Pay Act which permit wage disparities between men and women pursuant to a differential based on any factor other than sex."). To succeed on a "factor other than sex" defense, an employer must "demonstrate that it had a legitimate business reason" for implementing the factor responsible for the wage differential. *Belfi v. Prendergast*, 191 F.3d 129, 136 (2d Cir. 1999).

The legislative history of the Equal Pay Act makes clear that the "factor other than sex" defense is broad. Earlier versions of the Equal Pay bill were amended to incorporate the "factor other than sex" defense "because of a concern that bona fide job-evaluation systems used by American businesses would otherwise be disrupted." *Washington Cty. v. Gunther*, 452 U.S. 161, 171 n. 11 (1981). During the debate preceding the passage of the Equal Pay Act, "Representative Griffin, for example, explained that the [factor other than sex] defense is a 'broad principle,' which 'makes clear and explicitly states that a differential based on any factor or factors other than sex would not violate this legislation.'" *Id.* (quoting 109 Cong. Rec. 9203 (1963) and citing *id.*, at 9196 (remarks of Rep. Frelinghuysen); *id.*, at 9197-9198 (remarks of

Rep. Griffin); *id.* at 9203 (remarks of Rep. Thompson); *id.*, at 9198 (remarks of Rep.

Goodell); *id.*, at 9202 (remarks of Rep. Kelly); *id.*, at 9209 (remarks of Rep. Goodell); *id.*, at

9217 (remarks of Reps. Pucinski and Thompson)).  During that same debate, Representative

Frelinghuysen explained the difference between an acceptable factor and an unacceptable factor

that would justify a difference in compensation:

> The inequities which this legislation seeks to correct are apparent to us all . . . .  As
> [an] example, the [job] classification names may not match—there would be male
> packagers and female selectors, nonetheless the work the two groups perform is
> identical in every respect. This . . . would be a violation if men as a group
> received more pay than the women.  **On the other hand, the male packagers may
> be required to lift the heavy crates off the assembly line and place them on
> dollies or do various jobs requiring additional physical effort.  The women
> selectors may work on the assembly line, selecting small items, for example,
> and placing them in crates.  This would be a significant difference which would
> justify a difference in pay.**

*Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 525–26 (2d Cir. 1992) (quoting 109 Cong.

Rec. 9196 (1963)) (emphasis added).

        Similarly, here the difference in clothing assistance is directly attributable to

whether the employee is required to comply with the Varvatos-only dress code, which is a factor

other than sex.  Although only men are required to comply with the Varvatos-only dress code,

courts repeatedly have found that sex-specific dress codes and grooming standards do not

themselves unlawfully discriminate based on sex.  *See Longo v. Carlisle DeCoppet & Co.*, 537

F.2d 685, 685 (2d Cir. 1976) ("All four courts of appeals that have ruled on the question have

held that requiring short hair on men and not on women does not violate Title VII."); *see also*

*Tavora v. New York Mercantile Exch.*, 101 F.3d 907, 908 (2d Cir. 1996) (rejecting plaintiff's

contention that his employer's policy "limiting hair length for male employees but imposing no

similar restriction on female employees[] discriminates against male employees on the basis of

gender in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*"); *Capaldo v. Pan Am. Fed. Credit*

*Union*, No. 86 CV 1944, 1987 WL 9687, at *2 (E.D.N.Y. Mar. 30, 1987) ("The Second Circuit has adopted the position of other Circuits as to the permissibility of such minor sex-based distinctions in dress and grooming codes."), *aff'd sub nom. Capaldo v. Pan Am Fed. Credit Union*, 837 F.2d 1086 (2d Cir. 1987).  Thus, the fact that only men are required to comply with the Varvatos-only dress code does not render the requirement to comply with that dress code an impermissible "factor other than sex."

Because the difference in clothing assistance here is directly attributable to the requirement of male employees to comply with a restrictive dress code, the differential is justified by a factor other than sex, and the Court should instruct the jury accordingly.

## V.   VARVATOS NEED NOT DEMONSTRATE THE ABSENCE OF LESS DISCRIMINATORY ALTERNATIVES TO ESTABLISH ITS BFOQ DEFENSE.

Plaintiffs propose instructing the jury that Varvatos cannot prove a BFOQ defense if the jury determines that Varvatos could accomplish its legitimate business objectives in a non-discriminatory or less discriminatory way, and Varvatos cannot reasonably explain why it did not adopt those non-discriminatory or less discriminatory alternatives.  However, that instruction improperly implies that Varvatos bears the burden of proving that no reasonable alternative to the challenged policies exist to succeed on a BFOQ defense.

In fact, the jury need not consider the availability of alternatives in the context of the BFOQ analysis at all.  *See Westchester Cty. Corr. v. Cty. of Westchester*, 346 F. Supp. at 533 n.7 ("The United States Supreme Court has addressed and applied the BFOQ defense without including this third prong [requiring a defendant to show the unavailability of alternatives] and, in the absence of controlling precedent to the contrary, we find no reason to include it either.").

To the extent the Court finds that consideration of the availability of less discriminatory alternatives to the challenged policies is relevant in the context of the BFOQ

analysis, the Court should instruct the jury that, as under the "business necessity" framework, the burden is on the Plaintiffs to demonstrate the existence of reasonable and equally effective alternatives.  *See id.* (expressly rejecting the argument that a defendant is required to show that some less restrictive alternative is not available to succeed on a BFOQ defense); *see also M.O.C.H.A. Soc'y, Inc. v. City of Buffalo*, 689 F.3d 263, 274 (2d Cir. 2012) (the plaintiff bears the burden in the context of a business necessity analysis "to show that a different test or selection mechanism would have served the employer's legitimate interests 'without a similarly undesirable racial effect.'") (internal citations omitted).

## VI.  TO THE EXTENT THE AVAILABILITY OF LESS DISCRIMINATORY ALTERNATIVES IS RELEVANT TO ANY OF VARAVATOS' DEFENSES, PLAINTIFFS BEAR THE BURDEN OF DEMONSTRATING THAT SUCH ALTERNATIVES ARE REASONABLE, EQUALLY EFFECTIVE, AND COMPARABLE IN COST TO THE CHALLENGED POLICIES.

To the extent the jury may be permitted to consider the availability of less discriminatory alternatives to achieve Varvatos' stated purpose when considering whether Varvatos has proven its affirmative defenses, any such alternatives must be reasonable, comparable in terms of cost and other burdens to the challenged policies, and equally effective as the challenged policies in achieving Varvatos' legitimate business objectives.  *See Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 661 (1989) (any alternative procedure proposed by plaintiffs "must be equally effective as [the employer's] chosen . . . procedures in achieving [the employer's] legitimate . . . goals.  Moreover, factors such as the cost or other burdens of proposed [alternatives] are relevant in determining whether they would be equally as effective.") (internal quotations omitted); *see also Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 998 (1988) ("Factors such as the cost or other burdens of proposed alternative selection devices are relevant in determining whether they would be equally as effective as the challenged practice in serving the employer's legitimate business goals.").  Courts have consistently warned that "the

judiciary should proceed with care before mandating that an employer must adopt a plaintiff's alternative selection or hiring practice in response to a Title VII suit." *Wards Cove Packing Co.*, 490 U.S. at 661; *see also Furnco Construction Corp. v. Waters*, 438 U.S. 567, 578 (1978); *Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81, 101 n.18 (2d Cir. 2000).

   In their objections to Varvatos' jury instructions, Plaintiffs argue that the limitations on less discriminatory alternatives that may be considered (such as that they be equally as effective as the challenged practice in serving the employer's legitimate business goals) only apply when considering the "business necessity" defense, and not when considering the BFOQ defense.  As discussed above, a defendant need not demonstrate the absence of less discriminatory alternatives to establish a BFOQ defense, which is why the limitations on alternatives is typically discussed under the business necessity framework.  *See* Section V, *supra*.

   However, to the extent this Court finds the consideration of less discriminatory alternatives to be relevant under the BFOQ analysis as well, the Supreme Court has found that "costs are relevant in determining whether a discriminatory policy is reasonably necessary for the normal operation of a business" as required under the BFOQ framework.  *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 217 (1991).  Relatedly, the Supreme Court has stated that "[t]he BFOQ statute . . . reflects 'Congress' unwillingness to require employers to change the very nature of their operations.'" *Id.* at 217–18 (quoting *Price Waterhouse v. Hopkins,* 490 U.S. 228, 242 (1989) (plurality opinion)); *see also Levin v. Delta Air Lines, Inc.*, 730 F.2d 994, 1001 (5th Cir. 1984) ("A 'less discriminatory alternative,' . . . is only that which accords with the employer's customary practices so amenably that the failure to use the alternative indicates that the legitimate concerns supporting the challenged standard are pretextual."); *Fesel v. Masonic Home of Delaware, Inc.*,

447 F. Supp. 1346, 1354 (D. Del. 1978) (finding BFOQ established where the proposed less discriminatory alternative would "give the [defendant] less flexibility" and impose "an added expense upon the defendant"), *aff'd*, 591 F.2d 1334 (3d Cir. 1979).

Accordingly, to the extent this Court finds that the consideration of alternatives is relevant under the BFOQ analysis at all, this Court should instruct the jury that Plaintiffs bear the burden of demonstrating that any less discriminatory alternatives Plaintiffs propose to rebut Varvatos' showing that the requirements for either the BFOQ or the business necessity defense are satisfied are reasonable, equally effective as the challenged policies, and comparable in cost and other burdens to the challenged policies.

## VII.    THIS COURT SHOULD EXCLUDE ALL EVIDENCE REGARDING THE LIABILITY INSURANCE POLICY HELD BY VARVATOS.

For their proposed punitive damages phase of the litigation, Plaintiffs propose (1) admitting evidence of liability insurance, (2) instructing the jury that they may consider "whether Varvatos' insurance company will pay all or any portion of the punitive damages award on Varvatos' behalf," and (3) asking the jury to render a verdict as to whether or not Varvatos has insurance coverage for plaintiffs' claim for punitive damages.  However, evidence regarding Varvatos' liability insurance policy is not relevant unless Varvatos first presents evidence of its poor financial condition, and the evidence of insurance is more prejudicial than probative, particularly here where the insurer has declined coverage.  Moreover, it is inappropriate to ask the jury to interpret a disputed insurance contract, which is not the subject of the litigation.

Courts frequently have found held that evidence that a defendant has deep pockets or is insured or indemnified is not admissible, excerpt where the defendant has first introduced evidence as to its poor financial condition.  *See Anderson v. Aparicio*, 25 F. Supp. 3d 303, 314 (E.D.N.Y. 2014), *aff'd and remanded on other grounds sub nom. Anderson v. Cty. of Suffolk*, 621

F. App'x 54 (2d Cir. 2015); *Williams v. McCarthy*, No. 05 CIV. 10230 (SAS), 2007 WL

3125314, at *7 (S.D.N.Y. Oct. 25, 2007) (precluding evidence of indemnification and citing

cases); *see also, e.g.*, *Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir.1998) ("In the general

case courts exclude evidence of indemnification out of a fear that it will encourage a jury to

inflate its damages award because it knows the government-not the individual defendants-is

footing the bill."); *Halladay v. Verschoor*, 381 F.2d 100, 112 (8th Cir.1967) ("[U]nless the fact

that the plaintiff is insured or otherwise indemnified is a material issue in the case, or unless the

prejudicial effect has been cured by an admonition or instruction to the jury to disregard it, it has

been almost universally held that the receipt of such evidence constitutes prejudicial error

sufficient to require reversal.").

Here, the danger of prejudice from exposing a jury to evidence of Varvatos'

liability insurance agreement is particularly substantial because the insurer already has reserved

its rights, asserting that the policy Plaintiffs seek to admit does not provide coverage as to the

claims in this case.  *See Scherer v. City of New York*, No. 03 CIV. 8445 (RWS), 2007 WL

2710100, at *10 (S.D.N.Y. Sept. 7, 2007) ("[W]hen indemnification is less than certain,

admissibility of such evidence should be decided pursuant to the well-established constraints of

Federal Rule of Evidence 403. The trial judge must examine the likelihood of indemnification,

and determine whether the 'probative value' of the evidence would be 'substantially outweighed

by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'").

Moreover, it would be inappropriate to ask the jury to interpret the disputed

language in Varvatos' insurance policy to determine whether Varvatos in fact has insurance

coverage for plaintiffs' claim for punitive damages, as Plaintiffs propose doing on their proposed

verdict sheet.  This is particularly true here, where the insurer is not a party; the jury would be

asked to interpret a contract governed by a specialized area of law, *i.e.*, insurance law, without the benefit of a full trial on that particular contract; and the jury's verdict as to the scope of Varvatos' coverage would have no binding impact on the insurer's obligations under the policy, but may prejudice Varvatos' ability to seek coverage from its insurer.

Accordingly, given the widely understood prejudicial effect of exposing a jury to an insurance agreement in general, and the already-existing dispute regarding coverage of any damages that might arise from this lawsuit under the relevant insurance agreement here, this Court should exclude all evidence related to Varvatos' insurance coverage, decline to instruct the jury with respect to insurance, and reject Plaintiffs' proposed verdict sheet question regarding insurance coverage, even if Varvatos opts to present evidence of its poor financial condition.[2]  In the alternative, at the very least, the Court should exclude evidence related to Varvatos' insurance policy unless Varvatos first introduces evidence of its poor financial condition.

## VIII.   PLAINTIFFS IMPROPERLY CATEGORIZE THE QUESTION OF WHETHER VARVATOS WILLFULLY VIOLATED THE EQUAL PAY ACT AS A LIABILITY ISSUE.

Plaintiffs improperly categorize the question of whether Varvatos willfully violated the Equal Pay Act, which would result in an extension of the statute of limitations to three years prior to this lawsuit (rather than two), as a liability issue.  Yet at its core, this issue goes to damages and should be considered in conjunction with the other damages issues.  *See* 29 U.S.C. § 255(a) (EPA violations only entitle plaintiffs to two years' worth of damages unless they can demonstrate that a violation was "willful."); *Ebbert v. Nassau Cty.*, No. 05-CV-5445 (FB) (AKT), 2009 WL 935812, at *6 (E.D.N.Y. Mar. 31, 2009) (The "statute of limitations defense affects only the amount of damages each plaintiff may recover.  Since the parties have

---

2.   Varvatos has included documents relevant to its financial condition and status of insurance coverage on its exhibit list purely for protective reasons.

agreed to bifurcate this action into liability and damages phases, the Court will wait until the end

of the liability phase to determine whether there is sufficient evidence of willfulness to submit

the issue to the jury.").

## IX.   PLAINTIFFS' PROPOSED PHASING OF THE TRIAL IS INEFFICIENT AND WOULD RESULT IN UNDUE PREJUDICE TO VARVATOS.

Varvatos and Plaintiffs agree that the trial should be conducted in phases.  Yet

they disagree on which particular issues should be covered by each phase.  Plaintiffs are

proposing that (i) Phase 1 of the trial cover liability, willfulness under the EPA, compensatory

damages, and whether or not Plaintiffs are entitled to punitive damages and (ii) Phase 2 should

cover the amount of punitive damages, willfulness under the NYEPA and the amount of

liquidated damages under the NYEPA (*see, e.g.*, Plaintiffs' Proposed Instruction No.

43).  Varvatos is proposing that (i) Phase 1 of the trial cover liability and compensatory damages

and (ii) Phase 2 cover all potential damages-enhancement issues that the jury can decide.

Varvatos' proposed phasing of the trial is preferable to Plaintiffs' proposal for the following

three reasons:

First, Varvatos properly includes the considerations of damages-enhancements

under the EPA and the NYEPA together in one phase.  Both the question of whether Plaintiffs

are entitled to three years' versus two years' worth of compensatory damages under the EPA and

the question of whether Plaintiffs are entitled to enhanced liquidated damages under the New

York Equal Pay Act involve a determination of willfulness.  *See* 29 U.S.C. § 255(a) (EPA

violations only entitle plaintiffs to two years' worth of damages unless they can demonstrate that

a violation was "willful."), N.Y. Lab. L. § 198(1-a) ("such liquidated damages may be up to

three hundred percent of the total amount of the wages found to be due for a willful violation of

section one hundred ninety-four of this article.").  The willfulness analysis is the same under

both statutes.  *See Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 317 (S.D.N.Y.

2011) ("The 'willful' standard under the New York Labor Law 'does not appreciably differ from

the FLSA's willfulness standard' in connection with its statute of limitations." (*quoting Kuebel v.*

*Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011)).

        Therefore, it is most efficient that the jury be instructed once on this issue and

consider it once.  Instructing the jury in two different phases on the same issue and having the

jury make that determination twice is not only likely to create confusion, but also create the risk

of inconsistent verdicts on the same question of willfulness.  Moreover, it would be prejudicial to

include the question of willfulness in the same phase as liability and compensatory damages,

because doing so would require that the jury be instructed as to damages enhancements

prematurely, which could confuse the jury and cause them to believe they should be finding

liability and awarding higher damages.

        <u>Second</u>, given the nature of this case, Plaintiffs' proposed phasing will minimize

burdening the jury with multiple instructions and questions in any one phase.  Because this case

involves multiple issues of liability under different federal and state statutes, and multiple issues

of damages including compensatory damages, punitive damages, damage enhancements under

the EPA, and liquidated damages under the NYEPA, Varvatos' proposed phasing will help split

the number of issues that the jury will need to consider in each phase in a manageable and logical

fashion.

        <u>Third</u>, Plaintiffs' proposed phasing is potentially prejudicial.  Again, given the

nature of this case, Plaintiffs proposal would require that, for Phase 1, the Court instruct the jury

on liability as well as on compensatory damages, punitive damages and damage-enhancements

under the EPA, all together.  The extensive instructions on (multiple) damages issues following

the instructions on liability creates a real risk that, despite caution from the Court, the jury is left with the incorrect impression that it is expected to award some type of damages.  Such an approach has the potential of coloring the jury's deliberations on the questions of liability, and is, therefore, prejudicial against Varvatos.  This prejudice can be easily avoided by instructing the jury on liability and compensatory damages only in Phase 1 and all damage-enhancement issues in Phase 2.

## **CONCLUSION**

For the foregoing reasons, Varvatos respectfully requests that the Court rule in favor of Varvatos as to the issues addressed here.

Dated: New York, New York
      April 25, 2019

Respectfully submitted,

HUGHES HUBBARD & REED LLP

By:      /s/ Ned H. Bassen
    Ned H. Bassen
    Amina Hassan
One Battery Park Plaza
New York, New York 10004-1482
Telephone:  212-837-6000
Facsimile:  212-422-4726
ned.bassen@hugheshubbard.com
amina.hassan@hugheshubbard.com

*Attorneys for Defendant John Varvatos Enterprises, Inc.*