**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TESSA KNOX,

Plaintiff,

v.

JOHN VARVATOS ENTERPRISES, INC.

Defendants.

No. 17-CV-00772 (GWG)

**VARVATOS' OPPOSITION TO PLAINTIFFS' *MOTION IN LIMINE* TO INTRODUCE
DEFENDANT'S INSURANCE POLICY TO PROVE THE AMOUNT OF PUNITIVE
DAMAGES THE JURY SHOULD AWARD TO IMPACT VARVATOS**

Ned H. Bassen
Amina Hassan
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726
ned.bassen@hugheshubbard.com
amina.hassan@hugheshubbard.com

*Attorneys for Defendant John Varvatos
Enterprises, Inc.*

# TABLE OF CONTENTS

**Page**

STATEMENT OF FACTS ....................................................................................................1

    A.    The Insurance Policy & the Insurer's Position. ......................................................1

    B.    The Parties' Positions Regarding Evidence of Insurance Coverage in the Pretrial Submissions. ..................................................................................3

ARGUMENT ....................................................................................................................5

    I.    PLAINTIFFS ARE NOT PERMITTED TO INTRODUCE EVIDENCE OF THE INSURANCE POLICY TO PROVE THE AMLOUNT OF PUNITIVE DAMAGES THE JURY SHOULD AWARD. ...................................................................................................5

    A.    Plaintiffs Are Not Permitted to Introduce Evidence of the Insurance Policy Under the Law of this Circuit. ....................................................5

    B.    Plaintiffs' Argument That the Jury Must Consider the Insurance Policy to Satisfy the Purpose of Punitive Damages Ignores the Law and the Facts. ..........................................................................................8

    II.    ALLOWING THE JURY TO CONSIDER THE INSURANCY POLICY WOULD UNFAIRLY PREJUDICE VARVATOS.............................10

CONCLUSION ................................................................................................................12

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Aparicio*, 25 F. Supp. 3d 303 (E.D.N.Y. June 12, 2014), *aff'd and remanded on other grounds sub nom. Anderson v. Cty. of Suffolk*, 621 F. App'x 54 (2d Cir. 2015) ....................................................................................*passim*

*Baker v. Armstrong*, 106 N.M. 395 (New Mex. 1987) ...........................................9, 10

*City of West Allis v. Wis. Elec. Power Co.*, 635 N.W.2d 873 (Wis. Ct. App.2001) ......................8

*Hogan v. City of New York,* 2008 WL 189891 (E.D.N.Y. Jan. 18, 2008) ....................................6

*Mathie v. Fries*, 121 F.3d 808 (2d Cir. 1997)..........................................................................6, 7

*Scherer v. City of New York*, No. 03 CIV. 8445 (RWS), 2007 WL 2710100 (S.D.N.Y. Sept. 7, 2007)...........................................................................................6, 10

**Statutes and Rules**

Equal Pay Act ..............................................................................................................11

Federal Rule of Evidence 403............................................................................10, 11

Federal Rule of Evidence 411...............................................................................4

93972763

Defendant John Varvatos Enterprises, Inc. ("Varvatos") respectfully submits this Opposition to Plaintiffs' *Motion in Limine* to Offer Varvatos' Insurance Policy Into Evidence To Prove The Amount Of Punitive Damages The Jury Should Award To Impact Varvatos ("Plaintiffs' Motion," Doc. No. 248, 249).  Varvatos opposes Plaintiffs' Motion because, as set forth below:  (1) Plaintiffs' Motion is contrary to the law in this Circuit; (2) the Court should not extend or modify existing law especially in a case such as this where insurance coverage has been disputed; and (3) the introduction of evidence related to the insurance policy would be unduly prejudicial to Varvatos.

## STATEMENT OF FACTS

### A.      The Insurance Policy & the Insurer's Position.

Varvatos has an employment practices claims coverage insurance policy (the "Insurance Policy") with Ironshore Indemnity Inc. (the "Insurer").  (*See* Varvatos Exhibits, Doc. No. 254-4, Ex. EE.)[1]  Following the filing of this case, the Insurer, on March 14, 2017 and May 19, 2018, sent Varvatos reservation of rights letters, disputing insurance coverage of the Plaintiffs' claims, including but not limited to Plaintiffs' claim for punitive damages.

In particular, the Insurer's March 14, 2017 Letter states the following:

> Ironshore provides Lion Hendrix Corp & Subs (the "Insured") with Employment Practices insurance under the referenced policy (the "Policy"), **with limits of $1,000,000 per Claim and in the aggregate subject to a $100,000 Retention**.  Subject to its terms and conditions, the Policy covers Claims first made and reported during the Policy Period from April 30, 2016 through April 30, 2017.
>
> …

---

1.   Varvatos has included documents relevant to the status of its insurance coverage on its exhibit list, and provided copies to the Court as part of Varvatos' trial-exhibit binder, for protective purposes.

Since Plaintiff is alleging that the Insured has committed an Employment Practices Wrongful Act as such term is defined in Section 3(J) of the Policy, as amended by Endorsement No. 24, coverage will be afforded in this matter subject to the following reservation of rights.

First, Section III. O. of the Policy, states that **Loss[2] shall not include**: (1) civil or criminal fines or penalties imposed by law; (2) taxes; (3) any amount for which an Insured is not financially liable or which is without legal recourse to the Insured; (4) **employment-related benefits of any kind, including, but not limited to, stock options, commissions, profit sharing, termination payments, severance, perquisites, deferred compensation or any other type of compensation other than back pay, front pay or bonus compensation** … or (7) matters which may be deemed uninsurable under the law pursuant to which this Policy shall be construed. Ironshore reserves its rights in accordance with the definition of Loss.

(Varvatos Exbibits, Doc. No. 254-4, Ex. FF (emphasis added; omitting internal footnotes).)

In addition, the Insurer's May 19, 2018 Letter states in relevant part as follows:

… **In this regard, the term Loss is defined at Section II.O. of the policy and specifically excludes "employment-related benefits of any kind**, including, but not limited to, stock options, commissions, profit sharing, termination payments, severance, perquisites, deferred compensation or any other type of compensation other than

---

2.  Loss in the Insurance Policy is defined as follows:  "'Loss' shall mean **compensatory damages** (including back pay and front pay), punitive or exemplary damages, the multiple portion of any multiplied damage award, judgments, settlements, pre- and post-judgment interest, and Costs of Defense.  It is understood and agreed that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage for punitive or exemplary damages or the multiple portion of any multiplied damage award Loss shall not include: (1) civil or criminal fines or penalties imposed by law; (2) taxes; (3) any amount for which an Insured is not financially liable or which is without legal recourse to the Insured; (4) employment-related benefits of any kind, including, but not limited to, stock options, commissions, profit sharing, termination payments, severance, perquisites, deferred compensation or any other type of compensation other than back pay, front pay or bonus compensation; (5) any liability or costs incurred by any Insured to modify any buildings or property in order to make a building or property more accessible or accommodating to any disabled person, or any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy, seminar or monitoring (including, but not limited to, any consulting fees paid to any law firm) relating to or arising out of an Employment Practices Claim; (6) any portion of damages, judgments or settlements arising out of any Claim alleging that the Company paid an inadequate price or consideration for the purchase of securities; or (7) matters which may be deemed uninsurable under the law pursuant to which this Policy shall be construed."  (Varvatos Exbibits, Doc. No. 254-4, Ex. EE (emphasis added).)

2

back pay, front pay or bonus compensation…" As such, any judgment or settlement requiring the payment of a comparable clothing allowance would be excluded under the policy and Ironshore reserves all attendant rights and defenses.

In addition, we note that the SAC alleges "intentional discrimination." In the event it is determined that JV's actions were intentional, any Loss associated with such a finding is uninsurable under the well-established public policy of the State of New York. **Further, to the extent that punitive damages are uninsurable under New York law, coverage is not available under the Ironshore policy.** Therefore, Ironshore reserves all rights and defenses, including the right to deny coverage for any settlement of or judgment entered in the Action.

Further, in light of the expansion of the class, we direct you to Endorsement #21 of the Ironshore Policy which provides as follows:

PRIOR ACTS EXCLUSION

In consideration of the premium charged, **it is hereby understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any claim for any Wrongful Act which occurred prior to April 30, 2012**. Loss arising out of the same Wrongful Act or Related Wrongful Acts shall be deemed to arise from the first such Wrongful Act.

(Varvatos Exbibits, Doc. No. 254-4, Ex. FF (emphasis added, original emphasis removed and omitting internal footnotes).)  Accordingly, to the extent any damages are awarded in this case, insurance coverage for those damages, including punitive damages, has been disputed.

**B.     The Parties' Positions Regarding Evidence of Insurance Coverage in the Pretrial Submissions.**

In the proposed jury instructions (Doc. No. 257), Plaintiffs have proposed that the jury be instructed regarding Varvatos' insurance coverage in the phase of the trial for proving the amount of punitive damages.  In particular, Plaintiffs' Proposed Instructions 38 and 39 include the following instructions regarding the issue, including instructions on interpretation of insurance contracts and specialized doctrines of insurance law:

Plaintiffs' Proposed Instruction No. 38

In making your award of punitive damages you may consider whether or not Varvatos has insurance coverage for plaintiffs' claims for punitive damages in this case.

To determine whether or not Varvatos has insurance coverage for plaintiffs' claims for punitive damages in this case, **you should begin with the question of whether Varvatos's insurance contract with Ironshore Insurance Company insures Varvatos for plaintiffs' claims for punitive damages in this case**.

Varvatos argument that the jury should not consider liability insurance when determining the amount of compensatory damages, as FRE 411 requires, is a reason that the amount of compensatory damages and the amount of punitive damages should be determined in different phases of the trial that will involve the presentation of different evidence.

Plaintiffs' Proposed Instruction No. 39

**There are two steps in the analysis of whether Varvatos's insurance contract with Ironshore Insurance Company, which I will refer to as Ironshore, covers plaintiffs' claims for punitive damages**.

**First, you must determine whether the insurance contract between Varvatos and Ironshore, in itself, provides insurance to Varvatos for plaintiffs' claim for punitive damages**.

If the language of the contract is clear as to whether it covers punitive damages for plaintiffs' claim for punitive damages, then the clear language of the contract controls.

If the language of the contract is ambiguous, then you must interpret the contract based upon all the facts and circumstances to attempt to determine the intent of the parties.

If the facts and circumstances do not allow you to draw a conclusion as to whether the insurance contract provided insurance coverage for plaintiffs' claims for punitive damages, then you should resolve that question against the insurance company and conclude that Varvatos has insurance coverage for plaintiffs' claims for punitive damages in this case.

4

> Second, **even if you find that the insurance policy did not, in itself, provide insurance coverage for the claims of plaintiffs' for punitive damages, then you should determine whether Ironshore will be required to provide insurance coverage to Varvatos under the doctrine of "insurance by estoppel."**
>
> Under the doctrine of insurance by estoppel, if an insurance company represents that it will provide insurance coverage for a claim, and if the insured relies upon that representation of the insurance company to its detriment in taking actions concerning the claim, then the insurance company will be not be allowed to deny insurance coverage.

(Joint Requests to Charge With Objections, Doc. No. 257 at 57-59.)  Varvatos objected to these proposed jury instructions, and to any other related instructions proposed by Plaintiffs and to the submission to the jury of the question of whether or not Varvatos has insurance coverage for any potential damages that may be awarded in this matter.  (*See, e.g.*, *id*. at 57.)  Varvatos supported its position in its Trial Memorandum, filed along with other pretrial submissions on April 25, 2019.  (*See* Defendant John Varvatos Enterprises, Inc.'s Trial Memorandum of Law, Doc. No. 259 at Section VII.)

## ARGUMENT

**I.    PLAINTIFFS ARE NOT PERMITTED TO INTRODUCE EVIDENCE OF THE INSURANCE POLICY TO PROVE THE AMLOUNT OF PUNITIVE DAMAGES THE JURY SHOULD AWARD.**

**A.    Plaintiffs Are Not Permitted to Introduce Evidence of the Insurance Policy Under the Law of this Circuit.**

Under well-established law in this Circuit, a plaintiff may not introduce evidence of a defendant's insurance coverage in connection with determination of the amount of punitive damages unless the defendant has first raised the issue of its limited financial resources to justify a reduction in damages.  *See, e.g.*, *Anderson v. Aparicio*, 25 F. Supp. 3d 303, 314 (E.D.N.Y. June 12, 2014), *aff'd and remanded on other grounds sub nom. Anderson v. Cty. of Suffolk*, 621 F.

5

App'x 54 (2d Cir. 2015) (affirming that the district court properly did not instruct the jury on the

defendant's insurance coverage because "where defendants do not introduce … evidence [of

limited financial resources], [evidence of] indemnification is inadmissible.") (citing *Mathie v.*

*Fries*, 121 F.3d 808, 816 (2d Cir. 1997)); *Scherer v. City of New York*, No. 03 CIV. 8445 (RWS),

2007 WL 2710100, at *10 (S.D.N.Y. Sept. 7, 2007) ("[T]he Second Circuit has held that where

no evidence of financial resources is proffered by the defendant during the trial, it is improper to

instruct a jury to consider the defendant's ability to pay in determining a punitive damages

award.") (omitting citation).

Indeed, under the law of this Circuit, even when courts have permitted the introduction of

evidence of a defendant's insurance coverage, it is for the purpose of rebutting the defendant's

argument that it is unable to pay the damages and <u>not</u> to enhance or fix the minimum amount of

punitive damages, as Plaintiffs' Motion improperly has urged this Court to do.  (*See* Plaintiffs'

Mem. of Law (Doc. No. 249) at 2.)  As the Honorable Magistrate Judge Gary Brown noted in

*Anderson*,

> As Judge Bianco has explained [in *Hogan v. City of New York*],
> "*Mathie* addresses the situation where the existence of an indemnity
> agreement may be relevant to rebut a defendant officer's claim that
> he lacks financial resources for an award of punitive damages.... In
> other words, the indemnification evidence is a shield to rebut claims
> of limited resources by officers."

25 F. Supp. 3d 303 at 313-14 (quoting *Hogan v. City of New York,* 2008 WL 189891, at *6

(E.D.N.Y. Jan. 18, 2008)); *see also Mathie*, 121 F.3d at 816 ("Although we do not decide the

question of whether a fact-finder can rely upon the existence of an indemnity agreement in order

to *increase* an award of punitive damages, we rule that a fact-finder can properly consider the

existence of such an agreement as obviating the need to determine whether a defendant's limited

6

financial resources justifies some *reduction* in the amount that would otherwise be awarded.")
(emphasis in original).  Accordingly, Plaintiffs should not be permitted to present evidence of the
Insurance Policy, at least not unless Varvatos first raises its financial ability to pay, and certainly
not to fix the minimum amount of punitive damages that the jury should award against Varvatos.

Plaintiffs have offered no legal precedent in support of their position that they be
permitted to offer evidence of the Insurance Policy for the purposes of proving the amount of
punitive damages that the jury should award.  Indeed, Plaintiffs concede (*see* Plaintiffs' Mem. of
Law at 6-7) that the Second Circuit has "repeatedly refrained" from deciding whether a plaintiff
can introduce evidence of insurance coverage to increase the award of punitive damages.  *See*
*Anderson*, 25 F. Supp. 3d at 314 ("Though plaintiff sought to introduce evidence to permit the
jury to enhance its punitive damages award based upon indemnification by the County, I believe
this would be inappropriate.  As plaintiff acknowledges, the Second Circuit has repeatedly
refrained from deciding 'whether a fact-finder can rely upon the existence of an indemnity
agreement in order to increase an award of punitive damage.'") (quoting *Mathie*, 121 F.3d at
816).  There is no basis for departing from this well-settled law.  Indeed, here, where the issue of
coverage has been disputed, there is all the more reason to refrain from modifying or extending
the existing law.

Plaintiffs attempt to distinguish *Anderson* on the grounds that *Anderson* involved full
indemnification by a government entity, such that plaintiff would never personally experience
the punishment.  (*See* Plaintiffs' Mem. of Law at 7, n. 1.)  Plaintiffs' distinction is unavailing.
The fact that cases like *Anderson* permit punitive damages to be awarded despite the fact that all
damages would be fully indemnified by the employing municipality, and hold that the fact of

7

indemnification should not go to the jury, clearly indicates that if *full* indemnification is not relevant to a jury's consideration of what punitive damages to award, *partial* indemnification certainly should not be relevant.  Additionally, one of the concerns articulated in cases such as *Anderson* that evidence of indemnification (or insurance) might improperly distort the amount of punitive damages assessed by the jury is equally applicable regardless of the identity of the insurer.  *See City of West Allis v. Wis. Elec. Power Co.*, 635 N.W.2d 873, 889 (Wis. Ct. App.2001) ("The concern that the jury will be improperly influenced by the existence of insurance is greater for punitive damages than it is for compensatory damages.  The natural tendency will be for a jury to use the punitive damages insurance coverage amount as a floor when setting punitive damages, rather than evaluating relevant evidence in deciding on a sum. . . [Accordingly,] the exclusion of evidence of punitive damages insurance is the rule.").

**B.     Plaintiffs' Argument That the Jury Must Consider the Insurance Policy to Satisfy the Purpose of Punitive Damages Ignores the Law and the Facts.**

Plaintiffs' contention that the jury must be able to consider the Insurance Policy in determining the sufficient amount of punitive damages to punish and deter Varvatos and others (*see* Plaintiffs' Mem. of Law at 4-5) also is unsupported.

First, Plaintiffs have cited no authority in support of this position.[3]  If it were the case that evidence of insurance coverage were necessary for a jury to set minimum punitive damages to achieve the purpose of punitive damages, insurance evidence would routinely be entered into evidence in cases involving corporate defendants.  Plaintiff, however, have cited no such case.

---

3.   None of the cases Plaintiffs cite in support of their argument regarding the purpose of punitive damages (*see* Plaintiffs' Mem. of Law at section I.A) involves issues of insurance or indemnification of any kind.

8

Instead, courts routinely preclude evidence of insurance coverage from going to the jury on the question of punitive damages.  *See Anderson*, 25 F. Supp. 3d at 314 (affirming that the district court properly did not instruct the jury on the defendant's insurance coverage in the jury's assessment of punitive damages); *Baker v. Armstrong*, 106 N.M. 395, 398, (New Mex. 1987) ("[P]unitive damages liability coverage is not an asset which can be used to measure true punishment and ... therefore, it should not be considered by the jury in assessing a defendant's financial standing.").  Decisions such as the foregoing demonstrate that punitive damages are typically assessed without reference to insurance coverage – thus it is incorrect, as Plaintiffs argue, that the purpose of punitive damages would be frustrated in this case if the jurors were to be precluded from considering evidence of the Insurance Policy.

Second, Plaintiffs' argument that the jury must consider the Insurance Policy to set a minimum amount of damages to punish Varvatos also ignores the fact that, to the extent that Varvatos might have insurance coverage for punitive damages in this case, that is not free money – Varvatos bought and paid for that coverage.[4]  Moreover, as Plaintiffs implicitly acknowledge in their Motion (Plaintiffs' Mem. of Law at 2), not all jurisdictions permit insurance coverage for punitive damages.  However, it would be illogical if a jurisdiction permitted insurance coverage for punitive damages but then allowed plaintiffs to offer that coverage into evidence so that the jury could award damages over and above the insurance limit and nullify the coverage.

Plaintiffs also incorrectly rely on the argument that juries are "generally" permitted to consider the defendant's wealth or net worth in determining punitive damages.  (*See* Plaintiffs'

---

4.   And in the event that there is a substantial punitive damages award against Varvatos – regardless of whether it is covered by the Insurance Policy – it is likely to impact the premiums of Varvatos' future insurance coverage.

9

Mem. of Law at 5-6.)  As Plaintiffs' Motion acknowledges, that is not the case in every instance

and jurors are by no means *required* to consider net worth when determining punitive damages.

Tellingly, none of the cases Plaintiffs cite in support of this argument involves the more

complicated issue of whether evidence of insurance or indemnification of any kind should go to

a jury.  Nor do any of these cases suggests that evidence of wealth or net worth can go to a jury

where, at a minimum, defendant has not made lack of wealth an issue in the case.  *See Anderson*,

25 F. Supp. 3d at 314 (disallowing plaintiff from introducing evidence of indemnification where

defendant had "scrupulously avoided introducing any evidence of their financial

circumstances.").[5]

## II.    ALLOWING THE JURY TO CONSIDER THE INSURANCY POLICY WOULD UNFAIRLY PREJUDICE VARVATOS.

In addition to the fact that introducing the Insurance Policy as evidence to prove the

amount of punitive damages that the jury should award is contrary to the law, Plaintiffs' Motion

also should be denied because any evidence of the Insurance Policy would be unduly prejudicial

to Varvatos.  *See Scherer,* 2007 WL 2710100, at *10 ("[W]hen indemnification is less than

certain, admissibility of such evidence should be decided pursuant to the well-established

constraints of Federal Rule of Evidence 403.  The trial judge must examine the likelihood of

indemnification, and determine whether the 'probative value' of the evidence would be

---

5.   Moreover, whether insurance constitutes a component of wealth or net worth is itself arguable.  In *Baker v. Armstrong*, for instance, the Supreme Court of New Mexico noted that "punitive damages liability coverage is not an asset which can be used to measure true punishment and ... therefore, it should not be considered by the jury in assessing a defendant's financial standing."  106 N.M. 395, 397 (New Mex. 1987).

10

'substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'")

First, insurance coverage is not being tried in this case.  Thus, the record here regarding Varvatos' insurance coverage is not sufficiently developed for the Court – and certainly not the jury – to determine the likelihood of indemnification.  Further, any probative value of the evidence of Varvatos' disputed insurance coverage is outweighed by the prejudice to Varvatos. *See* FED. R. EVID. 403.

Second, as the case law cited above demonstrates, courts have acknowledged the potential prejudicial value of introducing evidence of insurance coverage in a case.  That prejudice is naturally heightened in a case such as this one, where coverage has been disputed by the insurer (which, in this case is notably not a party to this action).

Third, the issues regarding Varvatos' insurance coverage for any damages awarded in this case are complex and likely to confuse the jury.  By way of example only:  (1) as Plaintiffs' Motion concedes (*see* Plaintiffs' Mem. of Law at 2), whether or not the Insurance Policy covers punitive damages – which the Insurer disputes (*see supra* at 1) – depends on the law of the state that is applied, raising questions whether the jury will need to be instructed on complex questions of choice of law and plaintiff-by-plaintiff on which state's law applies; (2) the definition of compensation and wages under the Equal Pay Act (on which the jury will be instructed during the liability phase of the trial) as including the Clothing Allowance and the AllSaints discount, appears to conflict with how the Insurer interprets "compensation", as excluding the foregoing (*see supra* at 2); and (3) if evidence of the Insurance Policy is permitted to go to the jury, as Plaintiffs' Proposed Instructions demonstrate, the jury also would  need to be instructed on

11

specialized areas of insurance law, such as insurance by estoppel (*see supra* at 5).  Not only do

the foregoing create a real potential of jury confusion, but a simplistic understanding of these

issues by the jury on a very limited record would unfairly prejudice Varvatos.  Varvatos should

not be exposed to such prejudice, especially when the law is clear that Varvatos, not Plaintiffs,

have the choice of whether or not to raise a defense of financial constraints against the award of

punitive damages.

## CONCLUSION

For the foregoing reasons, Varvatos respectfully requests that the Court deny

Plaintiffs' *motion in limine* to offer Varvatos' insurance policy into evidence.

Dated:      New York, New York
            May 2, 2019

Respectfully submitted,

HUGHES HUBBARD & REED LLP

By: /s/ Ned H. Bassen

Ned H. Bassen
Amina Hassan
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726
ned.bassen@hugheshubbard.com
amina.hassan@hugheshubbard.com

*Attorneys for Defendant John Varvatos
Enterprises, Inc.*

12

93972763