UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
TESSA KNOX, et al.,                 :

                                    :        <u>ORDER</u>

              Plaintiffs,           17 Civ. 772 (GWG)

                                      :

     -v.-                                    :

JOHN VARVATOS ENTERPRISES, INC.,     :

                                      :

             Defendant.         :
-------------------------------------------------------------X
**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

     The Court is in receipt of the parties' joint letter, Docket # 350, which outlines four issues to be decided with regard to the damages calculation phase of the trial. As to Issue 3, a telephone conference to discuss this issue shall take place on <u>March 13, 2020, at 10:30 a.m.</u> The parties shall either call in to Chambers ((212) 805-4260) with all parties on the line or arrange a dial-in conference call.[1] All counsel who intend to speak during the call must use a landline or phone with equivalent quality. Also, when addressing the Court, counsel must <u>not</u> use a speakerphone.

     The Court concludes there are no disputed facts requiring a trial as to Issues 1, 2 and 4.[2] Those issue are either resolved or are to be the subject of additional briefing as stated below.

     <u>Issue 1</u>

     We recognize that there is no controlling authority from the Second Circuit on the issue of whether this Court is bound by the jury's finding of wilfulness for purposes of determining whether Varvatos acted in good faith and had reasonable grounds for believing that its payment decisions were not a violation of the federal Equal Pay Act under 29 U.S.C. § 260. In the end, we find the reasoning of cases holding that the Court is bound by the jury's finding of wilfulness to be more persuasive. <u>See</u>, <u>e.g.</u>, <u>Perry v. City of N. Y.</u>, 2019 WL 7047327, at *3 (S.D.N.Y. Dec. 23, 2019). Thus, we conclude that we do not have the power to make the finding permitted under 29 U.S.C. § 260 that would potentially allow the Court to award no liquidated damages under that statute.

-------------------------

    [1] If the call is arranged through a commercial communications service, counsel arranging the call may telephone chambers at the time of the conference and inform chambers of the telephone number and access code that may be used to dial into the call. Only a toll-free service should be used.

    [2] The parties had previously consented to a bench trial on the remaining damages issues. <u>See</u> Transcript of Conference held February 21, 2020 (Docket # 332) at 30-31.

Issue 2

The second issue raised by the parties is how much New York EPA liquidated damages must be awarded to plaintiffs based on the jury's verdict. It does not appear that the parties have presented to the Court any disagreement as to calculations for the period prior to January 18, 2016, when the statute (New York Labor Law § 198) authorized lower amounts of liquidated damages than what are currently authorized. Instead they raise only the question of damages for the period after the latest amendment to the statute, which took effect January 19, 2016. As of that date, the statute provided:

> In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due, except such liquidated damages may be up to three hundred percent of the total amount of the wages found to be due for a willful violation of section one hundred ninety-four of this article.

New York Lab. Law § 198(1-a). The statute thus provides that where an employer does not act in good faith, the employee is automatically entitled to liquidated damages of 100% of the compensatory damages award. If wilfulness is proved, the jury is given discretion to award an additional amount up to a maximum of 300% of the compensatory damages award.

The parties do not disagree on the meaning of the statute. Instead, their disagreement appears to be as follows: plaintiffs think the jury was asked in the jury verdict form to determine the amount of liquidated damages above the automatic 100% required by statute ("automatic" where, as here, good faith is not shown). The defendant seems to argue that the jury was asked to determine in the jury verdict form the total amount of liquidated damages under the statute — in other words, both the automatic 100% and any additional amount arising from the wilfulness finding.

We begin by noting that neither party made any request for a jury instruction that would have informed the jury of the automatic statutory award of 100% upon their finding that the defendant did not act in good faith. See Proposed Jury Instructions (Docket # 257) at 64-67. Nor did the parties make any objection to the wording of the Court's proposed jury instructions on awarding liquidated damages — either in Phase I or Phase II. Thus, the defendant never objected to the fact that the jury was not informed that, if good faith was lacking, the defendant was automatically liable by statute for 100% of compensatory damages.

Thus, with no objection from the parties, the Court instructed the jury in Phase I that "[i]f you find that plaintiffs have proven by a preponderance of the evidence that Varvatos acted wilfully, the parties will make brief presentations to you to assist you in determining the amount of the additional liquidated damages that Varvatos must pay." Transcript of Trial Held February 28, 2020 (Docket # 346) at 643. The Court in Phase II instructed: "Because you found that Varvatos acted wilfully in violating the Equal Pay Act, you must determine if plaintiffs are

entitled to certain <u>additional</u> damages called liquidated damages." Transcript of Trial Held March 2, 2020 (Docket # 348) at 790.

In light of these instructions, we conclude that the jury in Phase II was asked to determine the "additional" amount that defendant would have to pay as a result of having acted "wilfully."

Indeed, the closing arguments of both sides reflected their understanding of this. In its closing arguments in Phase II, the defendant asked the jury to award $1 for the liquidated damages resulting from wilfulness. <u>Id.</u> at 781-82. If the defendant thought the jury was being asked to award the entire liquidated damages award (that is, the automatic 100% plus the additional amount to be awarded based on the wilfulness finding), the defendant would have had to ask for an award of $3001/1501 since, in that hypothetical scenario, the jury had to give an award above $3000/1500. In other words, if the defendant actually believed it was asking the jury for the total amount of liquidated damages, its requested award of $1 would have violated the statute. Similarly the plaintiffs predictably asked for the maximum award by seeking $6000/3000 in liquidated damages. <u>Id.</u> at 789. If plaintiffs thought they had to tell the jury to include the automatic 100%, they would have asked for a $9000/4500 award. It is thus obvious that the parties recognized that the jury was being asked to award the additional amount that resulted from its wilfulness finding.

Defendant points to the following sentence in an email to the Court signed by plaintiffs' counsel and dated February 27, 2020:

> For the Court's reference, the parties have agreed that for those liquidated damages awarded by the jury under the NY EPA will apply only for the relevant pulls for the period during which a finding of willfulness would result in liquidated damages being up to 3 times compensatory damages and if the jury's amount of liquidated damages is more than that, the Court would reduce it to the 3 times cap, with defendant reserving its right to ask the Court for a further reduction / elimination of liquidated damages to the extent permitted under the law.

(Docket # 350 at 9). Putting aside the fact that the first clause of this sentence is unintelligible, the context in which it appears does not alter the above conclusion. This sentence resulted from an inquiry by the Court, which at the time was drafting the Phase II verdict sheet, as to the maximum percentages that the jury could award for liquidated damages (which rose from 25% to 300% depending on the time period of the pull). In a responsive email, the plaintiffs note that there was a "complication" and referred to their trial memorandum (citing Docket # 258 at "21-23/39"). The portion of the trial memorandum referenced noted the maximum percentages that could be awarded by the jury. The "complication" was purportedly resolved by the sentence quoted above. Thus the Court interprets the sentence to indicate that the parties agreed that the jury would not be instructed on any maximum percentages for each time period but rather that the parties were agreeing to simply reduce any award by the jury that went above the statutory cap for that time period. This agreement by the parties has no impact on the Court's resolution of Issue 3.

Accordingly, the judgment for liquidated damages on the New York EPA claim for the

period after January 18, 2016, shall be 100% of compensatory damages — that is, $3000 for retail stores and $1500 for outlet stores per quarter — plus the amount the jury awarded to reflect the defendant's wilfulness — that is $2500 for retail stores and $1250 for outlet stores. Thus, the total to be awarded for each quarter is $5500 for retail stores and $2750 for outlet stores.

Issue 4

Unfortunately, the Court requires more in-depth briefing on the issue of whether the automatic 100% portion of the NY EPA damages are non-punitive. The briefing by both sides was highly truncated. Moreover, plaintiffs' submissions fail to grapple at all with the case law cited by defendant that reflects that because pre-judgment interest is available under the NY EPA, this fact by itself reflects that NY EPA liquidated damages must be punitive. See, e.g., Cid v. J.T. Auto & Body Shop, Inc., 2020 WL 871756, at *8 (S.D.N.Y. Jan. 30, 2020), adopted, 2020 WL 871508 (S.D.N.Y. Feb. 21, 2020); Caltenco v. G.H. Food Inc., 2019 WL 4784065, at *14 (E.D.N.Y. Sept. 30, 2019). Defendant has not yet addressed the problem presented in plaintiff's latest letter: namely, if "NY EPA liquidated damages do not duplicate EPA liquidated damages," then "those EPA liquidated damages must be added back into the damage calculations." Docket # 354 at 2.

If the parties are unable to reach an agreement on this issue, they shall file briefs simultaneously on the topic by March 17, 2020. Any reply may be made by letter two business days later.

SO ORDERED.

Dated: March 11, 2020
        New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge