UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TESSA KNOX

                Plaintiff,

v.

JOHN VARVATOS ENTERPRISES, INC.

                Defendant.

Civil Action No. 1:17-cv-00772 (GWG)

## DECLARATION OF AMINA HASSAN

Amina Hassan, under penalty of perjury, pursuant to 28 U.S.C. § 1746, declares as follows:

1. I am Counsel with the law firm Hughes Hubbard & Reed LLP, attorneys for Defendant John Varvatos Enterprises, Inc. ("Varvatos") in this proceeding. I am admitted to practice law in the State of New York and before this Court. I submit this declaration in support of Varvatos' Post-Trial Motion under Rules 50 and 59 of the Federal Rules of Civil Procedure (the "Motion"), and base this declaration on my personal knowledge and a review of the documents referenced herein.

Damages

2. The jury delivered its verdicts in this case on February 28, 2020 and March 2, 2020 (ECF 334 & 335, the "Verdicts").

3. In a letter to the Court on March 17, 2020 (ECF 357), Plaintiffs submitted their calculation of the total damages under the Verdicts, attaching a spreadsheet reflecting the calculations (ECF 357-1). The damages spreadsheet reflects a total damages number of $3,516,051.23. (ECF 357-1 at pg. 12 of 15.) Also, on March 17, 2020, Plaintiffs' counsel sent

96667585

the Court, via email, copying defense counsel, the native Excel version of the damages spreadsheet ("Damages Excel Workbook").

4. On March 23, 2020, Varvatos' counsel sent a letter to the Court, stating as follows: "We confirm on behalf of Varvatos that for the purposes of entering a judgment, Varvatos agrees with the following total damages number included in the March 17 letter: $3,516,051.23 (ECF 357-1 at pg. 12 of 15). This agreement is without waiver of Varvatos' rights and remedies with respect to the judgment that the Court enters, which Varvatos expressly reserves."

5. On March 24, 2020, the Clerk of the Court entered judgment in this case, awarding Plaintiffs damages in the amount of $3,516,051.23, "which includes prejudgment interest, as applicable, on the state claims at 9% and on the federal claims at 0.01126%." (ECF 362, the "Judgment.") The Judgment further stated that: "The Plaintiffs shall be entitled to post-judgment interest at the rate fixed pursuant to 28 U.S.C. §1961." (*Id.*)

6. I have used the Damages Excel Workbook to calculate the breakdown of the total damages amount of $3,516,051.23. The changes I made to the Damages Excel Workbook to calculate the breakdown were all made on the last tab or spreadsheet, "6-Master Damages." A true and accurate copy of that spreadsheet (incorporating the changes I have made) is attached hereto as Exhibit S.[1] (In addition, I formatted this spreadsheet so that it could be printed properly.)

---

1. The changes made include: (1) selection of relevant damages within each category (reflected by yellow and blue highlights in the top section of the spreadsheet), and (2) additional calculations as reflected in the spreadsheet below Row 90.

7. Based on the foregoing calculations, the total damages amount of $3,516,051.23 consists of the following:

    a. Compensatory back pay damages of $1,371,450.00 – This represents the sum of back pay damages awarded to each Plaintiff under one of the following claims: the Equal Pay Act, 29 U.S.C. § 206 ("EPA"), New York Equal Pay Act, New York Lab. Law § 194 ("NYEPA") or Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2 ("Title VII"). (*See* Exhibit S, cell G96.)

    b. Prejudgment interest of $319,517.89 – This represents the total prejudgment interest awarded to Plaintiffs under the NYEPA or Title VII. This was treated as a compensatory damage in the Damages Excel Workbook. (*See* Exhibit S, cell G97.)

    c. Liquidated damages of $978,041.67 – This represents the total liquidated damages awarded to Plaintiffs under either the EPA or the NYEPA. With respect to the NYEPA, this number includes the portion of liquidated damages that the parties agreed to treat as compensatory in nature. Thus the amount of $978,041.67 includes $313,500.00 in liquidated damages under the EPA, and $664,541.67 in liquidated damages under the NYEPA. The full amount was treated as a compensatory damage in the Damages Excel Workbook. (*See* Exhibit S, cells G98, H94, J94.)

    d. Punitive damages of $847,041.67 – This represents the total punitive damages awarded to Plaintiffs under either Title VII or the NYEPA. With respect to the NYEPA, this number includes the portion of liquidated damages that the parties agreed to treat as punitive in nature. (*See* Exhibit S, cell G99.)[2]

8. Thus, breaking down the total damages amount of $3,516,051.23 into damages treated as compensatory damages or punitive damages, we have the following breakdown:

    a. Compensatory damages of $2,669,009.56, and

    b. Punitive damages of $847,041.67.

---

2. For the damages calculations, the parties had agreed that each Plaintiff, to the extent eligible, will be assigned the higher punitive damages award as under the NYEPA and Title VII (Exhibit A, Columns Z and AA). For some of the Plaintiffs, these amounts were the same, *e.g.*, for Viviane Arjona. For the purposes of calculating the breakdown presented above, I used the punitive damages amount included in Column AA (i.e., under Title VII).

3

(*See* Exhibit S, cells Y94 & AB94.)

Events and Proceedings Related to the Good Faith Issue

9. The issue of Varvatos' good faith is relevant under both the EPA and the NYEPA. As set forth in Varvatos' memorandum of law filed in support of its Motion, it is Varvatos' position that the issue of whether Varvatos' violation of the EPA and/or the NYEPA (if any) was in good faith should have been decided by the Court rather than the jury and before the jury was asked to decide the issue of willfulness.

10. Varvatos raised this issue in its Supplemental Trial Memorandum, submitted as part of its pretrial submissions to the Court, asking that the Court first decide the issue of good faith before submitting the issue of willfulness to the jury. (ECF 270 at 4-6.) Varvatos added that, in the alternative, to the extent the Court decides to instruct the jury as to willfulness before the Court considers good faith, and to the extent the Court finds that a finding of willfulness by the jury would preclude a subsequent finding of good faith under the EPA or NYEPA, the Court instruct the jury to consider whether Varvatos acted in good faith as a factor in its assessment of whether Varvatos willfully violated the EPA or NYEPA. (*Id.* at 6.)

11. During the pre-trial conferences, Varvatos asked that the Court first decide the issue of good faith before submitting the issue of willfulness to the jury.

12. At the February 7, 2020 the pretrial conference, this issue was only briefly raised as between the parties and the Court, and deferred for a more detailed discussion at the next pretrial conference. The Court's colloquy with the parties on this issue was as set forth below (*see* Feb. 7, 2020 Pretrial Conf. Tr. at 74:11-75:25 (emphasis added)):

> MS. HASSAN: One -- and this may be something that you will deal with for the jury instructions. I think one of the things that was an open issue on the phasing was who -- the sequence of making the decision on good faith versus wil[l]fulness and who makes that decision, and I'm not sure that we've addressed that.

THE COURT: Do you guys disagree about who makes the decision?

MS. HASSAN: Right. I think -- and Mr. Dunn – I think the point -- your point was the issue of wil[l]fulness goes to the jury first. If the jury finds wil[l]fulness, the Court cannot decide on good faith to –

THE COURT: Cannot?

MS. HASSAN: Cannot –

MR. DUNNEGAN: Well –

MS. HASSAN: -- unless Mr. Dunnegan –

MR. DUNNEGAN: -- it's a Dairy Queen issue. The -- there's an issue of, if the jury finds wil[l]fulness under the New York EPA, then I don't think the Court can find good faith under the Federal EPA. Therefore, the Court should not address the issue of the Federal EPA until after the jury has determined what the result is on the New York EPA.

MS. HASSAN: And all –

MR. DUNNEGAN: You have -- in other words, you've got a factual issue –

THE COURT: You don't want inconsistent facts between the jury and the Judge, that's it?

MR. DUNNEGAN: Inconsistent decisions between the jury and the Judge.

THE COURT: Inconsistent resolution of facts.

MR. DUNNEGAN: Yes.

MS. HASSAN: Your Honor –

THE COURT: Yeah?

MS. HASSAN: -- **our position was that the Court should be deciding the issue of good faith first before the issue of wil[l]fulness goes to the jury because of the way the New York EPA statute is worded. It seems to be that the good faith decision** –

THE COURT: We're going to deal with all this –

MS. HASSAN: Okay.

5

13. At the February 21, 2020 conference, in response to the question of who decides the questions of good faith and in what sequence vis-à-vis the question of willfulness, the Court and defense counsel had the following colloquy (*see* Feb. 21, 2020 Pretrial Conf. Tr. at 7:18-8:16):

> MS. HASSAN: Your Honor, we agree with that. I think the other related clarification, if the Court can make that, is there was a dispute between who sides or in what sequence the good faith and willfulness decision is made.
>
> THE COURT: Yes. I saw that and I am definitely going to let the jury -- I don't want to take any chances that I get this wrong. We can always ignore the jury verdict if I choose to later but I want to give the jury a chance to make their own decision on that.
>
> MS. HASSAN: Okay.
>
> THE COURT: So, I reserve the right to decide that I should have been the one to do it and then, if I came out contrarily, to toss it. But I want to give -- I don't want to take any chances, I want the jury to make that decision in case that was the right way to go.
>
> MS. HASSAN: Just for clarification, I think one of plaintiff's arguments was that if the jury decides there was willfulness, that the Court cannot decide that there was good faith. Right?
>
> THE COURT: Yes, but if you are right that legally I had to decide good faith first then I think I would be entitled to throw it out. I am not saying you are right but it can't be that my hands are tied in terms of giving the question to the jury.
>
> MS. HASSAN: Okay. Thank you.

14. Since the NYEPA includes both a determination of good faith and willfulness on the question of liquidated damages, Varvatos agreed to the following instruction to the jury with regard to good faith: "To establish 'good faith,' Varvatos must produce plain and substantial evidence of at least an honest intention to comply with the law." (This instruction is on page 18 of the Jury Instructions, attached hereto as Exhibit R.) After the jury entered its verdicts on

6

March 2, 2020, the following exchange occurred between the Court and the parties (Trial Tr. at 800:9-802:5):

> THE COURT: Now, I remember reading about this issue when we first got the proposed jury instructions. I remember thinking that it would be better to have the jury decide it if I good it wrong and then we have their answer and I can always do my own answer.
>
> Is it now fully briefed or is there more say?
>
> …
>
> MS. HASSAN: Your Honor, I know that we did include it in our trial memorandum. I don't know if we addressed the specific issue of this particular situation where the jury has made a decision on good faith and it's coming to you. I think the way we briefed it was the Court should make the good-faith determination even before sending it to the jury because that would be the most consistent way of reading the New York and federal EPA together. That is what we were addressing.
>
> THE COURT: I can't believe it matters that I sent it to the jury. I did it only as a prophylactic measure.
>
> MS. HASSAN: Right. My answer being I don't think we addressed the very specific issue at this point given that there is a jury decision on good faith whether the Court can still --
>
> THE COURT: Once again I don't think that could have made a difference. I remember the law being a little light on this. Were there cases going both ways or what was it? …
>
> THE COURT: No. Is there cases specifically on point on this? I rather have a letter in a few days. The decision about whether to do it or not, I don't need anything more on. I heard all the evidence. Whether I have the power to do it, is a different question which is what the collateral estoppel issue addresses. I hate to put anything off, but we have to put off Phase IV anyway. This should be easy.

15. On March 6, 2020, the parties submitted a joint letter setting forth their respective positions on the question raised by the Court. (ECF 350.) In a March 11, 2020 Order, the Court denied Varvatos' application, ruling as follows (ECF 355):

> We recognize that there is no controlling authority from the Second Circuit on the issue of whether this Court is bound by the jury's

finding of wil[l]fulness for purposes of determining whether Varvatos acted in good faith and had reasonable grounds for believing that its payment decisions were not a violation of the federal Equal Pay Act under 29 U.S.C. § 260. In the end, we find the reasoning of cases holding that the Court is bound by the jury's finding of wil[l]fullness to be more persuasive. *See, e.g., Perry v. City of N. Y.*, 2019 WL 7047327, at *3 (S.D.N.Y. Dec. 23, 2019). Thus, we conclude that we do not have the power to make the finding permitted under 29 U.S.C. § 260 that would potentially allow the Court to award no liquidated damages under that statute.

Other Documents

16. Exhibit A is a true and correct copy of the document also marked as Trial Exhibit A, Varvatos' dress code policies for 2013-2016, bates stamped JVE-000078-81, and entitled "Appearance and Dress Standards – Retail Locations."

17. Exhibit B is a true and correct copy of the document also marked as Trial Exhibit B, and is a collection of screenshots of Varvatos clothing from Varvatos' website, johnvarvatos.com, captured on April 22-23, 2019.

18. Exhibit C is a true and correct copy of the document also marked as Trial Exhibit C, Varvatos' AllSaints discount policy, issued March 2013 and as revised in March 2016, bates stamped JVE-002470, JVE-002480-81, and entitled, "john varvatos / ALLSAINTS 50% Discount."

19. Exhibit D is a true and correct copy of the document also marked as Trial Exhibit D, Varvatos' "Retail Employee Discount Policy," bates stamped JVE-002469.

20. Exhibit E is a true and correct copy of the document also marked as Trial Exhibit F, an email from Ann Byron to Bernard Babikian, *et al.*, on April 4, 2016, bates stamped JVE-001634. (At trial, Plaintiffs also marked this document, as Trial Exhibit 13.)

96667585

21. Exhibit F is a true and correct copy of the document also marked as Trial Exhibit U, excerpts from Plaintiff Hillary Crandle's Interrogatory Responses, executed on March 19, 2018.

22. Exhibit G is a true and correct copy of the document also marked as Trial Exhibit V, excerpts from Plaintiff Michelle Ortiz's Interrogatory Responses, executed on March 15, 2018.

23. Exhibit H is a true and correct copy of the document also marked as Trial Exhibit 12, an email exchange between Ben Harris and Tanya Sergei between March 20, 2015 and March 23, 2015, bates stamped JVE-002421-25.

24. Exhibit I is a true and correct copy of the document also marked as Trial Exhibit 15, a May 24-25, 2016 email chain involving various participants, bates stamped JVE-001660-64.

25. Exhibit J is a true and correct copy of the document also marked as Trial Exhibit 16a, an email exchange from June 3, 2016 and June 6, 2016 involving, *inter alia*, Nicole Chang and Gina Rolls, bates stamped JVE-001918-26.

26. Exhibit K is a true and correct copy of the document also marked as Trial Exhibit 18, an email exchange from September 1, 2016 and September 13, 2016, involving *inter alia*, Nicole Chang and Laurentina Chaparro, bates stamped Chaparro 000024-26.

27. Exhibit L is a true and correct copy of the document also marked as Trial Exhibit 20, an email exchange from between January 2, 2017 and January 4, 2017, involving, *inter alia*, Nicole Change and Tessa Knox, bates stamped JVE-001935-38.

28. Exhibit M is a true and correct copy of the document also marked as Trial Exhibit 35, bates stamped JVE-000141-66.

29. Exhibit N is a true and correct copy of the document also marked as Trial Exhibit 35a, bates stamped JVE-000153.

30. Exhibit O is a true and correct copy of the document also marked as Trial Exhibit 45.

31. Exhibit P is a true and correct copy of the excerpts of the transcript of Pamela Kassen's April 16, 2018 deposition, which were admitted into evidence.

32. Exhibit Q is a true and correct copy of the excerpts of the transcript of Gerard Mayorga's August 25, 2017, which were admitted into evidence.

33. Exhibit R is a true and correct copy of the jury instructions that the Court provided to Counsel (and the jury) on February 28, 2020 and March 2, 2020.

Executed on April 21, 2020
New York, New York

_____
Amina Hassan