**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TESSA KNOX,

          Plaintiff,

      v.

JOHN VARVATOS ENTERPRISES, INC.

          Defendants.

No. 17-CV-00772 (GWG)

**VARVATOS' MEMORANDUM OF LAW IN SUPPORT OF ITS**
**OPPOSITION TO PLAINTIFFS' ATTORNEYS' FEE APPLICATION**

Ned H. Bassen
Amina Hassan
Grace Ha
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726
ned.bassen@hugheshubbard.com
amina.hassan@hugheshubbard.com
grace.ha@hugheshubbard.com

*Attorneys for Defendant John Varvatos*
*Enterprises, Inc.*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ............................................................................................................2

I.  THE ATTORNEYS' FEES PLAINTIFFS' COUNSEL IS SEEKING
    FROM VARVATOS ARE NOT REASONABLE...........................................................2

    A.  The Hourly Rates Claimed by Plaintiffs' Counsel Are Not Reasonable. ...............2

        1.  William Dunnegan ............................................................................4

        2.  Laura Scileppi .................................................................................8

        3.  Richard Weiss. .................................................................................9

        4.  Andrew Chung ...............................................................................11

        5.  Jennifer Rafuse..............................................................................11

        6.  Travel ...........................................................................................12

    B.  The Number of Hours Claimed to Have Been Expended by Plaintiffs' Counsel Is
        Not Reasonable. ..................................................................................12

        1.  Total Number of Hours....................................................................13

        2.  Hours for Specific Phases & Tasks ....................................................14

            (a)  Pre-Discovery Phase .................................................................14

            (b)  Motion Practice .......................................................................15

            (c)  Pre-trial submissions ................................................................16

            (d)  Trial preparation......................................................................18

            (e)  Fee application ........................................................................19

            (f)  Work Created Because of Class Member Crouchen's Indecision.22

        3.  Vague time entries ..........................................................................26

        4.  Inconsistent Time Entries ................................................................32

        5.  Inefficient & Excess Staffing............................................................33

      6.      Attorneys Working on Non-Attorney Tasks ...............................................35

      7.      Clerical Work & Overhead Charges ..........................................................37

C.     Plaintiffs' Accusations Against Varvatos Are Baseless .......................................38

D.     Plaintiffs' Requests for an Incentive Fee for Tessa Knox and Additional Fees from the Punitive Damages Fund. .........................................................................42

CONCLUSION .......................................................................................................................43

96681614

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*601 W. Assocs. LLC v. Kleiser–Walczak Constr. Co.*, No. 03 Civ. 7942(DFE), 2004 WL 1117901 (S.D.N.Y. May 18, 2004) .......................................................... 3

*A.D. v. New York City Dep't of Educ.*, No. 18-CV-3347 (VEC), 2019 WL 1292432 (S.D.N.Y. Mar. 21, 2019) ................................................................. 5

*Abdell v. City of New York,* No. 05-CV-8453 RJS, 2015 WL 898974 (S.D.N.Y. Mar. 2, 2015) ........................................................................................................ 4

*Adusumelli v. Steiner*, No. 08 Civ. 6932 (JMF), 2013 WL 1285260(S.D.N.Y. Mar. 28, 2013) ...................................................................................................... 35

*Alicea v. City of New York*, 272 F. Supp. 3d 603 (S.D.N.Y. 2017) ............................. 10

*Andrews v. City of New York*, 118 F. Supp. 3d 630 (S.D.N.Y. 2015) .......................... 7

*In re Arbitration Between Okyere & Houslanger & Assocs., PLLC*, No. 1:12-CV-01463 JPO, 2015 WL 4366865 (S.D.N.Y. May 28, 2015) .................................... 13

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 186 (2d Cir. 2008) ............................................................................. 2, 3, 12

*Bailey v. Pataki*, No. 08-cv-8563 (JSR), 2016 WL 3545941 (S.D.N.Y. June 16, 2016) ............................................................................................................... 6

*Balu v. City of New York*, No. 12 Civ. 1071 (KPF), 2016 WL 884666 (S.D.N.Y. Mar. 8, 2016) ...................................................................................................... 22

*Blum v. Stenson*, 465 U.S. 886 (1984) .................................................................. 3, 4

*Brady v. Wal–Mart Stores, Inc.*, 455 F. Supp. 2d 157 (E.D.N.Y. 2006), *aff'd*, 531 F.3d 127 (2d Cir. 2008) ........................................................................................ 19

*Crowhurst v. Szczucki*, No. 16CIV182BAFGWG, 2019 WL 6122645, at *10 (S.D.N.Y. Nov. 19, 2019), *aff'd*, No. 16-CV-0182 (JGK), 2020 WL 133509 (S.D.N.Y. Jan. 11, 2020) .................................................................................. 5, 28

*Crowhurst v. Szczucki*, No. 16-CV-0182 (JGK), 2020 WL 133509 (S.D.N.Y. Jan. 11, 2020) ............................................................................................................ 36

*Custodio v. Am. Chain Link and Construction, Inc.*, No. 06 Civ 7148, 2014 WL 116147 (S.D.N.Y. Jan. 13, 2014) ........................................................................ 17

iii

*DeMarco v. Ben Krupinski Gen. Contractor, Inc*., No. 12-CV-0573 SJF ARL,
2014 WL 3696020 (E.D.N.Y. July 22, 2014) ........................................................17

*Destefano v. Astrue*, No. 05-CV-3534 (NGG), 2008 WL 623197 (E.D.N.Y. Mar.
4, 2008), *report and recommendation adopted*, No. 05-CV-3534 NGG/RLM,
2008 WL 2039471 (E.D.N.Y. May 9, 2008) ..........................................................35

*Echevarria v. Insight Med., P.C.,* 102 F. Supp. 3d 511 (S.D.N.Y. 2015) ....................10

*Farbotko v. Clinton Cty. of New York*, 433 F.3d 204 (2d Cir. 2005) ..........................3, 4

*Finch v. New York State Office of Children & Family Servs*., 861 F. Supp. 2d 145
(S.D.N.Y. 2012) ....................................................................................................7, 16

*Fisher v. Aetna Life Insurance*, No. 16 Civ 144 (RJS) ..................................................8

*Genger v. Genger*, No. 14cv05683 (KBF) (DF), 2017 WL 9771814 (S.D.N.Y.
May 22, 2017), *report and recommendation adopted*, 2017 WL 9771807
(S.D.N.Y. May 30, 2017) ..........................................................................................9

*Gierlinger v. Gleason*, 160 F.3d 858 (2d Cir. 1998) ......................................................4

*Grant v. Martinez*, 973 F.2d 96 (2d Cir. 1992), *cert. denied*, 506 U.S. 1053 (1993) ...................13

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...................................................................2

*Hollander Glass Texas, Inc. v. Rosen-Paramount Glass Co., Inc*., 291 F.Supp.3d
554 (S.D.N.Y. 2018) ................................................................................................11

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) .................2, 3

*Kirsch v. Fleet St., Ltd*., 148 F.3d 149 (2d Cir. 1998) ..................................................28

*Kirsch v. Fleet St., Ltd*., No. 92 CIV. 932 (DLD), 1996 WL 695687 (S.D.N.Y.
Dec. 4, 1996), *aff'd*, 148 F.3d 149 (2d Cir. 1998) ..................................................32

*Lewis v. Am. Sugar Ref., Inc*., No. 14-CV-02302 (CRK), 2019 WL 116420
(S.D.N.Y. Jan. 2, 2019) ...........................................................................................11

*Lilly v. City of New York*, 934 F.3d 22 (2d Cir. 2019) ...................................................2

*Local 1180, Commc'ns Workers of Am., AFL-CIO v. City of New York*, 392 F.
Supp. 3d 361 (S.D.N.Y. 2019) .................................................................6, 13, 14, 34

*Lujuan v. JPG LLC*, No. 18-cv-0916 (KBF), 2018 WL 3353060 (S.D.N.Y. June 6,
2018) ........................................................................................................................11

iv

*Lynch v. Town of Southampton*, 492 F. Supp. 2d 197 (E.D.N.Y. 2007), *aff'd*, No. 07-3478-CV, 2008 WL 5083010 (2d Cir. Dec. 2, 2008)........................................................14

*M.K. on Behalf of C.K. v. Arlington Cent. Sch. Dist.*, No. 16 CIV. 05751 (NSR), 2019 WL 92004 (S.D.N.Y. Jan. 3, 2019) ..................................................................7

*Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144 (2d Cir. 2014)........................................13

*Mattel, Inc. v. Uenjoy, Ltd.*, 2018 WL 7021261 (PKC) (S.D.N.Y. Aug. 5, 2019) ..................8, 11

*McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380 (S.D.N.Y. 2017) ................................................................................................................................8

*Millea v. Metro-N. R. Co.*, 658 F.3d 154 (2d Cir. 2011) ..............................................................12

*Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307 (S.D.N.Y. 2009) ......................3, 27

*Missouri v. Jenkins*, 491 U.S. 274 (1989)....................................................................................37

*Morris v. Eversley*, 343 F. Supp. 2d 234 (S.D.N.Y. 2004)...........................................................12

*E.F. ex rel. N.R. v. New York City Dep't of Educ.*, No. 11 Civ. 5243(GBD)(FM), 2014 WL 1092847 (S.D.N.Y. Mar. 17, 2014) ............................................................12

*N.Y.S. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983)................13, 32

*Nimkoff Rosenfeld & Schechter, LLP v. RKO Props., Ltd.*, No. 07 Civ. 7983(DAB)(HBP), 2011 WL 8955840 (S.D.N.Y. Apr. 7, 2011)...........................................31

*O.R. v. New York City Department of Education*, 340 F. Supp. 3d 357 (2018) ....................31, 37

*Parrish v. Sollecito*, 280 F. Supp. 2d 145 (S.D.N.Y. 2003)...........................................................4

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010) ...............................................................12

*Pineda v. Frisoling, Inc.*, No. 15CV3774GBDBCM, 2018 WL 4658798 (S.D.N.Y. Jan. 15, 2018), *report and recommendation adopted sub nom. Pineda v. Frisolino, Inc.*, No. 15CIV3774GBDBCM, 2018 WL 3628898 (S.D.N.Y. July 30, 2018) ...............................................................................................10

*Quaratino v. Tiffany & Co.*, 166 F.3d 422 (2d Cir. 1999).....................................................12, 17

*Ragin v. Harry Macklowe Real Estate Co.*, 870 F. Supp. 510 (S.D.N.Y. 1994)....................26, 28

*Rahman v. The Smith & Wollensky Rest. Grp., Inc.*, No. 06 Civ. 6198(LAK)(JCF), 2008 WL 1899938 (S.D.N.Y. Apr. 29, 2008).............................................................9

*Reiter v. Metro. Transp. Auth. of State of New York*, No. 01CIV2762GWG, 2007 WL 2775144 (S.D.N.Y. Sept. 25, 2007)...............................................................30

*Rozell v. Ross-Holst*, 576 F. Supp. 2d 527 (S.D.N.Y. 2008) ........................................9, 10, 12, 35

*Sanchez v. I&A Rest. Corp.*, No. 14CV0726 (DF), 2017 WL 2537814 (S.D.N.Y. May 22, 2017)........................................................................................................10

*Siegel v. Bloomberg L.P.*, No. 13cv1351 (DF), 2016 WL 1211849 (S.D.N.Y. Mar. 22, 2016) ............................................................................................12, 15, 37

*Spalluto v. Trump Int'l Hotel & Tower*, No. 04 Civ. 7497(RJS)(HBP), 2008 WL 4525372 (S.D.N.Y. Oct. 2, 2008) ......................................................................28

*Suchodolski Assocs., Inc. v. Cardell Fin. Corp.*, No. 03 CIV.4148(WHP), 2008 WL 5539688 (S.D.N.Y. Dec. 18, 2008) ..............................................................26, 31

*Sutton v. City of Yonkers*, No. 13 Civ. 801 (GBD) (GWG), 2017 WL 1180918 (S.D.N.Y. Mar. 29, 2017) ...........................................................................9

*Tatum v. City of New York*, No. 06-CV-4290 PGG GWG, 2010 WL 334975 (S.D.N.Y. Jan. 28, 2010).........................................................................35

*Terminate Control Corp. v. Nu–Life Constr. Corp.*, 28 F.3d 1335 (2d Cir. 1994)......................26

*Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, No. 10 Civ. 05256(KMW)(DF), 2012 WL 5816878 (S.D.N.Y. Nov. 14, 2012)..............26, 28

*Times v. Target Corp.*, No. 18-cv-02993, ECF 47 (S.D.N.Y. Oct. 9, 2019) ................................13

*Torres v. City of New York*, No. 07 Civ. 3473(GEL), 2008 WL 419306 (S.D.N.Y. Feb. 14, 2008) ...........................................................................................9

*Vargas Garcia v. Park*, 18-CV-10650 (KNF), 2019 WL 6117596 (S.D.N.Y. Nov. 18, 2019) .................................................................................................9, 12

*Volpe v. Nassau Cty.*, No. 12CV2416JFBAKT, 2016 WL 6238525 (E.D.N.Y. Oct. 24, 2016) ...........................................................................................12, 13, 14

*Watson v. E.S. Sutton, Inc.*, No. 02 CIV. 02739 KMWTHK, 2006 WL 6570643 (S.D.N.Y. Aug. 11, 2006), *report and recommendation adopted as modified*, No. 02 CV 2739 KMW THK, 2007 WL 2245432 (S.D.N.Y. Aug. 3, 2007) .........................14

*Williams v. Epic Security Corp.*, 368 F. Supp. 3d 651 (S.D.N.Y. 2019)........................................6

*Williams v. New York City Hous. Auth.*, 975 F. Supp. 317 (S.D.N.Y. 1997) ................................37

*Williamsburg Fair Hous. Comm. v. New York City Hous. Auth.*, No. 76 CIV. 2125 (RWS), 2007 WL 486610 (S.D.N.Y. Feb. 14, 2007) .............................................26

*Wise v. Kelly*, 620 F. Supp. 2d 435 (S.D.N.Y. 2008)....................................................................5

*Wong v. Hunda Glass Corp.*, No. 09 Civ. 4402(RLE), 2010 WL 3452417
(S.D.N.Y. Sept. 1, 2010) ...................................................................................................9

**Statutes and Rules**

Fed. R. Civ. P. 11 ...................................................................................................40, 41

Fed. R. Civ. P. 30(b)(6) ....................................................................................17, 40, 41

Fed. R. Civ. P. 30(d) .......................................................................................................39

Fed. R. Civ. P. 50 ............................................................................................................42

Fed. R. Civ. P. 59 ............................................................................................................42

FLSA ........................................................................................................8, 9, 10, 15

Individuals with Disabilities Education Act .............................................................5, 7, 12

New York Labor Law .................................................................................................9, 10

Rule 23 ..................................................................................................28, 30, 31, 37

Rule 37 ............................................................................................................................17

**Treatises and Periodical Materials**

James A. Johnson, *The Art of Direct Examination*, NYSBA Journal at 20
(March/April 2017) ....................................................................................................18

Mark A. Romance, *10 Tips for Young Lawyers Going to Trial*, American Bar
Association, Practice Points (Feb. 5, 2018) ..............................................................18

96681614

Defendant John Varvatos Enterprises, Inc. ("Varvatos") submits this memorandum of law in opposition to Plaintiffs' Motion for (I) an Award of Costs and Attorneys' Fees From Defendant, and (II) an Award of Attorneys' Fees and an Incentive Fee for Class Representative Tessa Knox from the Punitive Damages Fund (ECF 367-371, the "Fee Application").

## PRELIMINARY STATEMENT

Counsel for Plaintiffs is seeking an exorbitant fee of $1,730,304.50 in attorneys' fees from Varvatos.  Although the collective and class action Plaintiffs in this case were successful at trial, and a judgment of $3,516,051.23 was entered in favor of them, the fees Plaintiffs' Counsel is seeking are not justified.  These fees do not meet the reasonableness standard in the Second Circuit.  As set forth below, in light of the circumstances of this case and the relevant case law, the hourly rates that Plaintiffs' Counsel is seeking are excessive; and the 5,000-plus hours claimed to have been expended over the course of approximately 3 years of litigation and for which Plaintiffs' Counsel is claiming fees are exceedingly unreasonable and inadequately supported.  Neither Plaintiffs' success at trial, nor the baseless accusations that Plaintiffs' Counsel has directed at Varvatos in the Fee Application warrant the excessiveness of the amount of attorneys' fees Plaintiffs' Counsel is seeking or excuse the deficiencies in the support Plaintiffs' Counsel has provided for those fees.  Accordingly, Varvatos requests that in determining a reasonable amount of attorneys' fees for which Varvatos is responsible, the Court: (1) reduce the hourly rates of Plaintiffs' Counsel; (2) eliminate or reduce the hours expended on certain phases and tasks of the litigation; and (3) apply an across-the-board reduction of over 50% on the remaining amount of fees for numerous deficient and improper time entries.

**ARGUMENT**

**I. THE ATTORNEYS' FEES PLAINTIFFS' COUNSEL IS SEEKING FROM VARVATOS ARE NOT REASONABLE.**

Courts in the Second Circuit determine the amount of attorneys' fees to which a party is entitled by calculating the "presumptively reasonable fee," also referred to as the "lodestar" amount. *Lilly v. City of New York*, 934 F.3d 22, 230 (2d Cir. 2019). This amount is calculated by multiplying the "reasonable hourly rate" with "the number of hours reasonably expended." *Id.* "This calculation provides an objective basis on which to make an initial estimate." *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty, of Albany*, 522 F.3d 186 (2d Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The party seeking attorneys' fees has the burden of proof, and must "submit evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

**A. The Hourly Rates Claimed by Plaintiffs' Counsel Are Not Reasonable.**

The reasonable hourly rate for a fee application is "what a reasonable, paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190. In determining that rate, the Second Circuit has instructed that the district court, in "exercising its considerable discretion," must "bear in mind all of the case specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Arbor Hill*, 522 F.3d at 187; *see also Lilly v. City of New York*, 934 F.3d at 230 (the reasonable hourly rate must be determined "considering all pertinent factors, including the *Johnson* factors.")[1]

---

1. The *Johnson* factors include the following: (1) the "time and labor required," (2) the novelty and difficulty of the issues, (3) the skill required, (4) the preclusion of other employment due to the case, (5) the "customary fee for similar work in the community," (6) the fixed or contingent nature of the fee, (7) any "time limitations imposed by the client or the circumstances," (8) the "amount involved and the results obtained," (9) the "experience, reputation, and ability of the attorneys," (10) the "undesirability of the case," (11) the nature and

2

"[U]nder established case law, a reasonable hourly rate is the 'prevailing market rate,' *i.e.*, the rate 'prevailing in the [relevant] community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Farbotko v. Clinton Cty. of New York*, 433 F.3d 204, 208 (2d Cir. 2005) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 (1984)). "The fee applicant bears the burden of establishing the reasonableness of the hourly rates requested—in particular, by producing satisfactory evidence that the requested rates are in line with those prevailing in the community." *Miroglio S.P.A. v. Conway Stores, Inc*., 629 F. Supp. 2d 307, 315 (S.D.N.Y. 2009) (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)); *601 W. Assocs. LLC v. Kleiser–Walczak Constr. Co*., No. 03 Civ. 7942(DFE), 2004 WL 1117901, at *3-4 (S.D.N.Y. May 18, 2004)). However, the court may also consider its "own familiarity with the rates prevailing in the district." *Id*. (citing *Farbotko*, 433 F.3d at 209 (2d Cir. 2005)). Finally, as the Second Circuit has instructed, "[i]n determining what rate a paying client would be willing to pay … [the district court] should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively," and "such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case." *Arbor Hill*, 522 F.3d at 187.

Here, Plaintiffs' Counsel is claiming the following hourly rates:

| Attorney | Rate (pre-6/30/17) | Rate (post-7/1/17) |
|---|---|---|
| William Dunnegan (partner) | $450/hour | $475/hour |
| Laura Scileppi (partner) | $325/hour | $375/hour |
| Richard Weiss (associate) | $225/hour | $325/hour |

---

length of the attorney's professional relationship with the client, and (12) fee awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

96681614

| Attorney | Rate (pre-6/30/17) | Rate (post-7/1/17) |
|---|---|---|
| Andrew Chung (associate) | $180/hour | $180/hour |
| Jennifer Rafuse (paralegal) | $150/hour | $160/hour |

As set forth below, the Court ought to reduce the hourly rates for Plaintiffs' Counsel because it lacks experience in litigating employment and collective and class actions.  In addition, the hourly rates for the work of Jennifer Rafuse (paralegal) are excessive and ought to be reduced to $75.

### 1.   William Dunnegan

The Court should reduce Mr. Dunnegan's requested hourly rates of $450 from January through June 2017 and $475 beginning July 2017 because of Mr. Dunnegan's lack of experience litigating employment claims and collective and class actions.

In determining the reasonable hourly rate, the Court must consider "the rate prevailing in the [relevant] community for *similar services by lawyers of reasonably comparable* skill, *experience* and reputation." *Farbotko*, 433 F.3d at 208 (2d Cir. 2005) (quoting *Blum*, 465 U.S. at896 n.11); *accord Abdell v. City of New York,* No. 05-CV-8453 RJS, 2015 WL 898974, at *4 (S.D.N.Y. Mar. 2, 2015) (central factor in determining reasonable hourly rate is the rate "normally charged for similar work by attorneys of *like skill* in the area") (emphasis added); *Parrish v. Sollecito*, 280 F. Supp. 2d 145, 169-70 (S.D.N.Y. 2003) (same) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998)).  The consideration of "like skill in the area" makes sense since in determining the reasonably hourly rate, courts must consider what a reasonable paying client would be willing to pay the attorney – a paying client is more likely to agree to a higher billing rate for a lawyer with expertise in an area than for one lacking that expertise.

4

Unsurprisingly, therefore, courts in this district have reduced the hourly rates requested by attorneys litigating employment and civil rights cases who lack experience in those areas. *See Crowhurst v. Szczucki*, No. 16CIV182BAFGWG, 2019 WL 6122645, at *10 (S.D.N.Y. Nov. 19, 2019) (lead attorneys' lack of experience in wage cases was one of the factors in reducing the proposed hourly rate from $500 to $225 in wage theft case), *report and recommendation adopted*, No. 16-CV-0182 (JGK), 2020 WL 133509, at *3 (S.D.N.Y. Jan. 11, 2020); *A.D. v. New York City Dep't of Educ.*, No. 18-CV-3347 (VEC), 2019 WL 1292432, at *4 (S.D.N.Y. Mar. 21, 2019) (in an Individuals with Disabilities Education Act ("IDEA") case, reducing the hourly rate from $300 to $200 for attorney who lacked relevant experience); *Wise v. Kelly*, 620 F. Supp. 2d 435, 449 (S.D.N.Y. 2008) (in a civil rights case, reducing the proposed hourly rate of one attorney from $325 to $250 because of the attorneys' "relative lack of civil rights experience").

Here, nothing in the record indicates, nor does Mr. Dunnegan claim to have, any experience litigating employment or collective and class action matters.  Nor does Mr. Dunnegan claim that his firm has experience litigating in this area.  Rather, Dunnegan & Scileppi ("D&S") specializes in intellectual property law.  Notably, it describes itself on its website as an "intellectual property boutique firm."  (Hassan Decl., Ex. 2.)  Similarly, in a January 29, 2018 letter to the Court, in describing their experience for purposes of being appointed class counsel, Plaintiffs' Counsel detailed patent infringement, copyright infringement, and other intellectual property-related cases litigated by Dunnegan & Scileppi and its predecessor.  (ECF 148 (Jan. 29, 2018 Letter from W. Dunnegan to the Court).)  In the same letter, Plaintiffs' Counsel explicitly acknowledged their lack of experience with class actions and the subject matter of this case. (*See id*. at 4 ("As a result of further legal research after the January 23, 2018, argument, we have identified the following analogous cases where the court appointed class counsel who had no

experience in class actions or the subject matter of the dispute.").)  Similarly, Mr. Dunnegan himself acknowledges that his legal experience consists of "primarily intellectual property litigation."  (Dunnegan Decl. (ECF 370) ¶ 11 ("Virtually all of my 39 years of practice have involved litigation, *primarily intellectual property litigation*.  I have represented the following public companies, or their subsidiaries, as lead counsel in intellectual property trials: Warner Bros., Mattel, John Wiley & Sons, Pearson Education, and McGraw-Hill.") (emphasis added)).  Prior to this case, Mr. Dunnegan's practice focused on patent infringement, copyright infringement, and entertainment-law-related matters. (*See* ECF 148 at 1-3 (Jan. 29, 2018 Letter from W. Dunnegan to the Court describing his experience).)

The cases cited by Plaintiffs' Counsel in support of Mr. Dunnegan's proposed hourly rates of $450/$475 all concern hourly rates of attorneys who, unlike Mr. Dunnegan, had extensive experience litigating the very types of cases in which the attorneys' fees were sought. *See Local 1180, Commc'ns Workers of Am., AFL-CIO v. City of New York*, 392 F. Supp. 3d 361, 380 (S.D.N.Y. 2019) (approving hourly rate of $600 for attorney in a case under Title VII, the EPA, and the New York EPA, based on her "background and experience" of "over 22 years' experience, *including many years working at a boutique firm specializing in civil rights*" (emphasis added)); *Williams v. Epic Security Corp.*, 368 F. Supp. 3d 651, 658 (S.D.N.Y. 2019) (holding that the requested hourly rate of $600 for an attorney in a wage-and-hour case who had "vast experience practicing law [32 years] and *in wage-and-hour cases*" was reasonable and consistent with other cases in this district) (emphasis added); *Bailey v. Pataki*, No. 08-cv-8563 (JSR), 2016 WL 3545941, at *6 (S.D.N.Y. June 16, 2016) (in a Section 1988 six-case consolidated action, finding that the requested hourly rate of $600 was reasonable for both an

6

attorney whose rate had been previously approved in S.D.N.Y. as part of a class action settlement, and another attorney who was a "comparable petitioner").

Plaintiffs' Counsel also relies on the foregoing cases to argue that since the court approved $600 in attorneys' fees in those cases, "Mr. Dunnegan's hourly rate [of $450/$475] sought in this application … compensates for any inefficiency Varvatos can identify in the services D&S provided."  (Plaintiffs' Br. at 10.)  That is incorrect and misconstrues the law.  As the Fee Application acknowledges, the hourly rates sought by Plaintiffs' Counsel "are the rates D&S generally charges its paying clients."  (*Id*. at 9; *see also* Dunnegan Decl. (ECF 370) ¶ 7 ("The hourly rates set forth above [and sought in the Fee Application] represent D&S's usual hourly rates for 2017, 2018, 2019 and 2020.").)  Thus, what a paying client pays Plaintiffs' Counsel, an "intellectual property boutique firm," including the alleged $450/$475 per hour for Mr. Dunnegan, is the number the Court should consider in determining what a reasonable paying client would pay this firm and Mr. Dunnegan to represent him or her in an area outside of their area of expertise.  In fact, courts in this district have approved hourly rates of around $450 in other employment and civil rights actions, but for attorneys with more than thirty years of experience litigating *civil rights and employment cases* – experience that Mr. Dunnegan, an intellectual property litigator, lacks.  *See, e.g.*, *Andrews v. City of New York*, 118 F. Supp. 3d 630, 639 (S.D.N.Y. 2015) (an hourly rate of $450 was reasonable for an attorney with "more than thirty years of experience litigating labor and employment matters" in a collective/class action under Title VII, the EPA, and the NYSHRL, with over 5,200 plaintiffs); *Finch v. New York State Office of Children & Family Servs.*, 861 F. Supp. 2d 145, 154 (S.D.N.Y. 2012) ($450 per hour was a reasonable rate for attorney with 42 years of experience in the fields of civil rights and family law); *M.K. on Behalf of C.K. v. Arlington Cent. Sch. Dist.*, No. 16 CIV. 05751 (NSR),

2019 WL 92004, at *5 (S.D.N.Y. Jan. 3, 2019) (in a case under the IDEA, holding that $450 was a reasonable rate for a solo practitioner with then-25 years of experience trying special education cases).

Finally, Plaintiffs' Counsel argues that their hourly rates were recently approved in *Mattel, Inc. v. Uenjoy, Ltd*., 2018 WL 7021261, 18-cv-7896 (PKC) (S.D.N.Y. Aug. 5, 2019). (*See* Dunnegan Decl. (ECF 370) ¶ 7.)  However, *Mattel* was a trademark infringement case, which simply underscores Varvatos' argument above.[2]

### 2.    Laura Scileppi

Similarly, Plaintiffs' Counsel has not shown that Ms. Scileppi's experience warrants the hourly rates requested – an hourly rate of $325 from January through June 2017 and $375 per hour beginning July 2017.  Ms. Scileppi graduated law school in 2007 and was an associate at Dunnegan & Scileppi until 2012, when she became a partner (Plaintiffs' Br. at 10-11). Plaintiffs' Counsel does not claim that Ms. Scileppi has any experience litigating employment actions or class and collective actions.  (*See* Plaintiffs' Br. at 10-11; Dunnegan Decl. (ECF 370) ¶¶ 16-17.)  This Court has previously approved the same or lower hourly rates for attorneys who have been practicing for a similar amount of time, *but* had far more experience than Ms. Scileppi does in the relevant area of law.  *See McGreevy v. Life Alert Emergency Response, Inc*., 258 F. Supp. 3d 380, 390 (S.D.N.Y. 2017) (in a class action/collective wage case under the FLSA, New York law, and Florida law, approving $350 per hour for an employment law attorney at Outten &

---

2.  Plaintiffs' Counsel also rely on the following to support the $450/$475 hourly rate for Mr. Dunnegan:  "On February 23, 2016, then District Court Judge Richard Sullivan characterized Mr. Dunnegan's rate of $450 per hour as 'cheap'" in a colloquy with Mr. Dunnegan.  (Plaintiffs' Br. at 10.)  However, this comment was not made by Judge Sullivan in the context of a fee application.  Rather, it was made at an initial conference/pre-motion conference for a summary judgment motion.  *See Fisher v. Aetna Life Insurance*, No. 16 Civ 144 (RJS) (ECF 33) at 2:8-10; 12:15-18).  Judge Sullivan certainly was not commenting on the reasonableness of Mr. Dunnegan's hourly rate for a fee application.

Golden, a "firm experienced in class action litigation," who had approximately 8 years of experience, was reasonable). As in the case of Mr. Dunnegan, the cases that the Fee Application relies on in support of the requested hourly rate for Ms. Scileppi, are inapposite, as the attorneys in those cases, had substantial experience in employment and civil rights litigation, which Ms. Scileppi does not. *See, e.g., Vargas Garcia v. Park*, No. 18-CV-10650 (KNF), 2019 WL 6117596, at *4 (S.D.N.Y. Nov. 18, 2019) (in an FLSA and New York Labor Law case, an hourly rate of $425 for attorney, who had "12 years['] experience litigating personal injury, insurance coverage and wage matters," and handled "at least 25 wage-and-hour cases," was reasonable).[3]

Accordingly, the hourly rate for Ms. Scileppi's work should be reduced.

### 3. Richard Weiss.

Plaintiffs' Counsel also has not shown that Mr. Weiss, who graduated from law school in 2012, and has been an associate at Dunnegan & Scileppi since 2013, is entitled to an hourly rate of $225 from January through June 2017 and $325 per hour beginning July 2017. Plaintiffs' Counsel does not claim that Mr. Weiss has any experience litigating employment actions or class and collective actions. (*See* Plaintiffs' Br. at 12-13; Dunnegan Decl. (ECF 370) ¶ 18.) In this

---

3.  *See also, e.g.*, the following cases cited in Plaintiffs' Br, at 11-12: *Sutton v. City of Yonkers*, No. 13 Civ. 801 (GBD) (GWG), 2017 WL 1180918, at *5 (S.D.N.Y. Mar. 29, 2017) (approving an hourly rate of $350 for an attorney in an section 1983 case who submitted a declaration describing his "extensive background in the areas of Civil Rights" and his prior experience in employment and labor law, including representing the city of Newark in civil rights and employment matters) (*see also Sutton*, No. 13 Civ. 801 (GBD) (GWG), ECF 80 ¶¶ 5, 8 (Decl. of Darryl E. Austin) (July 1, 2016)); *Torres v. City of New York*, No. 07 Civ. 3473(GEL), 2008 WL 419304, at *1 & n.1 (S.D.N.Y. Feb. 14, 2008) (in an action for excessive force, finding an hourly rate of $350 reasonable for an attorney with ten years' experience who "handled more than 50 civil rights cases"); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 545 (S.D.N.Y. 2008) (in a Title VII, NYSHRL, and NYCHRL case, hourly rate of $350 awarded to two Outten & Golden associates who had graduated in 2001 and who both had prior employment law experience); *Wong v. Hunda Glass Corp*., No. 09 Civ. 4402(RLE), 2010 WL 3452417, at *3 (S.D.N.Y. Sept. 1, 2010) (in an FLSA case, a rate of $350 per hour was reasonable for attorneys with twelve years' experience and who "specialize in labor law, but focus specifically on wage and hour claims"). Plaintiffs rely on two other cases, but those are not persuasive here. In *Rahman v. The Smith & Wollensky Restaurant Group, Inc*., No. 06 Civ. 6198(LAK)(JCF), 2008 WL 1899938, at *4 (S.D.N.Y. Apr. 29, 2008), the attorney's hourly rate was not contested, and *Genger v. Genger*, No. 14cv05683 (KBF) (DF), 2017 WL 9771814, at *4 (S.D.N.Y. May 22, 2017), involved Morgan Lewis's representation in a breach of contract claim.

9

district, rates of $300 per hour or lower have been approved for associates with five to eight

years of experience who, unlike Mr. Weiss, had significant experience in employment and civil

rights litigation.  *See, e.g.*, *Alicea v. City of New York*, 272 F. Supp. 3d 603, 611 (S.D.N.Y. 2017)

(in a § 1983 case, hourly rate of $300 was reasonable for an associate with approximately six

years of experience litigating "principally civil rights cases"); *Pineda v. Frisoling, Inc.*, No.

15CV3774GBDBCM, 2018 WL 4658798, at *4 (S.D.N.Y. Jan. 15, 2018), *report and*

*recommendation adopted sub nom. Pineda v. Frisolino, Inc.*, No. 15CIV3774GBDBCM, 2018

WL 3628898 (S.D.N.Y. July 30, 2018) (in a wage case under the FLSA and New York Labor

Law, holding that hourly rate of $300 was reasonable for an eighth-year associate who was the

primary trial attorney and previously "served as the lead attorney on 'dozens' of FLSA actions");

*Sanchez v. I&A Rest. Corp.*, No. 14CV0726 (DF), 2017 WL 2537814, at *4 (S.D.N.Y. May 22,

2017) (in a FLSA case, approving a rate of $225 per hour for a sixth-year associate, who had at

least three years' experience in practicing wage-and-hour law).

   As in the case of Mr. Dunnegan and Ms. Scileppi, the cases from this district that

Plaintiffs' Counsel rely on in support of the requested hourly rate for Mr. Weiss are of limited

application, as the attorneys in those cases had experience in employment and civil rights

litigation.  *See Echevarria v. Insight Med., P.C.,* 102 F. Supp. 3d 511,519-20 (S.D.N.Y. 2015)

(awarding an hourly rate of $375 to an attorney with 7 years of experience, including "extensive

experience in employment law"); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 545 (S.D.N.Y.

2008) (in a Title VII, NYSHRL, and NYCHRL case, hourly rate of $350 awarded to two Outten

& Golden associates who had graduated in 2001 and who both had prior employment law

experience).

   Accordingly, the hourly rate for Mr. Weiss should be reduced.

### 4.    Andrew Chung

Plaintiffs' Counsel is seeking an hourly rate of $180 for Mr. Chung, who graduated law school in 2016, and started working as an associate at Dunnegan & Scileppi the same year, was admitted to the New York Bar in April, 2017, and left Dunnegan & Scileppi on December 21, 2018.  Mr. Chung's hourly rate should be reduced for the same reason as for the attorneys above. Prior to this case, D&S did not have experience in the relevant areas involved in this case, and no such experience is claimed for Mr. Chung.  (*See* Plaintiffs' Br. at 13; Dunnegan Decl. (ECF 370) ¶ 19.)

### 5.    Jennifer Rafuse

The hourly rates of $150 prior to June 30, 2017 and $160 after July 1, 2017 that Plaintiffs' Counsel is seeking for Ms. Rafuse, a paralegal who has worked at Dunnegan & Scileppi since 2007 (Plaintiffs' Br. at 13), are excessive.  Courts in this district have recently approved lower rates for paralegals, including with similar seniority.  *See Hollander Glass Texas, Inc. v. Rosen-Paramount Glass Co., Inc.*, 291 F.Supp.3d 554, 562 (S.D.N.Y. 2018) (reducing hourly rate of paralegal, with seven years' experience, to $75); *Lujuan v. JPG LLC*, No. 18-cv-0916 (KBF), 2018 WL 3353060, at *2 (S.D.N.Y. June 6, 2018) (citation omitted) ("courts in this Circuit have generally found $75 to be reasonable" for a paralegal); *Lewis v. Am. Sugar Ref., Inc.*, No. 14-CV-02302 (CRK), 2019 WL 116420, at *4 (S.D.N.Y. Jan. 2, 2019) (in a Title VII and NYCHRL case, approving $125 hourly rate for paralegals with ten and six years' experience, where the Plaintiff's law firms were labor and employment firms).  Plaintiffs' Counsel argues that the court in *Mattel, Inc. v. Uenjoy, Ltd.*, 2018 WL 7021261, 18-cv-7896 (PKC) (S.D.N.Y. Aug. 5, 2019) applied a rate of $160 per hour for Ms. Rafuse's time.  (*See* Plaintiffs' Br. at 14.)  However, as noted above, Mattel was a trademark infringement case, and

Dunnegan & Scileppi specialize in intellectual property cases.[4]  Accordingly, the hourly rate for Ms. Rafuse's time should be reduced.

### 6.    Travel

Plaintiffs' Counsel's time records contain several time entries for travel.  For example, "travel time to and from (1.7)" (Plaintiffs' Exhibit B (ECF 370-2) ("**Exhibit B**") at 68); "travel time (0.8)" (*id*. at 111);[5] and "travel time (0.9)" (*id*. at 112).  This time should be billed at 50% of the attorneys' / paralegal's approved hourly rate.  *See Siegel v. Bloomberg L.P.*, No. 13cv1351 (DF), 2016 WL 1211849, at *7 (S.D.N.Y. Mar. 22, 2016) ("a 50 percent discount for travel time is the customary practice in this District"); *Volpe*, 2016 WL 6238525, at *10 (using 50% of the rate awarded to each attorney to compensate for the travel time in this case).

### B.    The Number of Hours Claimed to Have Been Expended by Plaintiffs' Counsel Is Not Reasonable.

Under the lodestar method, courts must determine "the reasonable number of hours required by the case."  *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill*, 522 F.3d at 186 and *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)).  Hours that are "excessive, redundant or otherwise unnecessary" must be excluded.  *Id.* (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)).  The "critical inquiry is whether, at the time the work was performed, a reasonable attorney would have engaged in similar time

---

4.   Many of the other cases cited by Plaintiffs' Counsel do not support the high $150 / $160 hourly rate being claimed for Ms. Rafuse's time.  *See, e.g., Vargas Garcia*, 2019 WL 6117596, at *5 (reducing paralegal's hourly rate from $200 to $100); *Rozell*, 576 F. Supp. 2d at 546 (awarding $125 hourly rate to paralegals); *Morris v. Eversley*, 343 F. Supp. 2d 234, 248 (S.D.N.Y. 2004) (reducing paralegal rate from $155 per hour to $125 per hour).  Each of the foregoing cases involved paralegals working for law firms or supervising attorneys with experience in the subject matter of the case in which fees were being sought.  The same is true for at least one other case cited by Plaintiffs' counsel.  *See E.F. ex rel. N.R. v. New York City Dep't of Educ.*, No. 11 Civ. 5243(GBD)(FM), 2014 WL 1092847, at *4 (S.D.N.Y. Mar. 17, 2014) (in an IDEA case, awarding hourly rate of $150 to a "chief paralegal" of an attorney with extensive experience litigating IDEA cases).

5.   There are two additional entries of "travel time (0.8)" on the same page.

expenditures." *In re Arbitration Between Okyere & Houslanger & Assocs., PLLC*, No. 1:12-CV-01463 JPO, 2015 WL 4366865, at *10 (S.D.N.Y. May 28, 2015) (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted), *cert. denied*, 506 U.S. 1053 (1993)).  The fee applicant has the burden of showing "accurate, detailed, and contemporaneous time records" to support its claim of hours expended.  *Id.* (quoting *N.Y.S. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983)).  It is well-established that courts in this Circuit may apply an across-the-board percentage reduction where the hours billed are excessive, duplicative, or otherwise improper.  *Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 150 (2d Cir. 2014) (collecting cases).

### 1.    Total Number of Hours

Plaintiffs' Counsel alleges that it spent at least <u>5,035</u> hours litigating this case up to the judgment.  (Plaintiffs' Br. at 14.)  This number dwarfs the total number of hours that other counsel have spent on recent Title VII and EPA class actions in this Circuit.  *See* Plaintiffs' Unopposed Mot. for Att'ys' Fees and Costs, *Times v. Target Corp.*, No. 18-cv-02993, ECF 47 (S.D.N.Y. Oct. 9, 2019) (plaintiffs' counsel, Outten & Golden, spent approximately 2829 hours on a roughly four-year-long Title VII class action with a class consisting of over 5200 class members); *Local 1180*, 392 F. Supp. 3d at 381 (S.D.N.Y. 2019) (counsel for plaintiffs spent a total of 4153 hours in a Title VII and EPA class/collective action that was litigated for over 2 years and 7 months and including a class with over 2000 members); *Volpe v. Nassau Cty.*, No. 12CV2416JFBAKT, 2016 WL 6238525, at *7 (E.D.N.Y. Oct. 24, 2016) (plaintiffs' counsel spent "nearly 682 hours over more than three (3) years of litigation" in an EPA class action).[6]

---

6.    Notably, in contrast to Plaintiffs' Counsel here, plaintiffs' attorneys in these class actions had substantial experience in civil rights and employment litigation.  *See Times*, No. 18-cv-02993, 2019 WL 5616867, at *4 (S.D.N.Y. Oct. 29, 2019) ("The attorneys at O&G and LDF who prosecuted this case are experienced class

96681614

Here, this litigation has lasted for approximately three years and consists of a Class

Representative, 13 Opt-in Plaintiffs and 69 class members.  (*See* Plaintiffs' Br. at 1-2.)

Accordingly, the total number of hours claimed by Plaintiffs' Counsel should be reduced before

calculating the lodestar amount.

### 2. Hours for Specific Phases & Tasks

While the overall hours expended by Plaintiffs' Counsel are unreasonably high, as set

forth below, their time billed to certain phases and tasks in this litigation particularly illustrates

the excessiveness of the hours for which Plaintiffs' Counsel is seeking fees.

### (a) Pre-Discovery Phase

The Complaint in this case was filed on February 1, 2017.  Plaintiffs' Counsel has listed

spending 95.5 hours on work prior to the May 22, 2017 pretrial conference, including

interviewing Ms. Knox, conducting an initial investigation, attempting to negotiate a disposition

with Varvatos, filing a ten-page-long complaint, filing a charge with the EEOC, and participating

in two conferences with the district judge formerly assigned to this case.  (*See* Dunnegan Decl.

(ECF 370) ¶ 24.)  This amount of time for pretrial work is disproportionate to the amount of time

courts have deemed reasonable for similar tasks.  *See Lynch v. Town of Southampton*, 492 F.

Supp. 2d 197, 213 (E.D.N.Y. 2007), *aff'd*, No. 07-3478-CV, 2008 WL 5083010 (2d Cir. Dec. 2,

2008) (holding that 97.83 hours for the initial case intake, drafting a 43-page-long complaint, and

meetings and e-mails with the client regarding the complaint was excessive); *Watson v. E.S.*

---

action and employment lawyers with good reputations among the class action and employment bars and
significant experience in litigating criminal history discrimination matters."); *Local 1180*, 392 F. Supp. 3d at
381 (counsel for plaintiffs included partners with, respectively, 22 and 10 years of experience in civil rights and
employment cases); *Volpe*, 2016 WL 6238525, at *7 (partner representing plaintiffs had "over 31 years of
experience in employment litigation").  The inexperience of Plaintiffs' Counsel should not justify compensating
Counsel for expending an excessive amount of time in prosecuting this case.

*Sutton, Inc*., No. 02 CIV. 02739 KMWTHK, 2006 WL 6570643, at *4 (S.D.N.Y. Aug. 11, 2006), *report and recommendation adopted as modified*, No. 02 CV 2739 KMW THK, 2007 WL 2245432 (S.D.N.Y. Aug. 3, 2007) (finding reasonable 29.1 hours of attorney time spent in discussions with plaintiff, drafting a demand letter, conducting legal research, drafting an EEOC Charge and affidavit, preparing materials for and following up with the EEOC, coordinating with other attorney regarding the case, and working on the fee petition).  Accordingly, the total number of compensable hours for pretrial work by Plaintiffs' Counsel should be reduced before calculating the lodestar amount.

**(b)    Motion Practice**

Plaintiffs' Counsel claims to have spent more than 1,154.6 hours on preparing, arguing, and opposing various motions up to and including the parties' motions for summary judgment. (Dunnegan Decl. (ECF 370) ¶¶ 33-39.)  This is an unreasonable amount of time spent on the identified motion practice given the nature and outcome of the motions at issue.  In particular, more than half this time was spent on Plaintiffs' motion for summary judgment and opposing Varvatos' motion for summary judgment ("more than 621 hours").  (*See id*. ¶ 39.)  The Court denied both parties' motions.  (*See* ECF 219.)  As Plaintiffs concede, the time required for their affirmative motion and in opposing Varvatos' motion for summary judgment overlapped at least in large part because "the motions were largely mirror images of one another."  (Dunnegan Decl. (ECF 370) ¶ 41.)  621 hours for a motion for summary judgment, even in class actions where complex issues might be involved, is impermissibly excessive.  *See, e.g., Siegel v. Bloomberg L.P.*, No. 13CV1351 (DF), 2016 WL 1211849, at *12 (S.D.N.Y. Mar. 22, 2016) (in an FLSA collective action, although "acknowledg[ing] the size and complexity" of the summary judgment motion by plaintiffs and the fact that it had been mostly successful, the court held that the 367.5 hours spent on a summary judgment warranted some reduction).  Moreover, the fact that

15

Plaintiffs' motion for summary judgment was denied in its entirety must be accounted for in

determining the number of hours compensable for it, even if the Court were to credit Plaintiffs'

argument that Plaintiffs' motion for summary judgment "provided the legal groundwork" for

certain issues at trial.[7]  A 50% reduction of the hours spent on the summary judgment motion is

reasonable and consistent with precedent.  *See Finch v. New York State Office of Children &*

*Family Servs.*, 04 Civ. 1668 (SAS), 861 F. Supp. 2d 145, 155 (S.D.N.Y. Mar. 5, 2012) (although

recognizing that the research done for plaintiff's unsuccessful motion for summary judgment was

later used in trial preparation and in negotiating the terms of the final settlement, reducing the

hours billed for work on the motion by 50% in light of the result of the motion).

### (c)     Pre-trial submissions

Plaintiffs' Counsel claims to have spent "more than <u>502.2 hours</u> preparing the pre-trial

submissions required per the Court's March 26, 2019 Order.  (*See* Dunnegan Decl. (370) ¶¶ 42-

45 (emphasis added).)  In support of the time spent on the pre-trial submissions, Plaintiffs'

Counsel has specifically noted the work on three of their motions *in limine*.  (*See id.*)  In fact,

Plaintiffs filed four motions *in limine*, all of which were either completely denied or only

partially granted:

- *Plaintiffs' Motion in Limine to Offer Varvatos' Insurance Policy into Evidence to Prove the Amount of Punitive Damages the Jury Should Award to Impact Varvatos* (ECF 248, 249):  The Court denied this motion in its entirety, noting that "the probative value of the evidence is outweighed by the danger of unfair prejudice, confusion of issues, and misleading the jury."  (Hassan Decl., Ex. 4 (Feb. 7, 2020 Pretrial Tr. at 9:23-10:13); Dunnegan Decl. (ECF 370) at ¶ 45.)

- *Plaintiffs' Motion in Limine to Exclude Evidence or Argument Concerning Any Obligation of Male Sales Professionals to Try on Clothes* (ECF 252):  Although Plaintiffs' Counsel's declaration submitted in support of the Fee Application does not mention this motion made, the Court denied this motion in its entirety as well.

---

7.   *See* Dunnegan Decl. (ECF 370) ¶ 40.

(*See* Hassan Decl., Ex. 4 (Feb. 7, 2020 Pretrial Tr. at 14:12-15:11; *see also* Dunnegan Decl. (ECF 370) ¶¶ 42-45.)

- *Plaintiffs' Motion to Exclude Defendant from Offering Any Evidence of Good Faith* (ECF 250):  Plaintiffs asked the Court in this motion that the Court exclude Varvatos from offering any evidence at trial of Varvatos' good faith because Varvatos allegedly failed to meet its discovery obligations on the subject of good faith, and, as a Rule 37 sanction, exclude Varvatos from offering evidence of its good faith belief that Varvatos did not produce during discovery.  (ECF 246 at 1.)  The Court only partially granted this motion.  The Court did not preclude Varvatos from offering evidence of its good faith at trial, but limited Varvatos to the scope of the good faith evidence that Varvatos' FRCP 30(b)(6) witnesses had testified to at trial.  (*See* Hassan Decl., Ex. 4 (Feb. 7, 2020 Pretrial Tr. at 10:14-14:11).)

- *Plaintiffs' Motion in Limine Seeking to Exclude Evidence of Any Plaintiff's Job Performance* (ECF 250):  Again, the Court only partially granted Plaintiffs' motion, ruling that while "job performance per se [is] irrelevant to the case," "[b]ias, credibility, completely [are] relevant to the case."  (*See* Hassan Decl., Ex. 4 (Feb. 7, 2020 Pretrial Tr. at 16:4-6.)

The Court should deduct from the hours Plaintiffs' Counsel has listed for work on pre-trial submissions the time that was spent on the unsuccessful motions *in limine*, and reduce the compensable hours for motions *in limine* that were only partially successful.  *See DeMarco v. Ben Krupinski Gen. Contractor, Inc*., No. 12-CV-0573 SJF ARL, 2014 WL 3696020, at *9 (E.D.N.Y. July 22, 2014) (attorneys were not entitled to recover any time expended on an unsuccessful motion in *limine*); *see also Quaratino v. Tiffany & Co*., 166 F.3d 422, 427 (2d Cir. 1999) (affirming district court's decision that fees should not be awarded for time spent on the plaintiff's unsuccessful motion for a new trial); *Custodio v. Am. Chain Link and Constr., Inc*., No. 06 Civ. 7148, 2014 WL 116147, at * 2 (S.D.N.Y. Jan.13, 2014) (recommending that hours spent on an unsuccessful class certification motion be deducted from the attorneys' compensable time).

17

### (d)  Trial preparation

Plaintiffs' Counsel is seeking fees for at least 408.8 hours for preparing their presentation for trial, including "script[ing] their presentations and examinations, essentially word-for-word," "test[ing] these scripts for clarity on non-lawyers," and holding two mock jury sessions, each followed by a question-and-answer session.  (Dunnegan Decl. (ECF 370) ¶¶ 54-56.)  The time spent by Plaintiffs' Counsel on trial preparation is not reasonable and must be reduced.  Two aspects of Plaintiffs' trial preparation particularly jump out in this respect:  "scripting" examinations and conducting two mock trials.

Over 50 of Plaintiffs' individual time entries explicitly refer to the word "script", adding up to approximately 127.8 hours.  (*See* Hassan Decl. ¶ 9 & Ex. 5 (excerpt of Exhibit B highlighted for these entries).)[8]  Plaintiffs' Counsel concedes that the "type" of word-for-word scripting they used "is the most time consuming method of trial preparation," but in their "opinion," the "best method."  (*See* Dunnegan Decl. (ECF 370) ¶ 55.)[9]  However, regardless of whether word-for-word scripting for trial witness examination is Plaintiffs' Counsel's practice or preference, the test for fee applications is "reasonableness" of the time spent, and Varvatos should not have to bear the cost of Plaintiff's choice of "the most time consuming method of trial preparation."[10]

---

8.  These time entries include, for instance, "work on script," "revisions to Harris script," "edits to master script," "Ruby Romero script," "rev. Chang script", and "Mayorga cross script".  (*See* Exhibit B at 188, 189, 194, 204, 232, 237.)  There may be other time entries that relate to "scripting" the examination outlines, but do not explicitly refer to the word "script" or one of its derivatives.  This time also does not include entries that refer to both the words "script" and "mock" (to avoid double counting).  (*See* Hassan Decl. ¶¶ 9-10.)

9.  Dunnegan Decl. (ECF 370) ¶ 55 ("While this type of scripting is the most time-consuming method of trial preparation, it is also (in my opinion) the best method of trial preparation.").

10.  Indeed, many practitioners recommend creation of examination outlines, rather than word-for-word scripts.  *See* James A. Johnson, *The Art of Direct Examination*, NYSBA Journal at 20 (March/April 2017) ("Prepare an *outline* and a proof checklist, in advance, as a guide setting out the important facts that you need to elicit on direct examination.") (emphasis added); Mark A. Romance, *10 Tips for Young Lawyers Going to Trial*,

Similarly, Varvatos should not have to bear the burden of Plaintiffs' Counsel choosing to conduct two mock trials rather than one. Around 60 of Plaintiffs' individual time entries explicitly refer to the word "mock" or an incorrectly spelled variant ("mick"), adding up to approximately 72 hours. (*See* Hassan Decl. ¶ 10 & Ex. 6 (excerpt of Exhibit B highlighted for these entries).)[11] Although Plaintiffs' Counsel justify their use of mock trials in general (*see* Dunnegan Decl. (ECF 370) ¶¶ 56-59), there is no reasonable basis provided for conducting two mock trials rather than one or how the second mock trial added something to Plaintiffs' case presentation that was not, or could not, have been obtained in the first mock trial. At best, Plaintiffs' Counsel state that they conducted two mock trials "based on our experience in two prior cases," in which they also conducted two mock trials. (*See id.* ¶ 56.) This, however, does not explain why a single mock jury trial could not have been conducted in this case. Accordingly, the Court should reduce the amount of time compensable for pretrial preparation.

### (e)    Fee application

Plaintiffs' Counsel is seeking fees for approximately 187.9 hours for preparing the Fee Application prior to the entry of judgment. (Dunnegan Decl. (ECF 370) ¶ 63.) This is an excessive amount of time for the preparation of a fee application and ought to be reduced. *See, e.g.*, *Brady v. Wal–Mart Stores, Inc.*, 455 F. Supp. 2d 157, 212 (E.D.N.Y. 2006), *aff'd*, 531 F.3d

---

American Bar Association, Practice Points (Feb. 5, 2018) ("Prepare *witness outlines*, not questions. Experienced lawyers prepare outlines of areas of questions for witnesses rather than a series of prepared questions.") (emphasis added), available at https://www.americanbar.org/groups/litigation/committees/commercial-business/practice/2018/10-tips-for-young-lawyers-going-to-trial/.

11. These time entries include, for instance, "work on mock jury [.5]" (Feb. 2019); "select mock jurors [.8]" (Jan. 2020); "cont. mock script [5.3]" (Mar. 2020); "rev'd script for mock jury and made edits (1.2)" (Mar. 2019); "mock [3.5]" (Mar. 2019); "review and revise script from first mock jury [1.2]" (Jan. 2020); "Rev. mock script [2.6]" (Feb. 2020); and "rev'd transcript for mock jury (0.9)" (Feb. 2020). (*See* Exhibit B at 166, 173, 175, 226, 231, 234.)

127 (2d Cir. 2008) (finding excessive and cutting by half the 257 hours counsel billed for preparation and litigation of a fee application in a disability discrimination case that involved three years of litigation, a jury trial, and a "formidable" and aggressive defendant).

Notably, a large portion of the Fee Application papers relate, not to Plaintiffs' Counsel seeking fees from Varvatos, but Class Representative Tessa Knox seeking an "incentive" fee and Plaintiffs' Counsel seeking an "additional" attorneys' fee for themselves from the "Punitive Damages Fund" awarded to the Class Plaintiffs under the judgment in this case.  (*See* Plaintiffs' Br. at 28-35.)  Varvatos should not have to bear the costs of the Class Representative and Plaintiffs' Counsel asserting rights against *other* Plaintiffs.  The work in asserting these rights appears to constitute a substantial portion of the hours expended on the Fee Application.  For example, over 7 of the 35 pages of the memorandum of law submitted in support of the Fee Application relate to the "incentive" and "additional" attorneys' fees.  (*See* Plaintiffs' Br. at 3, 28-35.)  Almost a third of the declaration of counsel William Dunnegan submitted in support of the Fee Application relates to the same.  (Dunnegan Decl. (ECF 370) ¶¶ 66-96.)  And the declaration of Class Representative Tessa Knox almost exclusively relates to the "incentive fee" and the "additional" attorneys' fees.  (ECF 369 ¶¶ 4-30, 32.)[12]  More importantly though, while the Fee Application, with regard to the attorneys' fees and costs claimed from Varvatos, recites documented facts about the case's procedural history, well-established precedent on attorneys' fees, and the application of that precedent to this case, including recitation of the background of the billing attorneys and paralegal (Plaintiffs' Br. at 1-28), it is the portions of the application

---

12. Of the 32-paragraph declaration of Ms. Knox, except for two introductory paragraphs and paragraph 31, the rest of the declaration relates to Ms. Knox's incentive fee and additional fees for Plaintiffs' Counsel from the Punitive Damages Fund.  (*See* ECF 369.)

96681614

that deal with the "incentive fee" and the "additional" attorneys' fees where Plaintiffs' Counsel appears to have conducted extensive and exhaustive research, including from outside this jurisdiction.  (*See* Plaintiffs' Br. at 30 (in addition to citing cases from the sister-districts of the Eastern District of New York and the Western District of New York, citing cases from California and Georgia in support of the "incentive fee"); *id.* at 31 (citing cases from the 4th and 7th Circuit Courts of Appeal and the district courts of Washington, Nevada and South Carolina in support of the claim for "additional" attorneys' fees.)  In fact, the only justification that Plaintiffs have provided for the excessive hours spent on the fee application is that "[t]his fee application is unique because there are few cases dealing with (a) an award of punitive damages in a class action, (b) that followed a jury verdict that awarded the class members 100% of the compensatory damages that they sought from the jury."  (Dunnegan Decl. (ECF 370) ¶ 63.) However, this alleged uniqueness of the Fee Application only realistically impacts the incentive fee and additional attorneys' fees that the Class Representative and Plaintiffs' Counsel are seeking from other Plaintiffs.  (*See, e.g.*, Plaintiffs' Br. at 30 (with regard to the Class Representative's claim for an incentive fee, noting that Plaintiffs' Counsel could not find a case exactly on point because "[n]one of [the cited] cases …involved (a) a judgment for the full amount of the compensatory damages that plaintiffs sought, and (b) an additional amount in punitive damages.  To the contrary, each of those cases involved an incentive fee paid from a settlement fund necessary to compensate another plaintiff for damages that he or she suffered.").)[13]  Varvatos, however, should not be responsible for how the various Plaintiffs and

---

13. Plaintiffs' Counsel's time entries show that they conducted extensive research for the fee application, although it is difficult to ascertain precisely what was being researched due to the vagueness of many of these time entries.  *See, e.g.*, "research re attorneys fees motion (3.2)," "research re AF motion (2.8)," "fees motion research (3.7)," "research re fee motion issue (3.8)," "fee motion research and drafting (5.8)," and "fee motion research (5.7)."  (*See* Exhibit B at 200, 228, 244, 245.)  Research regarding other issues is similarly described in

their attorneys divide up the Punitive Damages Fund, what the Fee Application refers to as a

"windfall" for the eligible Plaintiffs.[14]

### (f)   Work Created Because of Class Member Crouchen's Indecision

Cheryl Somekh-Crouchen is one of the Class Members in this litigation.  Ms. Crouchen

has flip-flopped on whether or not she wanted to be a class member, creating work for Varvatos'

counsel and also for Plaintiffs' Counsel.  However, Varvatos should not be responsible for

compensating Plaintiffs' Counsel for issues, proceedings and confusion created by one of their

own clients.  *See Balu v. City of New York*, No. 12 Civ. 1071 (KPF), 2016 WL 884666, at *7

(S.D.N.Y. Mar. 8, 2016) (holding that it "would be unreasonable to charge Defendants for time

spent [by plaintiff's counsel] reestablishing the attorney-client relationship … [s]imilarly, to

allow Plaintiff's counsel to bill additional legal fees for an adjournment caused by Plaintiff

herself effectively amounts to a windfall.").

On October 2, 2019, Plaintiffs' Counsel sent an email to Ms. Crouchen.  The email

provided as follows:

> Hi Cheryl,
>
> I'm an attorney for the class action plaintiffs in Knox v. Varvatos.
> You may remember me sitting in at your deposition at our offices at
> the Empire State Building on August 25, 2017.
>
> I'm writing because Varvatos has designated you as a witness they
> intend to call for the upcoming trial. You are a member of the class,

---

vague and generalized terms.  *See, e.g.*, "Rule 23 research (3.3)," "Rule 23 research (2.9)," "Rule 23 research (2.1)," "Rule 23 research (2.0)," "SJ Reply research 6.20," and "SJ Reply research 3.60."  (*See id*. at 48, 49, 123.)

14. *See, e.g.*, Plaintiffs' Br. at 30 ("However, the Punitive Damages Fund – the $847,041.67 that the jury awarded in punitive damages less the $235,000 awarded in punitive damages to the 13 Opt-In plaintiffs, or $612,041.67 – represents an additional amount that is not necessary to compensate anyone.  It is a windfall.  **The issue presented is how that windfall should be shared**.") (emphasis added).

> and the potential value of your claim against Varvatos approximates
> $250,000. Because I represent the class, I wanted to know if you
> would like to speak to me to help prepare you for the trial.

(Plaintiffs' Br. at 24, the "October 2 email".)

On October 4, 2019, defense counsel sent a letter to the Court, informing the Court that on October 3, 2019, Ms. Crouchen contacted the Managing Attorney of defense counsel's law firm and informed him that she did not believe she was or should be a member of the class; that an attorney had called her (Plaintiffs' Counsel) and told her that they would like to prepare her for her testimony at trial and that she stood to gain $250,000; and that this was "so dirty of them to try this;" and that they were "'out of their minds' if they think she is going to lie or change what she said last time" (at her deposition, prior to class certification). (ECF 295 at 1.) Defense counsel's law firm did not engage further with Ms. Crouchen. (*Id*. at 2.) Instead, defense counsel immediately informed the Court of this incident, by a letter dated October 4, 2019, and asked the Court for a pre-motion conference for an order seeking to have Ms. Crouchen give sworn testimony on the items in the October 3 phone call, and also that Plaintiffs' Counsel provide a copy of this letter to Ms. Crouchen, so that she would understand why defense counsel was not calling her back. (*Id*.) Plaintiffs' Counsel wrote a letter to the Court on October 7, 2019, objecting to Varvatos' request for a pre-motion conference (and also informing the Court that Plaintiffs' counsel had not called Ms. Crouchen, but sent her an email). (ECF 294 at 1.) On October 10, 2019, the Court held a telephonic conference with the parties. (ECF 296.) Following the conference, the Court issued two Orders. In the first Order, the Court directed Plaintiffs' Counsel to produce to defense counsel their October 2 email to Ms. Crouchen. (ECF 297). In the second Order, the Court scheduled a conference for October 23, 2019, "to discuss Ms. Cheryl Somekh-Crouchen's status as a class member (and the contact she had with defendant's counsel)." (ECF 299 at 1.) The parties then engaged in additional back-and-forth

and letter briefing to the Court as a result of Plaintiffs' Counsel's demand that their October 2,

2019 email to Ms. Crouchen, which appeared to have triggered Ms. Crouchen's October 3 call to

defense counsel, must be treated as confidential.  (*See* ECF 300 & 301.)  On October 14, 2019,

Plaintiffs' Counsel asked the Court for a "conference in anticipation of a motion for an order …

to prevent defendant and its counsel from further disseminating the October 2, 2019."  (ECF 300

at 1.)  On October 15, 2019, the Court issued an Order, ruling that the October 2 email is not

subject to attorney-client privilege, and limiting use of the October 2 email to this litigation.

(ECF 302 at 1.)  After an adjournment because of Ms. Crouchen's unavailability (ECF 304 at 1),

an in-person conference was held on November 14, 2019, attended by Plaintiffs' Counsel,

defense counsel, Ms. Crouchen and Ms. Crouchen's personal attorney.  (Hassan Decl., Ex. 7

(Nov. 14, 2019 Tr. at 3:4-3:25).)  At the conference, the Court made it clear that the reason for

the conference was Ms. Crouchen's October 3 call to defense counsel's offices:

> THE COURT: … All right, welcome, everyone. You can be seated
> if you're not speaking.
>
> I guess **we're here principally to determine the status of Ms.
> Crouchen** because I think, you know, from our perspective she is a
> member of the class
>
> … So, from our perspective, she's a member of the class.  **And we
> wouldn't be here except that she made a telephone call to the
> defendant's firm suggesting that she didn't wish to be part of
> the class**.  And my principal goal here is to try to determine what
> we're going to do about that, if that's still her desire, and what the
> plan is.

(Hassan Decl., Ex. 7 (Nov. 14, 2019 Tr. at 4:17-21 & 5:24-6:6).)  At the conference, Ms.

Crouchen's personal attorney told the Court, in the following colloquy, that Ms. Crouchen

wishes to remain a class member and that she would be represented by Plaintiffs' Counsel:

> THE COURT: **Okay, so does she wish to remain a member of the
> class or not, because** --

> MR. SILVERSTEIN: **Yes, she does.**
>
> THE COURT: **Okay, because that was not clear previously.**
>
> And the class at this point is being represented by Mr. Dunnegan. So I hadn't thought about the issue of whether one of the class members could have their own lawyer. I think they could. Does she intend to engage you for the purpose of pursuing her claims in this action?
>
> MR. SILVERSTEIN: We don't have that intention at this point in time, your Honor. I think she would be part of the class and would be represented by Mr. Dunnegan's firm.

(*Id*. at 7:9-22 (emphasis added).)  At the same conference, Plaintiffs' Counsel then asked that because Varvatos' counsel had raised the issue of Plaintiffs' Counsel engaging in witness tampering based on the October 2 email, Plaintiffs' Counsel wanted to "hear first-hand from Ms. Crouchen what that conversation was with the attorney from [defense counsel's law] firm." (*Id*. at 10:7-10.)  The Court denied the request noting, "Well, Mr. Dunnegan, I'm now questioning whether you can represent this person if you are making such an unusual request to have your own client come in and be put under oath about a conversation relating to this litigation.  I think that's completely inappropriate." (*Id*. at 10:16-21.)

Varvatos should not have to pay for any time that Plaintiffs' Counsel expended, at least between October 4, 2019 and November 14, 2019 in connection with the foregoing since this work resulted from one of the Plaintiffs' indecision regarding this litigation and apparent inability to effectively communicate with class counsel.  Based on an analysis of Plaintiffs' Counsel's time records, this amounts to approximately 24 hours.  (*See* Hassan Decl. ¶ 7 & Ex. 3

(excerpt of Plaintiffs' time records at Exhibit B, reflecting time entries that appear to relate to the foregoing issue).)[15]

### 3.      Vague time entries

Vague, generalized and incomplete time entries interfere with the court's ability to "assess the reasonableness of the hours spent on the stated tasks."  *See Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, No. 10 Civ. 05256(KMW)(DF), 2012 WL 5816878, at *10 (S.D.N.Y. Nov. 14, 2012).  They also make it difficult for the court to "determine if the work performed by different timekeepers was unduly duplicative."  *Id*. Therefore, courts in this Circuit routinely reduce compensable hours to account for vagueness of the fee applicant's time records.  *See Thai-Lao Lignite (Thailand) Co.*, 2012 WL 5816878, at *11 ("Courts frequently respond to vague and difficult-to-decipher billing statements with an across-the-board percentage reduction in the fees claimed, often in the range of 20–30 percent."); *see also, e.g.*, *Terminate Control Corp. v. Nu–Life Constr. Corp.*, 28 F.3d 1335, 1342–43 (2d Cir. 1994) (holding 30% fee reduction for "lack of specific record keeping" was within the district court's discretion); *Suchodolski Assocs., Inc. v. Cardell Fin. Corp.*, No. 03 CIV.4148(WHP), 2008 WL 5539688, at *3 (S.D.N.Y. Dec. 18, 2008) (30% reduction of requested fee for vagueness); *Williamsburg Fair Hous. Comm. v. New York City Hous. Auth.*, No. 76 CIV. 2125 (RWS), 2007 WL 486610, at *5 (S.D.N.Y. Feb. 14, 2007) (50% reduction of requested fee

---

15. On October 16, 2019, defense counsel requested that Plaintiffs' Counsel produce certain documents related to the October 2, 2019 email.  (*See* ECF 305 at 3 (detailing back-and-forth between counsel for the parties).)  After Plaintiffs refused, and defense counsel raised the issue with the Court (ECF 305), the Court denied the request for additional discovery, on October 24, 2019.  (ECF 308.)  Although Varvatos believes its discovery request was in good faith and well-founded, in calculating the hours resulting from Ms. Crouchen's direct actions, Varvatos has not included the time that Plaintiffs' Counsel appears to have spent with regard to this discovery request.

because of excess and vague billing).  Here, the time records provided by Plaintiffs' Counsel are rife with vague entries.

For example, the time records of Plaintiffs' Counsel contain innumerable instances of calls, conferences and meetings, sometimes between multiple parties, without identification of any subject or purpose.  Such time entries are improper for attorneys' fees.  *See, e.g.*, *Miroglio S.P.A. v. Conway Stores, Inc*., 629 F. Supp. 2d 307, 313 (S.D.N.Y. 2009) (finding entries such as "'letter to Dweck [opposing counsel]'," "'telephone call to Dweck'," and "'discussion with Dweck," "overly vague."); *Ragin v. Harry Macklowe Real Estate Co*., 870 F. Supp. 510, 520 (S.D.N.Y. 1994) (reducing fees for vague time entries such as "telephone call to S. Berger," "conference with T. Holman," "Telephone conference," "letter to Suzanne Berger," "Telephone conference with Holman and Berger," and "phone calls to NY").  The time records here are replete with such time entries.  The very first page of the time records, for instance, contains at least 12 instances of communications with no subject matter specified (*see* Exhibit B at 2 (January 2017), William Dunnegan time entries including, "email RW," "t/c with TK, CC and RW," "Email of CC," "email RW," "conf with RW," "Email TK," "T/c with TK and CC," "deal with RW," "call with TK and CC," "email with RW and LS," "email RW, LS," conf with RW," and "email TK," along with other vague time entries, such as "Letter," and "docs from TK.").  Similar examples appear all over the time records, *e.g.*, "call w/ TK and CC" (0.7 hours) (*id*. at 6); "t/c with TK" (0.6 hours) (*id*. at 9); "note to RW [.1]" (*id*. at 26); "emails with TK" (0.4 hours) (*id*. at 49); "meet with RW" (0.9 hours) (*id*. at 52); "call TK and CC" (0.7 hours) (*id*. at 39); "conf with RW [.2]" (*id*. at 116); "conf. with RW [.7]" (*id*. at 128); "call with TK [.3]" (*id* at 134); "meet with RW [.6]" (*id*. at 151); "meet with RW and LS" (1 hour) (*id*. at 166); "meet with RW and LS" (0.3 hours) (*id*. at 211); "meet RW" (0.7 hours) (*id*. at 231).

27

Plaintiffs' time records also include numerous other time entries, which are similar to time descriptions that have been found vague and incomplete.  For example:

- June 23, 2017, Richard Weiss, "Knox consent form" (0.7 hours) (Exhibit B at 29) [16]

- Jan. 16, 2017, Richard Weiss, "try and find email address" (0.6 hours) (*id*. at 4)

- Aug. 7, 2017, William Dunnegan, "30b6" (0.4 hours) (*id*. at 38)

- Aug. 2, 2017, Richard Weiss, "TK depo prep" (1.5 hours) (*id*. at 41)

- Sept. 19, 2017, Richard Weiss, "Rule 23 memo" (5.4 hours) (*id*.at 49)

- Sept.  20, 2017, Richard Weiss, "Rule 23 memo" (3.9 hours) (*id*. at 49)

- Sept. 25, 2017, Richard Weiss, "rule 23 memo" (1.9 hours) (*id*. at 49)

- Sept. 28, 2017, Richard Weiss, "Rule 23 memo" (2.0 hours) (*id*. at 49)

- Sept. 29, 2017, Richard Weiss, "Rule 23 memo" (4.7 hours) (*id*. at 49)

- Dec. 26, 2019, Richard Weiss, "fees' motion" (6.3 hours) (*id*. at 222)

- Dec. 27, 2019, Richard Weiss, "fees motion" (3.2 hours) (*id*. at 222)

- Dec. 30, 2019, Richard Weiss, "attorneys' fees motion" (6.8 hours) (*id*. at 222)

---

16.  These time entries are even more insufficient than others that have been held to be vague and incomplete.  *See, e.g.*, *Thai-Lao*, 2012 WL 5816878, at *11 ("generalized time entries "such as "review and file," "conference," **"continue drafting," or "continue research," and then lists the name of the document reviewed, researched, or drafted,"** were found "insufficient to allow the Court to determine what research or other tasks the attorneys were actually performing, and therefore whether the amount of time expended was reasonable") (emphasis added); *Kirsch v. Fleet St., Ltd*., 148 F.3d 149, 172 (2d Cir. 1998) (affirming reduction of requested fee for vague time entries "staff conference," or **"work on motion**.") (emphasis added); *Spalluto v. Trump Int'l Hotel & Tower*, No. 04 Civ. 7497(RJS)(HBP), 2008 WL 4525372, at *8 (S.D.N.Y. Oct. 2, 2008) ("cursory descriptions, such as ... 'prepare correspondence to co-counsel,' ... and '**prepare letter to court**' are too vague") (emphasis added); *Ragin v. Harry Macklowe Real Estate Co.*, 870 F. Supp. 510,520 (S.D.N.Y. 1994) (reducing fees for vague time entries as "**research for brief**," "**research and draft brief**," "**draft and edit brief**," "**research for reply brief**," "**continue to work on reply brief**," and "**letter to Suzanne Berger**") (emphasis added); *Crowhurst*, 2019 WL 6122645, at *6 (reducing fee for vague time descriptions such as "follow up with numerous communication between counsel re trial scheduling" and "absurdly conclusory" time entries such as "**Conduct discovery**") (emphasis added), *report and recommendation adopted*, No. 16-CV-0182 (JGK), 2020 WL 133509 (S.D.N.Y. Jan. 11, 2020).

- Dec. 31, 2019, Richard Weiss, "attorneys' fees motion" (3.0 hours) (*id.* at 222)

- Mar. 5, 2020, William Dunnegan, "Attorney fees motion" (3.6 hours) (*id.* at 241)

- Mar. 6, 2020, William Dunnegan, "atty fee motion" (1.0 hours) (*id.*)

- Mar. 24, 2017, Richard Weiss, "research" (2.3 hours) (*id.* at 11)

- July 30, 2018, Richard Weiss, "Jury charges" (0.5 hours) (*id.* at 136)

- July 31, 2018, Richard Weiss, "Jury Instructions" (4.1 hours) (*id.*)

- Aug. 1, 2018, Richard Weiss, "jury instructions" (7.4 hours) (*id.* at 141)

- Aug. 2, 2018, Richard Weiss, "jury instructions" (3.5 hours) (*id.* at 141)

- Aug. 3, 2018, Richard Weiss, "jury instructions (intent issues)" (4.2 hours) (*id.*)

- Aug. 6, 2018, Richard Weiss, "jury instructions (establishment issues)" (3.4 hours) (*id.*)

- Aug. 7, 2018, Richard Weiss, "jury instructions" (7.1 hours) (*id.*)

- Aug. 8, 2018, Richard Weiss, "jury instructions" (6.8 hours) (*id.*)

- Aug. 9, 2018, Richard Weiss, "jury instructions" (3.3 hours) (*id.*)

- Aug. 10, 2018, Richard Weiss, "jury instructions (EPA and collective action)" (4.6 hours) (*id.*)

- Aug. 13, 2018, Richard Weiss, "jury instructions (collective action)" (2.2 hours) (*id.*)

- Aug. 14, 2018, Richard Weiss, "jury instructions" (7.0 hours) (*id.* at 141)

- Aug. 20, 2018, Richard Weiss, "jury instructions" (0.3 hours) (*id.*)

- Dec. 24, 2018, Richard Weiss, "exhibit list for damages trial" (3.9 hours) (*id.* at 155)

- Dec. 26, 2018, Richard Weiss, "exhibit list" (5.0 hours) (*id.*)

- Dec. 27, 2018, Richard Weiss, "exhibit list" (2.2 hours) (*id.*)

- Dec. 28, 2018, Richard Weiss, "exhibit list" (1.3 hours) (*id.*)

- Dec. 31, 2018, Richard Weiss, "exhibit list" (3.2 hours) (*id.*)

- Jan. 2, 2019, Richard Weiss, "exhibit list preparation" (3.4 hours) (*id*. at 162)

- Apr. 1, 2019, William Dunnegan, "work on Ex list with JR" (1.0 hours) (*id*. at 181)

- Apr. 2, 2019, William Dunnegan, "Ex list" (0.1 hours) (*id*.)

- Apr. 3, 2019, William Dunnegan, "Ex list" (0.1 hours) (*id*.)

- Apr. 4, 2019, William Dunnegan, "Exhibit list with JR" (0.1 hours) (*id*.)

- Apr. 5, 2019, William Dunnegan, "Exhibit list" (0.3 hours) (*id*.)

- Apr. 8, 2019, William Dunnegan, "Exhibit list" (2.0 hours) (*id*.)

- Nov. 27, 2017, Richard Weiss, "SJ memo" (6.8 hours) (*id*. at 63)

- Nov. 30, 2017, Richard Weiss, "SJ memo – 6.1" (6.1 hours) (*id*.)

- Dec. 1, 2017, Richard Weiss, "SJ memo" (2.6 hours) (*id*. at 68)

- Dec. 15, 2017, Richard Weiss, "SJ memo" (2.9 hours) (*id*.)

- Apr. 10, 2019, William Dunnegan, "work on Ex list and physical ex" (1.5 hours) (*id*.at 181)

- Oct. 14, 2019, William Dunnegan, "Get out letter [.3]" (*id*. at 210)

- Jan. 23, 2020, William Dunnegan, "Shears cx [1.3]" (*id*. at 226)

- Nov. 12, 2019, William Dunnegan, "Ex list for hearing" (0.4 hours) (*id*. at 215)

Other vague entries include, for instance, "work on draft (0.9)" (Exhibit B at 17); "order [.1]" (*id*. at 32); "Original tasks [.2]" (*id*. at 38), "timeliness of class certification" (1.2 hours) (*id* at 57); "email on Trsp" (0.1 hours) (*id*. at 60); "Rule 23 memo and declaration draft" (3.5 hours) (*id*. at 62); "conf with RS re frge memo [.2]" (*id*. at 107); "memo (1.3)" (*id*. at 120); "Cont work on trial prep both electronic and physical files" (7 hours) (*id*. at 138); "disc for Bill (0.9)" (*id*. at 154); "Prep for trial and trial day 1 [8.0]" (*id*. at 232);[17] "Prep for trial day 2 [1.2]" (*id*.); "prep

---

17. *See Reiter v. Metro. Transp. Auth. of State of New York*, No. 01CIV2762GWG, 2007 WL 2775144, at *15 (S.D.N.Y. Sept. 25, 2007) (vague time entries such as "**trial preparation**" make it "impossible for the Court to

for day 3 [3.6]" (*id*.); "trial prep (3.2)" (*id*. at 237); "prep for mock (0.5)" (*id*. at 175); "prep for mock jury (0.5)" (*id*. at 177).

Similarly, "[b]ecause block billing interferes with the ability of a court to evaluate the reasonableness of attorney hours, its use often results in a reduction of fees" as well. *O.R. v. New York City Dep't of Educ.*, 340 F. Supp. 3d 357 (2018); *see also Nimkoff Rosenfeld & Schechter, LLP v. RKO Props., Ltd.*, No. 07 Civ. 7983(DAB)(HBP), 2011 WL 8955840, at *7, *10 (S.D.N.Y. Apr. 7, 2011) (fee reduction of 25 percent in part because of block billing); *Suchodolski Assocs., Inc. v. Cardell Fin. Corp.*, No. 03 CIV.4148(WHP), 2008 WL 5539688, at *3 (S.D.N.Y. Dec. 18, 2008) (in addition to 30% reduction of fee for vagueness, reducing fee further by 15% for block billing). Here, Plaintiffs' Counsel's time records contain a number of block-billed time entries, such as:

- Feb. 1, 2017, Richard Weiss, "file complaint, email HHR, phone call with HHR, email to TK initiating docs + EEOC complaint letter" (3.10 hours) (Exhibit B at 7)

- Feb. 2, 2017, William Dunnegan, "Deal with filing and selection; t/c with Client et al" (*id*. at 5)

- Mar. 2, 2017, Richard Weiss, "phone call with Jordan Pace at HHR, relay to BD, BD conference call with Jordan Pace" (0.8 hours) (*id*. at 11)

- October 17, 2017, Richard Weiss, "edits to Rule 23 memo and doc collection" (1.4 hours) (*id*. at 55)

- October 25, 2017, Richard Weiss, "revise and print out docs" (2.5 hours) (*id*. at 56)

- Feb. 28, Jennifer Rafuse, "Multiple conf w RW re chart, create tabs for each claim, begin new calcs" (6.2 hours) (*id*. at 91)

---

determine if the 'trial preparation' involved compensable tasks (such as drafting questions for witness examinations) or non-compensable tasks (such as photocopying of exhibits)") (emphasis added).

96681614

- Apr. 11, 2019, Jennifer Rafuse, "Continue to update physical exhibits to match w electronic updates, create impeachment tab and docs, edits to ex list, create updated exs for physical buy docs, send updated ex list and TX32, figure out pulls missed for 2 years of EPA claim on TX32" (1.8 hours) (*id*. at 186)

- April 24, 2019, William Dunnegan, "Work on jury charges, ex list, stips inc t/c with AH" (6.5 hours) (*id*. at 182)

- Mar. 2, 2020, Jennifer Rafuse, "Continue chart project re compensatory damages; begin working on liquidated damages from 3/2 award, many confs w/ RW" (8.50 hours) (*id*. at 247)

- Feb. 7, 2020, William Dunnegan, "revise agenda and organize inc conf with RW and JR" (1.8 hours) (*id*. at 231)

- Feb. 25, 2020, Jennifer Rafuse, "Knox Trial, checking Kassen pages w/ RW, print x12 Mayorga Desig pages, create tabs and dividers for all, make Ex. 44 & Ex. 45 orig stickers" (10.40 hours) (*id*. at 240)

- Feb. 28, 2020, Jennifer Rafuse, "Knox Trial, conf WD/RW/LS, making 12x copies re PX104 and DX HH, org TX16 unredacted just in case" (10.40 hours) (*id*. at 240)

Notably, many of the time entries involving travel are block-billed with other activities such that on the face of the time entries, there is no split between the time spent on travel versus the other activities.  *See, e.g.*, "traveled and attend conf with GWG [1.8]" (*id*. at 45); "attend conf with travel [2.5]" (*id*. at 52); "Ct. app including travel [3.7]" (*id*. at 65); "meet with NB, inc local travel [3.5]" (*id*. at 166); "left for hearing at 1:20 got back 3:20 (2.1)" (*id*. at 89).

Accordingly, given the numerous instances of vague and incomplete time entries provided in support of the Fee Application, an across-the-board reduction of *at least* 35%-45% is warranted.

### 4.    Inconsistent Time Entries

Courts also routinely reduce requested attorneys' fees for inconsistent time entries.  *See, e.g.*, *Carey*, 711 F.2d at 1142 (affirming district court's fee reduction by a third because of deficiencies including "inconsistencies between the amount of time claimed by different

attorneys for similar or identical tasks"); *Kirsch v. Fleet St., Ltd*., No. 92 CIV. 932 (DLD), 1996 WL 695687, at *5 (S.D.N.Y. Dec. 4, 1996), *aff'd*, 148 F.3d 149 (2d Cir. 1998) (reducing requested fees because*, inter alia*, "Plaintiff's attorneys' time submissions are also marked by inconsistencies.  For instance, certain counsel documented conferences with other attorneys, even though such conferences do not appear on the other attorneys' time sheets").  Here, Plaintiffs' time records contain numerous inconsistencies of the foregoing types, and the compensable hours ought to be reduced as a result.  For example:

- William Dunnegan billed 2.8 hours to various meetings and conferences with Richard Weiss between March 20 and 29, 2017.  For the same time period, Mr. Weiss has only one time entry of a meeting with Mr. Dunnegan, on March 28, for a "talk with BD about meaning of 'other than sex,'" (0.6 hours) (which in fact is 0.2 hours more than the time Mr. Dunnegan billed for his meeting with Mr. Weiss on the same day).  (*See* Exhibit B at 9 & 11-12.)

- Sept. 5, 2017 – Mr. Dunnegan billed 2.0 hours to meetings with Mr. Weiss.  Mr. Weiss has no time entry of any meetings or conferences with Mr. Dunnegan that day.  (*See id*. at 45 & 48.)

- June 11, 2018 – Mr. Dunnegan billed 0.6 hours to "Meet with RW re memo."  Mr. Weiss' June 11 time entries reflect no such meeting ("email Ruby Romero re declaration (0.1); cite check memo and edits (3.6); edits to 56.1 (1.5); draft my declaration (0.4)).  (*See id*. at 127 & 130.)

- Sept. 2018 – Mr. Dunnegan billed at least 4.7 hours for conferences/meetings/calls with Mr. Weiss.  Mr. Weiss billed only 0.7 hours to conferences with Mr. Dunnegan.  (*See id*. at 145-46.)

- Mar. 11, 2019 – Ms. Scileppi billed 1.0 hours to various conferences involving Mr. Weiss.  Mr. Weiss billed no time to any conference with Ms. Scileppi.  (*See id*. at 175 & 177.)

### 5.    Inefficient & Excess Staffing

In particular with regard to the time billed by attorney Laura Scileppi, there are numerous instances of inefficient billing and excess staffing.  Plaintiffs' Counsel is claiming 122.5 hours for Ms. Scileppi and total fees of $45,322.  (*See* Dunnegan Decl. (370) ¶ 6.)  However, a large portion of that time has been billed by Ms. Scileppi on redundant and duplicative tasks, such as

simply reviewing docket entries and communications with opposing counsel that other attorneys appear to be working on substantively to respond to; emails, calls, conferences and meetings with other attorneys; and the like.  While such time might have brought value to the case, the test here is what a reasonable, paying client will be willing to pay, and as has been observed in the case law, paying clients are unlikely to pay for redundancies and excess staffing of this sort.  *See Local 1180*, 392 F. Supp. at 381 (with regard to "multiple entries for team meetings where two and three attorneys discussed the case," such as "Strategy meeting regarding matter," and "Attorney meeting regarding matter," observing that "[w]hile these meetings conceivably brought some value to the client, the Court, in its experience, finds that a reasonable client would not agree to compensate Plaintiffs' counsel for the hours spent by each attorney attending these meetings.").  Ms. Scileppi's time records contain numerous time entries reflecting such excess staffing, including conferences about conferences.  During certain days and months, those are the only types of case activities that she billed any time to.  *E.g.*:

- May 2017:

    - May 8, "rev'd order re premotion conf"

    - May 22, "conf WD re conference (0.1), conf WD re value of damages (0.1), conf WD/RW re value of damages (0.2), conf WD/EH re value of damages (0.1), conf WD/RW re notice of appearance, (0.1), conf JR re notice of appearance filing (0.1)"

    - May 23, "re'vd order re motion for certification"

    - May 25, "rev'd CMP dates and docketed (0.2), email to group re dates and conf RW re dates (0.1)" (Exhibit B at 21)

- June 7, 2017, "email from WD re insurance" (0.1 hours) (only time entry for June 2017) (*id*. at 28)

- Sept. 13, 2017, "conf RW re conference (0.1)" (*id*. at 47)

- Jan. 25, 2018, "obtained book and marked segments for WD re kirtsaeng" (0.5 hours) (*id*. at 78)

- Only time entry for June 2019, "rev'd Bassen letter re sanctions (0.1) rev'd court order re trial date (0.1)" (*id*. at 195)

- Sept. 27, 2019, "conf WD and RW re subpoena and rev'd FRCP (0.2) researched rule and live streaming (0.1) conf WD re live streaming research (0.1)" (*id*. at 207)

- Mar. 22, 2020, "rev'd squarespace for making edits as needed to website and emials w/ WD re same" (0.5 hours) (*id*. at 243)

Accordingly, Ms. Scileppi's compensable time should be reduced by at least 60%.[18]

### 6.  Attorneys Working on Non-Attorney Tasks

Courts routinely reduce requested fees because of attorneys performing non-legal, paralegal work.  *See Rozellt*, 576 F. Supp. 2d at 540  (attorneys engaged in clerical tasks "may not be compensated at their regular hourly rates for time spent performing clerical tasks," but instead "should be compensated at the rate for clerical employees, or, if the task at issue is the type included in overhead, they should not be compensated at all"); *Tatum v. City of New York*, No. 06-CV-4290 PGG GWG, 2010 WL 334975, at *9 (S.D.N.Y. Jan. 28, 2010) (reducing attorney's billing rate to the paralegal rate for tasks such as monitoring ECF, supervising filings and reviewing and updating waiver of service); *Destefano v. Astrue*, No. 05-CV-3534 (NGG), 2008 WL 623197, at *4 (E.D.N.Y. Mar. 4, 2008), *report and recommendation adopted*, No. 05-CV-3534 NGG/RLM, 2008 WL 2039471 (E.D.N.Y. May 9, 2008) (attorney's time spent on PACER case monitoring, receiving and reviewing a certified mail receipt from the U.S. Postal Service, and faxing and mailing various documents was not reimbursable at the regular attorney rate); *see also Crowhurst*, 2020 WL 133509, at *6 (characterizing "tasks such as service of the complaint" as "obviously non-attorney work"); *Adusumelli v. Steiner*, No. 08 Civ. 6932 (JMF),

---

18.  Ms. Scileppi's time entries also include numerous administrative, clerical or paralegal tasks, which are not compensable.  (*See infra* Sections B.6-7.)  .

2013 WL 1285260, at *7 (S.D.N.Y. Mar. 28, 2013) (attorneys "unreasonably billed at their full rates for routine tasks, such as applying for pharmacist's licenses for their clients and faxing or e-filing documents").

Here, Plaintiffs' Counsel's time records have numerous instances of attorneys billing for non-attorney work.  This time should not be compensated at the respective attorneys' regular rates, or in the alternative, an across-the board fee reduction ought to be applied to account for this time.  As examples of this nature of work, Plaintiffs' Counsel's time records include time entries such as the following:

- Jan. 31, 2017, William Dunnegan, "Attention to filing complaint; email TK" (1.1 hours) (Exhibit B at 2)

- Feb. 7, 2017, Richard Weiss, "re-file summons request, review first with JR" (0.5 hours) (*id*. at 7)

- Feb. 7, 2017, Richard Weiss, "serve process of complaint (supreme judicial)" (0.2 hours) (*id*. at 7)

- May 22, 2017, Andrew Chung, "Filing notices of appearance for WD, LS, AC" (0.8 hours) (*id*. at 24)[19]

- July, 2017, Richard Weiss, "try and find a place in EH for depositions, talk to Emily" (0.5 hours) (*id*. at 36)

- Mar. 2, 2018, Andrew Chung, "Filing letter" (0.3 hours) (*id*. at 102)

- May 3, 2019, Richard Weiss, "courtesy copies of yesterday filings (0.4)" (*id*. at 191)

- June 7, 2019, Richard Weiss, "send fax re last night's filing (0.2)" (*id*. at 196)

- Aug. 29, 2017, Richard Weiss, "file motion to amend" (0.5 hours) (*id*. at 42)

---

19.  For the same day, Ms. Rafuse has a time entry for "Draft Atty app forms w AC [0.50]; Sup AC filing on ECF [0.40]" (*id*. at 25).

Other examples of attorneys billing to non-attorney work include, for instance, "e-file of letter with RW" (0.1) (*id*. at 9); "Diary disc Dates [.1]" (*id*. at 26); "filing (0.1)," (*id* at 68); "courtesy copies – Rule 23 reply – 0.5" (*id*.); "mail notice of hearing to Hickey and Torres (0.8)" (*id*. at 70); "file letter (0.1)" (*id*. at 81); "fax unredacted courtesy copy (0.1)" (*id*.); "emails and Fed Ex [0.2]" (*id*. at 85); "personally drop in mailbox Opt In Rogs, Opt-in DRs on JV (0.2)" (*id*. at 89); "file (0.2)" (*id*. at 98); and "compile service lists for class members (2.2)" (*id*. at 246).

### 7.    Clerical Work & Overhead Charges

"With respect to tasks that are 'purely clerical,' such as downloading, scanning, or copying documents and organizing files, such work is generally not compensable, *whether performed by an attorney or a paralegal*." *Siegel*, 2016 WL 1211849, at *7 (emphasis added); *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) ("purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them").  Clerical and secretarial services "are part of overhead expenses and are not generally charged to client." *Williams v. New York City Hous. Auth*., 975 F. Supp. 317, 324 (S.D.N.Y. 1997); *see also id*. (reducing the lodestar hours because clerical and secretarial services were not reimbursable); *O.R.*, 340 F. Supp. 3d at 357  (refusing compensation for paralegal's "work of a secretarial nature, including copying a file, informing individuals about hearing scheduling, preparing a bill, and having other ministerial communications with witnesses or clients").

Here, Plaintiffs' Counsel's time records have numerous time entries billed to administrative, clerical and secretarial work – both by attorneys and non-attorneys.  None of this time should be compensated.  As examples of this nature of work, Plaintiffs' Counsel's time records include time entries such as the following:

- Jan. 31, 2017, William Dunnegan, "Attention to filing complaint, email TK" (1.1 hours) (Exhibit B at 2)

- Aug. 22, 2017, Jennifer Rafuse, "Typing for WD" (0.5 hours) (*id*. at 44)

- Jan. 10, 2020, Richard Weiss, "electronic file organization" (0.4 hours) (*id*. at 228)

- Feb. 7, 2020, Richard Weiss, "document organization" (1.3 hours) (*id*.  at 236)

- Mar. 1, 2018, Laura Scileppi, "conf MD re domain name pointing (0.2) worked on domain pointing issue and resolved (1.0)" (*id*. at 95)

- Mar. 22, 2018, Laura Scileppi, "emails w/ RW re website launch (0.1) tested website launch (0.2) conf RW re test and launch (0.1)" (*id*. at 95)

- Apr. 13, 2019, Richard Weiss, "organize MIL drafts [.6]" (*id*. at 181)

- Oct. 25, 2017, Jennifer Rafuse, "test printing, go over RW settings [0.20]" (*id*. at 58)

- Feb. 7, 2020, Richard Weiss, "document organization (1.3)" (*id*. at 236)

Other examples of Plaintiffs' Counsel billing to clerical, administrative and overhead tasks include, for instance, "Stuffing envelopes [2.20]" (*id*. at 73); "raw type for RW [1.50]" (*id*. at 103); "corrections to address labels [0.30]; print final labels, print final postage, assemble in prep to stuff envelopes [1.20]" (*id*. at 103); "Test video on tablet, test upload to OD, test recording directly to OD, confs EH/WD [0.70]" (*id*. at 180); "emails re website charge" (0.1) (*id*. at 212); "Run Shears Accurint" (0.30) (*id*. at 230); "Testing camera on comp for Mock, search for recorded video [0.10]" (*id*. at 239); and "learn to create 4pg pdf for timesheet ex." (0.4) (*id*. at 247).

### C.     Plaintiffs' Accusations Against Varvatos Are Baseless

Plaintiffs' Counsel has attempted to justify the unreasonably high number of hours for which they are seeking fees by accusing Varvatos of unnecessary litigation.  (Plaintiffs' Br. at 16-27.)  These accusations are baseless.  More importantly, they do not cure the deficiencies and excessiveness of the hours expended, as set forth above.

96681614

Plaintiffs' counsel has accused Varvatos of engaging in "pointless" discovery because Varvatos deposed Tessa Knox and Chris Clemence (Ms. Knox's then-fiancé and now husband) and moved to seek further discovery from both.  (*Id*. at 16-19.)  The assertion that Varvatos somehow engaged in pointless discovery by deposing Ms. Knox – the lead plaintiff in this case who initially filed this action against Varvatos – is wrong.  Although Varvatos does not have to justify taking a seven-hour deposition of the lead plaintiff – which it was entitled to under FRCP 30(d) – the length of the deposition was the result, in large part if not exclusively, because of Ms. Knox's non-responsiveness and combative attitude.  (*See, e.g.*, Hassan Decl., Ex. 8 (excerpts of the Sept. 26, 2017 deposition of Tessa Knox) at 69:22-71:2 (Ms. Knox claiming she did not know what was "mens wear" and "womens wear," and that bras, string bikinis and mini-skirts were all "unisex" clothing).)  Nor can Plaintiffs claim in good faith that deposing Mr. Clemence was "pointless" discovery.  Mr. Clemence had knowledge of the facts of the case and had, since early on, inserted himself into the facts of the case – for example, in October 2016, Mr. Clemence wrote an email to Varvatos asking that Ms. Knox be provided a clothing allowance,[20] and during his September 7, 2017 deposition, Mr. Clemence testified that he acted as Ms. Knox's "representative" with regard to legal issues, including for this case.[21]  Nor can Plaintiffs deny Mr. Clemence's early involvement with the case given that Plaintiffs' Counsel expended time, even

---

20.  *See* Hassan Decl., Ex. 10 (Oct. 3, 2016 C. Clemence email to O. Strok (Varvatos), stating, "Hope you had a great weekend! Josh King recommended I contact you as I wanted to write to you with a concern. My girlfriend is an employee of your company and informed me today that she was upset that male employees receive $3,000 worth of free clothing from your store, however, because she is a female, she is not entitled to this same benefit. I certainly hope that this is a misunderstanding and that she is in fact entitled to the same benefits as any employee, regardless of gender. Please let me know if we can rectify this immediately, thank you.").

21.  *See* Hassan Decl., Ex. 9 (Excerpts of Sept. 7, 2017 Dep. Tr. of Chris Clemence) at 85:4-88:17.

prior to filing this action, conferencing with Mr. Clemence, both with and *without* Ms. Knox.[22]
For the same reasons, additional discovery requested from Ms. Knox and Mr. Clemence can
hardly be characterized as "pointless."  In fact, as Plaintiffs admit, the Court did grant Varvatos'
additional discovery in part (with regard to the retainer agreement between Ms. Knox and
Plaintiffs' counsel).  (*See* Plaintiffs' Br. at 19.)

       Plaintiffs also have accused Varvatos of engaging in unnecessary motion practice.  (*See
id*. at 19-27.)  However, a defendant filing a motion to dismiss or opposing conditional and class
certification can hardly be characterized as "unnecessary" motion practice.  Plaintiffs'
contentions as to the other "unnecessary" motion practice are equally unavailing:

- On March 18, 2019 Varvatos asked the Court for a pre-motion conference in anticipation of moving to disqualify Ms. Knox as class representative due to a conflict of interest between Ms. Knox (a former employee) and currently employed class members.  (ECF 237-1.)  Varvatos also asked that the deadline to submit the joint pretrial order be adjourned pending resolution of this issue.  (ECF 237-1.)  At the March 26, 2019 conference, the Court granted Varvatos' leave to make the motion by April 5, 2019, but did not adjourn the submission of the joint pretrial order until after the disqualification motion was briefed and resolved.  (ECF 243, ECF 244.)  With extensive pretrial submissions due by April 25, 2019, Varvatos decided not to pursue the motion.  A strategic decision not to pursue a motion is hardly evidence of "unnecessary" motion practice.

- On June 6, 2019, Varvatos filed a Rule 11 sanctions motion against Plaintiffs' Counsel.  (ECF 281.)[23]  Although the Court denied Varvatos' motion, it did so

---

22. *See, e.g.*, Exhibit B at 2, 5 & 6:

- Jan. 12, 2017, William Dunnegan, "t/c with TK, CC and RW" (1.2 hours)
- Jan. 14, 2017, William Dunnegan, "Email of CC" (0.1 hours)
- Jan. 17, 2017, William Dunnegan, "T/c with TK and CC" (0.3 hours)
- Jan. 25, 2017, William Dunnegan, "call with TK and CC" (0.6 hours)
- Feb. 3, 2017, William Dunnegan, "T/c CC regarding continued prosecution of N.Y. action" (0.2 hours)
- Feb. 3, 2017, Laura Scileppi, "call w/ TK and CC" (0.7 hours)

23. In a May 2, 2019 opposition to a motion *in limine* (ECF 269), Plaintiffs' Counsel made, *inter alia*, the following statements to the Court:  Varvatos did not "investigat[e] United State law" regarding the Clothing Allowance and that "there is no evidence that Varvatos attempted to investigate whether or not its Clothing Allowance violated federal or state law."  (*Id*. at 3-4.)  At the time that Plaintiffs' Counsel made these statements, the record reflected the opposite and that Plaintiffs were aware of this record because: : (1) Plaintiffs' Counsel

"without prejudice to renewal following the conclusion of trial." (*See* ECF 288.) That does not support Plaintiffs' accusation that the sanctions motion constituted "unnecessary" motion practice. Moreover, Plaintiffs' Counsel could have obviated the need for the motion by (1) simply not misstating in their pretrial submissions what Plaintiffs' Counsel knew was factually incorrect (*see* ECF 269 (Plaintiffs' Counsel stating in the motion *in limine* filing "there is no evidence that Varvatos attempted to investigate whether or not its Clothing Allowance violated federal or state law")); (2) alternatively, Plaintiffs could have withdrawn that statement when defense counsel provided them the chance to do so by providing a notice of the Rule 11 sanctions motion.[24]

- On October 24, 2019, the Court denied Varvatos' request for a pre-motion conference in anticipation of a motion to compel production of correspondence similar to the October 2 email from Plaintiffs' Counsel to Class Member, Ms. Crouchen. (ECF 308; *see also supra* at 22-23.) The October 2 email had caused Ms. Crouchen to call defense counsel's law firm and complain that she did not believe she was or should be a member of the class; that the attorney who had contacted her (Plaintiffs' Counsel) had told her that they would like to prepare her for her testimony at trial and that she stood to gain $250,000; and that this was "so dirty of them to try this;" and that they were " 'out of their minds' if they think she is going to lie or change what she said last time" (at her deposition, prior to class certification). (*See supra* at 22-23; *see also* Hassan Decl. ¶ 7.) As a result, defense counsel's concerns of witness tampering, and request for leave to compel Plaintiffs' Counsel to produce other email correspondence like the October 2,

---

adduced the relevant evidence in a Rule 30(b)(6) deposition of Varvatos; and (2) only a week before making the factual contentions in the May 2, 2019 filing, Plaintiffs' Counsel themselves referred to and relied on this Rule 30(b)(6) testimony in papers that they filed with this Court. In particular, (1) on October 26, 2017, Plaintiffs' counsel deposed Nicole Chang, Varvatos' Rule 30(b)(6) witness, who testified at the deposition that in 2014, Ann Byron (Varvatos' then-Vice President of Human Resources), had consulted with counsel to verify that Varvatos was in compliance with the law regarding its Clothing Allowance (*see* ECF 283 at page 5 of 8 (testimony from 125:24-127:5)); and (2) in an April 25, 2019 filing with this Court, Plaintiffs' counsel discussed Ms. Chang's testimony that Varvatos had consulted with counsel to confirm the legality of the Clothing Allowance. (ECF 246 at 5.) On May 3, 2019, Varvatos asked Plaintiffs' Counsel, by letter, that the May 2 filing containing the improper factual contentions be withdrawn (with Plaintiffs free to re-file without the factually incorrect contentions), and that in the event of no withdrawal, Varvatos would be serving a motion pursuant to Rule 11 of the Federal Rules of Civil Procedure. (ECF 283 at page 7-8 of 8.) Plaintiffs' Counsel did not do so, and did not even respond to defense counsel regarding the May 3, 2019 letter. (*Id.* at page 1 of 8, ¶ 4.) On May 13, 2019, Varvatos served by mail on Plaintiffs' Counsel a Rule 11 sanctions motion based on the above-noted factual contentions by Plaintiffs' Counsel. (ECF 284.) Plaintiffs did not withdraw their May 2 filing. (ECF 283 at page 1 of 8, ¶ 4.) On June 6, 2019, Varvatos filed its Rule 11 sanctions motion with the Court. (ECF 281) Later the same day, Plaintiffs' Counsel emailed defense counsel, asking that Varvatos withdraw its motion and make an application for a pre-motion conference instead. (ECF 286) Varvatos did so promptly, filing a letter requesting a pre-motion conference the same day. (ECF 285)

24. For that reason, the 21.6 hours that Plaintiffs' Counsel claims to have spent on addressing the Rule 11 motion should be significantly reduced, if not entirely eliminated.

41

2019 email – regardless of its outcome – is hardly "unnecessary" motion to practice.

Finally, Plaintiffs' Counsel accuses Varvatos of failing to "realistically approach settlement" and that "Varvatos' participation in the settlement process was a complete waste of plaintiffs' counsel's time."   (Plaintiffs' Br. at 27.)  Plaintiffs' argument is improper and should be stricken.  As Plaintiffs concede, the settlement discussions were subject to confidentiality. (*Id.*)  Bound by those terms of confidentiality, Varvatos cannot defend itself against Plaintiffs' unsupported accusations.  To the contrary, Varvatos made the request for the final mediation that took place in this case in December 2019 (Hassan Decl. ¶ 4), and also made an offer of judgment on February 10, 2020, to which Plaintiffs never responded (*id*. ¶ 5).[25]

**D.     Plaintiffs' Requests for an Incentive Fee for Tessa Knox and Additional Fees from the Punitive Damages Fund.**

As discussed above, it is Varvatos' understanding from the Fee Application that the Class Representative's request for an incentive fee and Plaintiffs' Counsel's request for additional fees from the Punitive Damages Fund is being made against other Class Members, not Varvatos. Thus, the allocation of the Punitive Damages Fund (to the extent any survives Varvatos' pending post-trial motion under Rules 50 and 59 of the Federal Rules of Civil Procedure or a future appeal) is an issue as between the Plaintiffs, the Class Representative, and Plaintiffs' Counsel and does not implicate any rights of Varvatos.  Out of an abundance of caution, Varvatos reserves its rights to supplement this opposition to the Fee Application (or otherwise move for appropriate relief) to object to the incentive fee and the additional attorneys' fees on all

---

25.  Since Varvatos is not free to discuss the full context of the settlement discussions, Plaintiffs' Counsel's statement in his declaration – that "Although I offered to settle this matter on behalf of Knox before the filing of this action for less than $25,000, Varvatos did not make any settlement offer in response."  (Dunnegan Decl. (ECF 370) ¶ 47) – is similarly improper.

42

applicable grounds, including but not limited to, the following:  (1) the class representative,

Tessa Knox, is not entitled to an incentive fee, particularly in light of her refusal to appear at trial

(*see* Hassan Decl. ¶ 3 & Ex. 1); and (2) for the reasons discussed above, the attorneys' fees that

Plaintiffs' Counsel seeks from Varvatos are excessive in and of themselves; therefore Plaintiffs'

Counsel's request for an award of *additional* attorneys' fees from the punitive damages fund is

particularly unreasonable.


## CONCLUSION

For the reasons stated in Sections A, B & C herein, Varvatos respectfully requests that

the Court reduce the attorneys' fees that Plaintiffs' Counsel is seeking in the Fee Application as

to Varvatos.

Dated:      New York, New York
            April 24, 2020

Respectfully submitted,

HUGHES HUBBARD & REED LLP

By: /s/ Ned H. Bassen

Ned H. Bassen
Amina Hassan
Grace Ha
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726
ned.bassen@hugheshubbard.com
amina.hassan@hugheshubbard.com
grace.ha@hugheshubbard.com

*Attorneys for Defendant John Varvatos*
*Enterprises, Inc.*

43